In the United States District Court

for the Northern District of Illinois

United States of America )
)
v. )     19 CR 226
)
Robert M Kowalski )
Jan R. Kowalski )
)

**FILED**

APR 30 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Motion to Compell Representation or Withdrawl
of Appointed Attorney Imani Chiphe

Now comes Robert M. Kowalski, (defendant) in support of
his motion states as follows:

① Imani Chiphe was appointed my attorney relative to the
captioned proceeding.

② Toward those ends, Mr Chiphe has rendered advice, guidance
and counsel competently.

③ This has included advocating that I not relinquish my
5th Amendment Rights against self-incrimination in this
proceeding and a bankruptcy case No 18-09130.

④ The complainant in this matter Jacob Evans, and the
Federal Deposit Insurance Corporation, have continued to
assert and perpetuate a massively fraudulent loan sheme
with falsification by a failed bank, its president, and employees.

(4. cont)

This fraud was detailed in a report from the Inspector General of the Department of the Treasury dated 11-6-2018 relative to the failed bank. Nevertheless FDIC wishes to collect on fraudulent loans through their prima facia fraudulent and detailless claim.

(5) Mr Chiphe appeared briefly before Judge Cox in the bankruptcy case.

(6) His counsel has provoked a negative inference before Judge Cox.

(7) Judge Cox's orders reflect that she has "punished" me with continued incarceration, notwithstanding that bankruptcy courts have no authority to "punish".

(8) Attached is a recent motion I attempted to file via mail with bankruptcy court. Despite the emergency nature its whereabouts are uncertain and it has not been heard.

(9) Civil incarceration is a drastic remedy.

(10) FDIC has filed this complaint in bad faith in order to assist collection of the FRAUDULENT MASSIVE LOAN Scheme upon a hapless debtor.

(11) This criminal complaint concerns the same fact pattern and issues of the bankruptcy proceeding. The criminal matter supercedes the civil proceeding

12. The Supreme Court has confirmed in Fisher v. United States 425 US 391 (1976) that: the fifth Amendment trumps the bankruptcy court orders under these circumstances.

13. The ~~...~~ United States Bankruptcy Court for the Central District of California- Santa Ana Division, In Re Kenny G. Enterprises, LLC in Case No: 8:11-bk-24750-TA; under similar circumstances appointed the Federal Public Defender to represent debtor.

14. Mr Chiphe can't neglect a matter once he has appeared before a court.

15. The bankruptcy case and superceding criminal case are inextricably linked.

16. Without an understanding of bankruptcy law and practice Mr Chiphe is unqualified to represent me in the superceding criminal matter.

Wherefore, Robert M. Kowalski respectfully requests this Court enter an order:

A) Allowing and Directing Mr Chiphe to continue his Representation before the Bankruptcy court in Case No 18-09130

(B) Allowing mR Chiphe to withdraw from these RepresentATioNs.

(C) Providing for substitute counsel, if necessary, undee these circumstances

(D) And for all such further relief as this court deems just and equitable

Respectfully Submitted

RobertM Kowalski,

Robert M. Kowalski, defendant Attorney

In the United States District Court
for the Northern District of Illinois

In Re:

Robert M. Kowalski

Case No. 18-09130

Emergency Motion To Vacate and/or Otherwise
Stay Order of Contempt Previously Entered

Now Comes Robert M. Kowalski (debtor) in support
of his motion states as follows:

Starting in November 2018, I have been incarcerated
three times for contempt by Judge Cox. Each respective
order recites that "PUNISHMENT" should be meted out
by reason of such contemptuous behavior.

BACKGROUND

Debtor, Attorney Robert Kowalski filed a chapter 11 reorganization
case on March 29, 2019; upon learning of a $27.5 Million
claim from FDIC-R as receiver for failed bank Washington
Federal Bank. On November 6, 2018 the inspector general of
the Treasury reported that this failure was caused by massive
fraud and falsification by bank president and its employees.
Further, the implosion of a seemingly perfect bank and
resulting $84.7 Million dollar loss was also caused by flawed
FDIC practices. Under suspicious circumstances, akin to an

Assisted suicide the bank president perished.

## Facts:

Starting in November 2018, I have been repeatedly incarcerated for contempt by Judge Cox. Each respective order recites that: "<u>PUNISHMENT</u>" should be meted out by reason of such contemptuous behavior. Also, this case has been punctuated with: ~~the~~

(A) improper ex parte communication
(B) Accusations of Racism
(C) Adnan Khosoghi like Bankruptcy Rule 2004 Examinations
(D) Secret Executive Committee Rulings
(E) November 2018 contempt for FDIC Benefit
(F) Home Invasions
(G) Office Ransackings
(H) Baseless Gun Brandishings
(I) Fraudulant FDIC-R Claims 27.5 million
(J) A Conflicted Trustee
(K) A Cover-up
(L) New Criminal Complaint From Fraud Based FDIC-R
(M) Deprivation of Counsel

This bankruptcy case has, from its inception, resembled a quasi/criminal investigation. Replete with never ending extensive debtor interrogation. Meanwhile FDIC-R has not provided any ledger or other detail of the acknowledged massive fraud based claim. Only the sketchiest information provided to date shows homes debtor sold years ago are still

on the failed bank's balance sheet. No debtor has ever endured such unrelenting pressure while trying to reorganize. After being victimized by the fraud bank, the FDIC-R has merely continued to perpetuate the very same Ponzi scheme, Meanwhile FDIC has been cashing in on various D+O insurance policies. Debtor's plan of Reorganization was simple, pay all non fraud claim entirely! FDIC-R did not agree?

There are impermissable unconstitutional levels of prejudice, stemming from several extrajudicial sources, have arisen and underlie these contempt findings. These display a deep seated favoritism or antagonism that would make fair judgement impossible, Liteky v. United States 510 US 555 (1994).

The bankruptcy court, Judge Cox, has improperly issued several orders to "PUNISH" debtor. The orders themselves recite this punishment theme running through these court orders to incarcerate debtor. Many courts have found criminal contempt sanctions are not necessary and appropriate to carry out the provisions of the bankruptcy Code, In Re Hardy 97 F 3d 1389. Such intention was never to coerce. The imprecise boundary between civil and criminal contempt encourages caution and reluctance when considering an incarceration sanction Int'l Union v Bagwell 512 US 828. Trial courts typically only consider the use of conditional incarceration as a contempt sanction once other methods to secure compliance have been

④

considered, Combs 785 F 2d 981. To mitigate this Risk incarceration sanctions should be ordered only after less severe alternatives have failed or have been deemed doomed to fail, see Combs 785 F2d 981. However, Judge Cox moving at hyper-space speed incarcerated debtor upon every pretext. Extrajudicial prejudice at unconstitutional levels of bias have inspired this reaction.

Punishment of debtor raises due process implications. When civil contempt sanctions lose their coercive effect they become punative and violate contemnors due process rights, Commodity Futures Trading Comn v Wellington Precious Metals, Inc 950 F2d 1525 (1992). The U.S. Supreme Court, noting due process implications of incorrectly classifying a contempt proceeding as civil, has emphasized that the dividing line is ability to comply. This reinforces need for accuracy, an incorrect decision can increase risk of wrongful incarceration by depriving defendant of the procedural protections Constitution would demand in criminal proceedings int'l Union v Bagwell 512 US 828. In light of the "punishment" ordered by Judge Cox, these orders run afoul of the constitution's guarantees. The debtor never had the keys to his own cell. Constitutional protections were required and never afforded Attorney Kowalski. Further these shifting sands contempt orders demonstrate the underlying punative nature and resulting lack of fairness.

(5)

1. There are impermissable unconstitutional levels of prejudice stemming from several sources that have arisen and underlie these contempt findings

2. Improper EX PARTE Communication

At a divorce court hearing in June 2018, Cook County domestic relations circuit court Associate Judge William Boyd indicated on the record that he was familiar with Judge Cox. He stated on the record, transcript available, that he was familiar with Judge Cox. He stated that he would provide several documents to the Federal Bankruptcy Judge so that debtor could be "sanctioned".

3. Racist?

At a bankruptcy proceeding during October 2018, while arguing to hold debtor in contempt, Mr Rein for FDIC-R and trustee Mr Paloian argued on the record that debtor was a "RACIST"!?

4. <u>ADNAN Khosoghi Effect</u>: During another Rule 2004 bankruptcy examination in October 2018, at offices of Horwood, Marcus, + Berk disruptions occurred. The tag team of counsel for FDIC-R mr Rein and conflicted trustee mr Paloian conspired to intimidate and harass hapless debtor. In particular, Mr Rein deliberately, continually and otherwise frustrated debtor's effort to fully answer each question propounded. At last exasperated Trustee Paloian intercepted, menaced and hindered debtors attempt to pour a glass of water. The transcript from that mornings testimony and Freudian slip while testifying at a subsequent bankruptcy hearing confirm conflicted Trustee's intention was to provoke a stand off confrontation with debtor.

Executive Commilte Strikes

5. An executive commillee ex parte order, based upon extra judicial information, was entered on October 30, 2018 relative to debtor by Chief Judge Castillo. This order cryptically begins: "It has come to our attention Robert Kowalski, is loud and disruptive". The order does not reflect what the members of the ~~commil~~ executive commille consisted of, nor what evidence was considered, or even from what source. Debtor requested information of the chief Judge. after receiving an evasive response debtor brought a motion to vacate such order. Without supplying any rationale whatsoever Judge Castillo on behalf of the mysterious star chamber "Executive Commille", simply denied my motion without explanation. I am not an member of the bar ~~of the~~ of the Federal court either. They had no jurisdiction to enter any order.

(5) cont.

Clearly, the genesis of the "Executive Committee" order
came from government agents of the FDIC-R, Mr Rein and
the conflicted Trustee Mr Paloian. This "executive committee"
order compelled debtor to suffer a U.S Marshall escort
whenever at a U.S. Courthouse in Northern Illinois. More
ominously the order, which has been woven into the bankruptcy
(lower court) docket, predisposes the bankruptcy judge to
rule against me. Otherwise she might also incur the wrath
of this nameless faceless group of senior most powerful judges
in the district. The ex parte order stemming from a secret
proceeding is violative of the 1st, 4th, 5th, 6th, 7th, 8th and
14th Amendments to the constitution. The executive committee
did not respect the "automatic stay" nor request permission
of the bankruptcy court prior to instituting its phantom,
closed door, private judicial proceeding. This rogue
order contaminates every single matter debtor has pending
before a Federal Court in Northern Illinois. At a stroke it has
rendered venue of this case inappropriate in Illinois. In
apparent fear of her supervising judges the bankruptcy
judge has abdicated her role as neutral finder of fact.
Rather than face the backlash similar mystery justice.
The executive order alerts the bankruptcy judge how she
better rule or risk consequences.

(6) Prior Contempt "Punishment"

In accord with the mandated directive from the Executive committee, Judge Cox entered prior civil contempt orders, reflecting explicitedly that: Each debtor had been incarcerated for civil contempt on two prior occasions to "Punish". The First order was entered in November 2018 and thereafter on February 21, 2019. On both occasions bankruptcy court improperly allowed the FDIC proceed with a Rule 2004 examination. However in light of adversary petitions having been filed these examinations could only b conducted under Federal Rules of Evidence rather than bankruptcy rul. The excessive months long fishing expedition provided by never ending incessant extensive length of 2004 exam undermines debtor's ability to gain a fresh start. Forcing an attorney debtor to relinquish client confidences in exchange for his freedom exposes clients. This makes it most likely that such clients will seek other counsel. The information disgorged by attorney debtor exponentially exceeded than required by original subpeona.

The unfairness is further when FDIC-R was able to reschedule 2004 its 2004 Examinations at will and without prior notice, whereas debtor was compelled to suffer increased incarceration at the hands of FDIC-R hordes of attorneys who were only too pleased to allow debtor languish in his cell. The civil contemnor must be able to hold the keys to his own cell. The purge should never had rested within the pleasure of the FDIC-R nor the not disinterested Trustee. Clearly the court could have allowed a less drastic draconian means of compelling an attorney debtor contemnor. For instance bail or hom-monitoring should have been considered. Any notion of a fresh start withers completely when attorney debtor is under confinement. additionally, there is damage incurred by clients suddenly bereft of their attorney.

(7)

## Conflicted Trustee Not Disinterested:

MR PALOIAN can not fulfill his role as trustee when he is exclusively working to benefit FDIC-R. It is simply outrageous that would fail to investigate and has otherwise abandoned any and all claim against the FDIC-R. The FDIC-R is collecting upon a massive fraud and falsification scheme based from a failed bank. If it wasn't for these fraud based claims the estate has a considerable surplus value. The trustee would not have to dig deep to locate the fraud in FDIC-R's claims. FDIC-R has included amounts for properties sold many years ago. The trustee reflects bias and prejudice when he accepted the FDIC-R bribe in the amount of a nearly $100,000 priority loan. FDIC is normally in the deposit insurance not the loan making business.

The Trustee has fiduciary duties to the estate that consist of more than simply working to benefit one fraud based client-creditor. Nevertheless, benefiting its large existing (FDIC) client is the only motivation our trustee Mr Paloian possesses. It is illustrative that the not disinterested Trustee did not follow bankruptcy Rule 9029-4B when pursuing Attorney disciplinary proceedings against beleaguered debtor. Neither did he ask the bankruptcy judge to lift the "Automatic Stay" prior to contacting A.R.D.C. relative to debtor. In his haste to please his buddies at FDIC-R Trustee Paloian entirely glossed over the requirement of confidentiality pursuant to -4(A).

(8.) Hostage Taking

On April 3, 2019 Counsel for FDIC-R, Mr Rein expressed his belief that Jan Kowalski held certain funds during cross-examination, admitting debtor did not possess any funds. The order of March 11, 2019 reflects that Jan Kowalski had "direct" control over such funds. It is hardly lawful to hold a debtor hostage in order to compel another. This simply is more punishment of debtor.

(9) OFFICE RANSACKING VANDALS

On February 20, 2019 Trustee Paloian directed his minions to break and enter the law office of Jan Kowalski Mc Donald, Attorney. These agents were seen: changing locks, inspecting files, boxing up files with legal materials, removing files, removing equipment, and other property from the Attorney's law office This RANSACKING was done without any order of court whatsoever For good measure, trustee's team was observed enjoying alcoholic beverages from laws stock and ~~the~~ while viewing sports on office T.V.

(10) Home INVASION

Trustee invaded debtor's home at 1707 S. Newberry, Chicago, in late January 2019. Trustee changed locks before and without bankruptcy court permission. Upon complaint of debtor, court granted "retroactive" permission to Trustee. All debtor's personal property and files were taken into "inventory". However no inventory has been forthcoming and it is likely debtors personal effects have been misappropriated. These harsh measures dim any prospect of debtor obtaining a fresh start

**11.)** <u>Debtor does Not Own Gun!!</u>

During a February 21, 2019 bankruptcy court proceeding, Mr Paloian blurted out on the record that debtor, while disturbing his office invasion at Jan Kowalski's law office, had brandished a gun. Mr Paloian waved about and attempted to tender to the court a flash drive containing a video of the purported occurence. At that time the court did Not take the video into evidence Nor did Judge Cox otherwise view the material?? Debtor objected to this suggestion of a weapon! Rather debtor and his divorce attorney, Mr Frank Avila witnessed trustee's agents tearing apart Jan Kowalski's office. At a later court date Mr Avila testified before the bankruptcy court confirming that debtor did Not possess any weapon then or at any other time, Notwithstanding Judge Cox leaped to a conclusion, during the April 3, 2019 bankruptcy court record that debtor had a gun that Night. Judge Cox continued debtor's incarceration. Interestingly the sun times reported on these events. Their version suggested that our associate Attorney Frank Avila had this weapon in his waistband. Neither is true No weapon was displayed. where could all this false information be coming?

**12.)** <u>Silence</u>

The contempt incarceration has been implemented to silence and control debtor. Depriving debtor of access to court effectively prevents. Appellate jurisdiction. Upon Jailing, debtor has several related bankruptcy appeals pending. Debtor has not been allowed while incarcerated to pursue and perfect his appeal rights. Nor has he been allowed to participate in these appealed matters heretofore pending.

## 13. No Representation of Debtor $=$ No Due process
*equals*

On the very same date that Judge Cox ordered my incarceration, she allowed my private attorney to withdraw. This well respected attorney had been subjected to relentless threats and intimidation from the trustee Paloian. This has rendered me a pro-se litigant without any tools. The U.S. Marshall does not allow court access, nor are any bankruptcy materials or case law available. The office of the Federal Public Defender ought to have been appointed to represent debtor under these exceptional circumstances. One had been appointed for Kenny "G" Gharib in case No 8-11-bk-24750-TA in the central District of California.

The rules provide that: unless order for contempt provides otherwise, should confinement be ordered the place of confinement will be either the MCC or Winnebago county jail Rockford. I have been detained in Kankakee county. The U.S. Marshall has not complied with administrative orders for case management of the bankruptcy court. In particular, "all petitions and other documents must be filed in electronic format via the system". Access to system has been illegally divested from me. Further the U.S. Marshall service has detained me in a manner constitutionally prohibited. One hardly has the keys to his own cell while unable to communicate effectively. Due process becomes a mockery where there becomes no opportunity to respond!

(14) <u>"Cover up"</u>

On November 6, 2018 the Inspector General of the Department of the Treasury issued his findings relative to the failed bank Washington Federal Bank for Savings. He cited MASSIVE FRAUD and FALSIFICATION by the bank president and its employees. The bank president died shortly after the FDIC shuttered the bank. These suspicious circumstances of this death, hanging suicide while seated in a chair, without note are peculiar. Further this manner of death strongly suggests that this suicide was in the nature of an "assisted" death. The extent of the loss at the bank was reported at 84.7 million dollars. Also the report blamed the FDIC for failing to notice certain red flags over a several year period. Apparently this small sized bank was used as a FDIC training group.

This huge loss represented nearly half the stated assets of the bank. The bank didn't merely collapse, it imploded! Formerly the bank had not reported even a single loan loss for at least eight years preceding the failure. It is clear now in retroscope, that such perfection was built upon a massive thin lie. However, the unprecedented scale supports that it was impossible for someone at FDIC not to have been involved as part of the scheme, a coconspirator. Despite my repeated requests, pleas, and subpoenas to bring transparency, the FDIC-R has been unwilling to shed any detail for their 27.5 million dollar claim. Incredibly, even a cursory prima fascia review of FDIC-R claim contains amongst other things that long ago paid off loans from closed sold homes are included. The FDIC-R can not continue to operate a fraudulent loan scheme when

(14 cont.)

it has knowledge the massively FRAUDULENT bank falsified records. The special vehemence in pursuing a hapless debtor would suggest FDIC knows it is engaging in a coverup.

Rather than acknowledging its role in the failed bank and curing inadequacies cited by the Inspector General. The FDIC-R has conducted a witch hunt upon a hapless debtor to "cover up". Rather than admit its lax policies allowed a member bank to victimize the public, FDIC-R is desperately seeking a scapegoat. Toward these ends FDIC implemented charges against debtor by initiating, signing a criminal complaint. Having several adversary matters pending renders further 2004 examinations targeting debtor's family pure misguided harassment. Amazingly, FDIC-R has even taken control of debtor's vehicle after his arrest and conducted a warrantless search seizing property. Meanwhile the real criminal masterminds must still be safely ensconced at FDIC-R. Keeping debtor on the sidelines incarcerated ensures that no one will be able to effectively complain of or expose their wrongdoing.

(15.) <u>Impossibility of Purge</u>

The court has no authority to punish debtor. Two circumstances exist that transform order incarcerating for contempt into punitive. One is where it is impossible for this debtor to purge. Second is where there is no reasonable possibility that debtor could ever pay nor any substantial likelihood purge could be forthcoming. The orders entered acknowledge that such funds are beyond direct control of debtor. Then there is considerable evidence of trustees agents breaking and entering into the law office of Jan Kowalski. The extensive search turned office upside down. Many articles have disappeared in the course of this incursion. The Chicago Police had been called upon to investigate. This incarceration becomes punitive when it "loses the ability to secure compliance".

(16,) <u>Fifth Amendment</u>

The bankruptcy court may not continue to coerce debtor. The exact matter that is the subject of the bankruptcy contempt order forms a criminal complaint No. 19 CR 226. The fifth (5th) Amendment provides: "Nor shall a person be compelled in any criminal case to be a witness against himself". It is the extortion of information against the accused himself that offends our sense of justice, Couch v. United States. A party is priveleged from producing evidence, Johnson v. U.S. at 458. The proverbial keys to my civil cell ~~coerced~~ coerced from me would simply lead into a criminal cell.

Reminiscent of Armstrong v. Guccione, 470 F.3d at 113, that maybe time has come for another court to look at this case with a "fresh set of eyes". The bankruptcy court has become prejudiced from too many extrajudicial sources, or stubborn, to evaluate all the factors correctly within guidelines of the law

Wherefore, Robert Kowalski respectfully requests that the court enter an order authorizing

① Transfer of this case to a non-prejudiced judge
② U.S. Marshall to release Robert M. Kowalski from incarceration immediately

Respectfully Submitted,

Robert M. Kowalski



Please note the inherent difficulties a detainee of the Jerome Combs Detention Center has in preparing any legal correspondence. I am pro se. The Center has meagre resources. What little books or material that exists has a criminal law basis. However, my confinement pertains to a civil matter. There are no forms or anything provided at this facility. Although I have been a licensed Attorney since 1990 these short comings amount to violations under the 6th Amendment, ineffective Assistance of counsel.



$1.60 Q
US POSTAGE
FIRST-CLASS

S74742.078

04/30/2019-46

2019 APR 30 AM 8:28

Robert M. Kowalski, Esq.
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois
60901

Judge Virginia Kendall
United States District Court
For Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois
60604

Detainee Legal Correspondence