UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

United States of America      )
                              )
            v.                )    No 19 CR 226-1
                              )    Judge Virginia M. Kendall
Robert M. Kowalski,           )
            Defendant         )

## MOTION TO DISMISS INDICTMENT

Now comes Robert M. Kowalski (Robert), pro-se in support of his motion to dismiss indictment states as follows:

### *INTRODUCTION*

The fundamental justification for the sixth amendment right to counsel is the presumed inability of a defendant to make informed choices about the preparation and conduct of his defense. Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful. The purpose of the attorney-client privilege is inextricably linked to the very integrity and accuracy of the fact finding process itself. In order for the adversary system to function properly, any advice received as a result of a defendant's disclosure to counsel must be insulated from the government. Prejudice occurs where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case. Any other rule would disturb the balance implicit in the adversary system and thus would jeopardize the very process by which guilt and innocence are determined in our society. In the instant case confidential defense strategy was actually disclosed to the governmental authorities who had actively

1

sought and encouraged seizure of such information. As a result the indictment should be dismissed.

## FACTUAL BACKGROUND

On July 21, 2020 coming before the Court on the Receiver's "Emergency *ex parte* motion", Cook County Circuit Court Domestic Relations Judge Mark Lopez appointed a receiver to the "Estate of Robert M. Kowalski" (See order Exhibit A). On October 27, 2020 a divorce court order was entered by Judge Lopez which recited: "coming to be heard on Receiver's Emergency *Ex Parte* Motion for entry of order" (See Exhibit B). This was an extraordinary remedy and drastic remedy. This order authorized Receiver to take possession of DaVinci's Gaming Bar. The emergency *ex-parte* motion that purported to have come before the court on October 27, 2020 was in fact not even filed with the Clerk of the Court until the following day (see exhibit C) The receiver exceeded what was permitted under the order, when he forcefully and wantonly burst through the door of the attorneys' office within DaVincis' searching for income and assets. Notably this *ex-parte* motion was not accompanied by oath or affirmation.

A veritable informational seizure feeding frenzy ensued. Confidential privileged attorney files containing information of a testimonial nature were accessed, examined, and subsequently removed. Including critical material pertinent to and needed in order to defend the captioned case amongst other client files. The information ransacked included the attorney's case strategy, mental impressions, draft pleadings, exhibits, confidential documents, and notebooks. Discovery information was removed. Likewise; computers containing client material covered by the attorney client privilege and attorney work product were imaged and compromised. Files containing ***exculpatory***

2

information in the attorney's records have disappeared without a trace. No inventory was tendered. Other files belonging to third party criminal defendant clients have also been removed.

The testimonial qualities contained within these client records had been removed, pursuant to haphazard law enforcement aspirations of a double dipping combination scorched earth ***divorce court policeman*** and federal confidential informant. The receiver, Mr. Neal Levin, Esq., better known by his street name as Mr. Wolf, boasted as much within the sealed motion of October 28, 2020 at paragraph 5 (see exhibit C). In fact this receiver reveled in and gloated about his bar discovery and its falsely alleged connection to Robert to "feds" before actually receiving any direction from his superior the divorce court. Thereupon these defense files have been seized, upon belief and information, by Federal Authorities pursuant to subpoena (see exhibit D). Assistant United States Attorney Mr. Netols has acknowledged receipt of same. In an agreed order, the receiver belatedly acknowledged that his haphazard excitable treasure hunt investigation was flawed and that Robert did not in fact have any interest in Davinci's. The agreed order vacated all findings and returned management to the true owner (see exhibit E).

## *RECEIVER DUTIES*

A receiver is an officer of the court, and has been figuratively styled the hands of the court. *Stanton v A.H. Andrews & Co., 18 Ill App. 552, 18 Bradw.552 (Ill App.1886)* His possession of the property sought to be recovered was the possession of the court. The law is well settled, where a receiver has been appointed by a court of competent jurisdiction, and has taken possession of the property in his capacity as receiver, he has the right to hold such property, and dispose of it under the direction of the court; and

any unauthorized interference therewith, by taking possession of the property, or instituting legal proceedings to obtain possession, without the sanction of the court appointing such receiver is a direct contempt of court, and punishable as such. *St. Louis, A & S.R. Co v Hamilton 158 Ill.366, 41 N.E.777 (1895)* quoting *Richards v People, 81 Ill. 554.*

Neal Levin, the receiver, neglected to discharge his receiver duty in several respects. He did not locate any of Robert's income or assets. His thirsty admittedly careless, flawed investigation located a business clearly belonging solely to Robert's mother. Seizure of property of persons not subject to the jurisdiction of the court makes a mockery of due process and causes the entire court system to be called into disrepute. This receiver order was forthcoming based upon a back hallway conversation, in a backward odd order first then file a motion later circumstance. A receiver on the other hand, is "appointed to secure and preserve property for the benefit of all". *U.S.F. & G. v Old Orchard Plaza, Ltd 672 N.E. 2d 876 (1996).*He was not appointed as an avenger of a frustrated embittered former spouse to destroy Robert's family bonds.

The divorce court receiver was not appointed to indulge in some sort of a F.B.I junior G-man fantasy dream by exalting in his bar "discovery" with law enforcement agencies. He was acting exactly as would a confidential informant of the "feds". DaVinci's Bar was a legally operating business. The only connection to Robert this establishment possessed was that the subject bar is solely owned by Robert's mother. Mr. Levin was not commissioned as a divorce court police officer. He was not authorized to take possession of the contents of an attorney's office within DaVinci's. He was not authorized to disrupt Robert's criminal defense through examination and confiscation of confidential information protected under the attorney client privilege. He was not

allowed to remove attorney work product information. His duty is to preserve the property and disburse it upon orders of the court. *People v Goldman 318 Ill 77, 148 N.E. 873 (1925)*. When he allowed others to take possession of any material to law enforcement, other than as ordered by Judge Lopez, he was in contempt of court.

The receiver continued communicating with the federal government after he had taken possession. Consequently, the receiver was able to coordinate with and tip off these "feds" to his treasure trove of confidential material; and thereupon awarded a subpoena by those he was working in concert with, the "feds". (See exhibit F). Except that in addition to the general principal that a receiver is an officer of the court, that property in his possession is in *custodia legis*, that he stands indifferent between the parties having claims against the funds, but his duty is to preserve the property and disburse it upon orders of the court. *People v Goldman, 318 Ill 77, 148 N.E.873 (1925)*. The receiver did not nor could not have a hat in this ring. He could not discharge his duty by unilaterally making decisions for the court but that was exactly what transpired. Entire client files, computer files, emails, passwords, and documents were misappropriated from an attorney's office and tendered to the waiting desirous arms of the federal government. These entirely consisted and were in the nature of confidential communications made to an attorney in her professional capacity.

It is patently clear that the divorce receiver's emergency Ex Parte motion of October 28, 2020 and the receiver order strangely issued one day earlier on October 27, 2020 had nothing to do with Robert's assets. The agreed receiver order of December 9, 2020 recognized the actual owner of DaVinci's was

Rosemary Kowalski not Robert Kowalski.(See Exhibit E) There was not one shred of evidence adduced that Robert had any interest therein whatsoever. The emergency Receiver motion recited at paragraph six that the receiver recognized who were the members of the ownership. Notably these did not include Robert. The bar was not likely to relocate overnight. The receiver knew that Robert had been incarcerated, per Receiver motion at paragraph 14. (See Exhibit B). The receiver had surveilled the bar posing as a customer and had knowledge of the layout of the bar and office as reflected by photos attached as to his emergency motion. (See Exhibit B).

The receiver order was concocted as a sketchy subterfuge to obtain material for use in a pending federal criminal case. The receiver worked in sync with and maintained close focused contact with federal authorities, see paragraph 8 of his emergency motion. Wherein he crowed:

> "Neither the chapter 7 trustee in Respondent's bankruptcy case,
> nor the federal government knew about the bar. It was
> Receiver's investigation that uncovered the bar and the Receiver
> has informed the bankruptcy trustee and the federal
> government about its existence and connection to respondent."

The receiver did not explain how contact with the "feds" was going to aid preservation or secure Robert's property for divorce court purposes. His only purpose as a receiver in a divorce proceeding is securing and preserving such property, for the benefit of all divorce parties concerned. The Federal government is hardly a participant in a State Court divorce case. Nevertheless, this receiver felt compelled, no inspired, to report to the federal authorities even before he related his discovery to his ostensible superior, the court that

appointed him. Interestingly, the impartial receiver's colorful motion suggests Robert's misconduct, unlawful conduct, mockery, lying, fraud, violence, and contempt in order to thinly veil support for his motion. Such partisanship is not appropriate for an agent the hand of the judicial branch in a civil proceeding. It is contrary to the Illinois Code of Judicial Conduct Canon 3(b) (2) which states:

> A judge should require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge.

The purpose of the receiver is not to exact punishment, revenge or retribution. Understandably, using the auspices of cooperation with a criminal investigation of the federal government with its awesome powers would be immensely appealing to an embittered former spouse unable to move on. This is contrary to the express purposes of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/101 et seq. A receiver's law enforcement fantasy is in direct conflict of interest with his duty. The receiver could only disburse property upon direction of the court that appointed him. Yet he relished, maintained, and prolonged his contact with these "Feds". So they could coordinate subpoena of divorce court property and allow his delivery to: "Feds" of material still in the possession of the divorce court. The strained odd disregard of his duty, providing secured property to others without sanction of the court appointing him, constituted a direct and immediate contempt of court. An email received from receiver, Mr. Neal Levin, on January 4, 2021 is particularly insightful. (See Exhibit G). Therein he states:

> "in the event that the **feds** do not want the box we will return it accordingly"

7

This refers to the receiver's obligation to return everything as it was at the bar prior to takeover contained in the divorce court agreed order; paragraph 4 dated December 9, 2020 vacating the Davinci's possession order. The receiver had his orders from the divorce judge but refused to comply. The receiver being the hand of the court should be moving in concert to the beat of the divorce court rhythm. However, this not so singly devoted receiver moved to the sound of his own drum upon refusing to obey Circuit Court Judge Lopez's order. Instead he acted as a divorce police force, tag teaming, informing for the benefit of da "Feds" and in satisfaction of an ex-wife's vindictiveness.

### ***RECEIVER IS A STATE OFFICIAL***

As the Seventh Circuit has explained: Not every action by a state official or employee is to be deemed as occurring 'under color' of state law," *Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir.1989)* ; rather, action is taken under color of state law "when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *Honaker v. Smith, 256 F.3d 477, 484–85 (7th Cir.2001)*. The mere assertion that one is a state officer does not necessarily mean that one acts under color of state law. *Askew v. Bloemker, 548 F.2d 673, 677 (7th Cir.1976)*. A state officer's conduct does not constitute acting under color of state law unless it is "related in some way to the performance of the duties of the state office." *Honaker, 256 F.3d at 485.Moss v. Singleton, 110 F.Supp.3d 876 (N.D. Ill. 2015)*

The receiver ***working*** for, being appointed to serve as hand of the Circuit Court of Cook County Domestic relations Judge Lopez, acted under authority and color of law.

8

(See Exhibit A) Constitutional guarantees apply to his conduct. In particular, the Fourth Amendment to the United States Constitution is directly applicable. Upon entering an attorney's office the paid informant receiver was required to possess a search warrant, sworn to under oath and affirmation stating with particularity the persons and places to be searched and things to be searched. This general warrant like receiver order search promoted excess. It was a mere fishing trip to secure confidential information and destroy Robert's defense. The hasty emergency exparte receiver order was not based upon a sworn filed motion. Further, no taint team, "clean team", or special master was provided to safeguard that the privileged documents would remain inviolate.

### *SEARCH WARRANT NEGLECTED*

4th Amendment: the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The receiver, Mr. Neal Levin, is empowered under color of law as the hands of a judicial officer of the State of Illinois. Accordingly, the 4th Amendment required the receiver, a governmental agent, to procure a warrant prior to searching the legal offices of an attorney located within DaVinci's. Probable cause was entirely lacking for the seizure of the attorney's legal work, criminal defense materials. Had the receiver motion been supported by oath and affirmation, as required of a warrant, it would not have been so loose and wild with those erroneous tabloid facts inundating the divorce court. DaVinci's was not under the jurisdiction of the divorce court. The business is owned by Rosemary not Robert. The rights of third parties, including the licensed Illinois attorney that maintained her office on the premises, Jan Kowalski, were compromised and

trampled. Information that was covered under the attorney client privilege and attorney work product privilege was searched, reviewed, and confiscated. The files pertaining to many clients in addition to Robert's case were plundered. In addition items of an exculpatory nature were seized. The receiver confirms that he examined the contents of each box mentioning in his email of January 4, 2021 that (see Exhibit G).

> "There is one remaining box of documents in our possession and it appears to only have to only have documents related to the bar's operation."

How would the receiver possibly know what the content of each box was if he had not explored the contents of each in great detail, individually? The misappropriation of these files is a significant blow to Robert's defense. A fair trial is impossible without this material.

### *TESTIMONY COMPELLED*

The 5th Amendment is simply too important to a democratic way of life to be swept away so lightly by this divorce receiver with policeman pretensions. The separate quiet office in the rear of DaVinci's serves as a law office for attorney Jan and her clients including Robert. Private personal material consisting of private books, papers, notes, notebooks, case files, drafted pleadings, strategies and mental impressions involving pending criminal matters was looted from an office of a licensed Illinois Attorney, Janet R. Kowalski. Jan had been actively involved in the defense of several criminal matters. One related to her brother Robert. The information seized contains a compelled testimonial quality. Her entire computer was taken and hard drive imaged. It contained the mental impressions of the attorney, relative to the captioned case, who was practicing in a professional capacity. Jan has every right to provide legal services. In order to obtain proper representation of his legal matter required Robert to provide full

and frank disclosure to his attorney. Robert is constitutionally entitled to the attorney of his choice. This work was undertaken in preparation for litigation. The Fifth Amendment guarantees that a criminal defendant will not be compelled to disclose or testify in any criminal case to be a witness against himself. The communications shared with the attorney required Robert to divulge the contents of his mind in order to benefit from the attorney's legal skill.

It makes no difference where the attorney's office was located in the rear of DaVinci's, a Lincoln town car, a bus, a room in a jail, or a room in the courthouse. The defendant and his counsel must have access to classified information in a "prosecution free zone". Defense counsel and their client reasonably expect to be free to work in the .....; to compose work papers, trial memoranda, and trial strategy, free from the roving eye of the prosecutor or the Court. *U.S. v Regan, 281 F Supp 2d 795(Ed Va 2002).*

The basic concerns which underlie the privilege against self-incrimination are more subtle and far reaching than mere aversion to the methods of the inquisition and Star Chamber. The fifth amendment others objectives of guaranteeing a fair contest between the accused and the government, of forcing the prosecutor to produce independent evidence, and of protecting each individual's right to privacy, evidence incriminating to an accused should be no less protected in the hands of his legal counsel than in his own hands. A man is compelled within the broad meaning of the Fifth Amendment anytime he is made the unwilling source of evidence to be used against him in a criminal prosecution. The attorney client relationship has a unique nature. It is a special kind of agency in which the parties share a mutual identity and enjoy a degree of privacy foreign to other agency arrangements. The attorney-client relationship is a personal one guaranteed by the sixth amendment right to counsel. Its purpose is to

11

ensure the unrestricted preparation of one's defense. Assertion of such rights and privileges does not depend on whether evidence is being held by the client or by his attorney. For such purposes, the two parties are identical.

### *EFFECTIVE ASSISTANCE OF COUNSEL*

The Sixth Amendment to the United States Constitution creates a right to counsel in criminal proceedings. "An independent judiciary and a sacrosanct confidential relationship between lawyer and client are the bastions of an ordered liberty." *The Attorney-Client Privilege and the Work-Product Doctrine 2 (3rd ed. 1997)* the attorney-client privilege, hand in glove with an accused's Sixth Amendment right to counsel, underlies the constitutional guarantees of the right to effective assistance of counsel and a fair trial. *Coplon v United States, 191 F.2d 749, 757 (D.C.Cir 1951)*

To provide effective assistance, a lawyer must be able to communicate freely with the client without fear that his advice and legal strategy will be seized and used against the client in a criminal proceeding. *United States v. Levy, 577 F2d 200, 209 (3rd Cir. 1978); United States v Rosner, 485 F.2d 1213, 1224 (2nd Cir.1973).* Material prepared in an attorney's office for purposes of a criminal trial preparation has been confiscated. The United States Supreme Court has stated that "conferences between counsel and accused . . . sometimes partake of the inviolable character of the confessional. *Powell v Alabama, 287 U.S. 45, 61(1932).* The attorney-client privilege promotes "the free and open exchange between the attorney and client, and substantial questions of fundamental fairness are raised where, in connection with a criminal prosecution, the government invades that privilege. *United States v Neill, 952 F. Supp. 834, 839(D.C.Cir 1997)*

The Tenth Circuit Court of Appeals has held that "a prosecutor's intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, . . . absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment."*Schillinger v Hayworth, 70 F.3d 1132, 1142 (10th Cir. 1996)*. The Tenth Circuit then elaborated that, "in other words, . . . when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." *Id.*

Consequently, when a party accesses attorney-client protected documents, a "strong presumption" exists that the review of the protected information "causes incurable prejudice". *United States v Orman, 417 F. Supp. 1126, 1133 (D. Colo. 1976)*. Such a presumption is justified because "no other standard can adequately deter this sort of misconduct," and "'prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.'"*Schillinger, 70 F. 3d at 1142 (10th Cir. 1996) (quoting Strickland v Washington, 466 U.S. 668,692(1984)*.

When the government reviews emails that it knows, or has reason to believe, are protected by attorney-client privilege, it purposefully intrudes into the attorney-client relationship.*United.States. v Neill, 952 F. Supp. 840 (D.C. Cir 1997)*.

The prejudice against a defendant is heightened when the privileged communication contains details of the defendant's defense or trial strategy, like many emails sent to and from counsel. In fact, the defendant "need not prove that the

prosecution actually used the information obtained". *Briggs v Goodwin, 698 F.2d 486, 494 (D.C. Cir. 1983)*. This is because:

> The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for an appellant or court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is inherently detrimental . . . unfairly advantage[s] the prosecution, and threaten[s] to subvert the adversary system of criminal justice. Further, once the investigatory arm of the government has obtained information, that information may reasonably be assumed to have been passed on to other governmental organs responsible for prosecution. Such a presumption merely reflects the normal high level of formal and informal cooperation which exists between the two arms of the executive. *State v. Lenarz, 22 A.3d 536, 544(Conn.2011) (quoting Briggs, 698 F.2d at 494)*

Some courts have determined that "[m]ere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant." *See e.g. id.* Consequently, the government carries a "heavy burden" to show that its access to the attorney-client-privileged documents does not prejudice the defendant. *United States v. Danielson, 325 F.3d 1054, 1072 (9th Cir. 2003)*. Thus, the government cannot merely assert that it did not review documents, or that its access to the documents did not constitute prejudice: the mere assertion by the government of "the integrity and good faith of the prosecuting authorities' is not enough" to show a lack of prejudice. *Id.at 550*

In a case involving a prosecutor's receipt of electronic documents with communications between the defendant and his counsel, the Supreme Court of Connecticut ruled that the government violated the defendant's Sixth Amendment rights. *Id. (quoting Kastigar v. United States, 406 U.S. 441, 460 (1972)*. It concluded

that "the burden is not on the defendant to establish that he was prejudiced when the prosecutor ha[d] intruded on attorney-client communications that contain information concerning the defendant's trial strategy."*Lenarz, 22 A.3d at 543 (Conn.2011)*. The court then held that "the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.*" Id.548*.It further concluded that in light of the important constitutional rights at issue, the government "must rebut the presumption of prejudice by clear and convincing evidence". *Id.*

Because the Sixth Amendment provides a right to counsel, and because a defendant's right to counsel is violated if he cannot freely and openly communicate with his counsel in fear that the government may intercept those communications. Each criminal defendant enjoys the inviolable right to effective assistance of counsel. To ensure this effective assistance, parties must respect the attorney-client privilege and allow criminal defendants to freely and openly communicate with their counsel.

The government may not use an undercover agent to circumvent the Sixth Amendment right to counsel once a suspect has been charged with the crime. After charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel. *Maine v Moulton, 474 U.S.159, 106 S.Ct, at 477, 88 LEd.2d.481 (1985)*.

The multi-tasking receiver acting with a conflict of interest converted himself effectively into a government paid informant. Neglecting his own court appointed duties, he was all too keen and willing to rove about at the direction of bankruptcy trustees and "Feds" homing in on privileged confidential information to Robert's detriment. The Supreme Court has confirmed that:" the government may not use an undercover agent to

circumvent the Sixth amendment right to counsel. *Illinois v. Perkins, 496 U.S. 292, 299, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990)*. Whatever else it might mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him. *Kirby v Illinois, 406 U.S. 682, 92 S.Ct.1877, 32 L.Ed.2d. 411 (1972)*.

### *IRREPARABLE*

The attorney-client privilege is clearly applicable in the search warrant context. An invasion of the attorney-client privilege through a search and seizure generates an irreparable injury to the possessor of the privilege. The basis of the attorney-client privilege is to protect confidential communications between client and attorney. Once lost, confidentiality cannot be restored. *Matter of 636 South 66th Terrace, 835 F. Supp. 1304 (1993)*. The most problematic is defendant will suffer irreparable harm in connection with disclosure of materials subject to the attorney client privilege. The general injury or harm caused by the improper disclosure of material subject to the attorney-client privilege is ***irreparable***. *See United States v. Philip Morris Inc., 314 F.3d 612, 622 (D.C.Cir.2003); Matter of 636 South 66th Terrace, Kansas City, Kansas, 835 F.Supp. 1304 (D.Kan.1993); Owens v. Office of the Dist. Attorney for the Eighteenth Judicial Dist., 896 F.Supp.2d 1003 (D. Colo. 2012)*. As noted by the Ninth Circuit, "once privileged materials are ordered disclosed, the practical effect of the harm is often 'irreparable by any subsequent appeal.'*In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1088 (9th Cir.2007)...*" *Owens v. Office of the Dist. Attorney for the Eighteenth Judicial Dist., 896 F.Supp.2d 1003 (D. Colo. 2012)*

Free two-way communication between client and attorney is essential if the professional assistance guaranteed by the sixth amendment is to be meaningful. The purpose of the attorney-client privilege is inextricably linked to the very integrity and accuracy of the fact finding process itself. In order for the adversary system to function properly, any advice received as a result of a defendant's disclosure to counsel must be insulated from the government. The fruit-of-the-poisonous-tree evidentiary test in the Fourth Amendment area does not accommodate broader Sixth Amendment policies. The inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case. Any other rule would disturb the balance implicit in the adversary system and thus would jeopardize the very process by which guilt and innocence are determined in our society. In the instant case confidential information was disclosed to the government authorities. *U.S. v. Levy, 577 F.2d 200 (3rd Cir. 1978).*

## ***CONCLUSION***

The government must rely on its own wit in preparing their respective case. Attorney work product material having been prepared in the course of preparation for criminal defense litigation has been accorded an almost absolute protection from discovery. Allowing "Feds" to commandeer divorce court state actors to seize attorney material without constitutional protections to gain a tactical advantage is outrageously repugnant to our base values, decency, and fundamental fairness. Robert is entitled to a fair trial?

Wherefore Robert respectfully requests that this honorable court enter:

a.) An order dismissing this indictment due to the irreparable harm to defendant's constitutional protections in the 4th, 5th, 6th, and 14th Amendments.

b.) Or such other and further relief as the court deems just and equitable.

Respectfully Submitted,

Robert M. Kowalski
1009 61st Street
LaGrange Highlands, Illinois 60525
(708)307-4497

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE MARRIAGE OF:                    )
MARTHA PADILLA,                       )
       Petitioner            )
                         )
  and                            )
                         )   No.  14 D 6997
ROBERT KOWALSKI,                      )
       Respondent           )   Cal 89
                         )

## AMENDED ORDER

This matter coming before the Court on the Receiver's Emergency *Ex Parte* Motion for Entry of Amended Order Appointing the Receiver and Turnover Order, and the Court being advised,

IT IS HEREBY ORDERED:

1. Neal H. Levin (Receiver) of Freeborn & Peters LLP is appointed the receiver of any and all of Robert Kowalski's income and assets;

2. The Receiver shall have the power and authority to preserve and protect all assets of Robert Kowalski, including the power and authority to:

    a. Take exclusive custody and control of all real and/or personal property in Robert Kowalski's name, all real and/or personal property in Robert Kowalski's possession or control, income and/or payments streams owing to Robert Kowalski from any source, and any real and/or personal property over which Robert Kowalski has authority to control;

    b. Exclude Robert Kowalski and his respective agents, employees, representatives, attorneys, or any individuals who otherwise associate with

Exhibit A

to http://www.cookcountycourt.org/LinkClick.aspx to
get more information and Zoom Meeting IDs.
note Court Date: No hearing scheduled

Robert Kowalski from interfering with the Receiver's exercise of his
duties as set forth in this Order;

c.  Account for Robert Kowalski's historic and present income and assets;

d.  Take whatever steps are reasonably necessary to secure, maintain, protect
manage, preserve, pay expense, and collect income generated by and/or
from the assets;

e.  Draw, accept, make, execute, endorse, discount, or otherwise transact
checks, accounts, promissory notes, letters of credit, credit cards, wire
transfers, electronic fund transfers, bills of exchange, and other securities
for the payment of debts or obligations related to the assets;

f.  Direct payments made to Robert Kowalski into any Receiver account that
may be opened on behalf of the Receiver estate;

g.  Obtain full access to the assets, bank accounts, deposits, files, papers,
records, documents, monies, choses in action, books of account, and all
other property, real, person, or mixed, and property of any kind and
character which relates to the assets;

h.  Issue demands to any bank or other financial institution as if Receiver
were an authorized signer or party to any such accounts in Robert
Kowalski's name or for which Robert Kowalski is an authorized signer;

i.  Employ or engage agents, vendors, employees, and/or accountants to
provide products and/or services in connection with the management and
preservation of Robert Kowalski's assets or assets which Robert Kowalski
has authority to control;

et more information and Zoom Meeting IDs.
note Court Date: No hearing scheduled

    j. Hire Freeborn & Peters LLP, a disinterested party, at its standard hourly rates to act on behalf of the Receiver; and,

    k. Access and image all computers and other electronic devises belonging to Robert Kowalski or in Robert Kowalski's possession and control.

3. The Receiver shall also have the right to access, make demands for, or issue subpoenas seeking any information relative to the income and assets;

4. The Receiver shall further have the authority and standing to bring actions on behalf of the Receiver estate for avoidance and recovery of fraudulent transfers under the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160) and any other similar, applicable laws;

5. The Cook County Sheriff is ordered to assist the Receiver in gaining access to the assets, including, without limitation:

    a. Assisting the Receiver in obtaining access to Robert Kowalski's electronic devices such as computers, smartphones, tablets, external hard drives, and digital storage devices (collectively, the "Electronic Devices"). The Electronic Devices shall include, but not be limited to, the Dell desktop computer shown in the photograph set forth on **Exhibit A** hereto, and any and all phones in Robert Kowalski's possession, including, but not limited to, the phones shown in the photographs set forth on **Exhibit A** hereto (i.e., the phone with the phone number (708) 420-0666, which Robert Kowalski used to text a photo, and his iPhone, which he was photographed holding);

b. Accompanying the Receiver (or his agent) to the residence of Robert Kowalski and his girlfriend Natalie J. Lira (date of birth: September 3, 1987), located at 5233 W. 87th Street, Oak Lawn, Illinois 60453 (the "Residence"), on _____ __, 2020, between the hours of 8:00 a.m. and 5:00 p.m. and assisting with entry into the Residence, forcefully if Robert Kowalski and Natalie Lira do not consent to their entry and such forceful entry is deemed necessary to obtain entry and access to the Electronic Devices; provided, however, that the Cook County Sheriff will engage the services of a locksmith if entry is denied; and further, provided, that all fees or damages with respect to such forcible entry shall be paid for out of Robert Kowalski's Estate;

c. Seizing any Electronic Devices found at the Residence or on Robert Kowalski's or Natalie Lira's person. The Cook County Sheriff is permitted to open doors and other closed areas of the Residence to locate the Electronic Devices and is also permitted to pat down Robert Kowalski and Natalie Lira to determine if they have any Electronic Devices on their person. The Cook County Sheriff is permitted to seize any found Electronic Devices regardless of whether Robert Kowalski or Natalie Lira claim that any such Electronic Devices are the property of Natalie Lira and not Robert Kowalski. Based on past instances of Natalie Lira claiming Robert Kowalski's assets as her own, there is probable cause to believe such assets are actually owned by Robert Kowalski or were fraudulently transferred to Natalie Lira by Robert Kowalski in order to conceal them or

prevent having to turn them over to the Receiver. To the extent Natalie Lira claims that any Electronic Devices are owned by her and not Robert Kowalski, the Cook County Sheriff shall temporarily seize such Electronic Devices pending a Court order as to whether such Electronic Devices are owned by Natalie Lira and were not fraudulently transferred to her by Robert Kowalski; the cost of such temporary seizure and storage to be paid for out of Robert Kowalski's Estate;

d. Turning over to the Receiver (or his agent) any such Electronic Devices to enable the Receiver to image the Electronic Devices before returning them to Robert Kowalski; provided, however, that with respect to any Electronic Devices Natalie Lira claims belong to her, the Cook County Sheriff shall turnover such Electronic Devices to the Receiver (or his agent) for imaging only if and after the Court determines that such Electronic Devices actually belong or are controlled by Robert Kowalski and/or were fraudulently transferred by Robert Kowalski; and further, provided, that if such dispute is resolved in Natalie Lira's favor, those Electronic Devices shall be returned to Natalie Lira and not turned over to or imaged by the Receiver;

e. The Cook County Sheriff shall not be liable for any damage to any of the Electronic Devices; and

f. The Receiver shall post a surety bond in the amount of $200,000 to cover the potential expenses related to any forcible entry and seizure of the

let more information and Zoom Meeting ID:
note Court Date: No hearing scheduled
Case: 1:14-cv-02226 Document #: 227 Filed: 01/27/21 Page 24 of 44 PageID #:1010

Electronic Devices, such cost for the bond to be paid for out of Robert Kowalski's Estate.

6. The Receiver shall have complete access to the assets and personalty, keys, books, records, documents, and information relating to the assets, including, without limitation, all financial information, all bank accounts, all securities, papers, and accounts and records relating thereto, all electronically stored data and all such other items that may be necessary to perform the Receiver's duties under this Order. To access the bank and other accounts, the Receiver is given the express authorization to execute any resolutions or other documents required by any financial institution in substation of any current person or entity that may control said assets;

7. Robert Kowalski is hereby ordered to make immediately available to the Receiver all original information, records, and documents of whatever description in his possession or control that in any way relates to his income and assets and shall otherwise provide information to the Receiver as to the whereabouts as to any such information and personalty. Robert Kowalski's obligations under this paragraph shall include electronically stored information and online access information for financial accounts in Robert Kowalski's name or for which Robert Kowalski has authority to control, including, without limitation, online ID(s), usernames, log-in information, and passwords. Robert Kowalski is also required to provide any and all user names, passwords, unlock codes and other similar information with respect to all Electronic Devices seized from the

Residence, and a list of all e-mail accounts (including corresponding passwords) and passwords for any Cloud or online storage sites (i.e., Dropbox);

8. Except as otherwise authorized by the Receiver, Robert Kowalski and his respective agents, employees, representatives, and attorneys are hereby enjoined from accessing or collecting, or attempting to access or collect, the tangible and intangible personal property, assets, receivables, income, revenues, profits, and bank accounts relating to the assets, and are ordered to refrain from directly receiving, encumbering, selling, assigning, transferring, or otherwise disposing of any such assets or attempting to do any of the foregoing or directing, or requesting any other party to do so. Robert Kowalski and Natalie Lira are also expressly prohibited from deleting or otherwise destroying or concealing any data on the Electronic Devices or from removing any of the Electronic Devices from the Residence;

9. The Receiver shall comply with Part 8 of the Cook County Rules of the Court relative to the appointment of a receiver;

10. The Receiver is entitled to compensation for the services her provides at this standard hourly rate of $865/hour plus necessary costs;[1]

11. No bond shall be required by the Receiver (other than the surety bond required by the Cook County Sheriff as set forth in Paragraph 5(f) above);

12. Without limiting any other rights or immunities that the Receiver may have at law or in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of the Receiver in his capacity as such, so long as such acts and

---

[1] The Receiver's incorrect current hourly rate set forth in the original Order was a scrivener's error.

omissions are made in good faith, without gross negligence, and in a manner that the Receiver reasonably believes is in the best interests of the Receiver estate;

13. The Receiver is authorized to take such steps as deemed reasonably prudent to accomplish his duties as set forth in this Order. The Receiver is further authorized to take appropriate measures to safeguard and protect against disclosure of attorney-client communications;

14. The Receiver is authorized to pay all obligations owed by Robert Kowalski to Martha Padilla from funds collected by the Receiver;

15. A retainer from the Receiver in the amount of $100,000 shall be paid to Freeborn & Peters LLP from funds collected by the Receiver;

16. The Court shall retain jurisdiction for all purposes.

ENTERED: July 24, 2020
NUNC pro tunc to July 21, 2020

_____ 1797
Judge

71182
S. Isenberg/Freeborn & Peters, LLP
Attorney for Receiver
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
312-360-6000

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE MARRIAGE OF: )
MARTHA PADILLA, )
        Petitioner )
         )
   and )   No.  14 D 6997
         )
ROBERT KOWALSKI, )   Cal 89
        Respondent )

## ORDER AUTHORIZING RECEIVER TO
## TAKE POSSESSION OF DA VINCI'S GAMING BAR

This matter coming before the Court on the Receiver's Emergency *Ex Parte* Motion for Entry of Order Authorizing Receiver To Take Possession of Da Vinci's Gaming Bar (the "Emergency Motion"), and the Court being advised, IT IS HEREBY ORDERED:

1. The Emergency Motion is granted;

2. The Emergency Motion is deemed an emergency;

3. Providing notice of the Emergency Motion to Respondent and/or Jan Kowalski will in fact result in the destruction, transfer or otherwise concealment of the property in Respondent or Jan Kowalski's possession, which is the subject matter of the Receiver's duties given the prior misconduct and unlawful conduct of Respondent and Jan Kowalski in this case;

4. The Receiver is granted leave to file the Emergency Motion with the Clerk of the Circuit Court of Cook County under seal;

5. Neal H. Levin, in his capacity as Receiver over the estate of Robert Kowalski, is authorized to take possession of and take over the management of Da Vinci's Gaming Bar (the "Bar"), located at 10721/10723 S. Ridgeland Avenue, Chicago

Exhibit B

Ridge, Illinois 60415 (the "Bar Premises"), and owned by Nosy Rosie's LLC ("Bar LLC");

6. The Receiver shall not be liable for any damage to the Bar or any of the Bar's assets;

7. The Receiver shall have complete access to the Bar and all of its assets, including cash, gaming devices, TVs or other electronics, keys, artwork, books, records, documents, and information relating to the assets, including, without limitation, all financial information, all bank accounts, all securities, papers, and accounts and records relating thereto, all electronically stored data and all such other items that may be necessary to for the Receiver to take possession of the Bar and take over its management pursuant to this Order. To access the bank and other accounts, the Receiver is given the express authorization to execute any resolutions or other documents required by any financial institution or other company in substation of any current person or entity that may control said assets;

8. Robert Kowalski, Jan Kowalski and Rosemary Kowalski (collectively, the "Kowalskis") are hereby ordered to make immediately available to the Receiver all original information, records, and documents of whatever description in their possession or control that in any way relates to and the Bar and any of its related assets and shall otherwise provide information to the Receiver as to the whereabouts as to any such information and personalty. The Kowalskis' obligations under this paragraph shall include electronically stored information and online access information for accounts in any of the Kowalskis' names or for which any of the Kowalskis have authority to control (including Nosy Rosie's

LLC), including, without limitation, online ID(s), usernames, log-in information, and passwords;

9. The Receiver is authorized to take such steps as deemed reasonably prudent to accomplish his duties as set forth in this Order;

10. The Receiver shall serve this Order on Rosemary Kowalski and on Nimesh (Nick) Patel, the landlord for the Bar Premises (the "Landlord");

11. The Court grants a 30-day stay of enforcement of any rights that the Landlord may have relative to any lease or other agreement for the Bar's occupancy of the Bar Premises so that the Receiver can conduct his investigation and administer the Bar and Bar Assets; and

12. The Court shall retain jurisdiction for all purposes.

ENTERED: October 27, 2020

S/Mark J. Lopez 1797
Judge

71182
S. Isenberg/Freeborn & Peters, LLP
Attorney for Receiver
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
312-360-6000

FILED
10/28/2020 1:11 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2014D006997

10939819

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE MARRIAGE OF:
MARTHA PADILLA,
  Petitioner,

and

ROBERT KOWALSKI,
  Respondent.

)
)
)
)
)
)  No. 14 D 6997
)
)
)
)

## RECEIVER'S EMERGENCY *EX PARTE* MOTION FOR ENTRY OF ORDER AUTHORIZING RECEIVER TO TAKE POSSESSION OF DA VINCI'S GAMING BAR

NOW COMES the Receiver, Neal H. Levin, not individually but solely as the duly appointed Receiver (the "*Receiver*") of the Estate of Respondent Robert Kowalski ("*Respondent*"), and hereby seeks entry of an order (the "*Order*"), on an *ex parte* and emergency basis, authorizing the Receiver to take possession of Da Vinci's Gaming Bar (the "*Bar*"). In support of his motion, the Receiver states as follows:

1. The Court has jurisdiction over the subject matter herein and the parties hereto.

2. Relief is requested on an emergency and *ex parte* basis because there is a substantial concern that Respondent or his sister, Jan Kowalski, will destroy or conceal the subject assets of the Bar.

3. To provide advance notice of this motion to Respondent will most certainly result in the immediate destruction and/or concealment of the Bar's assets by Respondent or Jan Kowalski, including cash and gaming machines, which could be valuable assets of Respondent's estate. The facts of this case, including Respondent's repeated acts of lying, fraud, violence and contempt of Court (leading to more than one instance of time in jail) most certainly justify entry of Order on an *ex parte* basis.

1

Exhibit C

to get more information and 2014D006997
Remote Court Date: No hearing scheduled

FILED DATE: 10/28/2020 1:11 PM   2014D006997

4.  Based on Respondent's failure to comply with this Court's Judgment as to financial and other obligations related to support and the transfer of property, and Respondent's history of fraudulently concealing assets with the assistance of his sister, Jan Kowalski, and Respondent's mockery of these proceedings by his continued gamesmanship and nefarious conduct, on July 10, 2020, this Court entered an Order appointing the Receiver (the "*Original Receiver Order*"). Due to certain changes requested by the Cook County Sheriff's Office (the "*Sheriff's Office*"), the Original Receiver Order was amended on July 21, 2020 (the "*Second Receiver Order*"), which was also amended by an order entered on July 24, 2020 *nunc pro tunc* to July 21, 2020 (the "*Third Receiver Order*" and, together with the Original Receiver Order and the Second Receiver Order, the "*Receiver Orders*").

5.  Through the Receiver's ongoing investigation so far, he has discovered a bar in which certain of Respondent's family members are affiliated. Neither the chapter 7 trustee in Respondent's bankruptcy case, nor the federal government knew about the Bar. It was the Receiver's investigation that uncovered the Bar and the Receiver has informed the bankruptcy trustee and the federal government about its existence and connection to Respondent. As the Court is aware, Respondent has a history of using family members as shills to hide and conceal his assets, including in his related bankruptcy proceeding, which led to he and his sister being indicted for bankruptcy fraud. Respondent is currently imprisoned once again with respect to the indictment based on physical altercations involving Respondent, his girlfriend Natalie Lira and his sister Jan Kowalski, one of which, upon information and belief, took place at the Bar.

FILED DATE: 10/28/2020 1:11 PM   2014D006997

to get more information and to obtain meeting use
Remote Court Date: No hearing scheduled

6. The subject bar is Da Vinci's Gaming Bar, located at 10721/10723 S. Ridgeland Avenue, Chicago Ridge, Illinois 60415. The owner of the Bar is Nosy Rosie's LLC ("*Bar LLC*"). Bar LLC was established on December 4, 2019, after the filing of this case and Respondent's bankruptcy case. The only listed manager for Bar LLC is Rosemary Kowalski, who is Respondent's 79-year old mother. The registered agent of Bar LLC is Jan Kowalski, Respondent's sister.

7. Bar LLC obtained a liquor license on January 6, 2020. Bar LLC also has a gaming license. The Bar contains numerous valuable gaming machines. Photographs of the Bar and its related assets (the "*Bar Assets*") are set forth on **Exhibit A** hereto.

8. Based on the timing of the establishment of Bar LLC and opening of the Bar, and the fact that the sole manager is Respondent's elderly mother, the Receiver believes that the Bar and Bar Assets belong to Respondent and that he is using his mother as a front to conceal his ownership.

9. In fact, when the Receiver made inquiries from others affiliated with the Bar, he was told by numerous people that the Bar is not actually owned by Rosemary Kowalski. The adult daughter of Jan Kowalski acknowledged that the Bar and Bar LLC was Rosemary Kowalski's only "technically" and appears to believe that Respondent and Jan Kowalski are the actual owners.

10. In addition, the artist who supplied the artwork for the Bar (and indeed is the namesake of the Bar) also acknowledged that Rosemary Kowalski is not the owner and that one of the partners for the Bar is an ex-felon who is likely using the Bar (along with Respondent and Jan Kowalski) to launder money.

11. The Receiver has been in contact with the landlord for the premises of the Bar. The

3

FILED DATE: 10/28/2020 1:11 PM   2014D006997

landlord has indicated that they have never even met Rosemary Kowalski and deal only with Jan Kowalski. The Receiver has issued a subpoena to the landlord and will provide notice of the order for possession to the landlord once entered.

12. The Receiver seeks to take possession and control of the Bar.

13. The Receiver anticipates that Respondent may claim that the Bar and the Bar Assets which the Receiver seeks to seize are assets of his mother and not Respondent. However, based on past behavior and the statements made to the Receiver's agent regarding the true ownership of the Bar and Bar Assets, the Receiver believes Respondent either fraudulently transferred the Bar and Bar Assets to his mother or had Bar LLC set up in her name but only as a front for him to secretly conceal his assets from the Court. What's more, on information and belief, the Bar was elaborately built out in early 2020 with deluxe furnishing and appointments, funds for which do not appear readily available to Respondent's mother.

14. This matter is an emergency and should be entered on an *ex parte* basis because without immediate Court intervention, Respondent and Jan Kowalski will likely use the intervening time to continue to funnel money to Respondent that the Receiver might not be able to reach otherwise. In addition, the cash located at the Bar is easily moveable and the longer the Receiver waits to take possession, the more money Respondent and Jan Kowalski will be able to remove. This would indeed frustrate the efforts of the Receiver to effectuate the Receiver Orders. Moreover, due to Respondent's current incarceration, the Bar and Bar Assets are in immediate jeopardy of loss.

4

Go to http://www.cookcountycourt.org/ ~~for~~ ~~HOME~~ Case 1:20-cv-02226 Document #: 227 Filed: 01/27/21 Page 34 of 44 PageID #:1020
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 10/28/2020 1:11 PM   2014D006997

WHEREFORE, the Receiver respectfully requests that this Honorable Court enter the Order attached as **Exhibit B** permitting the Receiver to take possession and control of the Bar and Bar Assets on an emergency and *ex parte* basis, and for such further relief as this Court deems necessary and just.

Dated:   October 26, 2020

NEAL H. LEVIN, NOT INDIVIDUALLY
BUT SOLELY AS THE RECEIVER OF
THE ESTATE OF ROBERT KOWALSKI

By: /s/ Shira R. Isenberg

*Attorneys for Receiver*
Shira R. Isenberg
Bianca E. Ciarroni
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Facsimile: 312-360-6520
Attorney ID: 71182
sisenberg@freeborn.com
bciarroni@freeborn.com

Go to http://www.cookcountyclerkofcourt.org/LinkCheck.aspx?fileticket=G7A8KAcSl8E%3d&portalid=0 to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 10/28/2020 1:11 PM   2014D006997

**EXHIBIT A**





FILED DATE: 10/28/2020 1:11 PM   2014D006997



FILED DATE: 10/28/2020 1:11 PM 2014D006997

to get more information
Remote Court Date: No hearing scheduled



## RE: Robert Kowalski 19 CR 226-1

Netols, Brian (USAILN) <Brian.Netols@usdoj.gov>

Mon 1/4/2021 3:02 PM

**To:** Robert Kowalski <Robertk.24@outlook.com>
**Cc:** Imani Chiphe <imani_chiphe@fd.org>; Daniel, Jeremy (USAILN) <Jeremy.Daniel@usdoj.gov>

Mr. Kowalski,

To the extent that we have obtained records by grand jury subpoena in this case, we have, as we do in all matters, endeavored to obtain only records of relevance to our investigation. With respect to records recently received, I assume that you are referring to records obtained from the receiver in your divorce case. We do not believe that we received by grand jury subpoena from the receiver in your divorce case any "files of your divorce case" or "files of third persons that [you] represent in pending criminal cases." With respect to the latter, it would be helpful if you could identify these third party clients of yours by name or other reference, so that we can review our records to confirm.

With respect to your reference to "exculpatory information", the government is aware of its discovery obligations, including the obligation to produce Brady material.

Finally, I must caution you that, to the extent that you make statements concerning your case in your communications with us, we may seek to have these statements used against you in court. For this reason, I encourage you to communicate with us through your standby counsel.

Brian Netols

Exhibit D

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE MARRIAGE OF: )
MARTHA PADILLA )
    Petitioner )
and )   No. 14D6997
)
ROBERT KOWALSKI )
    Respondent )   Cal. 89

**ENTERED**

__December 9, 2020__

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

### AGREED ORDER

This matter coming before the Court on an Agreed Motion for the Court to Vacate its October 27, 2020 Order Authorizing Receiver to Take Possession of Da Vinci's Gaming Bar (the "Order"), the Court being fully apprised in the premises,

IT IS HEREBY ORDERED THAT

1) The Order was obtained pursuant to the *Ex Parte* motion (the "Motion") of Neal H. Levin, the court appointed receiver in this matter (the "Receiver");

2) For the reasons provided in the Motion, the Court allowed the Motion to proceed *ex parte,* without the Receiver providing notice of the motion to the parties or to the non-party target of the motion, Nosy Rosie's LLC, or Rosemary Kowalski, who is identified as Nosy Rosie's, LLC's manager and as its owner in documents filed with the State;

3) To eliminate the need for litigation by Nosy Rosie's LLC and Rosemary Kowalski as necessary parties regarding the Order, the parties, including the Receiver, have agreed to the court vacating the Order;

4) The Receiver represents that he has taken no assets pursuant to the Order, and will return everything as it was when the Order was entered, except for copies of documents and copies of electronic data that the Receiver obtained from documents and electronic data maintained at the leased premises of Nosy Rosie's LLC which copies the Receiver shall keep, located at 10721/10723 S. Ridgeland Avenue, Chicago Ridge, IL 60415 (the "Premises");

5) The Receiver shall not be liable for any damage to Nosy Rosie's LLC, Da Vinci's Gaming Bar located at the Premises (the "Bar"), or Rosemary Kowalski related to its actions in obtaining the Order or conducted under the auspice of the Order;

6) Robert Kowalski and the Receiver acknowledge that Nosy Rosie's LLC is the stated owner of the Bar and that Rosemary Kowalski is identified as the stated owner of Nosy Rosie's LLC in multiple filings with the State of Illinois;

Exhibit E

7) All findings made related to the Order are stricken and the October 27, 2020 Order is vacated.

/

December 9, 2020

*Judge Mark J. Lopez* 1797

Judge Mark J. Lopez

**ACKNOWLEDGED AND AGREED TO BY**

**COURT APPOINTED RECEIVER**

Neal Levin

/s/ Neal H. Levin, Esq.

**NON-PARTIES**

Nosy Rosie's LLC

Rosemary Kowalski

_____

By: Rosemary Kowalski, its manager

_____

2

**COURT APPOINTED RECEIVER**

Neal Levin

_____

**NON-PARTIES**

Nosy Rosie's LLC

By: Rosemary Kowalski, its manager

Rosemary Kowalski

2

Levin, Neal H. <nhlevin@freeborn.com>

Mon 12/28/2020 1:25 PM

To: You
Cc: Fishman, Scott

Bob,

I again have attempted to cooperate with you, got you your insurance card immediately, got you your bar back, got Natalie's kids replacement computers, etc.  All of this has been done despite your constant harassment, badgering and rants, which have no value here.  I do what's right because it's what's right, not because you yell and scream about it.

We've now offered you your wallet and you won't even tell us where to send it.

As for your files, they are now with the Federal Government, who issued me a subpoena for the documents and computer files.  You can discuss with them anything further with respect to these items.

Still willing to cooperate when you are ready.

Best,

Neal

**NEAL H. LEVIN**
Attorney at Law



.
(312) 360-6530 direct
nhlevin@freeborn.com

**Freeborn & Peters LLP**
311 South Wacker Drive, Suite 3000
Chicago, IL  60606

**www.freeborn.com**

Neal H. Levin Bio
Connect on LinkedIn
*How the Celebrity Surgeon Sculpted His Prey*
*Chicago Crain's* Feature
*Playbook of Fraud's Aftermath*

Exhibit F

## Re: client files including discovery

Levin, Neal H. <nhlevin@freeborn.com>

Mon 1/4/2021 2:36 PM

**To:** Robert Kowalski <Robertk.24@outlook.com>
**Cc:** Fishman, Scott <sfishman@freeborn.com>

Bob, you should have received or will shortly be receiving many of the photos taken during our initial inventory at the Bar.

The documents that were seized by the Feds appear to have been those with property addresses on the filed folders. There's a photograph of those boxes as well.

The remaining documents were left in the office, including all of the documents in the file cabinet, and the computer was returned as well.

There is one remaining box of documents in our possession and it appears to only have documents related to the bar's operation, so again, not client files. We believe that these files may be subject to the subpoena issued to me as well, though in the event that the Feds do not want this box, we will return it accordingly.

We are uncertain as to which files you say you are unable to find or access, though none of the folders or boxes taken appear to have been "client files" nor did we review anything that may have appeared to have been a "client file."

Best,

Neal

**NEAL H. LEVIN**
Attorney at Law



(312) 360-6530 direct
nhlevin@freeborn.com

**Freeborn & Peters LLP**
311 South Wacker Drive, Suite 3000
Chicago, IL 60606

www.freeborn.com

Neal H. Levin Bio

Connect on LinkedIn

$Exhibit\ G$

Levin, Neal H. <nhlevin@freeborn.com>

Sat 12/26/2020 4:56 PM

**To:** You

□   □   □   □

Hi, Bob.

I had a very nice chat with your sister a number of weeks ago and I do believe that she understands that I am not the enemy here. I don't work for your ex, only the court. I have cooperated with you in the past and will continue to do so where appropriate. I even got you the bar back.

As for your files, we have not performed any searches that would violate any attorney client privilege. We can discuss the disposition of the files next week when Im back in the office.

Hope your emergency medical needs are all met.

Best,

Neal

On December 26, 2020 3:18:12 PM Robert Kowalski <Robertk.24@outlook.com> wrote:

| External Email

Exhibit H