UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT M. KOWALSKI | No. 19 CR 226-1<br><br>Honorable Virginia M. Kendall |

**THE GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT ROBERT KOWALSKI'S PRETRIAL MOTIONS
(DKT. NOS. 219, 221, 227, 248, AND 249)**

Defendant Robert M. Kowalski has filed several more pretrial motions. This Court should deny each of the following motions for the reasons stated below.

**I.    JUDICIAL ESTOPPEL MOTIONS (DKT. NOS. 219 AND 248)**

This Court should deny the defendant's judicial estoppel motions because there are no prior criminal prosecutions involving the allegations at issue in this case, which means that the government could not have taken inconsistent positions concerning the allegations in this case. The defendant contends that judicial estoppel applies because of positions taken by the Federal Deposit Insurance Corporation-Receiver ("FDIC-R") in the defendant's bankruptcy and divorce proceedings. (Dkt. Nos. 219 and 248.)

Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then later taking a contradictory position to prevail in another phase of a case. *Zedner v. United States*, 547 U.S. 489, 504 (2006). Three rules govern issue preclusion in criminal cases: (1) courts cannot engage in "hyper-technicality" and must consider whether a rational jury could have based its verdict

on a different issue; (2) issue preclusion only applies to ultimate issues; and (3) the defendant bears the burden of providing that a jury necessarily determined the issue. *United States v. Evans*, 486 F.3d 315, 322-23 (7th Cir. 2007). Here, there was no prior determination of an ultimate issue by a judge or jury because there was no prior criminal case. This alone defeats the defendant's contention. Therefore, this Court should deny the defendant's motions.

## II. MOTION TO MODIFY THE PROTECTIVE ORDER (DKT. NO. 221)

This Court should deny the defendant's motion to modify the protective order because good cause warrants the restrictions. The defendant argues that paragraphs 1 and 2 of the protective are not narrowly drawn and inhibit his ability "to communicate and otherwise convey truthful information with the media that is undoubtedly buried within the discovery." (*See* Dkt. No. 221 at 2-3.)

This Court entered the Unopposed Superseding Protective Order Governing Discovery on September 23, 2020. (Dkt. No. 157.) Upon the government's motion, after the defendant elected to proceed *pro se* and before the government tendered to the defendant directly, this Court admonished the defendant as to the protective order. (Dkt. No. 203.) During the hearing on the government's motion to admonish the defendant concerning the protective order, the defendant agreed to the terms of the protective order. That protective order limits the use of materials provided by the government to the defendants and defendants' counsel for use in this case, and limits disclosure of materials provided by the government to individuals assisting with or witnesses for the defense. (Dkt. No. 157 ¶¶ 1 and 2.) Any defendant can seek this

Court's permission to use or disclose materials provided by the government beyond the limits imposed by the protective order. (*Id.*)

Rule 16(d) of the Federal Rules of Criminal Procedure states, in part, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Here, as this Court has found, good cause exists to limit the use and dissemination of materials produced by the government. This case involves the failure of Washington Federal Bank for Savings. The materials provided by the government include bank records, tax records, and other sensitive financial documents, including the financial records relating to other defendants as well as customers of Washington Federal who are not believed to have been involved in the fraud. Some of the records relate to depositors who had deposits that exceeded the FDIC insurance threshold, meaning those depositors lost funds and were not made whole after the failure of Washington Federal—these depositors are victims of the fraud at the bank.

The materials provided by the government also include law enforcement reports, which include interviews of participants in the scheme, victims, and other witnesses. The unrestricted use and dissemination of the materials provided by the government could adversely affect the privacy interests of third parties and law enforcement interests.

That is particularly true here, as the defendant has shown, both in court and through his pleadings, a willingness to use whatever means available to him to undermine the legal process. The defendant has violated his conditions of release by

contacting a former employee of Washington Federal (see Dkt. No. 163); he has been held in contempt by several courts, including the courts overseeing his bankruptcy and divorce cases; the defendant has accused agents, agencies, and trustees of misconduct. Now he seeks the unfettered ability to use the materials provided by the government to support what can only be described as an attempt to try this case in the media. This Court should not allow that.

Contrary to the defendant's assertion, the protective order does not operate as a gag order. The defendant can make statements to the media if he chooses to do so. The protective order simply restricts his ability to use the materials provided by the government—without leave of this Court—when speaking to the media. The defendant's behavior during the pendency of this case shows that such a check is necessary. Without it, there is nothing to ensure that victims will be reasonably protected from the defendant or that respect for victims' dignity and privacy will be maintained. *See* 18 U.S.C. §§ 3771(a)(1) and (8).

Because good cause exists to limit the use and dissemination of materials provided by the government, and because the protective order provides a means through which the defendant can seek leave from those limits, this Court should deny the defendant's motion to modify the protective order.

### III. MOTION TO DISMISS INDICTMENT FOR ALLEGED VIOLATION OF ATTORNEY-CLIENT PRIVILEGE (DKT. NO. 227)

This Court should deny the defendant's motion to dismiss the indictment because the government has not violated the defendant's attorney client privilege. The defendant argues that the government's receipt of records in response to a grand

4

jury subpoena from a receiver appointed by another court violated his constitutional rights and, therefore, warrants dismissal.

The defendant's contention stems from the government's receipt of records from a court-appointed receiver in defendant's divorce case (the receiver) who had taken possession of Da Vinci's Gaming Bar. The government learned that Da Vinci's contained records which appeared to be records of the defendant and, in particular, records which were conspicuously marked as real estate records relevant to the continuing grand jury investigation. The government served the receiver with a grand jury subpoena for the production of records related to the defendant and others. In taking possession of records produced by the receiver in response to the grand jury subpoena, agents went to Da Vinci's and looked at the exterior of the boxes—agents did not examine the contents of the boxes. Agents accepted as a response to the grand jury subpoena only boxes of records whose labels indicated a connection to properties involved in the Washington Federal investigation. The receiver produced to the government approximately 8 boxes labeled as described above, as well as a thumb drive which the receiver represented contained records responsive to the grand jury subpoena.

After agents obtained the boxes, but before reviewing their contents, an individual not involved in the investigation reviewed the contents of the boxes to identify potentially privileged documents. That individual removed any potentially privileged materials. The remaining documents were released to the investigative team. The government has yet to review the contents of the thumb drive, but will

5

employ a similar taint review prior to any review by the investigative team. To that end, as shown in an email exchange between the *pro se* defendant and a prosecutor, the government has asked the defendant for information that would aid in the government's taint review. The defendant has not provided that information.

The defendant also has not shown that there was any violation of his attorney-client privilege. His allegations lack any specifics, such as the name of any attorneys (other than his sister and co-defendant) or the names of any matters to which the representation pertained. In short, there is no substance to the defendant's allegation. When combined with the steps the government has taken to prevent the inadvertent disclosure of potentially privileged materials, the defendant's claims lack merit. *See, e.g., United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004) (" The violation of a defendant's attorney-client privilege, however, will only violate the defendant's due process rights if the violation was caused by serious governmental misconduct that is outrageous enough to shock the conscience of the Court.").

The defendant does not appear to claim an ownership or possessory interest in any of the materials taken from the bar. This means that the defendant has no cognizable Fourth Amendment interest in the materials. *See, e.g., Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) ("The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search.") And, to the extent that he does claim an ownership or possessory interest in the materials, the government obtained those materials from

6

the receiver, who was in lawful possession of the bar and the items contained therein. As such, there was no Fourth Amendment violation.

Nor was there a Fifth Amendment violation. "The Fifth Amendment prohibits only compelled testimony that is incriminating." *Hibbel v. Sixth Judicial Dist. Ct. of Nevada, Humboldt City*, 542 U.S. 177, 189 (2004). The defendant has not identified any "compelled testimony." *See United States v. Hubbell*, 530 U.S. 27, 35-6 (2000) ("More relevant to this case is the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not "compelled" within the meaning of the privilege.").

The defendant also claims that the government's receipt of materials from the receiver violates his right to effective assistance of counsel because it impedes communication between the defendant and his counsel. The defendant represents himself in this case, with the assistance of standby counsel. The defendant does not explain how the government's receipt of materials from the receiver interferes with the defendant's ability to communicate with his standby counsel or with any other lawyer. There is no merit to the defendant's claim.

For these reasons, this Court should deny the defendant's motion to dismiss the indictment based on the government's receipt of materials from a court-appointed receiver.

### IV. MOTION TO DISMISS INDICTMENT FOR ALLEGED PROSECUTORIAL MISCONDUCT (DKT. NO. 249)

This Court should deny the defendant's motion to dismiss the indictment for prosecutorial misconduct because no misconduct occurred. The defendant contends that the government's outrageous conduct resulted in a due process violation that warrants dismissal of the indictment. The misconduct that defendant alleges relates to a bond revocation hearing held in October of 2020; defendant does not allege in his motion any misconduct related to the indictments returned in his case.

The defendant cites several Ninth Circuit cases in support of his contention. (Dkt. No. 7-8.) But the Seventh Circuit does not recognize the defense of outrageous government conduct. *United States v. Kienast*, 907 F.3d 522, 530 (7th Cir. 2018) (Thus, the Supreme Court did not foreclose the "outrageous conduct" defense—but it did not mandate its application either. And [w]e repeatedly have reaffirmed our decision not to recognize the defense.") (internal quotations removed). Consequently, the defendant's contention fails as a matter of law.

It also fails factually. The defendant claims that the misconduct stems from agents' interviews of a witness for a bond revocation hearing, agents' transport of that witness to the courthouse, and then agents' escort of that witness within the courthouse. None of this conduct is improper. Agents often contact witnesses and help those who may be called to testify in court get to the courthouse. Witnesses who may be called to testify are often kept from court proceedings prior to testifying under the exclusion rule. In this case, because a motion for a protective order against the defendant had been filed by this witness, there were also additional security concerns.

8

Claims that agents prevented the witness from using the bathroom or otherwise restricted the witness' movement are false and unsupported by the record.

As this Court knows, prosecutors advised this Court of the witness' presence during hearings. Prosecutors also informed this Court that the government no longer intended to call the witness because the witness had recanted her prior statement. Notably, the defendant did not call the witness either. Tr. Oct. 16, 2020, 13:1-5. Because the defendant could have called the witness, the defendant suffered no prejudice.

Therefore, this Court should deny the defendant's motion to dismiss because he alleges no misconduct related to the indictment itself, because there was no prosecutorial misconduct, and because there was no prejudice to the defendant. *See United States v. Smith*, 792 F.3d 760, 765 n.26 (7th Cir. 2015) ("The Supreme Court, on multiple occasions, has held that it is inappropriate to dismiss an indictment based on prosecutorial misconduct in the absence of prejudice to the defendant.").

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Jeremy Daniel*
      JEREMY DANIEL
      BRIAN NETOLS
      MICHELLE PETERSEN
      Assistant United States Attorneys
      219 South Dearborn Street, 5th Floor
      Chicago, IL 60604
      (312) 469-6314