UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT M. KOWALSKI | No. 19 CR 226-1<br><br>Honorable Virginia M. Kendall |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ROBERT KOWALSKI'S PRETRIAL MOTIONS**

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully requests that this Court deny defendant's pretrial motions, specifically: motions entitled "Motion to Dismiss Failure to Provide Brady Material," Dkt. 299; "Motion to Quash Grand Jury Subpoena," Dkt. 300; "Motion to Compel Discovery," Dkt. 303; and "Motion to Dismiss Bank Embezzlement Counts One and Six," Dkt. 304.

**I.    THIS COURT SHOULD DENY DEFENDANT'S MOTION TO COMPEL DISCOVERY (DKT. 303)**

Defendant filed a fifteen-page motion detailing specific discovery requests, and further requesting that this Court order the government to produce such materials. Many of the items that defendant requests have already been produced to defendant in the ongoing discovery,[1] including documents that have been re-produced to

---

[1] As set forth in the Government's Response to Defendant's Motions Related to Discovery, Dkt. 229, discovery productions were tendered to Robert Kowalski's previous counsel, Imani Chiphe, on or about the following dates: May 3, 2019; February 11, 2020; April 14, 2020; September 25, 2020; October 1, 2020; October 15, 2020; and October 20, 2020. In January 2021, all discovery that had been produced to date in this case was re-produced to defendant Kowalski via FedEx to his residence. Additional discovery productions, consisting of

defendant in paper form to aid in his review.[2] Defendant's motion shows that either he is not diligently reviewing the discovery provided to him prior to filing a motion to compel, or that some of his requests are not made in good faith.

Many of defendant's requests relate to documents relating to the overt acts in the indictment that have already been tendered in discovery. As the government previously explained in a filing in January 2021, "to ease defendant Robert Kowalski's review of the discovery, on January 21, 2021 the government tendered discovery that contained an electronic folder with specific documents related to the overt acts, with bates-labels beginning in 'GJURY.'" Dkt. 229 at 8. The government has also re-produced those same documents in paper format. These documents were specifically highlighted for defendant as relevant to the overt acts. Defendant now moves to compel production of some of these same materials which he has possessed since January.

As one example, defendant moves to compel discovery of the "identities of the 'purported loan accounts'" that were involved in a transaction on or about February 27, 2015 where bank employee Alicia Mandujano reduced the principal balance of two loans associated with defendant by inflating the balance of thirteen other loans related to the defendant by a corresponding amount.[3] Dkt. 303 at 10, ¶ 49. The

---

documents and native files in electronic format, were sent to defendant on or about January 21, 2021, and March 25, 2021.

[2] In March 2021, defendant was sent three separate productions of paper copies of discovery, totaling over 3,750 pages. These documents are reproductions of materials previously sent electronically, and consist of copies of grand jury transcripts and the corresponding exhibits.

[3] This transaction is an overt act listed in the Third Superseding Indictment at paragraph 47(o). Dkt. 250 at 21.

bank's teller tickets from this transaction were labeled as grand jury exhibit "February 27, 2015 Teller Tickets" and have been provided in discovery as bates-label GJURY_007 000128 – 000144. This exhibit identifies the associated loans, the date of the transaction, and the amount of funds credited or debited to each loan. This exhibit was initially provided to defendant in January 2021 and was re-produced in paper format on or about March 25, 2021. In a motion filed the same date as this motion to compel, defendant quoted from a portion of a grand jury transcript related to this transaction, which demonstrates that he has the documents that he denies having in his motion. Dkt. 304 at 5. On one of the very same pages from which the defendant quoted,[4] the exhibit labeled "February 27, 2015 Teller Tickets" is identified by name – the same exhibit which contains the information the defendant now moves to compel. Defendant cannot credibly claim he was unable to locate this information in the discovery when he reviewed the very page in which this exhibit was discussed.

As another example, defendant moves to compel discovery of "[t]he email sent by Jane Iriondo fka Jane V Tran on June 18, 2013 to Cathy Torres and Individual B which related how she fraudulently altered and fixed appraisals with scissors and copier for Robert's Vincennes property."[5] Dkt. 303 at 10, ¶ 45. This email, and the

---

[4] On page 5 of his motion, defendant quotes from an August 13, 2020 grand jury transcript. Dkt. 304 at 5. While defendant cites his quotation as "page 29 lines 11-24" of that transcript, his quotation actually includes questions and answers from pages 29 through 31 of that transcript, with some of the questions and answers from those pages omitted from the quotation provided by defendant, and others questions and answers slightly edited or combined. The identification of the teller ticket exhibit takes place on page 31 of the transcript, approximately five lines after the last line of the transcript quoted by defendant.

[5] This transaction is an overt act listed in the Third Superseding Indictment at paragraph 47(i). Dkt. 250 at 20.

attachment to this email, has been provided in discovery, as bates-label GJURY_001 000219 to 000239. It was produced to defendant electronically in January 2021, and re-produced in paper format on March 25, 2021. Other emails requested by defendant in his motion have also been tendered in discovery in January and reproduced in paper format in March, including, for example: the email requested in ¶ 44 of the motion, which was produced with bates-label GJURY_007 000058 – 000059; the email requested in ¶ 46 of the motion, which was produced with bates-label GJURY_001-000240 – 000260; and the email requested in ¶ 50 of the motion, which was produced with bates-label GJURY_007 000062 – 000073.

Defendant's current motion to compel also includes requests for records that defendant has previously requested in other motions to compel – which the government has already produced and identified for defendant. As just one example, in a motion to compel filed on January 20, 2021, defendant requested:

> 37.) Identify and provide all information, documentation, relative to the alleged false loan lists provided to the Federal Home Loan Bank (FHLB) for purposes of pledging collateral for financing from the FHLB, which loan lists included false borrower identities and payment histories.

Dkt. 216 at 8. In response to this motion, the government explained that "[t]he government has tendered in discovery documents in its possession related to Washington Federal's line of credit at the FHLB, including the loans pledged as collateral, which bear bates-labels beginning in 'FHLBC.'" Dkt. 229 at 7.

In the latest motion to compel, defendant simply duplicates his prior request from the previous motion, without any explanation of what, if anything, is lacking from the relevant documents previously identified by the government:

4

> 38.) Identify and provide all information, documentation, relative to the alleged false loan lists provided to the Federal Home Loan Bank (FHLB) for purposes of pledging collateral for financing from the FHLB, which loan lists included false borrower identities and payment histories.

Dkt. 303 at 9. This is just one example of a discovery request from the latest motion to compel that duplicates, or closely tracks, a previously-filed discovery request. Duplicating requests from previous motions, without additional analysis, causes unnecessary extra work for the Court when reviewing and analyzing the defendant's discovery motions.

Discovery in this case is ongoing, in part because of the volume of discovery, and in part because the investigation is ongoing and the government is continuing to gather additional records and information. The government will continue to produce all discovery pursuant to the rules and procedures outlined in Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act.[6] There is no need for the defendant to use the Court's resources to attempt to compel discovery which has already been tendered, or to file motions to compel that contain specific requests that duplicate previous motions to compel without any additional analysis. The defendant's motion to the Court to compel the government to produce discovery (Dkt. 303) should be

---

[6] Defendant's motion to compel also requests that the government answer certain questions, such as "[w]hat is the identity of all entities associated with individual A?" As previously set forth by the government in response to a previous motion to compel, to the extent that defendant's requests exceed the government's discovery obligations, his motion should be denied. *See* Dkt. 229 at 3-4 ("The terms of both Rule 16 and the Jencks Act make clear that a defendant in a federal criminal case cannot engage in general discovery of the type which occurs in federal civil cases, as both are quite specific as to the items which are and are not to be disclosed to a defendant.").

denied.

## II. THIS COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO PROVIDE BRADY MATERIAL (DKT. 299)

Defendant argues that the indictment should be dismissed because discovery previously tendered to the defendant was seized by a receiver pursuant to a court order in an unrelated case, leaving defendant without materials needed for preparation in this case. Defendant further alleges that this is a *Brady* violation by the government warranting dismissal of the indictment.

As a threshold matter, the government acknowledges its obligation to produce to the defendant evidence that is favorable to the defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The government's discovery productions in this case are ongoing, and there is no trial date yet set in this matter.

Defendant's motion stems from the seizure of the assets of Da Vinci's bar in fall 2020 by a court-appointed receiver in defendant's ongoing divorce case. This seizure of assets was done pursuant to a court order by the judge presiding over defendant's divorce proceeding in Cook County. Dkt. 227 at 27-37. Members of defendant's family have an ownership interest in the bar, though defendant does not allege in his motion that he had any ownership interest in the bar.

This seizure by the divorce receiver is unrelated to this case. After the receiver in the divorce case took possession of the bar, the receiver produced to the government, pursuant to a grand jury subpoena, certain items that had been found in the bar. Those items, produced to the government on or about November 25, 2020, included paper records as well as a thumb drive.

6

Defendant now alleges that he no longer has possession of the discovery tendered to him, because it was all seized by the divorce receiver. This allegation has no merit. In January 2021, the government reproduced to the defendant all discovery that had been tendered to date, sending the discovery directly to defendant's residence. *See* Dkt. 229 at 2-3. This reproduction of the tendered discovery took place after the seizure of Da Vinci's bar by the divorce receiver. Defendant currently possesses a complete set of discovery that has been tendered to date, as does his standby counsel, Imani Chiphe.[7] No *Brady* violation has occurred, let alone one that warrants dismissal of the indictment.

As for the physical paper files and the thumb drive found in Da Vinci's that were produced by the receiver to the government pursuant to subpoena, the government will produce to defendant a full copy set of all of those items. The government is in the process of arranging for the all of the paper files to be copied by an outside vendor, with both a paper and electronic copy to be made for defendant. A subset of these documents were reviewed by members of the prosecution team, once a filter team member removed potentially privileged materials. Those documents are largely real estate records (deeds, real estate contracts, etc.) that do not appear to be clearly exculpatory.

Additionally, a filter team paralegal will copy the thumb drive and send it to

---

[7] All discovery tendered directly to defendant is also tendered to standby counsel Imani Chiphe, so that Mr. Chiphe can review the discovery and assist defendant in locating relevant documents and/or obtaining printed copies of documents if necessary.

defendant in the near future.[8] Defendant will then have a full set of any items from Da Vinci's that are currently in the government's possession, which will allow him to review and utilize any of the records in preparing his defense in this case.

Defendant has a full set of the discovery tendered to date, and will also be provided with a copy of the items seized from Da Vinci's bar. There is no *Brady* violation. Defendant's motion should be denied.

### III. THIS COURT SHOULD DENY DEFENDANT'S MOTION TO QUASH GRAND JURY SUBPOENA (DKT. 300)

Defendant moves to quash a grand jury subpoena ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9] Dkt. 300 at 1. ▮▮▮▮▮▮▮▮▮▮▮



---

[8] To date, the thumb drive has not been reviewed by any member of the prosecution team.

[9] In his motion, defendant discloses that he was served with a grand jury subpoena. Due to grand jury secrecy, the portions of this motion which describe matters occurring before the grand jury are redacted in the public filing. An unredacted portion of this motion will be filed under seal. Both versions of the motion will be mailed to defendant's residential address.



In this motion, defendant also seeks dismissal of the indictment, arguing that the issuance of the subpoena shows that the government impermissibly accessed attorney-client privileged or attorney work product files from the records the government received from Da Vinci's bar. Dkt. 300 at 3-5. The government previously responded to a similar motion in Docket 262 at 5-7.

As previously explained, the government received records seized from Da Vinci's by the divorce receiver, pursuant to a grand jury subpoena. In taking possession of records produced by the receiver in response to the grand jury subpoena, agents went to Da Vinci's and examined the exterior of the boxes and folders – agents did not examine the documents themselves. Agents accepted as a response to the grand jury subpoena only boxes of records that had labels which indicated a connection to properties involved in the Washington Federal investigation. Pursuant to the subpoena, agents removed approximately eight boxes of records from the bar. Additionally, the receiver provided to the agents another box of records, which the receiver represented was responsive to the subpoena. The receiver also provided a thumb drive to the government, which the receiver represented was responsive to the subpoena. The thumb drive has not yet been reviewed by the prosecution team.

Before anyone from the prosecution team reviewed the contents of the boxes, a filter team member who is not involved in the investigation reviewed the contents of the boxes to identify potentially privileged documents. Once the filter team member identified the potentially privileged documents, at least a portion of the remaining documents were reviewed by some of the members of the prosecution team. The records largely consisted of real estate records, such as closing statements, deeds, real estate contracts, real estate listing agreements, and brochures for properties. As explained above, these types of real estate records are not privileged.

To date, defendant has still not identified with any specificity why or how these

documents are privileged. He has not identified, if he is the attorney[10], who is the client; or if he is the client, who is the attorney.[11] Nor has he articulated how the documents are privileged communications, or which categories of records are privileged. "A blanket claim of privilege that does not specify what information is protected will not suffice." *White*, 970 F.2d at 334. Finally, ███████████ ███████████████████████████████████████████████████████ ███████████. Therefore, defendant's motion to dismiss should also be denied.

---

[10] Defendant had repeatedly represented to this Court that he is indigent, not currently receiving income – which would include income from the practice of law. During his bankruptcy proceedings, in three separate "Statement of Financial Affairs for Individuals Filing for Bankruptcy" filings in 2018, defendant was required to identify any "connections to any business" in the previous four years, including ones in which he was a "sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time." *In re Robert Kowalski*, 18-09130 (Bankr. N.D. Ill.), Dkt. 22 at 7; Dkt. 41 at 7; Dkt. 53 at 7. In all three filings, the only business or self-employment reported by defendant was his ownership interest in entities identified as in the business of "real estate." *See id*. There was no disclosure of any self-employment or business related to the practice of law. Each of the financial statements were signed under penalties of perjury, under a declaration affirming that the answers on the statements are "true and correct". *In re Robert Kowalski*, 18-09130 (Bankr. N.D. Ill.), Dkt. 22 at 8; Dkt. 41 at 8; Dkt. 53 at 9.

[11] On January 1, 2021, defendant sent an email to AUSA Brian Netols regarding the materials from Da Vinci's bar; the only reference in the email to any kind of attorney-client or work product privilege are the following sentences: "Also, certain files of third persons I represent in pending criminal cases may also be in your possession. This would include discovery material provided to me by the State." In response, on January 4, 2021, AUSA Netols sent an email to defendant asking defendant to identify his clients "by name or other reference" so the government could locate any such material in those documents. *See* Dkt. 227 at 38. Defendant did not reply to this email. As of February 26, 2021, defendant has been suspended from the practice of law by the Illinois Supreme Court, *In re Robert Michael Kowalski,* 20PR078.

**IV.** **THIS COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS BANK EMBEZZLEMENT COUNTS ONE AND SIX (DKT. 304)**

Defendant moves to dismiss Counts One and Six of the indictment, arguing that he cannot be charged with a violation of § 656 because he is a "patsy victim of the scheme" alleged in the indictment. Dkt. 304 at 4. Count One charges conspiracy to embezzle bank funds in violation of 18 U.S.C. § 656 and to falsify bank records in violation of 18 U.S.C. § 1005, in violation of 18 U.S.C. § 371. Count Six charges defendant with aiding and abetting the embezzlement of bank funds, in violation of 18 U.S.C. §§ 2 and 656. Dkt. 304. Defendant's motion should be denied, as the Third Superseding Indictment is legally sufficient as it properly states the elements of 18 U.S.C. §§ 2, 371, and 656.

Section 656 criminalizes embezzlement of bank funds by an individual who is an "officer, director, agent or employee of, or connected in any capacity" with a bank.[12] Section 2 states that whoever "aids, abets, counsels, commands, induces or procures" an offense against the United States is "punishable as a principal," as is anyone who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The elements of Section 371 are "(1) an agreement to commit an offense against the United States; (2) an overt act in furtherance of the conspiracy; and (3) knowledge of the

---

[12] The elements of § 656 are that (1) the embezzlement involves a bank officer, director, employee or agent, or an individual connected to the bank in any capacity; (2) the bank must be federally insured; (3) the misapplied sum exceeds $1,000; (4) the defendant embezzled or willfully misapplied funds belonging to or entrusted to the care of the bank; (5) defendant acted with intent to injure or defraud the bank. *See, e.g., United States v. Crabtree*, 979 F.2d. 1261, 1265 (7th Cir. 1992).

conspiratorial purpose." *United States v. Kelerchian*, 937 F.3d 895, 914-915 (7th Cir 2019) (quotation omitted) ("The government must show only that the conspirators agreed that the underlying crime be committed. In other words, each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." (quotation omitted) (emphasis in original)).

An indictment is legally sufficient if it "(1) states all the elements of the crime charges, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense." *United States v. Vaughn*, 772 F.3d 918, 925 (7th Cir. 2013). A motion to dismiss is "not intended to be a summary trial of the evidence. Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged." *United States v. Yasak*, 884 F.2d 996, 1000-01 (7th Cir. 1989) (quotation omitted). The Third Superseding Indictment is legally sufficient, stating all the elements of the charged crimes.

Defendant argues he cannot be held liable under § 656 because he was not "connected in any capacity" with a bank, nor could he aid and abet the employees of Washington Federal. Dkt. 304. However, defendant acknowledges that a bank outsider, including a customer, can be charged with aiding and abetting an embezzlement but only if "the bank officer as a principal has committed the substantive offense" and "the defendant depositor had knowledge of the criminal

13

activity of the bank officer, and more, encouraged or participate in it with a desire to forward it." Dkt. 304 at 3.[13]

Even using defendant's formulation of applicable legal standards, he is properly charged in this case. During a span of over a decade, the Third Superseding Indictment alleges that defendant Robert Kowalski solicited embezzled funds from the bank, including from bank employees who are currently charged in this case, with the embezzled funds provided to defendant in the form of checks, wire transfers, payments to third parties, and deposits into his bank accounts. *See* Third Superseding Indictment, Dkt. 250 at 5-15, (*see, e.g.*, ¶¶ 8, 11, 12, 14, 21, 22, 23, 24, 25, 28). Additionally, the Third Superseding Indictment alleges that bank employees, including the bank president, caused collateral belonging to the bank to be transferred to defendant Kowalski for Kowalski's own benefit, including allowing Kowalski to keep rent payments for those properties, even though such rent payments belonged to Washington Federal. *See id.* at 14, ¶¶ 30, 31. Finally, the Third Superseding Indictment alleges that the charged bank employees knew of the embezzlement, and falsified records to help facilitate the embezzlement as well as to conceal the embezzlement. *See e.g., id.* at 5 – 16 (see, e.g. ¶¶ 4, 5, 6, 9, 10, 11, 13, 15, 32-40).

---

[13] Bank customers have previously been convicted of aiding and abetting a violation of Section 656. For example, *United States v. Austin*, 585 F.2d 1271 (5th Cir. 1978), the Fifth Circuit affirmed the conviction of a bank customer who was convicted of aiding and abetting a violation of Section 656 when he wrote over $750,000 of bad checks, which the bank honored without seeking repayment. The customer, Austin, was charged in an indictment along with bank employees, who were charged with aiding and abetting one another in violation Section 656 and 1005, as well as making false statements to the FDIC in violation of Section 1001. *Id.* at 1272.

The allegations in the indictment satisfy the elements of §§ 371, 656, and 2. Defendant may believe that the government cannot prove these allegations at trial; however, that is an issue for the jury, not a reason to dismiss the indictment for failing to allege a criminal charge. Therefore, defendant's motion to dismiss Counts One and Six should be denied.

### V. CONCLUSION

Therefore, the government respectfully requests that this Court deny defendant's pretrial motions, specifically: motions entitled "Motion to Dismiss Failure to Provide Brady Material," Dkt. 299; "Motion to Quash Grand Jury Subpoena," Dkt. 300; "Motion to Compel Discovery," Dkt. 303; and "Motion to Dismiss Bank Embezzlement Counts One and Six," Dkt. 304.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Michelle Petersen*
MICHELLE PETERSEN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604
(312) 886-7655

Dated: April 6, 2021

## **CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), that the Government's Response in Opposition to Defendant's Pretrial Motions will be mailed via first-class mail to defendant's residential address, no later than the next business date after filing.

*s/ Michelle Petersen*
MICHELLE PETERSEN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 886-7655