```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

UNITED STATES OF AMERICA,       )   Docket No. 19 CR 00226-1
                                )
              Plaintiff,        )   Chicago, Illinois
                                )   December 23, 2020
         v.                     )   12:04 p.m.
                                )
ROBERT KOWALSKI,                )
                                )
              Defendant.        )


     TRANSCRIPT OF PROCEEDINGS - Motion/Detention Hearing
        BEFORE THE HONORABLE VIRGINIA M. KENDALL


APPEARANCES:   (Via Teleconference)


For the Government:      UNITED STATES ATTORNEY'S OFFICE by
                         MR. BRIAN PATRICK NETOLS
                         Assistant United States Attorney
                         219 South Dearborn Street
                         Chicago, Illinois  60604


For the Defendant        FEDERAL DEFENDER PROGRAM by
as Standby Counsel:      MR. IMANI CHIPHE
                         55 East Monroe Street, Suite 2800
                         Chicago, Illinois  60603

For the Defendant        MR. WILLIAM SEAN STANTON
Jan R. Kowalski:         53 West Jackson Boulevard, Suite 1062
                         Chicago, Illinois  60604




Court Reporter:          GAYLE A. McGUIGAN, CSR, RMR, CRR
                         Official Court Reporter
                         219 S. Dearborn Street, Room 2504
                         Chicago, IL 60604
                         312.435.6047
                         gayle_mcguigan@ilnd.uscourts.gov
```

 1           THE CLERK:  19 CR 226, U.S. versus Robert Kowalski.
 2           THE COURT:  Okay.  Good afternoon, everyone.  This is
 3   Judge Kendall.
 4           So let's start with the prosecutor.  Please introduce
 5   yourself.
 6           MR. NETOLS:  Brian Netols, N-E-T-O-L-S, on behalf of
 7   the United States, your Honor.
 8           THE COURT:  Good afternoon.
 9           THE DEFENDANT:  Good afternoon, your Honor.  My name
10   is Robert Kowalski.
11           THE COURT:  Okay.  Good afternoon, Mr. Kowalski.
12           Mr. Chiphe, I think --
13           MR. CHIPHE:  Good afternoon, your Honor.  Imani
14   Chiphe, Federal Defender Program, as standby counsel.
15           THE COURT:  Okay.  Good afternoon.
16           Do we have someone from Pretrial Services?
17           PRETRIAL SERVICES OFFICER:  Good morning, your Honor.
18   Pedro Rangel on behalf of Pretrial Services.
19           THE COURT:  All right.  Good afternoon, Mr. Rangel.
20           Anyone else that is on the line that I haven't
21   introduced?
22           MR. STANTON:  Judge, good afternoon.  Bill Stanton,
23   S-T-A-N-T-O-N.  I represent Jan Kowalski.  And I believe she's
24   also on the line.
25           THE COURT:  Okay.

```
 1              MS. JAN KOWALSKI:  Yes, yes.  Jan Kowalski,
 2   K-O-W-A-L-S-K-I.  I am here.
 3              THE COURT:  Okay.  Good afternoon, Ms. Kowalski.
 4              All right.  Well, I have received and reviewed this
 5   proposed release order.
 6              Mr. Rangel, I understand that you are still of the
 7   mind-set that he should remain detained; is that true?
 8              PRETRIAL SERVICES OFFICER:  Yes, your Honor.
 9              THE COURT:  Okay.  And I take it that's from past poor
10   performance with you and the troubles that Pretrial Services
11   Office has had with him, correct?
12              PRETRIAL SERVICES OFFICER:  That's correct, your
13   Honor.
14              THE COURT:  Right, okay.  And I always appreciate how
15   hard the Pretrial Services Office works in order to maintain
16   contact with pretrial detainees, so I appreciate that you are
17   here.
18              Let's see if we can review this.
19              Mr. Netols, do you want to start out with what you
20   have put together here?
21              MR. NETOLS:  Yes, your Honor.
22              There should be three documents.  There's an order
23   setting conditions of release.  There's an attachment which
24   relates to contacting of witnesses.  And there's an appearance
25   bond.  And the appearance bond is, in all respects, identical
```

1   to the one previously executed when you released defendant on
2   pretrial release.  And that's the one that posts -- Jan
3   Kowalski posts her property as security for the $50,000 bond.
4           I'll start with the order setting conditions of
5   release.
6           Essentially, this is a release on home incarceration.
7   All of the conditions on the first page still apply, obviously
8   not violate federal, state, or local law, and -- is the most
9   important.
10          And with respect to the special conditions or
11  additional conditions, which I imagine your Honor wants me to
12  deal with, is continuation of the conditions that you
13  previously directed, which were submitting to supervision by
14  the Pretrial Service, surrender any passport, which should have
15  been done already.  There's an abide by restrictions on travel
16  in the Northern District, which is kind of obviated by the home
17  incarceration, but it's left in there.  There is a -- Section G
18  is avoiding any contact with certain victims or witnesses.  And
19  I'm assuming Mr. Kowalski has the items in front of him.  But
20  it lists the series of witnesses.  And I can read them into the
21  record, your Honor, or just, if he acknowledges that he has the
22  list, I don't know if you want to publicly acknowledge who is
23  on this.  I'll await your direction on that.
24          THE COURT:  Well, I think we should be very specific
25  with him because of his very poor performance in the past.

1  Okay?

2  MR. NETOLS: Your Honor, the Exhibit A to the release
3  order states that there's no contacting of any former
4  Washington Federal employees or board members, and that would
5  include James Crotty, C-R-O-T-T-Y; Jane Tran, formerly known as
6  Jane Iriondo, I-R-O-N-D-O, she's a co-defendant; Alicia
7  A-L-I-C-I-A, Mandujano, M-A-N-D-U-J-A-N-O, co-defendant;
8  Rosallie Corvite, R-O-S-A-L-L-I-E, Corvite, C-O-R-V-I-T-E,
9  another co-defendant; Cathy Torres, C-A-T-H-Y, and then Torres
10 is T-O-R-R-E-S; Tina, T I-N-A, Civito, C-I-V-I-T-O; Brian Fong,
11 common spelling on Brian, Fong is F-O-N-G; Therese Gembara,
12 T-H-E-R-E-S-E, Gembara is G-E-M-B-A-R-A.

13 Do I need to stop for a minute for the court reporter,
14 your Honor?

15 THE COURT: Gayle, how are you doing?

16 COURT REPORTER: Thank you. I'm keeping up just fine,
17 thank you.

18 MR. NETOLS: Okay. Loretta Leung, Loretta is
19 L-O-R-E-T-T-A, Leung is L-E-U-N-G; Cecilia Chin,
20 C-E-C-I-L-I-A, Chin is C-H-I-N; Jonathan Weston, Jonathan is
21 common spelling, Weston is W-E-S-T-O-N; Joshua Weston, Joshua
22 is common spelling, Weston, W-E-S-T-O-N; Jonathan Stroup,
23 S-T-R-O-U-P; Megan Gembara, Megan is common spelling, Gembara,
24 G-E-M-B-A-R-A; Janice Weston, Weston is W-E-S-T-O-N; George
25 Kozdemba, George is common spelling, Kozdemba is

1  K-O-Z-D-E-M-B-A; William Mahon, Mahon -- William is common
2  spelling, Mahon is M-A-H-O-N; Lester Stepien, Lester is common
3  spelling, Stepien is S-T-E-P-I-E-N; Barbara Glusak, Glusak is
4  G-L-U-S-A-K; Karoline Repiscak, Karoline is with a K., Repiscak
5  is R-E-P-I-S-C-A-K; Marsha Bradley, Marsha is common spelling,
6  Bradley is B-R-A-D-L-E-Y; former Washington Federal customers,
7  any of those, no contact, including Miroslaw Krejza,
8  M-I-R-O-S-L-A-W., Krejza is K-R-E-J-Z-A; Marek Matczuk,
9  M-A-R-E-K, M-A-T-C-Z-U-K; Boguslaw Kasprowicz, B-O-G-U-S-L-A-W,
10 last name K-A-S-P-R-O-W-I-C-Z.  Robert Fegan -- should be
11 Patrick Fegan, Patrick, common spelling, Fegan, F-E-G-A-N;
12 Edward Gobbo, Edward, common spelling, Gobbo, G-O-B-B-O; Edwin
13 Gausselin, Edwin is E-D-W-I-N, Gausselin is G-A-U-S-S-E-L-I-N;
14 And then any current and former employees of Washington
15 Federal's internal and external auditors, examiners, and
16 consultants, including anyone from the following institutions:
17 Bansley and Kiener, Bansley is B-A-N-S-L-E-Y --
18         THE DEFENDANT:  May I make an objection?  I mean, as
19 specific as this list wants to be, it's very difficult.  I
20 don't know who Bansley & Kiener are.  I don't know who --
21         THE COURT:  Mr. --
22    (Unintelligible crosstalk.)
23         THE DEFENDANT:  -- for them, and I don't want to be
24 difficult, but it's hard for me to avoid somebody that I don't
25 know who I'm supposed to avoid.  And I certainly don't want to

1  deal with the accountants or anybody else.  But it's kind of
2  broad.  Office of the Comptroller of the Currency?  Is there
3  anybody in particular?
4            THE COURT:  Mr. Kowalski?
5            THE DEFENDANT:  Yes.
6            THE COURT:  This is not your time to speak.  I will
7  give you an opportunity when he's finished.
8            THE DEFENDANT:  Pardon me, Judge.
9            MR. NETOLS:  Another, anyone at the entity
10 W-I-P-F-L-I, Wipfli; anyone working for Farin Foresight, Farin
11 is F-A-R-I-N, Foresight is F-O-R-E-S-I-G-H-T.; and anyone at
12 the Office of the Comptroller of the Currency.
13           THE COURT:  Okay.  Now, Mr. Kowalski, these are the
14 people that you are supposed to not have any contact with, or
15 employees of those entities.  You're concerned that you don't
16 know anyone at Bansley & Kiener.  Well, that's fine.  If, as
17 you're preparing for your trial, you find out that someone is
18 from there, you will know that you're not allowed to contact
19 them.
20           Now, if you, in the course of preparation, reach the
21 conclusion that you need to contact someone from any of these
22 places, you're ordered to contact the Court and seek permission
23 from the Court, and then we'll discuss what it is that you
24 need, and we'll determine whether or not it's appropriate for
25 you to have that type of contact.

1        THE DEFENDANT:  Thank you, Judge.

2        I didn't want to inadvertently trip over somebody who
3   I am prevented from tripping over, and there's -- like there's
4   certain former Washington Federal employees, I don't quite -- I
5   don't recall what they might look like, namely, Tina Civito,
6   Lester Stepien, or Barbara Glusak.

7        MR. NETOLS:  Your Honor, if I may?

8        THE COURT:  You won't be -- you won't be out in the
9   public looking at them.  This is all about getting -- (audio
10  interruption)

11       COURT REPORTER:  Excuse me, Judge Kendall.  You broke
12  up a bit.  The last I heard -- this is Gayle, the court
13  reporter.  The last I heard was, "You won't be out in the
14  public looking at them.  This is all about getting."

15       THE COURT:  You the information and not allowing you
16  to contact them once you receive the information.

17       I believe you were going to say something, Mr. Netols.

18       MR. NETOLS:  The exact same thing.  It shouldn't be an
19  issue.  He's not going to be running into anybody.  He's going
20  to be under home incarceration.

21       THE COURT:  Right.

22       MR. NETOLS:  Same answer, your Honor.

23       THE COURT:  Okay, so --

24       MR. NETOLS:  Should I continue with the rest of the
25  conditions --

1           THE COURT:  Yes.

2           MR. NETOLS:  I'm sorry.

3           Then, H, same as before, his medical or psychiatric
4  treatment as directed by Pretrial Services.

5           Do not possess -- K, do not possess a firearm,
6  destructive device, or other weapon.  I believe that was in the
7  last release order.

8           L, do not use alcohol excessively.  Again, another
9  repeat.

10          M, not use or unlawfully possess a narcotic drug or
11 controlled substance unless prescribed by a licensed medical
12 practitioner.  I believe that was in the prior release order.

13          And submit to testing for prohibitive substances,
14 essentially if required by Pretrial Services.

15          P, participate in one of the following location
16 restriction programs and comply with its requirements as
17 directed.  And it's -- it's under that, under P, it's III, home
18 incarceration.  You're restricted to a 24-hour-a-day lock-down
19 at your residence except for medical necessities and court
20 appearances or other activities specifically approved by the
21 Court.

22          Q, submit to location monitoring as directed by
23 Pretrial Services or supervising officer and comply with all
24 the program requirements.  That was previously a requirement.
25 I think it was relaxed at some point, you know, prior to his

1   current situation.
2          R, report as soon as possible to Pretrial Services
3   Office or supervising officer every contact with law
4   enforcement personnel, including arrests, questioning, or
5   traffic stops.  That's a repeat from your Honor's prior order
6   (indecipherable) under these circumstances --
7          COURT REPORTER:  Excuse me, Mr. Netols.  This is the
8   court reporter.
9          "That's a repeat from your Honor's prior order."
10         MR. NETOLS:  And so it should not be of any import
11  under these circumstances.  Essentially, he's not going to be
12  out and about to be stopped by -- in traffic stops and any
13  contact with law enforcement personnel, it would be -- have to
14  be at his residence, but it still needs to be reported.
15         Should I continue, your Honor?
16         THE COURT:  That's it?
17         MR. NETOLS:  Last one is S, obey all court orders from
18  this Court and any other court.
19         THE COURT:  Okay.
20         MR. NETOLS:  And allow location monitoring equipment
21  to be installed by Pretrial Services within two business days,
22  and --
23         THE COURT:  Okay --
24         MR. NETOLS:  -- as also the release order.
25         THE COURT:  Right, I'll go through all of that.

1            Okay.  So, Mr. Kowalski, what you need to understand
2    right now is that as the court monitoring, I am trying to
3    balance right now your constitutional right to defend yourself
4    and the interest of the community and protect the community
5    from you.  And right now there's an ever-so-slight chance that
6    it's balanced in your -- ever so slight balanced in your favor
7    in that if I can fashion conditions that keep you in a position
8    where you're able to prepare for your trial because you don't
9    have an attorney and you're doing it on your own and I can keep
10   you away from the public, I believe that I'll be able to
11   balance those concerns.
12           However, what I do know is that you have had (audio
13   interruption) with me in not following carefully with those
14   restrictions.
15           So I'm going to go through this bond with you directly
16   myself, and I want you to listen to those conditions, and I
17   want you to understand that any one of those that is violated
18   can result with you being exactly where you are today.  And
19   what you've heard from Mr. Netols is that, with the volume of
20   evidence that he's turning over to you, you need to have the
21   ability to review it.  So it's in your very best interest to
22   follow my court orders on release and follow them to the tee so
23   that you can prepare for this case.  So I'm going to go through
24   this right now.
25           You are agreeing to be released with the understanding

1   that your bond could be forfeited if you fail to appear for
2   court proceedings, if you fail to surrender if you are
3   convicted, and if you fail to comply with the conditions that
4   I'm about to go through.
5            Currently, the type of bond that you have is a secured
6   bond of $50,000. And you are agreeing to forfeit the property
7   located at 1009 61st Street in LaGrange, Illinois, and that had
8   been previously posted and it will be now reposted within 70
9   days -- I'm sorry, seven days of your release.
10           Now, Ms. Kowalski, you are the owner of that property,
11  and you are acknowledging, by me releasing him on this bond,
12  that you are not going to sell the property or allow any claims
13  to be made against it or do anything to reduce its value, and
14  that you are acknowledging that it could be forfeited if one of
15  those three things is not met: That he violates a condition of
16  release; if he fails to surrender once -- if convicted; and if
17  he fails to appear for court proceedings.
18           Now, Ms. Jan Kowalski, do you understand that that's
19  what you're doing with your property?
20           MS. JAN KOWALSKI: Jan Kowalski.
21           Yes, your Honor, I do.
22           THE COURT: Okay. I'm going to go through the order
23  setting conditions of release now.
24           First, you shall not violate federal, state, or local
25  law.

1          You shall cooperate in the collection of a DNA sample
2  if it's authorized by 42 USC 14135a.
3          You shall advise the Court or the Pretrial Services
4  Officer or supervising officer in writing before making any
5  change of residence or your telephone number.
6          And you shall appear in court as directed when I set a
7  status.
8          Now, the other conditions:
9          You shall submit to supervision and report for
10 supervision to the Pretrial Services Office as directed.
11         Now, Mr. Rangel has gone through enough having to
12 follow and detail all of the issues with you in the past.  So I
13 am very supportive of the difficulties that they go through in
14 trying to do something as simple as monitor a pretrial
15 detainee.  Do not ignore his requests.  And follow his
16 directions.
17         Surrender any passport to Pretrial Services.
18         Do not obtain a passport or other international travel
19 document.
20         You're restricted to your home, but you also must
21 remain in the Northern District of Illinois.  If -- you
22 understand that the Northern District of Illinois is the
23 judicial district.  It comprises the top 18 counties of the
24 state.  If you have any question regarding that, ask the
25 Pretrial Services Officer.

1        You shall avoid all contact, directly or indirectly,
2   with any person who is or may be a victim or a witness in the
3   investigation or prosecution, and that includes all of those
4   people in Attachment A that Mr. Netols read to you.
5        You shall get medical or psychiatric treatment as
6   directed by Pretrial Services.
7        You shall not possess a firearm, a destructive device,
8   or other weapon.
9        You shall not excessively use alcohol.
10       You shall not use or unlawfully possess a narcotic
11  drug or other controlled substance unless it is prescribed by a
12  licensed medical practitioner.
13       You shall submit to the testing for prohibited
14  substance if required by the Pretrial Services Office or
15  supervising officer.  Testing may be used with random
16  frequency.  It could include urine testing, the wearing of a
17  sweat patch, a remote alcohol testing system, or any form of
18  prohibited substance screening or testing.  And you shall not
19  obstruct, attempt to obstruct, or tamper with the efficiency
20  and accuracy of prohibited substance screening or testing.
21       You shall stay in home incarceration.  So you're
22  restricted to a 24-hour-a-day lock-down at your residence
23  unless you have medical necessities or court appearances or
24  other activities that specifically have been approved by the
25  Court.

1                You shall submit to location monitoring at the
2    direction of the Pretrial Service Office or supervising
3    officer, and you shall comply with all of the requirements and
4    instructions provided.
5                You shall report as soon as possible to the Pretrial
6    Services Office or supervising officer every contact with law
7    enforcement personnel, including arrests, questioning, or
8    traffic stops.
9                You shall obey all court orders from this Court or any
10   other court, including the bankruptcy court and state courts.
11   The location monitoring equipment is to be installed by
12   Pretrial Services within two business days of defendant's
13   release.
14               Now, if you violate any one of those conditions, the
15   Pretrial Services Officer will write a report.  He will bring
16   it up to my attention.  I will have you back in court.  And you
17   can be returned to the MCC.  You could actually face another
18   felony or misdemeanor charge based upon what it is that you
19   violated.  And you could face further charges.
20               Do you understand that?
21               THE DEFENDANT:  Yes, I do, Judge.
22               THE COURT:  Now, I am releasing you to go live with
23   your sister.  And those are the conditions that I've given to
24   you.  I am doing so so that you will have the ability to begin
25   preparation on this significant amount of discovery that you

1  will be receiving.  That is what you should be focused on and
2  nothing more at this point.  And I think if you do that, we
3  won't have any difficulties with your release.
4      Okay.  Now, I can sign this electronically today and
5  get it over to the MCC through my courtroom deputy, and I
6  believe that is all that will be needed.  But you have seven
7  days to have the property reposted.  And, Mr. Rangel, I realize
8  it's the 23rd.  I have no idea when you'll be able to do the
9  ankle monitoring.
10     PRETRIAL SERVICES OFFICER:  There is somebody on duty
11 over the holidays.  So whenever the defendant is released,
12 we'll set up a time for him to get the monitor set up on him.
13     THE COURT:  Okay. Okay.  All right.  From the
14 prosecutor, is there anything that I have forgotten for today?
15     MR. NETOLS:  No, your Honor, absolutely not.
16     THE COURT:  Okay.  Mr. Chiphe is available to you,
17 Mr. Kowalski, as your standby counsel.  I've reminded you over
18 and over again, I don't think you should represent yourself.
19 Mr. Chiphe is staying up to speed on the discovery.  You can
20 talk with him about it and ask him questions.  He has a lot of
21 experience in the court.  He also can aid you in filing things
22 if you need to file things.  So please recall that you are not
23 the person that's best trained to represent yourself.  And he's
24 still available for you if you want to use him as an attorney.
25     THE DEFENDANT:  Your Honor, I don't think my

1   professors -- law school would take umbrage in that -- very
2   prepared --
3           COURT REPORTER:  Excuse me.  Mr. Kowalski, this is the
4   court reporter.  I need you to repeat that.  And please speak
5   up.
6           THE DEFENDANT:  I --
7           THE COURT:  He said that he thinks that his professors
8   in law school would take umbrage at that.
9           THE DEFENDANT:  Yeah, I've been an attorney for 30
10  years, Judge.  And I think I've been a competent attorney.  And
11  nobody knows this case like I do.  And I -- no disrespect to
12  anybody, but there wouldn't be anybody that could possibly
13  represent me with the same fervor and the same zealousness that
14  I could bring.
15          THE COURT:  Okay.  All right --
16          THE DEFENDANT:  This is my life at stake here.  I love
17  my family.
18          THE COURT:  I --
19          THE DEFENDANT:  I have to live a life.  And I --
20     (Simultaneous indecipherable crosstalk.)
21          THE COURT:  He's still available.
22          THE DEFENDANT:  Yes, I understand that, your Honor.
23  Thank you.
24          THE COURT:  All right.  Okay --
25          THE CLERK:  Your Honor, this is Lynn, Judge Kendall's

1    courtroom deputy.

2            I have one last question.

3            Jan Kowalski needs to sign the appearance bond as
4    well.

5            Can I get the signature from the defendant and your
6    signature, and then is it okay if we either have Jan Kowalski
7    sign it later, or will that delay this process?

8            THE COURT:  I think she has to sign it in order for
9    you to put it out.  Right?

10           So where are you now, Ms. Kowalski?

11           MS. JAN KOWALSKI:  Jan Kowalski here.

12           I'm at 1009 61st Street in LaGrange, Illinois, 60525.

13           THE COURT:  Do you have either a fax machine or do you
14   have the ability to scan a document?

15           MS. JAN KOWALSKI:  Jan Kowalski.

16           No, not at the home, your Honor, but I can go to
17   Kinkos on LaGrange Road and do it.

18           THE COURT:  Okay.

19           MR. NETOLS:  Excuse me, your Honor.  If she has a
20   computer, she can electronically sign it as well.  I think it's
21   set up for anyone to electronically sign it.

22           THE COURT:  Okay.  All right.

23           MR. NETOLS:  If that's acceptable to the Court,
24   obviously.  If you want a wet signature --

25           THE COURT:  I think that's fine.  You can sign it.

1   THE CLERK:  Okay.  I will send it to Mr. Stanton then.

2   MR. STANTON:  Thank you.  Bill Stanton.

3   THE COURT:  Okay.  All right.  Please, Mr. Kowalski,
4   this time around, it's in your best interest, let's stay on
5   track.  Okay?

6   THE DEFENDANT:  Yes.  Thank you.

7   THE COURT:  Okay.  All right, everyone.  Have a good
8   holiday, and I will see you in the new year.

9   THE CLERK:  Court is adjourned.

10   (Concluded at 12:30 p.m.)

11   C E R T I F I C A T E

12   I certify that the foregoing is a correct transcript, to
13   the extent possible, of the record of proceedings in the
14   above-entitled matter given the limitations of conducting
15   proceedings via telephone.

17   */s/ GAYLE A. McGUIGAN*                              *May 4, 2021*
    GAYLE A. McGUIGAN, CSR, RMR, CRR
18   Official Court Reporter