UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT M. KOWALSKI | No. 19 CR 226-1<br><br>Honorable Virginia M. Kendall |

**THE GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT ROBERT KOWALSKI'S PRETRIAL MOTIONS DKT. NOS. 308 AND 324[1]**

This Court should deny each of the following motions for the reasons stated below.

**I.    THIS COURT SHOULD DENY THE DEFENDANT'S MOTION TO QUASH THE INDICTMENT (DKT. NO. 308) BECAUSE THERE WAS NO PROSECUTORIAL MISCONDUCT BEFORE THE GRAND JURY**

The defendant claims that the government: (1) withheld information concerning falsified loan documents from the grand jury; (2) presented false testimony by a law enforcement officer concerning payments for loans that did not exist; (3) allowed a law enforcement officer to oversimplify an answer to a question, thereby resulting in a material omission concerning a bank's failure; and (4) presented law enforcement officer testimony to the grand jury despite an "apparent conflict of interest." *See* Dkt. No. 308 at 5 and 9. The defendant further claims that, by withholding material information concerning the falsified loan documents, the

---

[1] Appendix 1, attached, is a chart that contains the docket numbers of motions filed by the defendant, the docket numbers of the corresponding government responses to those motions, and, where appropriate, the docket numbers of this Court's orders concerning those motions.

government withheld exculpatory information from the grand jury.[2] There is no merit to any of these claims.

### A. The Government Accurately Presented Falsified Loan Documents and Testimony Concerning Those Documents to the Grand Jury

The defendant makes several claims concerning the falsified loan documents created by bank employees to conceal the embezzlement that occurred at the bank. According to the defendant, the government either failed to present those falsified loan documents to the grand jury or presented those falsified loan documents in a manner that improperly implicated the defendant. These claims are not only factually wrong, but also an attempt by the defendant to confuse the issues. The premise underlying the defendant's claims is that the defendant had nothing to do with the creation of those falsified loan documents. But it does not matter whether he did as the third superseding indictment alleges that, as part of a conspiracy, the defendant and others "embezzled and concealed the embezzlement of at least approximately $31 million" from the bank. *See* Dkt. No. 250 at 5. The indictment also alleges that, as part of a conspiracy, bank employees "made and caused false entries in the books, reports, and statements of [the bank] to facilitate and accomplish the embezzlement of money." Dkt. No. 250 at 6. The defendant did not have to participate in the creation of those falsified documents (or other efforts by bank employees to conceal the

---

[2] Even if the defendant's claims were accurate, "a prosecutor has no duty to present exculpatory evidence to the grand jury." *United States v. Stout*, 965 F.2d 340, 343 (7th Cir. 1992); *see also Kaley v. United States,* 571 U.S. 320, 338 (2014) (the Supreme Court has "declined to require the presentation of exculpatory evidence" to a grand jury).

embezzlement) to embezzle funds from the bank, and neither the indictment nor the evidence presented to the grand jury suggests that he did.

In his motion, the defendant claims that the "prosecution team knowingly, willfully, recklessly, and intentionally availed themselves of perjured testimony in the form of use of Washington Federal Bank (WFB) falsified documents." Dkt. No. 308 at 1. The defendant notes that the Office of the Comptroller of the Currency ("OCC") determined that the bank's records had been falsified and, therefore, were unreliable.[3] █████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

█████

████████████████

██████████████████████████

████████████████████

---

[3] The defendant attaches to his motion a 2017 letter from the OCC to the board of directors of Washington Federal, with a subject line of "Interim Results of 2017 Full Scope Examination," and quotes from that letter in his motion on pages 1-2 of his motion, including the OCC's finding that records at Washington Federal had been altered. While the defendant alleges the findings of the OCC were concealed from the grand jury and that the government presented the adulterated materials from the bank as "solid and truthful," ████████████████████████████████████████████████████████████████████

3



(Exhibit A at 67:7-14.)

Additionally, as the defendant sets forth in his motion, the grand jury was also provided with evidence that Robert Kowalski's signature was sometimes cut and pasted onto loan-related records at Washington Federal. Dkt. No. 308 at 3. Any suggestion that the government used falsified documents to mislead the grand jury necessarily fails in light of testimony such as this, which explicitly identifies documents provided to the OCC as inaccurate, and also informs the grand jury that, at least on some occasions, the defendant Robert Kowalski's signature on loan-related documents was forged

The defendant next claims that the government "severely prejudiced" him by "repeatedly and falsely" associating him with two loans used by bank employees to conceal the embezzlement that occurred at the bank. Dkt. No. 308 at 4.

4



(Exhibit B at 46:5-11, filed under seal.) It is not prosecutorial misconduct to present facts to the grand jury.

The defendant's last claim in this regard is that the government presented information to the grand jury in a manner to "create a false impression that [journal entries] represented money actually disbursed on Robert's loans not just slick accounting trick maneuvers designed by a bank determined to conceal its financial condition from OCC regulators." Dkt. No. 308 at 7. The defendant's own motion negates this claim. The defendant cites the following grand jury testimony,

> Q. And again, that would all be just accounting moves, correct?
>
> A. Yes, ma'am.
>
> Q. Not actual payments, but a draw from one of those big loans and a payment on the books of one of the other loans?
>
> A. That is correct.

Dkt. No. 308 at 6-7; *see also* Exhibit B at 46:12-18. This testimony made plain to the grand jury the nature of the transactions attributed to the two loans. This testimony, along with the testimony quoted in the defendant's motion concerning other fraudulent documents created by bank employees (Dkt. No. 308 at 3-4), shows that the law enforcement officer truthfully testified concerning those two loans.

Consequently, the defendant's claims that the government withheld or misrepresented falsified loan documents created by bank employees to conceal the embezzlement that occurred at the bank and that a law enforcement officer testified

5

falsely concerning payments for loans that did not exist fail in light of the evidence actually presented to the grand jury.

### B. A Law Enforcement Officer Did Not Omit Material Information Concerning the Bank's Failure

The defendant claims that a law enforcement officer oversimplified an answer to a question, and therefore withheld information from the grand jury. Dkt. No. 308 at 5. This claim is disingenuous as the defendant misrepresents the nature of the exchange. Contrary to the defendant's assertion, the portion of the exchange quoted by the defendant did not concern how one knew the bank failed or what caused the bank to fail. *See* Dkt. No. 308 at 5 (and italicized below).



(Exhibit C at 89:13-90-19, filed under seal.)  (Exhibit C at 91:2-21.)

(Exhibit C at 92:2-17.) Consequently, the defendant's claim that the witness omitted information concerning the bank's failure lacks merit as the defendant quoted one small piece of this exchange, out of context.

    C.    **The Defendant's Conflict of Interest Claim is Frivolous**

The defendant claims that members of the prosecution team have a conflict of interest because they first acted as "debt collector" and now as "crime fighter." The defendant has made this claim in several filings and in court. This claim stems from the defendant's conflation of the Federal Deposit Insurance Corporation in its capacity as receiver ("FDIC-R") for the failed bank and the Federal Deposit Insurance Corporation Office of the Inspector General ("FDIC-OIG") special agents assigned to

7

this criminal investigation and prosecution.[4] These are separate entities and, as has been explained to the defendant in court, the FDIC-R is not part of the prosecution team. Despite this knowledge, the defendant persists in his efforts to conflate the FDIC-R and the prosecution team. This Court should deny the defendant's claim.

## II. THIS COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS BRADY VIOLATION (DKT. NO. 324)

The defendant moves to dismiss the indictment because of alleged *Brady* violations, arguing that the government is withholding *Brady* material from him.[5] Dkt. No. 324.

The government acknowledges its obligation to produce to the defendant evidence that is favorable to the defendant pursuant to *Brady v. Maryland*, 373 U.S.

---

[4] In the defendant's Motion to Dismiss Brady Violation (Dkt. No. 324), he similarly mischaracterizes the FDIC-R and FDIC-OIG, including his incorrect assertions that "[t]he prosecution relied almost exclusively upon FDIC-R Special Agents in its presentations to the grand jury" and that the FDIC-R is the "prime government team witness." Dkt. No. 324 at 3.

[5] The defendant filed his motion without attempting to confer with the government to resolve these issues. During a status hearing on April 16, 2021, the Court ordered the parties to meet and confer about any difficulties the defendant was having in accessing thumb drives which contained his discovery materials. Dkt. No. 316. On April 18, 2021, the government sent an email to the defendant, informing the defendant that a discovery conference would be held during the week of April 26-30, 2021, and asking the defendant to send the government a list of any questions or issues he wanted to discuss. In response, the defendant sent the government emails asking for production of various documents and raising other questions. The government then scheduled a discovery conference between the parties for April 27, 2021. Rather than waiting for the conference, the defendant filed his motion alleging discovery violations on April 26, 2021.

On April 27, 2021, the discovery conference was held, and on the same date the government sent the defendant a multi-page letter addressing some of the defendant's request for specific documents, including by telling him where in previous productions he could find the requested documents, or by describing when he would receive certain documents he requested. The government sent the defendant a second letter on May 3, 2021, which provided the defendant additional information on how to locate various records in the discovery productions.

8

83 (1963). Discovery in this case is ongoing; in late April, a few days after the defendant filed this motion, the government sent a thumb drive to the defendant that contained over 100,000 pages of discovery, along with files that were natively-produced (excel files, outlook email files, etc.). That production included early production of certain § 3500 materials.

Between April 28, 2021, and the present, the government has also tendered to the defendant over 4,500 pages of discovery in paper format to aid in the defendant's review of discovery. Those materials were all also produced electronically.

The government anticipates another discovery production will be sent to the defendant within the next three to four weeks.[6]

The government has produced to the defendant some of the very records he seeks in this motion. For example, the defendant alleges that the "prosecution team is reluctant to disclose" the identities of OCC employees, including "ADC#1," who the government believes is a reference to an OCC Assistant Deputy Comptroller. The government has not redacted the names of any OCC employees, including ADCs, in discovery tendered to the defendant. On May 3, 2021, the government sent the defendant a letter explaining where in the previously-tendered discovery the

---

[6] The defendant references "millions" of records in his motion. Dkt. No. 324 at 1. As the government has previously discussed, the government is in possession of voluminous electronic records from Washington Federal, including stored e-mail communications and files that were saved in shared folders on the bank's servers. Many of those electronic records are stored at DOJ's Litigation Technology Service Center, and the number of individual files is over 1,000,000 files. The LTSC is working to create a discovery production in a format that can be accessed by the defendant; once that production is ready, the government will burn the files onto a hard drive that was provided to the government by standby counsel Imani Chiphe. This production will not be completed by the end of May. The government will produce those records to the defendant when they are ready for production from the LTSC.

9

defendant could locate references to the ADCs associated with particular OCC examinations. Documents referencing ADCs were produced in discovery in January 2021. The government also re-produced some of these documents in an email to the defendant on May 3, 2021, to assist him in locating and reviewing that discovery.

There has been no *Brady* violation by the government, let alone one that would warrant dismissal of the indictment. To the extent that the defendant also seeks dismissal of the indictment for failure to provide a speedy trial, this Court has properly excluded time pursuant to 18 U.S.C. § 3161(h)(1)(D) while the dozens of pretrial motions filed by the defendant are pending. Additionally, this is a multi-defendant case, and time can be excluded for "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). Finally, on April 30, 2021, the defendant filed a notice of appeal, appealing an order denying his motion to modify his bond conditions. Dkt. No. 328. Time is excluded from the speedy trial clock from any "delay resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(C).

          Respectfully submitted,

          JOHN R. LAUSCH, JR.
          United States Attorney

By:   */s/ Jeremy Daniel*
      JEREMY DANIEL
      Assistant United States Attorney
      219 South Dearborn Street, 5th Floor
      Chicago, IL 60604
      (312) 469-6314