1       IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3    UNITED STATES OF AMERICA,          )  Docket No. 19 CR 00226-1
                                        )
4                   Plaintiff,          )  Chicago, Illinois
                                        )  June 2, 2021
5              v.                       )  9:38 a.m.
                                        )
6    ROBERT KOWALSKI,                   )
                                        )
7                   Defendant.          )

8
            TRANSCRIPT OF PROCEEDINGS - Rule To Show Cause
9            BEFORE THE HONORABLE VIRGINIA M. KENDALL

10
     APPEARANCES:
11

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE by
                                MR. BRIAN PATRICK NETOLS
13                              MS. MICHELLE PETERSEN
                                MR. JEREMY DANIEL
14                              Assistant United States Attorneys
                                219 South Dearborn Street
15                              Chicago, Illinois  60604

16
     For the Defendant         FEDERAL DEFENDER PROGRAM by
17   as Standby Counsel:       MR. IMANI CHIPHE
                                55 East Monroe Street, Suite 2800
18                              Chicago, Illinois  60603

19   Also Present:             Ms. Christa Green
                                Pretrial Services Officer
20

21   Court Reporter:           GAYLE A. McGUIGAN, CSR, RMR, CRR
                                Official Court Reporter
22                              219 S. Dearborn Street, Room 2504
                                Chicago, IL 60604
23                              312.435.6047
                                gayle_mcguigan@ilnd.uscourts.gov
24

25

1     (In open court.)

2          THE CLERK:  19 CR 226, Defendant 1, U.S. versus Robert

3     Kowalski.

4          THE COURT:  Good morning, Deputy.

5          Good morning, Mr. Kowalski.  Please put your name on

6     the record.

7          THE DEFENDANT:  Good morning, your Honor.  Robert

8     Kowalski.

9          THE COURT:  For the government?

10         MS. PETERSEN:  Michelle Petersen, Jeremy Daniel, and

11    Brian Netols for the United States, your Honor.

12         THE COURT:  Good morning.

13         So the new rule is, if you want, you are permitted to

14    take your mask off if you are fully vaccinated, but it's your

15    comfort level.  Okay?

16         All right.  So starting with my Pretrial Services

17    Officer?

18         PRETRIAL SERVICES OFFICER GREEN:  Good morning, your

19    Honor.

20         Christa Green from Pretrial Services.

21         THE COURT:  We are here because I received a

22    disturbing report over the weekend from the pretrial services

23    officer about your non-compliance with her directions and her

24    orders, and the fact that she is actually fearful of going to

25    your home.  And this is one strong pretrial services officer.

1    So when I get that word, I'm nervous.

2              So let me hear from the government as to what's going

3    on, please.

4              MS. PETERSEN:  Yes, your Honor.

5              And just for the record, Mr. Chiphe is not -- he was

6    here --

7              THE COURT:  I did see him walk in, right.

8              Do you want to wait for him?  And see if he's out

9    there?

10             MS. PETERSEN:  He said he had an overlapping status,

11   so he was -- I think he was on the phone.

12             Mr. Netols will go check for him.

13             THE CLERK:  He had a status before Judge Lee that was

14   at 9:30.

15             THE COURT:  Okay.

16             THE CLERK:  I'll check with Judge Lee's clerk.

17       (Pause in proceedings.)

18             MR. NETOLS:  He'll be in shortly, your Honor.

19             THE COURT:  Thank you.

20       (Pause in proceedings.)

21       (Mr. Chiphe enters courtroom.)

22             THE CLERK:  Here he is, your Honor.

23             THE COURT:  Okay.  Good morning, Mr. Chiphe.

24             MR. CHIPHE:  Good morning.

25             I apologize, your Honor.  I had a status in front of

1    Judge Leinenweber.

2         THE COURT:  It's no problem.  I saw you out there

3    before when I was on the call.

4         All right.  Let me turn to the government now about

5    this latest report.

6         MS. PETERSEN:  Yes, your Honor.

7         I'm going to ask -- if she can't hear me, I'll get

8    closer to the microphone, but I think I'm sufficiently close.

9         The government is also disturbed by this report.

10   We're disturbed by sort of an escalating series of reports.

11   And at this point, the government is asking that Mr. Kowalski's

12   bond be revoked.

13        We start by looking at 3148, which is a place that we

14   can start because the Court has already found in previous

15   hearings that he has violated conditions of release, including

16   moving to a new residence without telling Pretrial Services,

17   changing his phone number, making contacts with witnesses,

18   failing to comply with mental health treatment.  The Court

19   found all of those during the October hearing, and so I'm not

20   going to revisit those unless the Court wants me to.

21        THE COURT:  That's okay, you can --

22        MS. PETERSEN:  So once a violation has been found,

23   under 3148(B), the defendant shall be detained -- one of two

24   things have happened, and one of them would be if the person is

25   unlikely to abide by any condition or combinations of

1    conditions of release.

2            And, your Honor, I believe that that is where we are.

3            Since defendant was released at the end of December,

4    he's had multiple violation reports, including the last time he

5    came to court, he didn't ask for movement.  He went to his

6    girlfriend's house before he came to court.  And all that was

7    orally reported to you by the pretrial services officer.

8            Now we get another report where he's refusing to

9    comply with the rules.

10           It reports that he's becoming increasingly combative.

11           He's threatened the pretrial services officer with

12   legal consequences if she doesn't accommodate his wishes and

13   what he wants to do.

14           Mr. Kowalski filed a response to the Pretrial Services

15   report.  That's Docket 359.  And in it he shows absolutely no

16   reflection of what's happening whatsoever.  In the beginning,

17   he says that the violation report doesn't contain a violation.

18   He goes on to justify his actions saying things like, well, if

19   I want to go to the grocery store and shop for Mother's Day

20   flowers, that's fine.  But I think that the most telling part

21   of the motion is actually on page 5.  He discusses how he wants

22   to fight his case and be reunited with his family, and then he

23   talks about the Pretrial directives as tyrannical.  And then in

24   the middle of the page, he says, "Robert," referring to

25   himself, "is unwilling to follow arbitrary capricious

1    directives."  He's talking about Pretrial Services' rules and

2    regulations.  And he's telling the Court he's not going to

3    follow them.  And I think based on that alone, and the pattern

4    of behavior, the increasing escalation of the behavior, this

5    Court can find that he is not going to comply with his

6    conditions of release.

7            And along those same lines, the government filed a

8    violation of the protective order, which is not strictly a

9    Pretrial Services pretrial order, but it just shows he's not

10    following the Court's orders, your Honor.

11            I think the Court can also revoke his bond based on

12    dangerousness.  His behavior is escalating.  If we go back to

13    the beginning of the case, in the complaint it details how he

14    and another individual forced their way into property of the

15    bankruptcy estate by displaying a firearm.  He didn't display

16    the firearm, his associate did, but they were together --

17            THE DEFENDANT:  Put some evidence on.  That's not

18    true.  That's not fair.

19            THE COURT:  Do not interrupt.  You'll have your

20    chance.  You always do.

21            MS. PETERSEN:  That's on page 18 of the complaint,

22    your Honor.

23            There's an order of protection currently against him

24    by his ex-wife and one of his children.

25            The Court heard ample testimony about another incident

1    where his current girlfriend sought an order of protection,

2    later had that order of protection cancelled.

3              His behavior is so troubling that in this building he

4    needs to be escorted by marshals at all times.  That's by the

5    order of Judge Pallmeyer.

6              Similarly, in Cook County, Cook County judges were so

7    alarmed by his behavior that they had his access card taken

8    away so he had to go through the metal detectors.  That's

9    discussed in a federal civil lawsuit, 17 CV 560.

10             Documents attached to a filing he made just last week

11   show that the ARDC was investigating him for taking out a

12   billboard that talked about impeaching Judge Castillo with a

13   noose attached.  And there's a picture of that billboard on

14   page 48 of his filing.  That's Docket 349.

15             Last time we were in court, he discussed -- when

16   discussing -- this is on April 30, 2021.  And I'm referring to

17   pages 36 and 37 of the transcript.  Mr. Kowalski was talking

18   about how he wanted to have a speedy trial and how he wanted

19   more discovery.  And then he said, quote:  "Like a gun shooter,

20   do you want me to stand in the hallway and shoot it out with

21   them?"  End quote.  Referring to the prosecution team.  Quote:

22   "I'll do it, let's go right this minute."  End quote.  And

23   after the Court sort of admonished him, he said, quote:  "If

24   that's what it's going to take to bring me back to my family,

25   I'm willing to do it."

1    He's discussed how he wants to go out in the community

2    and confront his witnesses.  He's scaring the pretrial services

3    officer.  And he's a danger.

4    So I think the Court can revoke him on either of the

5    two prongs of 3148.

6    THE COURT:  Okay.  Ms. Green, would you please fill me

7    in on your experience so that I can better understand what has

8    been happening, please?

9    PRETRIAL SERVICES OFFICER GREEN:  Yes, your Honor.

10    The recent violation report we filed on May 27 was

11    regarding two separate violations.

12    The first violation was regarding failure to comply

13    with the location monitoring program.

14    In the beginning of May, Mr. Kowalski requested leave

15    to go grocery shopping, stating that he lived alone and that

16    his family and friends were no longer willing to do the grocery

17    shopping for him.  So we allowed Mr. Kowalski to go to one

18    grocery store to do essential grocery shopping.  The first

19    shopping trip, there was no issues.

20    The second shopping trip, we saw, through the GPS

21    monitoring, that he was walking around the Jewel parking lot

22    for approximately 30 minutes, went into the store, bought

23    potato chips and cereal, and then walked back to his house.

24    I did have a conversation with Mr. Kowalski, and I

25    told him that that wasn't acceptable, and that the leave was

1    not just free time to do whatever he wanted, that he needed to

2    be doing essential grocery shopping, which is why we gave him

3    the movement to begin with.

4           He agreed, and I told him that if the next grocery

5    shopping didn't have essential items, we would no longer be

6    able to grant him that movement.

7           The very next day, Mr. Kowalski went grocery shopping

8    again.  This time he bought ice cream.

9           And when he came back, I said to him that this was not

10   appropriate.

11          And he informed me that ice cream is appropriate, and

12   that ice cream is an essential item for his son.

13          So we did inform him that we would no longer be

14   allowing him to do this grocery shopping because, obviously,

15   someone else should be -- must be buying him his groceries

16   since he's not buying essential items.

17          The other violation is regards to his failure to

18   report to Pretrial Services as directed.

19          Mr. Kowalski has been directed several times that any

20   communication with me, any requests for movement, need to be

21   over the telephone.  And Mr. Kowalski has informed me that this

22   is not a dictatorship, and he doesn't need to do what I tell

23   him to do, and that he told me that from -- he is going to

24   continue to email and text me.

25          He's also cited that he wants a paper trail of our

1   conversation so I can't tell him something on the telephone and

2   he can later deny it.

3          I've told Mr. Kowalski several times that I never gave

4   him my email address, I'm not even sure how he got it, but that

5   the only thing he could email or text to me was verification,

6   for example, grocery receipts from appointments or verification

7   of medical appointments.

8          Over the past month, Mr. Kowalski -- his communication

9   with me has grown increasingly more combative.  He's talking

10  over me.  He's yelling at me.  He's threatening legal action if

11  I don't meet his demands.  And just refusing to comply with any

12  of our directives.

13         There was an instance in May where his telephone was

14  turned off for several days.  Because I couldn't get ahold of

15  him, I had to email him and ask him to call me.  And his

16  response was basically that I can't make him use anyone else's

17  phone.  So, unfortunately, I was not able to communicate with

18  him for several days until the phone was turned back on.

19         At this time, our office is very concerned about

20  Mr. Kowalski's ability to comply with the order setting

21  conditions of release as well as the rules of the location

22  monitoring program because he's just unwilling to follow any

23  directives from my office.

24         THE COURT:  Okay.  Thank you, Ms. Green.

25         All right, Mr. Kowalski, your turn.

1          THE DEFENDANT:  Judge, this is entirely unfair.  I

2     have a -- I have an appeal pending on this pretrial detention

3     order with the appellate court.  And, unfortunately, the

4     appellate court, unlike this district court, and they explained

5     in view of the reduced volume of cases, they do not have an

6     electronic filing system in the appellate court.  And I

7     sought -- and I have sought to appeal your ruling, Judge,

8     except Pretrial Services doesn't want to allow me to access the

9     court system.  And they cannot just arbitrarily with the

10    tyrannical directive nail the doors of this court of justice

11    shut to me.  I can't file anything.  My case is doomed.

12          THE COURT:  What is this?

13          THE DEFENDANT:  On Friday --

14          THE COURT:  These are all of the motions you have

15    filed since this began.  I have more pretrial motions from you

16    filed electronically than any other defendant in any other case

17    that I have.

18          THE DEFENDANT:  Your Honor, you misunderstand.  I have

19    filed an appeal with the Seventh Circuit.  And the

20    Seventh Circuit doesn't have -- doesn't allow a *pro se* litigant

21    to electronically file.  And so, consequently, I very much --

22    very well do need to come down here.  And for Ms. Green not to

23    allow me to come down here, not to access the court, is a real

24    problem, especially when I'm fighting to see my family.  I want

25    to be reunited with my family.  I don't think that the least

1    restrictive set of conditions includes not following Pretrial

2    Services' directives.  And I have followed her directives.  And

3    I find that they're extremely arbitrary and capricious.

4          They're that way because -- I wasn't just trying to go

5    to the grocery store, your Honor.  I wanted to go to, as

6    Ms. Green might recall, I wanted to go to Walgreens.  I had a

7    couple medical conditions I wanted to address, and I needed

8    some medication.  And I needed -- first I asked to go to

9    Walgreens, and she said, no, you can go to the Jewel-Osco.

10   Perfect solution, perfect compromise.  I go there, and I'm

11   sitting -- having my -- doing my heart checking and whatnot at

12   the Osco, I'm getting the medications my doctor suggested, and

13   that's why I'm at the -- at the -- it wasn't just a grocery

14   sorte.  It was for medical necessities.

15         I don't think whatever I pick up from the Osco for my

16   athlete's feet or for a wart removal is really any of Ms. --

17   Ms. Green's like -- I don't think she's got to know my medical

18   conditions.  And, frankly, I just wanted to come to the court.

19         And I'm really exasperated.  If I can't come to the

20   court -- I guess that the court is shut to a *pro se* indigent

21   litigant.  I don't know what to do here.  I do want to appeal

22   your order, and I have every right to.

23         So I'm -- I'm not fearful.  I'm not doing anything.

24         And you might recall, too, the case that Ms. Petersen

25   brought up, I was before you, and the Seventh Circuit found

1    that a Circuit -- Cook County Circuit Court judge was engaged

2    in a scheme.  So I'm not sure what -- I wish the whole record

3    was --

4            THE COURT:  Well, we keep bringing that up, but it's

5    not an accurate depiction.  But that's neither here nor there.

6    What's most important now is why you are unable to cooperate

7    with Ms. Green, who is a very reasonable pretrial services

8    officer.

9            THE DEFENDANT:  Your Honor, I think it's part of the

10   Pretrial Services' mission is to help me and provide services.

11           If my phone is shut off -- I'm indigent.  I'm not

12   allowed to work.  I'm not allowed to do anything except beg

13   people to let me use a telephone.

14           THE COURT:  Remember, the only reason that you're out

15   was in order for you to work on your case, that was the only

16   reason, because you claimed you were having such difficulty

17   while you were in.

18           So you're supposed to be on home detention, which is

19   the closest equivalent I can have for you to work on your case

20   other than being in, but you're refusing to work with Pretrial

21   Services.

22           THE DEFENDANT:  No, that's not true.

23           THE COURT:  That isn't a service officer to give you

24   things to help you.  It's to monitor you to make sure you're

25   following my court order.

1          THE DEFENDANT:  But to prevent me from coming to

2     court -- there are no electronic systems I can access with the

3     Seventh Circuit Court of Appeals.

4          THE COURT:  I am not concerned about your appeal of my

5     order at this time.  I'm concerned about your failure to comply

6     with the conditions of your supervised release.

7          THE DEFENDANT:  There is no failure.  If Ms. Green

8     allowed me to go to the Jewel-Osco between 2:00 and 4:00, and I

9     walked to the Jewel and Osco, and she knows from her GPS

10    monitoring that I was at the Jewel and Osco, I don't know what

11    the problem is.  I went there, I shopped, I got the items I

12    needed --

13         THE COURT:  Potato chips?

14         THE DEFENDANT:  I'm sorry, what?

15         THE COURT:  You needed potato chips and ice cream?

16    Who is giving you your essential food?

17         THE DEFENDANT:  Your Honor, I -- I was there --

18         THE COURT:  Who is giving you your essential food?

19         THE DEFENDANT:  I get it from various sources, my

20    sister, my girlfriend helps me from time to time.

21         THE COURT:  So then you don't need to go grocery

22    shopping.

23         THE DEFENDANT:  I do need to go grocery shopping from

24    time to time, and I also need to get -- I need some -- some

25    medications.

1      THE COURT:  I don't think that potato chips and ice
2  cream are essential items if you're getting your regular
3  food --
4      THE DEFENDANT:  But --
5      THE COURT:  -- from other sources, so then you're
6  actually misrepresenting to the pretrial services officer why
7  you need to go out and get a trip to Jewel-Osco.
8      THE DEFENDANT:  No, I needed to get some medications.
9  I needed some wart medication.  I needed some -- some athlete's
10  feet med -- foot medication.
11      THE COURT:  And then why didn't you buy it?  They sell
12  that at Jewel-Osco.
13      THE DEFENDANT:  I did.
14      THE COURT:  I thought he bought potato chips and ice
15  cream.  Isn't that right, Ms. Green?
16      PRETRIAL SERVICES OFFICER GREEN:  That is correct,
17  Your Honor.
18      THE COURT:  Okay.
19      THE DEFENDANT:  No, I purchased other things as well.
20  She asked me for a receipt for the food I purchased, and I
21  provided a receipt for food items that I purchased --
22      THE COURT:  Oh, so now you have a receipt for the
23  other items that were paid for separately from the ice cream --
24      THE DEFENDANT:  Absolutely.
25      THE COURT:  -- and the potato chips?

1          THE DEFENDANT:  Absolutely.

2          THE COURT:  And why were they paid for separately?

3          THE DEFENDANT:  Because I was able to pay for them

4    separately, your Honor.

5          THE COURT:  Why?

6          THE DEFENDANT:  Why?  Because --

7          THE COURT:  Why would you do that?

8          THE DEFENDANT:  Because that was convenient to me.

9          THE COURT:  And why wouldn't you show her the receipt

10   for the medication?

11         THE DEFENDANT:  Because I'm a little embarrassed about

12   my athlete's feet.  I'm a little embarrassed --

13         (Unintelligible crosstalk.)

14         THE COURT:  Well, you just told --

15         THE DEFENDANT:  -- everybody.

16         THE COURT:  -- this whole courtroom about it.

17         THE DEFENDANT:  I got the marshals, like, closing in

18   on me here.  I'm scared.  I -- I don't want to -- I don't want

19   to go out and --

20         THE COURT:  Why are you yelling at Ms. Green all of

21   the time?

22         THE DEFENDANT:  Your Honor, I very much miss my

23   family, and I want to --

24         THE COURT:  So that's why you get to yell at

25   Ms. Green?

1          THE DEFENDANT:  No, no.  Not --

2          THE COURT:  She's an officer of the court for me.

3          THE DEFENDANT:  Your Honor, I -- of course I recognize

4     that.  I -- I need access to the appellate court.  The

5     appellate court doesn't allow any electronic filing.

6          THE COURT:  I -- that's not my issue.

7          THE DEFENDANT:  But --

8          THE COURT:  You can raise that issue with them.

9     That's not my issue.

10          THE DEFENDANT:  How can I raise it with them, your

11     Honor?  They -- the Clerk told me we don't have the same

12     volume --

13          THE COURT:  You've never asked Ms. Green to go to the

14     appellate court to file --

15          THE DEFENDANT:  I have, numerous times, and that's the

16     bone of contention here.  I think she has obligation to allow

17     me access to the court.  If I have to come here --

18          THE COURT:  She doesn't have any obligation except to

19     follow the restrictions that I've put on her -- I mean put on

20     you to help me -- excuse me, to help be sure that you comply --

21          THE DEFENDANT:  It's part of the mission.

22          THE COURT:  -- with those restrictions.

23          THE DEFENDANT:  It's part of the mission of Pretrial

24     Services.  I -- I have a right to access the appellate court.

25     I don't think she should stand in front of me and say:  No, you

1    can go to the Jewel-Osco, but you can't go to the appellate

2    court where you might find relief, you might find justice.  And

3    that's why I wanted to -- I don't think Pretrial Services is in

4    a position to deprive a litigant of the court and then say, oh,

5    he's getting angry with that.  Yeah, I am very angry that

6    Ms. Green would keep me from my family and deprive me of going

7    to court.  I don't think --

8         (Unintelligible crosstalk.)

9         THE COURT:  And who is standing to your right?

10    Mr. Chiphe is right there.  You could give him a motion to file

11    with the appellate court.  That's why I gave you standby

12    counsel.

13         THE DEFENDANT:  Your Honor, that's very disingenuous

14    of you, if I might say so, because you were never specific in

15    your order:  Mr. Chiphe is merely available.

16         I cannot contravene your order and make him my

17    messenger boy.  He is an attorney.  He is standby counsel.  And

18    I'm going to treat him as standby counsel.  I'm not going to

19    say, oh, you're my messen -- Judge -- Judge Kendall just told

20    us you're -- you're standby counsel, merely available was your

21    order.  Succinctly said that.

22         So I can't have it both ways.  He's merely available,

23    but yet I could call upon him to do my messenger work?

24    That's -- that's -- I'm in impossible circumstances like that.

25    And I would be disagreeing with your order, Judge.  And I would

1     be in contempt of court.  I can't do that.

2         THE COURT:  That's silly.  And you know it because

3     we've had -- we've gone down this path before.

4         Mr. Chiphe was filing things for you, and then you got

5     angry with him that he didn't file something correctly, and

6     then you started treating him like he was your counsel, and

7     that he was violating his obligations, and then I told him he's

8     standby counsel, he's there to aid you if you need help.  And

9     if you are in -- under house arrest and you can't file

10    something, he's the first person you should call to say I want

11    to appeal Judge Kendall, she's wrong, and I'm going to get it

12    reversed, help me file this in the Seventh Circuit.

13        But you don't want to do it that way.

14        THE DEFENDANT:  Judge, you admonished me.  You

15    admonished me of -- for a filing problem that Mr. Chiphe

16    caused.  And I don't think that's right.  And there's things

17    he's been excerpting, taking out of my -- he's standby counsel.

18    He's merely available.  He can't be taking things that he

19    doesn't like off my motions.

20        It's an impossible circumstance for me.

21        MS. PETERSEN:  Your Honor, I do believe Ms. Green

22    wanted to address the movement to the Seventh Circuit.

23        THE COURT:  Wait, I didn't hear you.

24        MS. PETERSEN:  I said I believe Ms. Green wanted to

25    address the movement to the Seventh Circuit.

1          THE COURT:  Please do.

2          PRETRIAL SERVICES OFFICER GREEN:  Your Honor, last

3    week, Mr. Kowalski did ask permission to file something with

4    the Seventh Circuit, and I did call District Court, and I

5    verified that the only way to file something with the

6    Seventh Circuit was either through the mail or in person.  And

7    because Mr. Kowalski is claiming that he is indigent and has no

8    money for postage, I did tell him last week Thursday that I

9    would give him permission to come down to the courthouse to

10   make this appellate court filing.

11         He told me that he would call me back later in the

12   afternoon because he wanted to go file it Friday morning.

13         I never heard back from Mr. Kowalski.

14         So I actually called Mr. Kowalski back on Friday

15   morning, about 8:00 o'clock in the morning, and let him know,

16   you know, why didn't you call me back?  Are you going to go

17   file this today?

18         And he told me he still didn't have a ride, and he

19   would call me back.

20         So I let him know that if he didn't let me know by

21   11:00 o'clock of what his transportation issues were, he could

22   not be granted the movement until Tuesday.

23         And I never heard back from him.

24         MS. PETERSEN:  And I will add, your Honor, that he did

25   file a response on Friday in the Seventh Circuit.  I don't --

1    he must not personally have filed it, but he found someone to
2    file it for him.

3             THE COURT:  Oh.  Well, how did that happen?

4             THE DEFENDANT:  I was able to get some help, your
5    Honor.

6             THE COURT:  There you go.  So she's not blocking you
7    after all --

8             THE DEFENDANT:  But, your Honor, I shouldn't have to
9    be asking for help from everybody.  I'm indigent.  And I'm not
10   claiming to be indigent.  This case has made me entirely
11   bankrupt.  And I'd like to fight it.  And Ms. Green -- exactly.
12   On Thursday, it's okay; but two weeks prior to Thursday, it was
13   not okay.

14            So give the litigant a chance to fight the case here.

15            I only want to see my family and be reunited.  I'm not
16   asking for a whole lot.

17            And as you heard from Ms. Lira, she wants to be
18   reunited with me as well.  And the problems that we're having
19   with all these witnesses that I can't contact, my rights under
20   the Sixth Amendment are entirely being eroded.  I -- how can I
21   defend myself without witnesses?

22            The government can have as many witnesses.  They're
23   not just like chess pieces that you can take them off the board
24   and put them aside.  I have every right to confront these
25   witnesses.  I have every right to see these witnesses and know

1    their minds.

2            The point of Mrs. Gembara, the reason I was arrest --

3    I was locked up, supposedly, is a point well taken.

4            The discovery that was tendered to me shows that

5    Mrs. Gembara and a bank director were involved in a love

6    triangle.  Well, no wonder why Ms. Gembara didn't want to see

7    me.  No wonder why she wanted to run to the -- her attorney and

8    to the marshals.

9            This is just ridiculous here.

10            THE COURT:  Ms. Green --

11        (Unintelligible crosstalk.)

12            THE DEFENDANT:  Love triangles at this --

13            THE COURT:  -- is it your -- is it your office's

14    position that he cannot be monitored?

15            PRETRIAL SERVICES OFFICER GREEN:  It is, your Honor.

16            THE COURT:  Okay.  Okay.  So based on 18,

17    United States Code, 3148, there is probable cause to believe

18    that you have violated your pretrial release --

19            THE DEFENDANT:  Your Honor, I believe --

20            THE COURT:  -- in a number of ways.

21            THE DEFENDANT:  -- that my filing with the

22    Seventh Circuit has taken prevent -- has taken jurisdiction

23    away from you as well.

24            THE COURT:  The first way is that you are failing to

25    cooperate with your pretrial services officer.  You are

1    becoming aggressive with her and refusing to follow her

2    directions.  And you have indicated in both your filing and in

3    court that you should not have to pay attention to her

4    directions because she is not someone that you need to do that

5    for for various reasons.

6            Also you had previously violated by going outside of

7    the scope of time given to you when you went to the courthouse

8    in the past.

9            You have failed to follow her directions about

10    essential shopping and, in fact, misled her as to the need for

11    the essential shopping, since you admitted here today that

12    others have given you that essential shopping.

13            You've refused to follow her directions regarding how

14    to communicate with her.  And you have been sending various

15    requests to her that are inappropriate since she's told you how

16    to communicate with her.

17            And you've misrepresented that you haven't -- that

18    she's blocked your access to the Seventh Circuit when, in fact,

19    she was cooperative with you in giving you that access.

20            In the past, you had a protective order by your

21    previous wife against you and your current girlfriend.

22    Granted, she now says she's not afraid of you any longer.  But

23    the videotaped display that I saw showed that as soon as the

24    police were called, you fled in order not to be a part of that

25    altercation and be revoked at that time.

1      You have already been placed in pretrial custody, and

2  the only reason I let you out was to work totally on your case,

3  and that is not -- oh, one more thing.

4      You had interfered with the witness early on in the

5  case, and now you have also violated the protective order that

6  the United States has set forth --

7      THE DEFENDANT:  Your Honor --

8      THE COURT:  -- for discovery in this case --

9      THE DEFENDANT:  -- we haven't -- they just filed a

10  motion.  They -- there's been no finding I violated anything.

11      THE COURT:  And, therefore, I revoke your pretrial

12  release and send you to be incarcerated for your pretrial

13  release.

14      THE DEFENDANT:  This is harsh.

15      (Concluded at 10:03 a.m.)

16              C E R T I F I C A T E

17   I certify that the foregoing is a correct transcript of the

18  record of proceedings in the above-entitled matter.

19

20  /s/ GAYLE A. McGUIGAN                    June 3, 2021
    GAYLE A. McGUIGAN, CSR, RMR, CRR
21  Official Court Reporter

22

23

24

25