```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   UNITED STATES OF AMERICA,      )  Docket No. 19 CR 00226, 1-10
                                    )
 4                  Plaintiff,      )  Chicago, Illinois
                                    )  June 24, 2021
 5             v.                   )  1:35 p.m.
                                    )
 6   ROBERT M. KOWALSKI, JAN R.     )
     KOWALSKI, ROSALLIE C. CORVITE, )
 7   JANE V. IRIONDO, ALICIA        )
     MANDUJANO, CATHY M. TORRES,    )
 8   JAMES R. CROTTY, BOGUSLAW      )
     KASPROWICZ, MIROSLAW KREJZA AND )
 9   MAREK MATCZUK,                 )
                                    )
10                  Defendants.     )
```

```
11

12               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE VIRGINIA M. KENDALL

13   APPEARANCES:

14   For the Government:      UNITED STATES ATTORNEY'S OFFICE by
                              MS. MICHELLE PETERSEN
15                            (Present in Courtroom)
                              Assistant United States Attorney
16                            219 South Dearborn Street
                              Chicago, Illinois  60604
17
     For Defendant           MR. ROBERT KOWALSKI, Pro Se
18   Robert Kowalski:        (Present in Courtroom)

19   For Defendant           FEDERAL DEFENDER PROGRAM by
     Robert Kowalski         MR. IMANI CHIPHE (Via Telephone)
20   as standby counsel:     55 East Monroe Street, Suite 2800
                             Chicago, Illinois  60603
21

22

23   Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
                             Official Court Reporter
24                           219 S. Dearborn Street, Room 2504
                             Chicago, IL 60604
25                           312.435.6047
                             gayle_mcguigan@ilnd.uscourts.gov
```

```
1    APPEARANCES:  (Continued)

2

3    For Defendant              MR. WILLIAM SEAN STANTON (Via Video)
     Jan R. Kowalski:           53 West Jackson Boulevard, Suite 1062
4                               Chicago, Illinois  60604

5    For Defendant              FAEGRE DRINKER BIDDLE & REATH LLP by
     Corvite:                   MR. CARRIE ELIZABETH DELANGE (Via Video)
6                               191 North Wacker Drive, Suite 3700
                                Chicago, Illinois  60606-1698
7
     For Defendant              EKL WILLIAMS & PROVENZALE LLC
8    Iriondo:                   MR. TERRY A. EKL (Via Video)
                                901 Warrenville Road, Suite 175
9                               Lisle, Illinois  60532

10   For Defendant              HENDERSON PARKS LLC by
     Mandujano:                 MS. KIMBERLY NICKELSON TARVER (Via Video)
11                              140 South Dearborn Street, Suite 1020
                                Chicago, Illinois  60603
12
     For Defendant              LAW OFFICES OF MARC M. BARNETT by
13   Torres:                    MR. MARC M. BARNETT
                                (Present in Courtroom)
14                              53 West Jackson Boulevard, Suite 1442
                                Chicago, Illinois  60604
15
     For Defendant              LAW OFFICE OF MATTHEW J. McQUAID by
16   Crotty:                    MR. MATTHEW MCQUAID  (Via Video)
                                120 North LaSalle Street, Suite 2000
17                              Chicago, Illinois  60601

18   For Defendant              SHEPPARD LAW FIRM PC by
     Kasprowicz:                MR. ADAM JORDAN SHEPPARD  (Via Video)
19                              180 North LaSalle Street, Suite 2510
                                Chicago, Illinois  60601
20

21

22

23

24

25
```

```
 1    APPEARANCES:  (Continued)

 2

 3    For Defendant            PISSETZKY LAW by
      Matczuk:                 MR. GAL PISSETZKY  (Via Video)
 4                             35 East Wacker Drive, Suite 1980
                               Chicago, Illinois  60601
 5
                               MR. LAWRENCE H. HYMAN  (Via Video)
 6                             111 West Washington Street, Suite 1025
                               Chicago, Illinois  60602
 7

 8    ALSO PRESENT:            MS. CHRISTA GREEN
                               Pretrial Services Officer
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (In open court.)

2          (Defendant Kowalski enters the courtroom.)

3               THE CLERK:  Case number 19 CR 226, Defendants 1

4     through 10, U.S. versus Robert Kowalski, Jan Kowalski, Rosallie

5     Corvite, Jan Iriondo, Alicia Mandujano, Cathy Torres, James

6     Crotty, Boguslaw Kasprowicz, Miroslaw Krejza, and Marek

7     Matczuk.

8               Please introduce yourself, starting with the

9     United States.

10              MS. PETERSEN:  Good afternoon, your Honor.  Michelle

11    Petersen for the United States.

12              THE COURT:  Good morning -- or good afternoon.  Excuse

13    me.

14              Let me go down the line.

15              For Jan Kowalski, I see her on the line.

16              Is Mr. Stanton there?

17              MR. STANTON:  Good afternoon, Judge.  Bill Stanton on

18    behalf of Jan Kowalski.

19              THE COURT:  Okay.  Mr. Stanton, you're very quiet, so

20    just if you can get closer to your microphone or turn up your

21    volume.

22              And Rosallie Corvite?

23              MS. DELANGE:  Yes, your Honor.  Carrie Delange --

24         (Unintelligible crosstalk.)

25              DEFENDANT CORVITE:  Yes --

1          THE COURT:  I didn't hear that because people were

2     talking over each other.

3          Is Ms. Corvite here?

4          DEFENDANT CORVITE:  Yes, your Honor.

5          THE COURT:  Okay.  And your attorney?

6          MS. DELANGE:  Yes, your Honor.  Carrie Delange on

7     behalf of Ms. Corvite.

8          THE COURT:  Okay.  Thank you.

9          And Ms. Iriondo?

10         MR. EKL:  Good afternoon, your Honor.  Terry Ekl on

11     behalf of Jane Iriondo, who is present as well.

12         DEFENDANT IRIONDO:  Good -- sorry.  Good afternoon,

13     your Honor.  Jane Iriondo.

14         THE COURT:  Good afternoon.

15         And for Alicia Mandujano?

16         MS. TARVER:  Good afternoon, your Honor.  This is

17     Kimberly Tarver on behalf of Alicia Mandujano.  And I believe

18     her presence was waived previously.  And if it was not, I ask

19     the Court to waive it for today.

20         THE COURT:  Okay.  I will do so.

21         And James Crotty?

22         MR. McQUAID:  Your Honor, Matt McQuaid.  I'm here on

23     behalf of James Kopecky.  I am standing in for him today on

24     behalf of Mr. Crotty.

25         THE COURT:  Okay.  Matt McQuaid.

1            Is Mr. Crotty on the line or is he waived?

2            MR. McQUAID:  Judge, Mr. Kopecky didn't tell me.  I

3    assume that he was because otherwise Mr. Crotty would be on the

4    line.

5            THE COURT:  Okay.  Mr. Kasprowicz?

6            DEFENDANT KASPROWICZ:  Yes, your Honor.  I'm here.

7            MR. SHEPPARD:  Good afternoon, your Honor.  Adam

8    Sheppard on behalf of Boguslaw Kasprowicz, who is present

9    telephonically.

10            THE COURT:  Thank you, Mr. Sheppard.

11            Okay.  And Miroslaw Krejza?

12        (No response.)

13            THE COURT:  And Mark Matczuk -- Marek Matczuk.

14            THE CLERK:  There's one more, your Honor --

15            MR. PISSETZKY:  Your Honor, Gal Pissetzky and Lawrence

16    Hyman for Mr. Matczuk --

17            THE COURT:  Wait, I didn't hear.  I cannot hear.

18            MR. PISSETZKY:  Gal Pissetzky and Lawrence Hyman for

19    Mr.  Matczuk.

20            THE COURT:  Okay.  Thank you.

21            MR. PISSETZKY:  And his presence was excused today.

22            THE COURT:  Okay.  And who was the other one?

23            THE CLERK:  Ms. Cathy Torres.

24            THE COURT:  And Ms. Cathy Torres?

25            MR. BARNETT:  Good afternoon, your Honor.  I'm in

1    court for her today.  Her presence was waived.

2              THE COURT:  Your name, sir?

3              MR. BARNETT:  Marc Barnett.  B-A-R-N-E-T-T.

4              THE COURT:  Thank you.

5              And Mr. Kowalski?

6              DEFENDANT ROBERT KOWALSKI:  Good afternoon, your

7    Honor.  Robert Kowalski here.

8              THE COURT:  Okay.  And Mr. Kowalski.

9              Okay.  All right.  Did I get everyone?

10             MR. CHIPHE:  No, your Honor.

11             Good afternoon.  Imani Chiphe, Federal Defender

12   Program, standby counsel for Mr. Kowalski.

13             THE COURT:  Thank you, Mr. Chiphe.

14             I'm going to turn it over to the prosecutor now, and

15   you can let me know the progress of discovery, please.

16             MS. PETERSEN:  Yes, your Honor.

17             Since our last status, every defendant has received at

18   least one discovery production.  Discovery is continuing on an

19   ongoing basis.  Each defendant has hundreds of thousands of

20   pages of discovery.  There is some discovery still to be

21   produced.  The two biggest buckets are -- the first biggest

22   bucket are these electronic records that we have talked about

23   with the Court before.  Those are being processed offsite.

24   Unfortunately, we had to stop and restart the processing of

25   those records because, in a filing, Robert Kowalski alleged

1   that he represented John Gembara personally.  That changed some

2   of the attorney-client privilege filtering that we needed to

3   do.  So the process is starting again.  It's -- because it's

4   over a million single files, they have to be processed and

5   exported natively.  The estimated date of the completion of

6   that from our LTSC in South Carolina is the end of August.

7             THE COURT:  Okay.  All right then.  And are you still

8   intending to have another superseding indictment?

9             MS. PETERSEN:  Yes.  Yes, your Honor.

10            THE COURT:  Okay.  And any suggested timing on that or

11   not?

12            MS. PETERSEN:  We -- our grand jury expired, so we had

13   to start over with a new grand jury.  We're in the process of

14   getting that grand jury back up to speed.  So it won't be

15   imminent, but we do want to get to it as quickly as possible.

16            THE COURT:  Early August, late August, for this

17   production?

18            MS. PETERSEN:  It will be done in -- it will probably

19   be September because then it has to be loaded onto everyone's

20   hard drives individually, and that will take a couple days per

21   hard drive.  So it will kind of be rolling as when people get

22   their hard drives.

23            THE COURT:  Okay.

24            MS. PETERSEN:  There's also some physical records that

25   we had made available for review that we are now having copied

1    offsite.  I think those will be done by then as well.

2         THE COURT:  Okay.  All right.  So my suggestion would

3    be, before I hear from any defense attorneys, that we have a

4    status out in later September.

5         But let me go down the line and talk with defense

6    attorneys to get a sense of how things are going.

7         So Mr. Stanton on behalf of Jan Kowalski?

8         MR. STANTON:  Yes, Judge.  I think a status in late

9    September would be reasonable (inaudible - audio feedback) to

10   log through the discovery productions thus far and (inaudible -

11   audio feedback).

12        THE COURT:  I didn't hear the very last thing you

13   said.

14        MR. STANTON:  I said I still have a ways to go on the

15   discovery materials.

16        THE COURT:  Okay.  Understood.

17        And may I hear from Ms. Delange, please?

18        MS. DELANGE:  Yes, your Honor.  We agree with the

19   government that a status during late September would be good

20   for Ms. Corvite.

21        THE COURT:  Mr. Ekl, how are things going with

22   Ms. Iriondo's case?

23        MR. EKL:  Very well, Judge.  We're making significant

24   progress toward a resolution of her case.  And late September

25   is an appropriate date.

```
 1              THE COURT:  Okay.  And Mr. McQuaid for Mr. Crotty?
 2              MR. McQUAID:  Your Honor, I believe that things are
 3   progressing towards a possible resolution.  And the late
 4   September date is acceptable as well.
 5              THE COURT:  Okay.  Mr. Sheppard?
 6              MR. SHEPPARD:  I concur with the late September status
 7   date, your Honor.
 8              Just as a preview, Mr. Kasprowicz is still on
 9   electronic home monitoring as a condition of bond.  And this is
10   with the consent of the government.  That is to remain in place
11   until he possibly posts a property bond, which involves a
12   California property.
13              There are no motions before the Court.  It is just a
14   potential preview, between now and September, we may bring that
15   before the Court.
16              THE COURT:  Okay.  Understood.
17              And Mr. Pissetzky?
18              MR. PISSETZKY:  A September date is good with us, your
19   Honor.
20              THE COURT:  I didn't hear that.
21              MR. PISSETZKY:  A September date is good with us, your
22   Honor.
23              THE COURT:  Okay.  Thank you.
24              All right.  So -- and Mr. Kowalski.
25              DEFENDANT ROBERT KOWALSKI:  Your Honor, I can't agree
```

1      to that date.  I'm obviously incarcerated.  And, moreover, I've

2      been hearing about this discovery like a mirage.  I heard about

3      it in December of 2020.  I heard about it in 2019.

4            I think it's time for the government to lay its cards

5      on the table and to bring forth the proof they have that I did

6      anything wrong.

7            I represented the bank.  I represented the president

8      of the bank whose untimely demise caused this problem here.

9            I think we need -- they need to bring out what they

10     have already instead of playing around saying they have

11     millions of things to bring out, but yet you have nothing for a

12     defendant who is questing to exonerate himself.

13           Thank you, Judge.

14           THE COURT:  Okay.  So what has been sent over to

15     Mr. Kowalski?

16           MS. PETERSEN:  Yes, your Honor.

17           So since he has been incarcerated -- I'm flipping to

18     my notes -- the government first, on about June 8th, we sent

19     over the materials that we had obtained from the divorce

20     receiver that were at Da Vinci's Bar.  That's both materials

21     that were on a thumb drive as well as copies of the physical

22     records that had been taken.

23           THE COURT:  Okay.

24           MS. PETERSEN:  Some of that had been produced to him

25     before, some of that was being scanned offsite, so he got it

1   sort of for the first time.

2          Earlier this week -- I worked with the officials at

3   the MCC to let him have an external hard drive at the MCC.

4          Once we worked that out, earlier this week I mailed

5   that hard drive to him.  He probably doesn't have it yet.  It

6   wouldn't fit through the legal mail slot, so we had to mail it.

7          That has a reproduction of all discovery to date.

8          It also has approximately 35,000 new pages.  And when

9   we're talking about those electronic records that are being

10  processed by the LTSC, I was able to provide to Mr. Kowalski

11  over 500,000 of those electronic items by sort of processing

12  them separately.  Those are check images and they're electronic

13  bookkeeping records.

14         So he is getting a rather large chunk of those

15  electronic records as soon as he gets his hard drive.  And

16  he'll get the rest at the end of August when they're done being

17  processed.

18         THE COURT:  When was that sent over?

19         MS. PETERSEN:  I sent it June 22nd, your Honor.

20         THE COURT:  Okay.  Two days ago.

21         MS. PETERSEN:  Yeah.

22         THE COURT:  You worked with the MCC to let him have

23  access to the external hard drive?

24         MS. PETERSEN:  Correct, yes.

25         THE COURT:  Okay.  All right.  Good.  All right.

1    Well, there you go.  You're going to have a big windfall in a
2    couple days with the mail -- when the mail comes.
3         All right.  Let me take --
4         MS. TARVER:  Your Honor, if I may, this is Kimberly
5    Tarver on behalf of defendant Alicia Mandujano.  You didn't
6    call me.
7         I just want to note that we are also fine with the
8    late September date.
9         We have had several conversations with the
10   U.S. Attorney and are making progress, but we believe that date
11   would be appropriate as well.
12        Thank you.
13        THE COURT:  Okay.  Thank you.
14        THE CLERK:  And Ms. Cathy Torres.
15        THE COURT:  And Ms. Torres, are you fine with the late
16   September date?
17        MR. BARNETT:  Yes, I'm fine with that.
18        THE COURT:  Okay.  So on behalf of Ms. Torres, do you
19   exclude time -- I'm going to give the date of September 30th --
20        MR. BARNETT:  Yes.
21        THE COURT:  -- at 10:00 o'clock.
22        Time excluded for Ms. Torres.
23        And for Ms. Mandujano, do you agree to the exclusion
24   of time until September 30th?
25        MS. TARVER:  Yes, your Honor.  Thank you.

1          THE COURT:  Okay.  And Mr. Sheppard, do you agree to

2     the exclusion of time?

3          MR. SHEPPARD:  Yes.

4          THE COURT:  Mr. Pissetzky, do you agree to the

5     exclusion of time?

6          MR. PISSETZKY:  Yes, your Honor.

7          THE COURT:  Ms. -- Mr. Ekl, do you agree to it?

8          MR. EKL:  Yes, your Honor.

9          THE COURT:  And Ms. Delange, please, do you agree to

10    it?

11         MS. DELANGE:  Yes, your Honor.

12         THE COURT:  Mr. Stanton, do you agree to it?

13         MR. STANTON:  Yes, your Honor.

14         THE COURT:  Okay.  And then Mr. Kowalski, do you

15    agree?

16         DEFENDANT ROBERT KOWALSKI:  No.  It's very violative

17    of my speedy trial rights, your Honor.  And, moreover, this has

18    been -- been so many times the government has been before you

19    promising they're going to release something.  Now they're

20    going back to the drawing board.  It's frankly egregious, your

21    Honor.

22         THE COURT:  Okay.  So you don't agree to the exclusion

23    of time?

24         DEFENDANT ROBERT KOWALSKI:  Absolutely not.  No.

25         THE COURT:  Okay.

1          DEFENDANT ROBERT KOWALSKI:  It's time for them to

2     bring forth whatever they have.

3          THE COURT:  Okay.  So if you're not going to agree to

4     the exclusion of time, what about reading the materials that

5     you are going to be getting this week?

6          DEFENDANT ROBERT KOWALSKI:  Well, your Honor, in the

7     half hour that I'm allotted out of my cell, I have barely

8     enough time to shower and for a brief phone call to my family

9     who I miss very much, so it's going to be very difficult to do

10    anything at the MCC.

11         THE COURT:  Do you know what the situation is for him

12    reviewing?

13         MS. PETERSEN:  I have spoken to the MCC about it and I

14    understand he can request additional computer time, but I can

15    work with them to try to see if there's a way that he can get

16    more time in front of a computer, your Honor.

17         THE COURT:  Okay.  Please do so.

18         DEFENDANT ROBERT KOWALSKI:  Your Honor, with millions

19    of files, I need more than just a little additional time here.

20    And, moreover, where are these millions of additional files at?

21    It's really time to bring them forth and quit -- quit playing

22    with me.  It's not very enjoyable being in these leg irons, I

23    can assure you, your Honor.

24         THE COURT:  Okay.  So that statement is a little bit

25    different from saying that you don't want to exclude time.

1   Either you want the time to review the millions of files or you

2   don't.  What do you want?

3          DEFENDANT ROBERT KOWALSKI:  I want to go to a trial.

4   I think I have a speedy trial right that's been violated many

5   times over.  I have filed many motions that have not been

6   heard, your Honor.

7          I think it's time for the Court to -- you know, let's

8   cut to the chase here.  Let's make some decisions and move this

9   thing forward.

10         THE COURT:  Okay.  So let's do this.  Let's have a

11  status on July 12th.

12         You'll have to put it between those two hearings, I

13  think, for Mr. Kowalski alone, just to see if he gets his

14  materials and how the review is going.

15         I'm going to exclude time over objection until that

16  date based upon the production of discovery.

17         And we'll see you again, alone, Mr. Kowalski, to see

18  whether you got the materials that you need to defend yourself.

19         Okay.  Did I get all of the defense attorneys for an

20  exclusion of time?  Did I miss anyone?

21         MS. PETERSEN:  I believe we missed Mr. McQuaid for

22  Mr. Crotty, your Honor.

23         THE COURT:  I don't think so.  Mr. McQuaid, did I?

24         MR. McQUAID:  Yes, Judge.

25         THE COURT:  Do you agree to the exclusion of time,

1    sir?

2              MR. McQUAID:  We do, Judge.

3              THE COURT:  Okay.

4              MS. PETERSEN:  And then the only defendant who is not

5    here is Mike Nash for Mr. Krejza.

6              THE COURT:  I know.  So I'll exclude until we see

7    Mr. Nash again.

8              Do you want me to set a status for him since he's not

9    here?

10             MS. PETERSEN:  Yes, your Honor.

11             I can report that I did reproduce to him all discovery

12   produced to date because he's new to the case.

13             THE COURT:  Okay.  Let's bring him over here on

14   July 15th at the 9:30 call.

15             DEFENDANT ROBERT KOWALSKI:  Judge, may I make a motion

16   for my reinstatement of bond?

17             THE COURT:  You can.  But at this date, there's no

18   changed circumstances.  So you can file something, if you would

19   like, to tell me --

20             DEFENDANT ROBERT KOWALSKI:  I have filed many things

21   that have not been heard, your Honor.

22             THE COURT:  Okay.

23             DEFENDANT ROBERT KOWALSKI:  And one of those is a

24   reinstatement of my bond.  I did nothing to cause my bond to be

25   violated to begin with.

1          THE COURT:  Right.

2          DEFENDANT ROBERT KOWALSKI:  I just -- I was out on

3   bond for two years.  I never had a problem with a pretrial

4   officer except Ms. Green.  And that was over the circumstances

5   of me being desirous of appealing the conditions of bond, which

6   prevent me from having witnesses, prevent me from investigating

7   my case.  They prevent me from doing almost anything.

8          And worst of all, it prevented me from filing

9   something with the Seventh Circuit here.  And I find that

10  particularly outrageous.  The doors of the courtroom cannot be

11  nailed shut by my Pretrial Services Officer.  To a certain

12  extent, her job is to supervise me, but it's also to make me

13  successful throughout this process and be able to comply with

14  this Court's orders.

15         And when this Court allowed me to serve as my own

16  attorney, that also meant that if I had to go to the

17  Seventh Circuit to appeal one of your Honor's rulings, that she

18  needed to cooperate with me to some extent to do that rather

19  than to trump up some false violation in order to enmesh me in

20  these leg irons.  This is totally -- totally wrong.

21         I'm separated from my family.  What man does not want

22  to be with his family?  What man does not want to raise a

23  2 1/2-year-old son?  And I've been very blessed, your Honor.

24  I'm 59 years old.  And, yes, I have a 2 1/2-year-old son.  And

25  I want to raise that boy.  And that's why I'm asking for a

1   speedy trial.  And that's why I want to go home, your Honor.  I

2   want to fight this case straight up.  The government has so

3   many more resources than I will ever.  But they will not even

4   let me out of these leg irons to fight these -- these cases,

5   this -- this charges, which are totally wrong.

6           There's no way as a matter of law that I could have

7   conspired with this banker.  I was his attorney.  I was this

8   bank's attorney.  And I did not do anything wrong to this bank,

9   for God's sake.

10          And, moreover, they took their false claims and they

11  trucked them right through the bankruptcy court, knowing that

12  there were fake loans, knowing that there are forgeries.  But,

13  nonetheless, they still brought them into the bankruptcy court.

14          It's totally wrong that this fraud has been allowed to

15  perpetuate.

16          And what's really wrong about it is we have an

17  organization, we've got an entity of the United States

18  government, the OCC, who is supposed to be protecting people.

19  When people see the "FDIC" logo on the front door, they're

20  supposed to know that we got some good business going on here,

21  that we're not with Vinnie, the loan shark, in the back room.

22  But that's not what happened here.

23          And we have this man who doesn't have a name.  He is

24  called ABC Number 1.  For years he couldn't get his job right.

25  And in the report of the Inspector General of the Treasury,

1    he's noted, and all of his assistants were noted, how he wasn't

2    supervising.  He wasn't doing his job.  And because he wasn't

3    doing his job, I'm stuck like this in an orange jumpsuit rather

4    than standing tall like an officer of the court should?  I've

5    been an attorney for 30 years.  And I didn't need to defraud

6    anybody.  This is wrong.  And there's an inherent fraud.  And

7    it's in the government, it is in the OCC, that these regulators

8    who are trained individuals couldn't do their job.  What a --

9    what a wonderful convenience.

10            And then we've got a banker -- when I filed the

11   motion, your Honor, please exhume this man, something is not

12   right.  He's got extra rope marks on the back of his neck,

13   which are clear on a photo, and that the Park Ridge Police

14   Department took note of these photographs, and they actually

15   put a little forensic sign on his neck.  Something is wrong

16   here.  Something is wrong when the medical examiner of Cook

17   County doesn't do all the toxicology reports.  Something is

18   wrong when the Park Ridge Police, that they do special

19   treatment, and yet they don't have any of the samples that they

20   took analyzed.

21            This is not just -- look at the pictures.  He has red

22   marks on his hands.  He did not die from a suicide.  He was a

23   Catholic.  That would have been against his faith.  And, yes,

24   he was very religious, this man.  I knew him for more than 30

25   years.  He was a good man, to a certain extent.  And this is

1  not right what happened to him.

2      And there's an inherent fraud, and there's an inherent

3  murder that's at the heart of this case, Judge.

4      And I'm not here -- look at the pictures.  They speak

5  for themselves, Judge.

6      The police reports are outrageous, that we got the

7  FDIC agents contacting the Park Ridge Police.  Why?  Are they

8  like -- they're FDIC.  They sell insurance.  All of a sudden

9  they're murder investigations?

10      And, moreover, we have Mr. Netols having conversation

11  with the ARDC, saying that, yes, this is a murder

12  investigation, a death investigation.  Absolutely it is.

13  There's no way he could have died like that.

14      Thank you, Judge.

15      THE COURT:  Okay.  Well, the reason that you are still

16  incarcerated is because you wouldn't work with Ms. Green, so

17  we'll have to address that at a later time --

18      DEFENDANT ROBERT KOWALSKI:  I'm indigent.  There's no

19  way -- I have an obligation to go to court, whether Ms. Green

20  lets me or not, even if that means walking to court for 20

21  miles.  There's no way an indigent man -- I don't have

22  resources to call Uber and get to court in the morning.  I need

23  my family.  I need that support that I've been taken away from

24  me.  And I love my son.  And there's no way I could stand

25  before you and say, no, I don't want to be with my -- I love my

1    sister, don't get me wrong, but I love being with my family.  I

2    love raising my child.  That's what gives me inner purpose and

3    inner meaning.  And Ms. Green cannot take that away from me by

4    not letting me file an appeal of your Honor's order.  I think

5    that's what our nation is built upon are our laws.  I don't

6    think it's Ms. Green's job to determine what laws she's going

7    to enforce or how is supervision.

8           And what's really disingenuous about Ms. Green is on

9    the Thursday, before I was able to file my appeal, she called

10   me up and said, oh, that's okay to go to -- go to -- to

11   appeal -- to file your appeal now.

12          Where was she two weeks before that?  It's wrong.  I

13   needed to file my appeal.  And I had every right to do so.  And

14   she is standing in the way of me filing an appeal?  That is not

15   proper supervision.  That is just -- it's tyrannical, frankly.

16   Why -- what gives her the right to tell me I can't go to court

17   and act like an attorney?  You gave me the right to represent

18   myself, not Ms. Green.

19          And I'm sorry if Ms. Green didn't like that I was

20   going to appeal her supervision of me, but that was my every

21   right, and I meant Ms. Green no disrespect.  And every other

22   pretrial officer I had, I was able to work with.  We were able

23   to come to an understanding, except Ms. Green.

24          And this comes right on the heels of me filing a

25   motion to exhume Mr. Gembara.  Right -- in October, before I

1    was previously incarcerated, I had also filed a complaint, a

2    FOIA complaint, with the Cook County Court.  Right thereafter,

3    I'm hustled into court.

4            What is so critical about this man and his body that

5    every time I raise an issue through the court system, as an

6    attorney should, I'm hustled off to court -- off to jail.

7            And this is not fun being in jail here.  I can't

8    appear before you as an attorney.  I have to be in this clown

9    outfit.  I think I've earned the right -- I've been an officer

10   of this court for the same 30 years.  I deserve to be treated

11   with a little bit of respect instead of being hustled off.

12           Ms. Green is not a tyrant.  She doesn't have the last

13   word.  She needs to let me have constitutional rights, your

14   Honor, that you gave me when you allowed me to represent

15   myself.

16           THE COURT:  Okay.  You have Mr. Chiphe to file in the

17   Seventh Circuit for you.

18           DEFENDANT ROBERT KOWALSKI:  Your Honor, your order

19   specifically -- Mr. Chiphe is merely available.  I can't make

20   Mr. Chiphe -- and, frankly, I would find it very hard to offend

21   him like that -- to make him a messenger boy.  He is not.  In

22   your words, in your order, merely available.  And I take your

23   Honor's words to heart.  When he's merely available, that

24   doesn't mean I can use him as the FedEx man.  That's not fair

25   to Mr. Chiphe at all.  He's a man of learning and education,

1    and he deserves to be treated with a certain amount of respect.

2    And as a fellow professional, I can't treat him like he's just

3    my, hey, Imani, can you pick this up and -- no, that's not his

4    role.  He is merely available.  And your words could not be any

5    more succinct, your Honor.

6            I just simply would ask the Court to hear its own

7    rulings and let them take form, and they take form and not --

8            THE COURT:  Right, and Mr. Chiphe is available to file

9    any appeals of my orders to the Seventh Circuit, and

10   Mr. Chiphe --

11       (Unintelligible crosstalk.)

12           DEFENDANT ROBERT KOWALSKI:  Not what your order said.

13           THE COURT:  -- is very well -- well-respected by this

14   Court.  He's not an errand boy.  He is a seasoned lawyer.  He

15   knows how to file --

16           DEFENDANT ROBERT KOWALSKI:  He's merely available.

17           THE COURT:  And what's the difference?

18           DEFENDANT ROBERT KOWALSKI:  It's a huge --

19           THE COURT:  He's available to file your documents.

20           DEFENDANT ROBERT KOWALSKI:  That's not what your order

21   said, your Honor.

22       (Unintelligible crosstalk.)

23           THE COURT:  He's merely available to file them today,

24   tomorrow, or the next.

25       (Unintelligible crosstalk.)

1     DEFENDANT ROBERT KOWALSKI:  No, that means he's a

2  messenger boy.  That's not right to him.

3     THE COURT:  Enough.

4     DEFENDANT ROBERT KOWALSKI:  It's offensive.

5     THE COURT:  Enough.  Okay.  Really.  Let's see him in

6  a few weeks to check on his status of his discovery, as usual.

7  Okay?

8     DEFENDANT ROBERT KOWALSKI:  It shouldn't be as usual.

9     THE COURT:  The rest of you, I will see you in

10  September when you get your remaining documents.  Okay?

11     Thank you.

12     THE CLERK:  All rise.  Court is adjourned.

13     MULTIPLE SPEAKERS:  Thank you, your Honor.

14     (Concluded at 1:58 p.m.)

15                    C E R T I F I C A T E

16     I certify that the foregoing is a correct transcript, to

17  the extent possible, of the record of proceedings in the

18  above-entitled matter given the limitations of conducting

19  proceedings via telephone.

20

21  */s/ GAYLE A. McGUIGAN*                    *July 11, 2021*
    GAYLE A. McGUIGAN, CSR, RMR, CRR
22  Official Court Reporter

23

24

25