FILED
NOV 30 2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19 CR 226-1 |
| ) | |
| ROBERT M. KOWALSKI, ) | Hon. Virginia M. Kendall |
| defendant ) | |

## MOTION TO ENJOIN SUPPRESSION
## (BRADY VIOLATION)

Now Comes Robert M. KOWALSKI, (Robert), for his Motion to Enjoin Suppression of exculpatory Brady Material to deter investigation pursuant to Federal Rule of Criminal Procedure 16, the Due Process Protection Act of 2020, and Brady v. Maryland states as follows:

The accuracy of the verdict is in jeopardy where our prosecutor surpresses exculpatory evidence designed to deter and forestall a defendant's investigation. On July 2, 2020 FDIC Special Agent testified before the Grand Jury (Page 75, Line 6) that: "law enforcement and analysts were still working, fine tuning and double checking their work". Nevertheless, now that another year and a half has passed the fruits of their labor, has still not trickled down to defendant.

1.

As a result, the haystack of information that has reached Robert is an incomplete, disjointed, disconnected, jumbled together morass of uncorrected alteration. Prosecution has tossed about the term "ongoing rollout" to justify their continued lagging suppression of available salient information. which if it had been provided, as it should have already been, would have shed light on the practices of the shady OCC auditing practices of ADC# 1. The work of these auditors must stand for itself in the light of day for what it represents. It is chilling that as government brothers in arms the prosecution has not released Brady information it most clearly possesses and is sitting upon to benefit remiss OCC.

The State's interest in prevailing at trial - unlike a private litigant is necessarily tempered by its interest in a fair and <u>accurate</u> adjudication of criminal cases. A state may not legitimately assert an interest in the maintenance of an strategic advantage over the defense, if the result of that advantage is to cast a pall over the <u>accuracy</u> of the verdict obtained. Ake v. Oklahoma 470 U.S 68 (1985). The OCC director of special Supervision in her letter cautioned:

"We determined that Washington Federal Bank (WFB) records are <u>inaccurate</u>, and there was a breakdown of internal controls that resulted in a loan fraud scheme orchestrated by bank employees. Failure to establish an <u>accurate</u> and complete record of all business it transacts is an unsafe or unsound practice and violation of 12 CFR 163.170(c)."

Amplifying her great trepidation the director further elaborated:

②

"great concern regarding the lack of internal controls and breakdown with respect to <u>accuracy</u> and completeness of WFB books and records may seriously <u>prejudice</u> the interests of the bank's depositors or the deposit insurance fund".

On Thursday November 18, 2021 U.S. Asst Attorney Ms Peterson met with Robert at the MCC hoping to resolve technical discovery issues. One matter surfaced that underscores and emphasizes the altered quality of WFB record based discovery and a corresponding need for fullsome prosecution disclosure. An extremely pixilated edition of a WFB Loan trial balance was provided to Robert. (See Bates OCC-14-000003). When downloaded and opened by any computer this Loan Trial Balance is unable to be reviewed. The spreadsheet windows of information appear exceedingly crunched together, small, compressed and narrow. As one tries to compensate by enlarging the electronic version it quickly loses all resolution. Accordingly, Robert assumed that this format issue represented yet another computer related problem.

<u>ROSE COLORED GLASSES NOT STRONG ENOUGH</u>!!!

Helpfully, Ms Peterson immediately cleared up the misunderstanding. It was something other than a computer glitch problem. Explaining, that she learned co-defendant James Crotty admitted in his statement to law enforcement, the pixilated

format was a deliberate ruse alteration to deceive the OCC audit team. Apparently this did not require much effort. The text is extremely compressed, cramped, funky and alternately blurry on Mr Crotty's altered Loan Trial balance. These OCC auditors must have possessed super strength magical BEER GOGGLES to accept these trial balances as real. The distorted nature of the Loan Trial Balance renders the entire document illegible, inherently sketchy. This critical part of the audit was rendered simply not susceptible to review. The obvious implication being that these OCC bank audits performed by ADC#1's street crew obviously were never intended to be a meaningful crucible of WFB financial strength.

There has been quite enough of hiding trees amongst the forest or in this case "GHOST LOAN ACCOUNTS" amongst otherwise legitimate loans. It is one thing to have a smeary blurry loan trial balance. Yet, it represents an ominous development to have a blurry Loan Trial Balance that was created to deceive auditors and in fact did. That conclusion does not leap off the pages of the inanimate loan trial balance by itself. Without the addition of other related information, that the prosecution zealously guards these matters evade Roberts review. This blurry pixilated document takes on significant importance once one learns how and why Mr Crotty cooked it up.

It is not feasible for the defendant to avoid such inaccurate unreliable pitfalls, where the USAO deliberately withholds critical information known to it to frustrate meaningful review.

(4)

Allowing a defendant fighting for his freedom to blunder into the first pot-hole to his prejudicial detriment. Due Process requires that the prosecution disclose evidence favorable to defendant upon request, where evidence is material to guilt or punishment. Brady v. Maryland 373 US 83 (1963). Defendant requested information about trial loan balances. It would have been favorable to have learned of Mr. Crotty's feat of computer daring do much earlier. This would have placed the significance of these loan trial balances into proper perspective for accurate review.

This same theme runs throughout the entire document that these WFB records consist of. Prosecution as architect of an unfair trial knows where the salient altered exculpatory unreliable parts of the WFB records are locked in their files. But refuses to allow defendant taste the sweet vindication of justice from that well. Many years ago, the OCC director of Special Services had determined that the WFB records are altered and unreliable. There is not going to be an accurate verdict if the prosecution, like the FDIC-R before, continues to pass off these records as representing normal business activity. Regrettably, WFB records have been twisted, cut, pasted, and contorted out of all recognition as such. Like a careful janitor cleaning a spill, our prosecution has a duty to post adequate warning lest another soul be lost to hoodwinking WFB fraud. This fullsome disclosure is the very heart of Brady.

The prosecution had a duty to correct the perception that the Loan trial balance material was legitimate and failed to do so. This WFB discovery is teeming with falsity, consistent with its creation. But that does not allow prosecutors to let defendant walk out into a minefield without being alerted to the presence of mines. As long ago as in Mooney v Holohan 294 U.S. 103 (1935) the Court confirmed that: deliberate deception of a court and jurors in a criminal case by the presentation of known false evidence is incompatible with rudimentary demands of justice. The prosecution can not continue to operate what amounts to a Ponzi scheme to Robert's detriment.

The peculiar complicity of the OCC auditors in the WFB failure was well noted in the Inspector General of the U.S treasury material failure report dated November 6, 2018. ADC #1 was roundly criticized by his team for his lack of supervision. The prosecutors has a duty to provide exculpatory information known to it, not hush it up.

### BRADY ANALYSIS

A Brady violation has been committed. All three elements have been satisfied.
1.) The evidence, Mr Crotty's statement, is favorable to the accused because it is exculpatory, or because it is impeaching.
2.) This evidence had been suppressed by the government either willfully or inadvertently; they were not sharing.
3.) Prejudice has ensued because Robert's defense has been deflected from a field ripe for investigation.

⑥

This is the analysis required by the Court under Strickler v Green 527 U.S. 263 (1999) and the 7th Circuit in Gordy v. Cummings 922 F2d 834 (7th Cir 2019). There is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Hence the prejudicial nature of the grindingly deliberate slow "rollout".

A court order is required to secure government's compliance with its obligations. The episode of Crotty's Loan trial balance is an indication that government continues to deliberately conceal otherwise exculpatory evidence in the information it turned over to defense via material omissions. The whole story is needed. If unchecked will deprive defendant of a fair trial. An order from the Court would provide an important safeguard against continuing Brady violation that can occur in large document cases when exculpatory material can hide in plain sight. The suppression experienced denies the defendant an opportunity to confront and use relevant material at trial. It creates an irreparable harm for which no damage award could ever compensate.

Under Brady, Due Process Protection Act, and Federal Rule of Criminal Procedure 16, the government is obligated to identify and provide to an accused any exculpatory of which it is "aware." Ms. Peterson was certainly aware and familiar with Mr Crotty's statement. There is no good reason for the

7.

prosecution to suppress this information nor the hoard of material its analysts and agents have prepared.

Wherefore, Robert requests this Court enter an order:

1.) Dismissing this case
2.) Compel the prosecution to identify all known exculpatory information within its voluminous production.
3.) Reinstate Robert's bond so that he may prepare for trial and investigate
4.) Compel government to produce Crotty's statement and that of any similarly situated notes and statements from agent interviews it is aware of.
5.) Compel government to correct the known false evidence per its obligation per Napue v. Illinois 360 US 264 (1959).
6.) Sanction government for having failed to comply with its duties
7.) All relief that the court deems just and proper.

Respectfully Submitted

_Robert M. Kowalski_
Robert M. Kowalski
#53527-424
Metropolitan Correctional Center
71 West Van Buren Street
Chicago, Illinois 60605

⑧

Robert M. Kowalski
#53527-434
Metropolitan Correctional Center
West Van Buren Street
Chicago, Illinois 60605

Legal Mail

CLERK OF UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
Chicago, Illinois 60604

METROPOLITAN CORRECTIONAL CENTER
71 W. VAN BUREN ST, CHICAGO, IL 60605

NOV 2 3 2021

If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material to the proper authority for action or disposition. In either situation, consideration may be given for forwarding the material to addressee without return to the sender, if the enclosure is of importance.



11/30/2021-38