

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. ) No 19 CR 226-1
)
)
Robert M. Kowalski, ) Hon Virginia M. Kendall
      defendant )

FILED

DEC 0 9 2021 OR

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## MOTION RELATIVE TO
## BRADY / NAPUE VIOLATION

Now Comes Robert M. Kowalski, Robert, for his motion relative
to BRADY/NAPUE violation states as follows:

The prosecution does not mind its Brady obligations where
it suppresses correction that it became aware of. Rather
embracing inaccuracy, the discovery provided is devoid of
the correcting information that government analysts and agents
on this case have pieced together, learned of, over four plus
years, out of the wreckage of Washington Federal Bank (WFB)
records. Prosecution is aware of much fraud and the exculpatory
nature thereof. But they perversely refuse to share the knowledge
they have painstakingly became aware of, despite their BRADY/
NAPUE disclosure duty. Allowing defendant to wallow helplessly
amid ruins of carefully cleverly crafted fraud without the
clues that prosecution has unearthed and knows would undoubtedly

①

secure Robert's vindication. The uncorrected - unreconciled document dump provided is woefully inadequate in light of prosecutor's special duty to seek justice.

Prosecution does not satisfy its BRADY/NAPUE obligation merely inundating Robert with multiple false accounting books and ledgers without correction. Prosecution team members have become aware of specific instances of fraud buried in these records and must accordingly, share these truths. They are so aware in fact, they have marshaled the fraud and have successfully pursued several fraud based insurance claims stemming from WFB and its wayward auditing firm. Prosecutor's knowledge of the fraud is now as extensive as the fraud itself.

BRADY applies only to information "unknown to the defense". Our circuit has made the same point and added that there is no disclosure obligation under BRADY if the defense, EASILY, could have found the information, even if it didn't find it in fact. United States v. Morris 80 F3d 1151 (7th Cir 1996). The intricate WFB fraud "GHOST LOAN ACCOUNT" scheme was so deviously pervasive. That it went undetected for over a decade under the scrutiny of numerous well trained OCC teams of CPA examiners. If it had been lurking in plain view they would have undoubtedly found it much sooner. BRADY/NAPUE doctrine provide no lawful reason to allow a defendant to flounder about reinventing the wheel. When prosecution analysts have completed four years of heavy lifting with findings. In the course of these labors, the prosecution has gained illuminating awareness.

②

Prosecution is undeniably aware of plenty of WFB fraud that should be pointed out, "CORRECTED" as such. There are several categories that simply spring off the discovery pages. On December 5, 2017 the OCC director of Special Supervision confirmed in her interim audit results that the records of WFB were unreliable and altered. These form a considerable part of expected testimonial evidence. In fact these are the very basis. Elaborating further, the director identified : 1.) inaccurate-incomplete records. 2.) Breakdown of internal controls 3.) Bank has not recognized losses 4.) call reports inaccurate 5.) unsafe unsound practices 6.) Not sure if they had legitimate borrowers 7.) Forced capitalized interest payments 8.) Negative tax escrow accounts.

Later, on December 11, 2020 FDIC Special Agent Jacob Evans interviewed one analyst, OCC officer MR LAvell Hall, who disclosed that: "as he tried to match call reports to reports of WFB there appeared to be two sets of books". He described that there was the actual general ledger and the "other" Reporting for the larger fraudulent loans. Then on November 17, 2021 Attorney Peterson shared information she had learned. That one pixelated trial loan balance document was illegible by design. The grainy indecipherableness represented a concoction of MR Crotty's inception intended to deceive OCC examiners. The foregoing lack of correction defeats defense's reasonable attempts at review. The common denominator being that uncorrected discovery represents deliberately watered down material where the exculpatory punch lines Remain material omissions. It is

3.

Not helping either that the discovery has been produced in a helter skelter manner, still not complete.

Correction in this context does not mean simply continuing to plow forward, ambushing Robert with the Ponzi scheme of failed WFB. Prosecution team member FDIC-R used this approach. When it rode those same tainted "GHOST LOAN ACCOUNTS", $27.2 million worth, into a Federal Bankruptcy court proceeding without correction. All the while touting itself as Robert's biggest and most significant creditor, as Special Agent Evans explained to our Special May Grand Jury. Certainly, the FDIC was the most inflated creditor. These formerly legitimate depts have been reconstituted, whipsaw fashion, into prosecutor's $7.7 million claim of embezzlement.

Reasonably, the prosecution has a duty to illuminate the fraud it has identified. Rather than adopt a "what you don't Know won't hurt you, you are all on your own, figure it out yourself approach. The order of WFB magnitude of failure is too large. There have been two sets of Accounting books identified by the authorities. But, contrary to BRADY/NAPUE they are not marked, corrected, as such by the aware prosecution. They are placed, like a trap set in the woods, to capture additional human prey in this massive web of fraud. It is an insurmountable hurdle, hardly easy, to expect the LOCKED DOWN pro-se defense to make sense of and build a defense around information deliberately created to mislead auditors and now a defendant.

The Supreme Court held that prosecutors failure to correct false evidence violates due process of law. Napue v Illinois 360 U.S. 264 (1959). Due process BRADY/NAPUE violations have occurred here: 1) The WFB evidence presented is actually false. 2.) Prosecution abundantly Knows that such evidence is actually false. 3.) This false information provided to throw defense off the scent, was material to Robert's guilt or innocence.

Inaccurate, unreliable, and uncorrected there is No integrity of the WFB material before a jury. Due process prevents even the possibility of unfairness. The prosecution remaining silent, where it has a duty to correct once it has become aware, undermines truthful Resolution. The state and the accused have a significant interest in the accuracy of criminal proceedings. Ake v. Oklahoma 470 U.S. 68 (1985). There is No established baseline of accurate material from WFB that is not tainted by fraud and rings as authentic. The fraud by all accounts lasted too long and penetrated too deep. Resulting confusion Reigns Rampant. It is most noticiable where the prosecution submits paid off loans and loan losses of other customers as part of Robert's alleged embezzlement. (See List of monies Received for Robert's benefit)

What matters is the substantial Risk that a jury will use the same false uncorrected evidence to convict. Perhaps this is what the aware prosecutors hopes. No one deserves to be falsely convicted because of cutting, pasting, forging,

5.

accounting moves and maneuvers of a bank occ examiners allowed, may be helped, get out of whack. Bland boring accounting grows in exculpatory significance once it is accurately corrected as representing an artifice of fraud.

Discovery has been forthcoming in an incoherent manner so that prosecution can evade its Brady obligations. By this stage in the proceeding should seamlessly have all reports prepared by the government's agent analysts, not just a limited sample. Robert should have learned of all facts the prosecution is aware of. This is the essence of Brady. This is not asking for anything more than attorney Nelols committed to provide over a year ago.

Prosecution strategy has been to engineer an uncorrected tiny sip of Brady release rather than a whole gulp of refreshing exculpatory material. It already knows what exists within its reports. Consequently, defendant's review and development of a comprehensive strategy has been forestalled. Worse, lack of correction has diverted defense attention away from promissing exculpatory discovery. Compelling Robert to search sterile uncorrected addled information, while actual favorable exculpatory information, having been actively identified by prosecution as such is withheld. This violates the very heart of the Brady ruling. Because when the prosecutor suppresses exculpation it deprives the defendant a fair trial compromising due process

The foregoing exemplifies the inevitable problems that arise when the prosecution team includes a self interested member that has acted well beyond its authority as law enforcement. FDIC-OIG has infected the prosecution with a virulence resembling more of a debt collection than pursuit of truth seeking justice. The prosecutor's special duty that justice shall be done has been sacrificed to deflect attention away from FDIC's hasty ill considered miscues.

wherefore Robert respectfully requests that the Court enter an order:

1.) Dismissing the proceeding

2.) Sanction the prosecution

3.) Require that prosecution correct inaccurate information it is aware.

4.) Require prosecution complete discovery within a certain date.

5.) Release Robert so that he may prepare a defense

6.) all relief that this court determines to be proper

Respectfully Submitted,

Robert M. Kowalski

Robert M. Kowalski

# 53527-424

Metropolitan Correctional Center

71 West Van Buren Street

Chicago, Illinois 60605

Robert M. Kowalski
# 453527-434
Metropolitan Correctional Center
71 West Van Buren Street
Chicago, Illinois
60605

Legal Mail

CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 South Dearborn Street
Chicago, ILLINOIS



Legal Mail

METROPOLITAN CORRECTIONAL CENTER
7 W. VAN BUREN ST, CHICAGO, IL 60605

This ____ correspondence ____ institution for forwarding to you.
This letter ____ as written ____ inspected.

NOV 30 2021

If the writer raises a question or problem over which the facility has jurisdiction,
you may wish to return the material for further information or clarification.
If the writer encloses correspondence for forwarding to another addressee,
please return the enclosure to the above address.

12/09/2021-8