# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, } | |
| Plaintiff } | |
| } | |
| v. } | No. 19 CR 226-1 |
| } | |
| Robert M. Kowalski, } | Virginia M. Kendall, Judge |
| Defendant } | |

## EMERGENCY MOTION TO COMPEL WITHDRAW OF NON-COMPETENT STANDBY COUNSEL MR SHANIN

Now Comes Robert M. Kowalski, Robert, for his motion to compel withdraw of non-competent Standby Counsel pursuant to the right of Faretta v California states as follows:

No impoverished man should lose his freedom because their doddering Federal Defender standby counsel, desperate to make a few bucks on the sale of his old Chromebook, chose not to comply with the trial court's order to procure a suitable device to review a veritable complex mountain of discovery. Further, once standby counsel acts on behalf of a defendant his representation must be effective, as guaranteed by the Sixth Amendment.

Faretta rights are not normally infringed when standby counsel assists the defendant in **_overcoming_** routine procedural obstacles to the **_completion_** of some specific task. *McKaskle v Wiggens, 465 U.S. 168 (1984).* Except where one specific critical task entrusted to standby counsel by the trial court remains conspicuously incomplete. This one routine procedural obstacle the court sought to resolve. That standby counsel could not or more likely purposefully

1

refused to overcome, looms over this proceeding to the detriment of an adequate defense preparation and Robert's fate. The lack of this basic tool under these circumstances threatens a fair trial, which is an absolute guarantee of the Sixth Amendment.

## *AID NOT INTERFERENCE*

In *Faretta v California*, the Supreme Court recognized a criminal defendant's Sixth Amendment right to represent himself pro se. *422 U.S. 806 (1975)*. The Court noted, "of course, a state may - even over the objection by the accused- appoint a ***'standby counsel'*** to ***AID*** the accused if and when the accused requests help and to be available to represent the accused in the event that termination of the defendant's self representation is necessary. *Id as 834*. The Court noted the Faretta right serves two objectives: to preserve a defendant's autonomy and occasionally, to preserve the best possible defense. *McKaskle v Wiggins, 465 U.S. 168, (1984)*.

Standby counsel, under Faretta, was bound not to ***interfere*** with Simpson's pro-se efforts. Simpson v Battaglia, 458 F3d 585 (7th Cir 2006). The language and spirit of the Sixth Amendment, contemplates that counsel, like the other defense tools guaranteed by amendment, shall be an ***AID*** to a willing defendant -***NOT AN ORGAN***- of the state interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish thus violates the logic of the amendment. In such a case, consul is not an assistant, but a master; and the right to make a defense is stripped of its personal character upon which the amendment insists. *Faretta v California, 422 U.S. 806 (1975)*.

In *McKaskle v Wiggins, 465 U.S. 168 (1984)*, the Court elaborated on the interplay of the role of standby counsel and a criminal defendant's Faretta right of self representation. The Court noted the Faretta right serves two objectives: to preserve a defendant's autonomy and, occasionally, to present the best possible defense. *Id* at 176-177. To give effect to the Faretta

2

right, the Court established limits: ***"the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury"***. *Id* at 178. When standby counsel is appointed, the primary concern is that appointed counsel *does too much,* so as to abrogate the Faretta right of self-representation, not too little. ***"The objectives underlying the right to proceed pro se may be undermined by unsolicited and excessively intrusive participation by standby counsel."*** *Id.*

## FACTUAL BACKGROUND

On November 23, 2020 Attorney Kowalski was allowed to represent himself pro-se, as is his robust right. Standby counsel was appointed at that time over Attorney Kowalski's most strenuous objection. Subsequently, this tribunal explicitly clarified by its order that the nature of standby counsel was to remain ***"merely available".*** Nevertheless, the court sua sponte without explanation or indeed cause on June 2, 2022; compelled the withdrawal of prior appointed standby counsel Mr Chiphe. Thereupon, the court replaced him with its own attorney, Mr. Steven Shanin. Previously, the tribunal and Mr. Shanin had been acquainted as colleagues, in their role as course instructors at the University of Chicago School of Law. Further, Mr. Shanin has been part of the Federal Defender program mentoring board for many years. It is fair to say that after forty eight years of practice in the Federal Courts, he is a leading authority in the field of Federal criminal defense. One who certainly expertly knows, no one better, the requirements of what is required to access the government's electronic discovery.

## CHROMEBOOK GAMES

Responding to the trial court's order, standby counsel, Mr Shanin, in open court tendered a "Chromebook" device to indigent Robert, while the United States Attorneys nearby stood mute. Ostensibly, in order that indigent Robert would be able to review the voluminous complex

discovery haystacks the government has tendered pursuant to its Brady obligation. Notoriously, Chromebooks are routinely derided–and rightfully so–for their limited functionality.

Upon attempting to review discovery, Robert immediately realized that this Chromebook did not operate the government's discovery and so notified the court by motion. Prosecution and likely experienced standby counsel as well knew in advance that this obsolete device operating a Chrome OS is incompatible with and consequently would never operate the government's basic standard issue Microsoft Windows OS based electronic Brady Discovery material. At the next scheduled status hearing, anticipating Robert's impossible situation, the prosecutors feigned ***helpfulness***. In open court, the prosecution provided defense a sheet listing several downloadable"freeones" websites, a red herring. Maintaining that these sites could easily supply a quick painless remedy for the problem. In fact, a persuaded court chided indigent Attorney Kowalski for good measure, suggesting that he was not compliant with ABA rules mandating that attorneys become computer literate. However, licensed attorneys are not required to become "geek squad" computer developer expert technicians.

## ***HAMPERED PREPARATION OF DEFENSE***

The prosecution's snake oil miracle cure did not pan out, nor could it have ever worked without a great deal more. Rather than actively meddle in such technical matters beyond their ken of expertise, it would have been preferable for the prosecution to have done nothing. The defense has been impaired and severely disadvantaged by their patently negligent advice, calculated in bad faith to exert a detrimental impact upon adequate defense preparation by limiting and suppressing discovery review. Their help for lack of a better word, has left the defendant mired in a much worse situation than he would have found himself had prosecution

4

done absolutely nothing. Defense struggles against standby counsel/prosecution inspired technical problems. Instead of being able to focus on the merits of the case.

Unlike most computers, Chromebooks do not run Windows operating systems. Window apps were not designed to run on Chromebooks. Chromebook laptops come with their own operating system. They are pre-installed with Chrome OS, and hence they are not meant to run Windows or MacOS operating systems. Consequently, these website quick fixer uppers are entirely unsuitable to make a Chromebook compatible with Windows. Prosecution team with its legion of computer expert HUD-OIG agents would have known this well in advance.

In order to attempt to convert a Chromebook into a window compatible device one would need to physically break open the sealed computer case, tinker around, disassemble components, and change things to engage developer mode. Much disassembly (hotwiring) of the Chromebook is required. This can damage the device. The jury rigging activity voids the warranty. If one changes Chrome OS to windows there will be no future updates from Microsoft. Further, it is far beyond the capacity of anyone except the most advanced knowledgeable qualified computer technicians along with specialized equipment that the destitute defendant simply does not possess. The only guarantee is that Robert would end up more frustrated after wasting a considerable amount of time.

Similarly, returning Robert's seized former computer tower to the defendant does not help when missing key essential ingredients are withheld such as: a monitor, cables, mouse, and keyboard. Robert is indigent and not allowed to earn due to imposed bond conditions.

## *INDISPOSED TO AID?*

Despite his deep knowledge and considerable experience of federal criminal procedure and the practices of the United States Attorneys Office, the Chromebook provided by Mr. Shanin

has proven entirely incompatible with hundreds of thousands of the government's (pdf windows) electronic discovery files and the millions of documents contained within. Robert's review of the discovery has been entirely frustrated as a result. The exculpatory information contained within the Brady material has been entirely deprived (suppressed) to Robert. Robert's Sixth Amendment right to build a complete defense lays bare in ruin. Unreasonably, experienced knowledgeable Mr. Shanin knew or should have known that his tired old kids' school Chromebook, the one that he passed off to a captive clientele, indigent Robert, contained an inherent flaw. Its designed operating system of limited functionality would not allow it to accomplish its designated task. Namely, it would not operate the government's enormous Brady Material without considerable alteration. Robert was entitled to expect professionally competent assistance within the narrow scope of advisory counsel's proper role. *People v Hamilton, 774 P2d 730(Cal 1989)*. Given the role standby counsel is expected to play in protecting the defendant's rights, provision of equipment that he knew in advance would prove fatally defective destroys any notion of trial fairness.

Rather than accept responsibility and remedy, on January 27, 2023 standby counsel sought to explain away his gaffe. Mr Shanin stubbornly obtusely stated that he had originally procured the appropriate device, the 2012 Chromebook model, from Amazon. Suggesting that he had checked its operation. Had that been true, then clearly he had a duty to inform the prosecutors, Robert, and the trial court that their prior joint attempts to remedy the Chromebook were not only futile, but unwarranted. Nevertheless, he remained silent at that prior hearing apparently satisfied with the enormous problem he engendered. Chromebooks operate Chrome OS not Microsoft OS without a great deal more. The Chromebook that Standby Counsel Shanin provided has most definitely not been aftermarket retrofitted for Microsoft Windows operation.

6

## **CHROMEBOOK ENGINEERED IMPAIRMENT**

The Supreme Court recognized long ago that: mere access to the courthouse doors does not by itself, assure a proper functioning of the adversary process, and that a criminal trial is functionally unfair if the state proceeds against an indigent defendant without **_making certain that he has access to the raw materials integral to the building of an effective defense_**. *Ake v Oklahoma, 470 U.S. 68 (1986).* A device suitable to review discovery is one such indispensable raw material. The Court has often reaffirmed that fundamental fairness entitles indigent defendants to "an opportunity to present their claims fairly within the adversary system". *Ross v Moffit, 417 U.S. 600 (1974).* To implement this principle, we have focused on identifying the **_"basic tools of an adequate defense or appeal,"_** *Britt v North Carolina, 404 U.S. 226 (1971),* and we have required that such tools be provided to those defendants who cannot afford to pay for them.

Likewise, this trial court recognized that indigent Robert required such a basic tool–a suitable discovery review device–in light of the government's production of complex voluminous electronic discovery. In the context of this case, these number in excess of several hundred thousand individual computer files consisting of millions of sensitive and confusing fraud laden documents. Rather than comply with the court's simple instruction and procure such a readily available tool, standby counsel used the defendant's desperate urgent need to prepare a defense, as an excuse to clean out his closet, as it were. His kids' old school Chromebook was pressed back into service upon Robert. While standby counsel used his Criminal Justice Act checkbook to procure himself some sweet new upgraded computing hardware. A most clever, wonderful,

7

and win-win adaptive recycling of a chromebook that had ever been devised. Except that the functionality of any given Chromebook will not support nor operate the government's electronic software discovery. Leaving any potentially exculpatory Brady material contained therein, permanently outside of the accused's grasp. Ensuring that defense preparation was thwarted..

Taking pity upon Robert, government attorneys suggested that a simple download would mend the Chromebook impasse. They presented Robert, in open court, information relative to a free download website. However, such a cure will not resolve the issue unless and until Robert can somehow override the Chromebook programming kicking it back down into developer mode, hotwiring the device. The proficiency required for this stunt is far beyond the capability of all, except technology savvy expert defendants, including Robert.

## ORGAN OF SABOTAGE

To force a lawyer on a defendant can only lead him to believe that the law contrives against him. *Faretta v California, 422 U.S. 806, 835 (1974).* Standby counsel, such an organ of the state, was inserted into Robert's defense, fully appreciated Robert's now impaired defense prospects. However, he simply shrugged his shoulders, washed his hands of the defendant (whom he had just stripped of any visible means of defending himself) and then for good measure warned the court or more likely boasted, patting himself on the back, that Robert's defense could now only be expected to only consist of **"jury nullification"**.

Conversely, the Supreme Court had in *Ake v Oklahoma 470 U.S. 68 (1986)* determined that: when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. In this proceeding, the penurious greedy practices of forced unwanted standby counsel

8

have entirely compromised Robert's defense preparation. By effectively foreclosing discovery review, in the same manner that biblically the Israelites could not make brick without straw.

## ***STANDBY PRISON USHERS***

The right to assistance of counsel, the court concluded, "was intended to supplement the other rights of the defendant and not to ***impair*** the absolute and primary right to conduct one's own defense in propria persona". *United States v Plattner, 330 F2d 271 ( 2nd Cir 1964)* "implicit also in the Sixth Amendment guarantee of a right to counsel is the right to manage and conduct his own defense in a criminal case". *Id.* Standby counsel's role is to do what the defendant requests and what the court permits, ***without interference*** with the defendant's right to self representation. Consequently, the ineffective steps, purposeful conduct of an organ of the state agent, our standby counsel, have resulted in dooming Robert by the effective withdrawal of an otherwise meritorious defense grounded in irrefutable documents.

Forced unwanted, standby counsel's interference in this case has adversely affected the defendant's control of his case. His conduct, rather than acting as a protective safety net to ensure that the defendant receives a fair hearing of his claims, has produced the exact opposite result. It is especially egregious that the underlying motivation for such conduct, virtually guaranteeing a conviction, defeating the defendant's pro-se appearance consisted of pure avarice. It is a universal conviction on the part of our people, as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. *Faretta v California 422 U.S. 806 (1975).* It is especially shocking that the most qualified and experienced member of the Federal Defender Program could not even follow the courts order to

provide a suitable defense discovery review device. What does the discovery contain that the joint standby counsel/prosecution team are so intent on suppressing so badly?

The absence of a discovery review device has the practical side effect of silencing a Faretta defendant. Discovery is a crucial procedural safeguard that protects against wrongful imprisonment, helps to make the legal system more transparent by increasing pretrial disclosure, and ensures a fair procedure by allowing each side in a trial to adequately prepare their cases. Alternatively, inadequate discovery threatens the reliability of outcomes in criminal cases and significantly undermines a defendant's right to due process. The presumption of innocence is seriously damaged when the defense is given insufficient opportunity to cast doubt on the prosecution's case. Only through adequate discovery can a Faretta defendant subject evidence to appropriate scrutiny and give the accused a meaningful opportunity to challenge and test evidence in a fair hearing before a court of law. The penurious unilateral decisions of a standby counsel have unreasonably obstructed all discovery review.

## **_SACRIFICE OF UNARMED PRISONERS_**

Forced unwanted, standby counsel's interference in this case has adversely affected the defendant's control of his case. His conduct, rather than acting as a protective safety net to ensure that the defendant receives a fair hearing of his claims, has produced the exact opposite result: a guaranteed conviction. It is especially egregious that the underlying motivation for such conduct, that defeated the defendant's pro-se appearance consisted of pure avarice. It is a universal conviction on the part of our people, as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so. *Faretta v California 422 U.S. 806 (1975)*. It is especially shocking that the most qualified and experienced member of the Federal Defender Program could not even follow the courts order to

provide a suitable defense discovery review device. What does the discovery consist of, that the joint standby counsel/prosecution collaboration is so intent on suppressing? Such deep hypocrisy is involved here. The accused is provided voluminous discovery so long as it can not be opened to access review. This takes the notion of onerous to operate to a whole new unprecedented level.

The absence of a discovery review device has the practical side effect of silencing a Faretta defendant. Discovery is a crucial procedural safeguard that protects against wrongful imprisonment, helps to make the legal system more transparent by increasing pretrial disclosure, and ensures a fair procedure by allowing each side in a trial to adequately prepare their cases. Alternatively, inadequate discovery threatens the reliability of outcomes in criminal cases and significantly undermines a defendant's right to due process. The presumption of innocence is seriously damaged when the defense is given insufficient opportunity to cast doubt on the prosecution's case. Only through adequate discovery can a Faretta defendant subject evidence to appropriate scrutiny and give the accused a meaningful opportunity to challenge and test evidence in a fair hearing before a court of law. The penurious unilateral decisions of a standby counsel have unreasonably obstructed all discovery review.

## *STANDBY COUNSEL NOT STANDING BY*

In part 18 USC 3006(A)c provides that:

"a person for whom counsel is appointed shall be represented at ***every stage*** in the proceedings from his initial appearance before the U.S. Magistrate Judge or the court through appeal, including ancillary matters appropriate to the proceedings."

However, standby counsel Shanin reported to the Court on December 22, 2022 that health concerns of his family would render him prospectively unavailable. This period would minimally be expected to extend for more than a month. During this time he would ***NOT*** be available to fulfill his appointed role at a critical time immediately prior to trial.

11

Standby counsel is particularly important to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or assist the defendant in overcoming routine obstacles, (like those computer technology based problems he inspired), that stand in the way of Robert's achievement of his own clearly indicated goals. During his extended absence standby counsel is unable to: A.) act as a safety net to ensure that the litigant receives a fair hearing of his claims nor B.) allow the trial to proceed without undue delays likely to arise when a layman presents his own case. This does not help or benefit a self represented person trying to navigate the difficulties of the legal system. Particularly where the court has insisted through bond conditions that standby counsel perform investigative services and allowed him to issue subpoenas on behalf of the accused.

## *ROADBLOCK DEAD AHEAD*

The Court noted that Faretta rights are not violated when standby counsel "assists a pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task". However, standby counsel here has indulged himself in a conflict of interest. His self interest in disposing of his tired, tattered, used, and dysfunctional office equipment, has overwhelmed his good sense and professional responsibility to protect the rights of an accused person. This duty was specially entrusted to him by this Court. A role that he readily accepted. Yet he failed to discharge his obligation to Robert's enormous sole detriment. The irreparable consequences of standby counsel's base profiteering include ensuring that this defendant has lost control of his message, unable to submit the prosecution's case to a crucible of adversarial testing, which now may never be heard. Money damages can never adequately compensate one for their loss of liberty in a land that loves freedom. Robert's autonomy and individual dignity is not being honored by the standby counsel. Even though it is the lifeblood of the law.

A judge may not deny defendant's timely invocation of his right. *Faretta 422 U.S. at 835-836*. Supreme Court decisions make clear both a trial court's duty to warn but also narrow limits on its power to exercise of self representation. *Imani v Pollard, 826 F3d 939 (7th Cir 2016)*. The dangers and disadvantages of self representation should never include that an appointed standby counsel, crony of the tribunal, organ of the state, and member of the judicial branch will interfere with preparation of defense. By denying, precluding access to Brady material. There is something specially repugnant to justice in using rules of practice in such a manner as to debar a prisoner from defending himself, especially when the professed object of the rules so used is to provide for his defense. *Stephen, a History of the Criminal Law of England 341-342 (1883)*.

## *LOCKED DOWN TRUTH*

A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants. *United States v Bufalino, 285 F2d 408 (2nd Cir 1960)*. Under these circumstances, it is especially important to the defense, the judge and jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations. *Dennis v United States, 384 U.S. 855 (1966)*. Standby counsel was ordered to provide the defendant with the key, a discovery review device, to open the Brady treasure trove. However, standby counsel scoffed at his task, preferring to enhance his pocketbook at the expense of consigning a helpless defendant to a fate that included incarceration.

## *PROMISE OF BRADY DEPRIVED*

13

When the government's discovery is merely onerous to operate, Brady implications result. Likewise has been completely undermined when it is divested of all means to view that discovery. The Sixth Amendment does not provide merely that a defense shall be made for the accused, it grants to the accused personally the right to make his defense. Accordingly, It is unconscionable that ill-considered selfish financial gains of one such tool, a standby counsel designed to help a defendant, used his position to interfere in such a manner to defeat preparation of any defense whatsoever. An indigent defendant should not have to lose his freedom merely because his otherwise brilliant, venerable, friend of the court, standby counsel just flat refused to perform his duty to comply with an extremely simple reasonable court order. The one solitary obstacle standby counsel was called upon, court ordered, to clear away has entirely foreclosed defense preparation. It is offensive to suggest that Mr Shanin's Chromebook with its Chrome OS could have ever operated the government's Microsoft Windows based OS based discovery.

## ***DENIED REASONABLE OPPORTUNITY TO PREPARE A DEFENSE***

The Court has long recognized that: "perhaps the most critical period of the proceedings against a defendant, that is to say from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important". *Powel v Alabama, 287 U.S. 45 (1932)*. Likewise, it is vain to give the accused a day in court, with no opportunity to prepare for it, or guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the cases. *Id quoting Commonwealth v O'Keefe, 173 A 73 (Pa 1929)*. When standby counsel knowingly furnished a defective discovery review device he did so with the intention that the indigent Faretta defendant would be deprived of any viable means whatsoever to prepare a defense. The Criminal Justice Act has served to provide opportunity for a standby counsel rather than a defense for an accused.

14

A penniless defendant should not have to lose his freedom merely because his otherwise normally brilliant, venerable, old pal of the court, standby counsel engaged in the rankest form of self dealing with his old Chromebook. Refusing to perform his duty to comply with an extremely simple reasonable court order so he could bestow upon himself a monetary windfall. This one solitary obstacle that standby counsel was called upon (court ordered) to clear away and failed to do so, has entirely foiled defense preparation. It is patently offensive to suggest that Mr Shanin's incompatible Chromebook with its Chrome OS could have ever operated the government's Microsoft Windows OS based discovery. Mr Shanin's refusal to abide by court order has rendered Faretta meaningless. What is the sense in providing MILLIONS of Brady documents, chock full of exculpatory material, where ironically the defense has been actively precluded from accessing the same by the one expert appointed to help?

Wherefore, Robert respectfully requests that this honorable court enter an order:

A.) Dismissing this proceeding

B.) Providing for a device that allows Robert to review electronic discovery.

C.) Compelling conflicted Standby counsel Mr. Steven R. Shanin to withdraw from this proceeding.

C.) Continue this matter to allow adequate time to prepare and access to legal materials essential to preparation of a defense.

D.) All relief that this court deems fair and equitable.

Respectfully Submitted,

Robert M. Kowalski
14108 South Springfield Avenue
Crestwood, Illinois 60418