UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT M. KOWALSKI | No. 19 CR 226-1<br><br>Honorable Virginia M. Kendall |

**THE GOVERNMENT'S CONSOLIDATED RESPONSE TO THE DEFENDANT'S MOTIONS, DKT. NOS. 879, 880, 881, 882, AND 883**

The government hereby files its response to the motions filed by the defendant on February 8, 2023.

**I. THIS COURT SHOULD DENY THE DEFENDANT'S MOTION FOR A CONTINUANCE (DKT. NO. 879)**

The defendant has not set forth any new information warranting a continuance. As this Court has found, "Defendant has had years to prepare for trial and continues to give excuses for not being prepared in spite of his refusal to work with stand-by counsel." Dkt. No. 837. This Court further found, "Robert Kowalski has had four years to defend against these charges; he has filed nearly 200 pretrial motions over the course of those years, and he has demanded both a speedy trial and more time to prepare. The Court has already moved the trial date and has warned Defendant repeatedly that this would be the date. He has had more than sufficient time to prepare." Dkt. No. 868. The defendant continues to malinger, manufacturing baseless claims in an effort to avoid trial. The government opposes the defendant's motion to continue the trial.

## II. THIS COURT SHOULD DENY THE DEFENDANT'S MOTION IN *LIMINE* CONCERNING USE OF THE TERM "TAKEOVER" (DKT. 880) BECAUSE IT IS A FACTUAL MATTER FOR THE JURY

The defendant seeks to preclude reference to the defendant's embezzlement of properties belonging to Washington Federal Bank for Savings as takeovers. The defendant claims that he acted as the bank's attorney in deed of lieu transactions. Dkt. No. 880 at 1. As this Court has held, the defendant has not met his burden concerning any attorney-client relationship. Dkt. No. 829. And he has done nothing to change that, which undermines this factual claim.

The defendant further claims that the word "takeover" in the context of his embezzlement of properties "unduly confuses and prejudices the defendant" because it suggests "nefarious hostile takeovers." Dkt. No. 880 at 1-2. The government anticipates that the evidence at trial will show that the defendant had customers of Washington Federal sign documents transferring properties that served as collateral for Washington Federal loans to the defendant. These customers fell behind on their mortgages and either filed bankruptcy or were named in foreclosure actions. The defendant, purporting to act on behalf of Washington Federal, contacted the customers and told them to sign a deed in lieu of foreclosure. They did, but the paperwork transferred the properties to the defendant—not the bank. In a literal sense, the defendant took over, that is, assumed control of, the properties. He didn't buy them. He didn't manage them. He placed them in trusts that benefited him—not the bank.

Given that the term "takeover" accurately describes what happened, there is no risk of confusion. In short, the defendant either assumed control of the properties

2

or he didn't. Moreover, the defendant's own motion shows that there is nothing unduly prejudicial about the term. The defendant has to modify the term with words like "nefarious" and "hostile" to import additional meaning. That shows that the term itself is benign. Whether the conduct was a takeover, as the government contends, or a lawful deed in lieu of foreclosure transaction, as the defendant contends, is a question for the jury. Consequently, this Court should deny the defendant's motion.

### III. THE GOVERNMENT TAKES NO POSITION CONCERNING MATTERS BETWEEN THE DEFENDANT AND STANDBY COUNSEL (DKT. NO. 881)

The government takes no position concerning matters involving the defendant and standby counsel. The following response concerns claims made and relief sought by the defendant in his motion unrelated to his claims against standby counsel.

When it comes to reviewing materials produced in discovery, the defendant claims to encounter issue after issue accessing discovery. When detained, he didn't have sufficient time to access a computer. When provided with a laptop, the laptop became damaged. When provided with paper copies of certain discovery materials, the defendant didn't have access to a copier or to legal research materials. While on pretrial release, the defendant didn't have a computer. When provided with a Chromebook, the Chromebook couldn't access certain documents. When it could, he lacked internet access. When provided with his previously seized computer, he lacked periphery devices. When offered opportunity after opportunity to meet with the government to access discovery, the defendant declined. The defendant recently sought and received approval to meet with standby counsel at standby counsel's office to access discovery materials, but now has issues that prevent him from meeting with

standby counsel. Through this all, the defendant has maintained an uncanny ability to locate, reference, and publicly file documents produced in discovery that he wants to appear in the public record despite the protective order entered in this case. Often the defendant did this to advance claims concerning extraneous matters unrelated to the defense of this case. The defendant's filings belie his claims that he cannot access discovery.

The defendant has access to at least two computers, consequently there is no need for this Court to provide the defendant with yet another device to review discovery. The defendant has had ample time to prepare and access discovery, and this Court has repeatedly admonished the defendant concerning the February 13, 2023, trial date. This case has been pending since 2019, and this Court has taken several steps to address the defendant's claims concerning his access to discovery materials, including releasing the defendant from detention despite several violations of his conditions of release. This Court has ordered the government to meet with the defendant on several occasions to confirm whether the defendant could access discovery materials. The government has done so, and has reproduced discovery materials in different formats to ensure the defendant could access them. The government has repeatedly offered to meet with the defendant concerning any other issues as they arise, but the defendant has not taken the opportunity to do so. Similarly, on multiple occasions, the government has told the defendant he could come to the U.S. Attorney's Office to review records obtained from Washington Federal and other sources in their original format, including loan files and other

physical records. Rather than take advantage of the government's offer or meet with standby counsel, the defendant has repeatedly pursued other matters despite this Court's insistence that the defendant focus on preparing his case. The defendant's suggestion that he has not had adequate time to prepare or access legal materials is contrary to the record in this case, and this Court should deny any requests for additional time.

**IV. THE DEFENDANT'S MOTION TO ENJOIN UNCONSTITUTIONAL JURY EMPANELMENT (DKT. NO. 882)**

The defendant objects to this Court's decision to alert prospective jurors to the anticipated length of the trial, thereby allowing jurors to identify whether they could serve on a jury for that period, which he claims violates his right to an impartial jury. Dkt. No. 882. The Jury Plan for the Northern District of Illinois District Court provides for a Special Panel: "A 'Special Panel' shall mean a list of prospective petit jurors drawn separately from the regular terms of jurors, which will be utilized for one or more specific trials upon order of a trial judge and the Chief Judge."[1]

Yet the defendant claims that this Court's decision denies "persons of low socio-economic standing" the opportunity to serve on the jury and that the jury selection procedure "would entail the exclusion of members of society with low income and persons of color, minorities." Dkt. No. 882 at 2. A district court may excuse potential jurors who notify the court in advance of voir dire that a lengthy trial would impose a hardship. *United States v. Moreland*, 703 F.3d 976, 982 (7th Cir. 2012). Moreover,

---

[1] https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_press/ILNDJuryPlan.pdf

5

a party must show that excusing prospective jurors unable to serve during a lengthy trial results in the "systematic exclusion of some definable element of society." *See id.* The defendant presents no such evidence.

The government does not know how many, if any, prospective jurors sought to be excluded from the panel in this trial, or how many, were granted such a request. Generally speaking, however, a number of different kinds of people may have difficulty serving on a jury for a lengthy trial, including hourly workers, small business owners without sufficient staff to cover their absence, professionals such as physicians scheduled to perform procedures on patients, and/or individuals with non-refundable travel plans, scheduled treatments or procedures, or other commitments. As such, asking prospective jurors whether a lengthy trial would impose a hardship is, on its face, does not exclude any particular group. *See, e.g., United States v. Savage*, 970 F.3d 217, 259 (3rd Cir. 2020) ("A selection process that is facially neutral is unlikely to demonstrate systematic exclusion.") (citations omitted); *see also, e.g., United States v. Elder*, 592 F. Supp. 3d 48, 64 (E.D.N.Y. 2022) ("It cannot be said that unvaccinated individuals are a "distinctive" group because there are many reasons why a person may choose not to get vaccinated, membership in the "group" changes daily, and vaccination status is a poor proxy for individuals holding a particular point of view.").

A defendant has a right to an impartial jury, but no right that the venire or jury "mirror(s) the general population." *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001). "To make a prima facie case that the fair cross-section requirement

has been violated, a defendant must show that: (1) the group allegedly excluded is a distinctive part of the community, (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process." *Id.* The defendant, who relies on conjecture, has made no such showing.

## V. THIS COURT SHOULD DENY THE DEFENDANT'S MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION BECAUSE THE DEFENDANT'S MOTION IS UNTIMELY AND BECAUSE HE HAS NOT MET HIS BURDEN TO SHOW EITHER SELECTIVE OR VINDICTIVE PROSECUTION

### A. The defendant's motion is untimely.

Federal Rule of Criminal Procedure 12(c)(1)(3) states: "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Here, the deadline to file pretrial motions was July 29, 2022. Dkt. No. 696. The defendant has filed more than 200 pretrial motions. Dkt. No. 868. This Court has not otherwise extended the time to file pretrial motions, which makes the motion to dismiss for selective and vindictive prosecution the defendant filed on February 10, 2023, Dkt. No. 883, untimely.

In his motion to dismiss, the defendant failed to show good cause for the untimely filing. Most, if not all, of the claims raised by the defendant in his motion to dismiss were known to and raised by the defendant in other pleadings. Consequently, the defendant cannot make such a showing.

7

**B. The defendant has not met his burden on selective prosecution.**

The defendant has not made any colorable claims that he was singled out for prosecution. "In order to make a prima facie case for selective prosecution, the defendant must establish initially that he was singled out for prosecution while others similarly situated were not prosecuted, and secondly, that the alleged selective decision to prosecute him was based on such impermissible grounds (discrimination) such as race, religion, or exercise of constitutional rights." *Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir. 1987). "To obtain an evidentiary hearing, the factual basis for these claims must be more than colorable. In other words, a defendant must proffer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment." *United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir. 1994).

Here, the individuals most similarly situated to the defendant were those involved in the very conduct that led to the charges against the defendant. His sister, Jan Kowalski, was involved in the defendant's bankruptcy fraud scheme. She was charged for her role in the scheme, pled guilty, and awaits sentencing. Bank employees, to include Alicia Mandujano and Jane Iriondo, participated in the embezzlement conspiracy the defendant has been charged with. They were charged for their role, pled guilty, and await sentencing. Bank customers, to include Boguslaw Kasprowicz, Miroslaw Krejza, and Marek Matczuk, participated in the embezzlement conspiracy the defendant has been charged with. Each of them were charged. Defendant Kasprowicz has pled guilty and awaits sentencing. The defendant also faces tax charges, which are specific to him. But the defendant's tax charges are not

the only such charges in the Fourth Superseding Indictment, as defendants Kasprowicz and William Mahon also face tax charges. Given that others from this investigation have been charged based on their conduct, the notion that the defendant has been singled out necessarily fails.

Moreover, there is nothing to support the defendant's claim that his prosecution was based on impermissible grounds. Notably, the defendant does not claim that he belongs to a protected class or that some other discriminatory intent led to his prosecution. Rather, the defendant takes issue with the actions of: the FDIC (though he again conflates actions taken by the FDIC as receiver and the law enforcement agents from the FDIC's Office of the Inspector General); the Executive Committee of the United States District Court for the Northern District of Illinois for its order requiring an escort for the defendant while he is in the courthouse; and the state divorce court. These claims, which have been refashioned from prior motions that this Court has correctly denied, lack merit and do not support a claim for selective prosecution.

The defendant also fails to show that his prosecution followed his exercise of a constitutional right. The defendant claims that his "political criticism speech was met by outrage by Judge Castillo and his Executive Committee." Dkt. No. 883 at 9. The defendant offers no evidence in support of this claim. More importantly, the defendant fails to tie this claim to his criminal prosecution. The Executive Committee, which is not part of the prosecution team, entered its order in October 2018. According to the Seventh Circuit, "[t]o curtail Kowalski's disruptive conduct,

9

the Executive Committee issued the order in its 'proprietary capacity, just like a restaurant that expels an unruly customer and forbids him to return.'" *In re Kowalski*, 765 F. App'x 139, 140 (7th Cir. 2019) (non-precedential). The order itself had nothing to do with the defendant's exercise of his rights. Rather, it had everything to do with the defendant's conduct. Besides, by the time the Executive Committee entered its order, the defendant had been the subject of a criminal investigation for more than ten months. The criminal investigation also stemmed from the defendant's conduct, which was more than disruptive—it was criminal. Because the defendant has not met his burden to show selective prosecution, and because the defendant's criminal conduct led to his prosecution, this Court should deny the defendant's motion to dismiss for selective prosecution.

### C.  The defendant has failed to meet his burden on vindictive prosecution.

The defendant has not shown that prosecutorial animus, whether actual or presumed, motivated his prosecution. "A vindictive prosecution claim arises when the government pursues prosecution in retaliation for the exercise of a protected statutory or constitutional right." *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003). A defendant alleging vindictive prosecution "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015). In limited instances, such as where more severe charges follow a

successful appeal by a defendant, a rebuttable presumption of vindictiveness applies. *Id.*

Here, the government has not sought new charges against the defendant since February 25, 2021, which is when a grand jury returned the Third Superseding Indictment in this case. Initially charged with bankruptcy fraud, the Second Superseding Indictment added embezzlement charges against the defendant and others. The Third Superseding Indictment added tax charges against the defendant. The defendant has not identified any retaliatory conduct by the government that supports his claim of vindictive prosecution. The defendant has not had any successful appeals, so no rebuttable presumption applies. And the charges have remained consistent throughout the case, both as to the defendant and as to his co-defendants. As with his selective prosecution claims, the defendant points to alleged transgressions by others to support his claims for vindictive prosecution, but fails to tie those alleged transgressions to the prosecution team or his prosecution to his

exercise of any rights. Therefore, this Court should deny the defendant's motion to dismiss for vindictive prosecution.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Jeremy Daniel*
      JEREMY DANIEL
      KRISTIN PINKSTON
      BRIAN NETOLS
      JEFFREY SNELL (SAUSA)
      Assistant United States Attorneys
      219 South Dearborn Street, 5th Floor
      Chicago, IL 60604
      (312) 469-6314