

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| v. | ) No. 19 CR 226-1 | |
| | ) | |
| **Robert M. Kowalski,** | ) Virginia M. Kendall, Judge | |
| **Defendant** | ) | |

**FILED FEB 15 2023** THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT

## MOTION TO DECLARE MISTRIAL

Now comes Robert M. Kowalski, Robert for his Motion to Declare Mistrial pursuant to the Sixth Amendment, Fourteenth Amendment, Due Process Protections Act, and Brady v. Maryland states as follows.

A mistrial may be declared when an error, defect or misconduct has caused substantial and irreparable prejudice to the defendant's right to a fair and impartial trial. It is impossible for the trial to proceed in conformity with the law. It is absolutely egregious that standby counsel Shanin working in concert the the prosecution team have interfered with the provision of a discovery device ordered by this court and paid for by Criminal Justice Act funds to an indigent defendant. The lack of a suitable discovery device has thwarted review of a complex voluminous electronic Brady discovery material. The hallmark of our adversarial criminal justice system is the defendant's ability to meet the government's case. The disparity is considerable, the prosecution team is locked and loaded ready to trial by ambush with two library carts full of thick four inch exhibit binders . While i n contrast the defense has been impeded, blindfolded by not even being able to access (peek at) any Brady material at all.

These technical matters have arisen due to no fault of the defendant. In fact, indigent Robert has brought this matter repeatedly to the court's attention. Rather than work on the merits of his case, he was compelled to file at least one motion per month. Simply to complain of his technically inspired Chromebook problems and praying for access. On each occasion standby counsel Shanin and the prosecution have shrugged, laughed off Robert's concerns. Stating emphatically at times that the Chromebook device was checked out to ensure that it served to review Brady Discovery.

## *BRADY SUPPRESSION*

On February 13, 2023 the tribunal explained to a newly empaneled jury that the purpose of Standby Counsel Shanin was to provide: "needed items in the future". Consequently, a hearing was immediately held to determine once and for all, if the Mr. Shanin supplied 2012 Chromebook permitted review of the government's discovery. As Robert foretold, this Chromebook again failed to operate the government's discovery. It has proved entirely incompatible with its Chrome operating system to operate a standard government issued discovery utilizing a Microsoft Windows based operating system. Then the court allowed a half hour recess to enable standby counsel and prosecution to inspect and cure their Chromebook. After running out of patience with this circus the court once again ordered that Standby Counsel Shanin purchase an appropriate device. The extent of this folly was complete when Mr. Shanin offered to apologize for his error.

## *FEDERAL DEFENDER PROGRAM FOLLIES*

Somehow this apology or oops, while perhaps well intentioned, is difficult for Robert to accept. Under circumstances where his defense has been irreparably entirely compromised, his freedom hangs in the balance, and he may well be led off in manacles to the nearest jail. Only

because the most senior experienced mentor member of the Federal Defender Program and a law professor to boot simply could not figure out how to follow his duty of care to obey a basic court order. Equally, the United States Attorneys as architects of a fair trial, after having collaborated with the standby counsel, assumed a duty to ensure that their discovery was able to be reviewed and failed. Unfairly, their participation has ensured an enormous tactical advantage has accrued to their favor. "The Constitution requires (unless the defendant waives his rights) a certain modicum of adversary procedure even if the outcome is a foregone conclusion because the evidence of guilt is overwhelming." *United States v. Lee, 760 F.3d 692 (7th Cir. 2014) quoting United States v. Gonzalez–Lopez, 548 U.S. 140, (2006).*

The Sixth Amendment has been held to entitle a criminal defendant to represent himself, *Faretta v. California,*422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), if he is competent to decide to do so. The right extends to all critical stages of the prosecution, *Iowa v. Tovar,*541 U.S. 77, 87–88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *United States v. Johnson,*534 F.3d 690, 693–95 (7th Cir.2008) The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob. *Powell v. Alabama, 287 U.S. 45, 59 (1932).* As the court said in *Commonwealth* v. *O'Keefe,* 298 Pa. 169, 173; 148 A. 73: "It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case. *Powell v. Alabama, 287 U.S. 45, 59 (1932).*

Implicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel, is "the right of the accused personally to manage and conduct his own defense in a criminal case." *Lowe* v. *United States*, 418 F.2d 100, 103 (7th Cir); *Faretta v. California*, 422 U.S. 806, 817 (1975)

In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether he had a fair chance to present his case in his own way. Such rights, however, do impose limits on the extent of standby counsel's unsolicited participation. First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. *McKaskle v. Wiggins,* 465 U.S. 168 (1984). Further, the Court recognized that "the objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel".*Id.*

Robert's Faretta rights have not been respected. Prosecution team and standby counsel Shanin, through whose actions or lack thereof can be seen as another organ of the government minion, have unreasonably undermined the presentation of any defense much less a complete one. It is flatly incredible that their activities stemmed from an evident desire to contravene this court's reasonable attempts to supervise the Faretta right. "The *pro se* defendant must be allowed to control the organization and **content** of his own defense," *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). When exculpatory material is artificially deprived of a Faretta defendant the content of his defense invariably suffers. "The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to **allow the presentation** of what may, at least occasionally, be the accused's best possible defense. *McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984). Suppression as seen here adversely affects the defendant's ability to present his case.

It was literally raining government electronic discovery at Roberts residence over the past several months. However, without the means to operate the flash drives, discs, and terra storage devices no review was ever possible. Sure the government provided such material, while knowing full well that it would never be opened after consorting with an elderly standby counsel does not comport with Brady obligations.

There is something especially repugnant to justice in using rules of practice in such a manner as to debar a prisoner from defending himself, especially when the professed object of the rules so used is to provide for his defense." 1 J. Stephen, A History of the Criminal Law of England 341-342 (1883), *Faretta v. California*, 422 U.S. 806, 822-23 (1975). Mr Shanin was ordered by the court to help the defendant overcome a routine duty. He chose to neglect his duty. He repeatedly failed to provide a suitable discovery review device after picking up his Criminal Justice Act shekels for delivering Robert into the hands of a bloodthirsty prosecution. This trial has become a farce. It can not continue where the preparation of a defense has floundered exclusively because the man who had a duty to discharge did not do his JOB. There is no reason to believe that a defense that reportedly produced over 200 motions would not have reviewed discovery if only he had a chance that the court ensured. Only to have standby counsel veto, as it were.

Wherefore, Robert respectfully requests that this honorable court declare a mistrial.

Respectfully Submitted,

Robert M. Kowalski
14108 South Springfield Avenue
Crestwood, Illinois 60418