FILED
2/20/2023
LM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | |
| V. ) | No. 19 CR 226-1 |
| ) | |
| Robert M. Kowalski, ) | Virginia M. Kendall, Judge |
| Defendant ) | |

## MOTION TO DECLARE MISTRIAL

Now comes Robert M. Kowalski, (Robert), for his Motion to Declare Mistrial pursuant to the Sixth Amendment, Fourteenth Amendment, Due Process Protections Act, and Brady v. Maryland states as follows:

No one deserves to go to jail merely because their standby counsel interfered in their case. Because he could not perform the one routine court ordered duty entrusted to him. Standby Counsel Shanin failed to heed the one order the court required of him. Namely, provide the defendant with a basic tool of an adequate defense, a suitable electronic discovery review device. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, ***shall be an aid*** to a willing defendant — not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. *Faretta v. California*, 422 U.S. 806, 822-23 (1975). There are many reported cases where in the heat of a courtroom drama, standby counsel has tried to do too much for a defendant. Conversely there are no reported cases similar to this matter. Where evidence supports that an experienced

standby counsel has refused to comply with a court order for his own profit, and to benefit the prosecution thereby sabotaging the Faretta defense.

A mistrial may be declared when an error, defect or misconduct has caused substantial and irreparable prejudice to the defendant's right to a fair and impartial trial. Actions of standby counsel Shanin have made it impossible for the trial to proceed in conformity with the law. It is absolutely egregious that misconduct of standby counsel Steven Shanin working in concert with the prosecution team have interfered with the provision of a basic tool of an adequate defense *ordered* by this court and paid for by Criminal Justice Act funds for an indigent defendant. The lack of a suitable discovery device has completely thwarted the defendant's review of complex voluminous electronic Brady discovery material. The hallmark of our adversarial criminal justice system is the defendant's ability to meet the government's case. The disparity, while always considerable, has widened to unconstitutionally impermissible limits. The prosecution team is locked and loaded ready to trial by ambush with two library carts full of thick four inch exhibit binders . Meanwhile, In stark contrast the defense has been impeded and blindfolded by not even being able to access (peek at) much less print out one page of Brady material at all. This includes defendants' own meticulous seized business records.

These technical matters have arisen due to no fault of the defendant. In fact, indigent Robert has brought these troubles of a discovery review device repeatedly to the court's attention. Rather than work on the merits of his case, he was compelled to file repetitive motions complaining of his enforced inability to review discovery. Simply to fuss over prosecution/standby counsel technically inspired Chromebook difficulties, and praying for access to Brady Discovery. On each occasion standby counsel Shanin and the prosecution have shrugged, laughing off Robert's concerns. Spewing emphatically at times erroneous

misinformation. For example standby counsel stated that: a clearly incompatible Chromebook device with its Chrome operating system was *"checked out"* prior to delivery to ensure that it would serve to review the government's Microsoft Windows operating system standard issue Brady discovery. No Chromebook made with its Chrome operating system ever operated a Microsoft window operating system software, such as the government's electronic discovery. Prosecution disingenuously went so far as to represent to a persuaded court that a simple download would allow Chromebook access.

## *CHROMEBOOK GAMES*

On February 13, 2023, the eve of trial the tribunal explained to a newly empaneled jury that the purpose of Standby Counsel Shanin was to provide: *"needed items in the future"*. Consequently upon Robert's renewed request, a hearing was immediately held to determine once and for all, if the 2014 Chromebook supplied by Mr. Shanin permitted review of the government's discovery. As Robert repeatedly decried, the Mr Shanin supplied Chromebook with its incompatible Chrome operating system again failed, proving that it was incapable of operating any of the government's standard issue Microsoft Windows operating system based Brady electronic discovery material. It has proved entirely incompatible, with its Chrome operating system, to operate a standard government issued discovery utilizing a Microsoft Windows based operating system. Then the court allowed an additional forty minute recess to enable standby counsel and his prosecution team confederates to inspect, fiddle with, and cure their Chromebook woes. After running out of patience with this pretense of such a circus. The court for a second time, ordered in open court that standby counsel Shanin purchase the appropriate equipment to enable discovery review for this defendant's use. The extent of this gamesmanship was complete when Standby counsel Shanin mumbled his offer to apologize for

his error. Finally, Robert received on the following morning, the first day of trial, a new HP laptop replete with a Microsoft Windows operating system compatible with the government's electronic discovery.

## *FEDERAL DEFENDER BONANZA*

Somehow this apology or oops, while well intentioned or otherwise, is difficult for Robert to accept. Under the circumstances where his defense has been irreparably entirely compromised, his freedom hangs in the balance, and he may well be led off in fetters to the nearest federal penitentiary. Only because the most senior experienced mentor member of the Federal Defender Program and a noted law professor to boot did not deign to follow his duty of care by obeying a basic court order. It is outrageous that he chose to purchase a *NEW* Chromebook and have it delivered to his home with Criminal Justice Act funds for his own use. (See Exhibit A). While simultaneously foisting off his own *OLD USED* 2014 Chromebook onto an indigent defendant struggling to vindicate his freedom. (See Exhibit B). Ever the little schemer, Mr. Shanin knew to have those other ancillary items he supplied pursuant to court order delivered directly to Robert's residence. (See Group Exhibit C). He exacted an unearned windfall by misappropriating Criminal Justice Act monies, under circumstances where his old Chromebook was never suitable for accessing government discovery. Even had the Chromebook operated, Mr. Shanin would have been entitled to charge for the use of the services of his old computer, not for the purchase of a brand new machine. Knowing that the Chromebook was intended to prove a worthless hurdle, Mr. Shanin continued to seek appropriate computer equipment from the Federal Defender Program, (See Exhibit D).

## CRIMINAL JUSTICE ACT OFFENDED

The purpose of the Criminal Justice Act of 1964, as proclaimed in its preamble is "To promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in the courts of the United States. "In support of the proposed legislation Attorney General Kennedy emphasized that "justice is not done when poverty prevents a person from securing effective legal representation for his defense against a criminal prosecution which places his personal liberty, or even his life, in jeopardy. This legislation is designed to bring the scales of justice into balance in such cases" *Christian v United States, 398 F2d 517, (10th Cir 1968). 1964 U.S. Code Cong. Adm.News, p. 2996.* The Criminal Justice Act required the trial judge to satisfy herself that the services ordered were in fact necessary, not standby counsel. The cause of justice is hardly promoted by padding standby counsel's Shanin's pocketbook in exchange for his kid's old worthless incompatible school equipment at the expense of a man's liberty.

Where the defendant, (Robert), satisfactorily established the need for subsection (e) services the district had a ***duty*** to authorize such services for the proper preparation of defendant's case. This duty can only be discharged by the authorization of subsection (e) services at such a time and under such circumstances which insure the giving of ***effective aid in the preparation*** and trial of a case and obviate the likelihood of prejudice from delay which could prevent a fair trial. *Powell v State of Alabama, 287 U.S. 45, (1932).* Under circumstances far different than those in the instant case, the late authorization of subsection (e) services, like the late appointment of counsel, may be ***inherently prejudicial*** to a defendant's rights in the absence of a strong showing by the government that no prejudice actually occurred. *United States ex rel Mathis v. Rundle, 394 F.2d 748 (3rd Cir 1968).* When standby counsel Shanin stalled, delaying accomplishment of his routine task until the very day of trial, Robert was unfairly deprived

access to millions of fraud-laden documents upon which to build a defense. Standby counsel Shanin had no right to impede preparation of a complete defense.

## *BRADY SUPPRESSION*

Equally, the prosecutor as an architect of a fair trial, after once having collaborated, meddled, and otherwise participated with standby counsel's sole obligation, assumed a duty to ensure that their representations to the court were accurate and failed. Unfairly, their participation in this standby counsel imbroglio has ensured an enormous tactical advantage has accrued to their favor. It would have been better for them to have not become involved rather than mire Robert's defense with obviously bogus inoperative equipment. Their involvement has allowed exculpatory material to hide in plain view, as it were. There is every indication the government knew or should have known the Chromebook operating system incompatibility would effectively hide exculpatory evidence and proceeded regardless. It goes without saying this is a Brady violation. *United States v Skilling, 554 F3d 529 (5th Cir 2009).*

"The Constitution requires (unless the defendant waives his rights) a certain modicum of adversary procedure even if the outcome is a foregone conclusion because the evidence of guilt is overwhelming." *United States v. Lee, 760 F.3d 692 (7th Cir. 2014) quoting United States v. Gonzalez–Lopez, 548 U.S. 140, (2006).* Guilt here is anything but a foregone conclusion. The government's case is built upon the altered and unreliable records of a failed bank. The government needs to resort to dirty computer tricks hamstringing the defense in order to gain a conviction.

## *STANDBY DESTRUCTION OF FARETTA RIGHT*

Denying the defendant the right to self-representation is a ***structural error*** that is not subject to harmless error analysis. *United States v Lee, 760 F.3d 692, (7th Cir 2014)*. The Sixth Amendment has been held to entitle a criminal defendant to represent himself, *Faretta v. California, 422 U.S. 806, (1975)*, if he is competent to decide to do so. The right extends to all critical stages of the prosecution, *Iowa v. Tovar, 541 U.S.77, (2004); United States v. Johnson, 534 F3d 690, (7th Cir.2008)*. The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob. *Powell v. Alabama, 287 U.S. 45, 59 (1932)*. As the court said in *Commonwealth* v. *O'Keefe*, 298 Pa. 169:"It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case. *Powell v. Alabama, 287 U.S. 45, 59 (1932)*.

Implicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel, is "the right of the accused personally to manage and conduct his own defense in a criminal case." *Lowe v. United States, 418 F.2d 100, (7th Cir 1969); Faretta v. California, 422 U.S. 806, 817 (1975)*. When standby counsel violated this court's order it literally interfered with Robert's ability to control the content and stripped the ability to present any defense. A defendant's constitutional rights may be violated when "standby counsel is overly zealous and interferes with the defendant's ability to conduct his trial". *Smith v. Warden, 2008 Ct. Sup. 13600 (Conn. Super. Ct. 2008)*. It is regretful that the only zealousness exhibited by standby counsel Shanin consisted

of his own avarice toward his pocketbook. The trial judge was satisfied that services were necessary to allow discovery review. Such services were specifically ordered. Standby counsel Shanin had no discretion to veto the judges ruling by providing ineffective equipment that he knew or should have known would prove defective for its intended purpose.

The objectives of affirming a *pro se* defendant's dignity and autonomy and of allowing the presentation of what may be his best possible defense can both be achieved without categorically silencing standby counsel. In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether he had a *fair chance* to present his case in his own way. Such rights, however, do impose limits on the extent of standby counsel's unsolicited participation. First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. *McKaskle v. Wiggins, 465 U.S. 168 (1984)*. Further, the Court recognized that "the objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel".*Id.* When standby furnished his incompatible equipment he did so knowing that government discovery would remain hidden. Indigent Robert never had a chance to construct a meaningful defense.

Robert's Faretta rights have not been respected. Prosecution team and standby counsel Shanin, through whose actions or lack thereof can be seen as another organ of the government or minion, have unreasonably undermined the presentation of any defense much less a complete one. It is flatly incredible that their activities stemmed from an evident desire to contravene this court's reasonable attempts to supervise the Faretta right. "The *pro se* defendant must be allowed to control the organization and ***content*** of his own defense," *McKaskle v. Wiggins, 465 U.S. 168, 174 (1984)*. When exculpatory material is artificially deprived of a Faretta defendant the content

of his defense invariably suffers. "The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to ***allow the presentation*** of what may, at least occasionally, be the accused's best possible defense. *Id*. Suppression as seen here adversely affects (DOOMS) the defendant's ability to present his case.

It was literally raining government electronic discovery at impoverished Robert's residence over the past several months. However, without the means to operate the flash drives, discs, and terra storage units no review was ever possible. Sure the government provided such material. While engineering full well that it would never, could never, be opened by the poor defendant, after consorting with an elderly standby counsel does not comport favorably with government Brady obligations.

There is something especially repugnant to justice in using rules of practice in such a manner as to debar a prisoner from defending himself, especially when the professed object of the rules so used is to provide for his defense." *1 J. Stephen, A History of the Criminal Law of England 341-342 (1883), Faretta v. California, 422 U.S. 806, 822-23 (1975)*. Mr Shanin was ordered by the court to help the defendant overcome a routine duty. He chose to neglect his duty in favor of turning a quick profit from disposal of his kids' tired old unsuitable school Chromebook. Repeatedly, until the charade unraveled in open court on the eve of trial, February 13, 2023. He failed to provide a suitable discovery review device after picking up his Criminal Justice Act shekels for delivering Robert into the hands of a bloodthirsty prosecution. This trial has become a farce. It can not continue where the preparation of a defense has floundered exclusively because the one officer of the federal court who had a duty to discharge, did not do his *JOB*. There is no reason to believe that a defense that reportedly produced over 200 motions

would not have reviewed discovery. If simply he had a chance that the court ensured through its order. Only to have standby counsel countermand the courts order.

Wherefore, Robert respectfully requests that this honorable court declare a mistrial.

Respectfully Submitted,

/s/ Robert M. Kowalski
Robert M. Kowalski
14108 South Springfield Avenue
Crestwood, Illinois 60418

## Order Details

Ordered on September 19, 2022   Order# 112-1750464-7722636   View or Print Invoice

**Shipping Address**
Steven R Shanin
United States

**Payment Method**

**Order Summary**
| | |
|---|---|
| Item(s) Subtotal: | $109.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $109.99 |
| Estimated tax to be collected: | $8.80 |
| Grand Total: | $118.79 |

⌄ Transactions

**Delivered Sep 21, 2022**
Your package was left near the front door or porch.

Lenovo IdeaPad 3 11 Chromebook Laptop, 11.6" HD Display, Intel Celeron N4020, 4GB RAM, 64GB Storage, Intel UHD Graphics 600, Chrome OS, Onyx Black
Sold by: UShoppingMall (Recorded Sal)
Return window closed on Oct 21, 2022
$109.99
Condition: New

Get product support
Write a product review
Archive order

Items from Your List

Page 1 of 5

EXHIBIT A

```
1  <!doctype html>
2  <html dir="ltr" lang="en">
3  <head>
4  <meta charset="utf-8">
5  <title>New Tab</title>
6  <link rel="stylesheet" href="chrome://resources/css/text_defaults.css">
7  <style>/* Copyright 2014 The Chromium Authors
8   * Use of this source code is governed by a BSD-style license that can be
9   * found in the LICENSE file.
10  *
11  * Incognito and guest mode NTP shared CSS. */
12
13  body {
14    -webkit-font-smoothing: antialiased;
15    font-size: 85%;
16  }
17
18  @media (prefers-color-scheme: dark) {
19    html {
20      background: rgb(53, 54, 58);
21      color: rgb(232, 234, 237);  /* --google-grey-200 */
22    }
23  }
24
25  h1 {
26    font-size: 200%;
27    font-weight: 400;
28    margin-bottom: .77em;
29  }
30
31  p {
32    line-height: 1.5;
33    margin: .588em 0;
34    text-align: start;
35  }
36
37  a {
38    color: rgb(51, 103, 214);
39  }
40
41  a:hover {
42    text-decoration: underline;
43  }
44
45  .learn-more-button {
46    color: rgb(66, 133, 244);
47    display: inline-block;
48    font-size: 92.8%;
49    font-weight: 500;
50    margin-top: 1.98em;
51    padding: 10.5px 12px;
52  }
53
54  @media (prefers-color-scheme: dark) {
55    :-webkit-any(a, .learn-more-button) {
56      color: rgb(138, 180, 248);  /* --google-blue-300 */
57    }
58  }
59
60  .content {
61    box-sizing: border-box;
62    margin: 3.5em auto 0;
63    max-width: 480px;
64    min-width: 240px;
65    padding: 30px 35px;
66    text-align: center;
67  }
68
69  html[hascustombackground='true'] .content {
70    border-radius: 2px;
71    box-shadow: 0 4px 6px 1px rgba(0, 0, 0, 0.4);
72  }
73
74  .content > span {
75    display: block;
76  }
77
78  @media (max-width:700px) {
```

EXHIBIT B

```
80        margin: 1em 2em 2em;
81      }
82    }
83
84    @media (max-width:400px) {
85      body {
86        margin: 3em 1.5em 2em;
87      }
88
89      /* Adjustment for narrow screen to prevent horizontal scrollbar. */
90      .content {
91        padding: 16px 8px;
92      }
93    }
94
95    @media (max-height:480px) and (max-width:400px) {
96      .content {
97        margin: auto;
98      }
99    }
100  </style>
101  <style>/* Copyright 2012 The Chromium Authors
102   * Use of this source code is governed by a BSD-style license that can be
103   * found in the LICENSE file.
104   *
105   * This is the stylesheet used for notifications in enterprise-enrolled devices.
106   */
107
108  #enterprise-info {
109    background-color: rgb(250, 245, 202);
110    border: 2px solid rgb(250, 245, 202);
111    border-radius: 2px;
112    box-sizing: border-box;
113    margin-bottom: -43px;
114    margin-left: auto;
115    margin-right: auto;
116    max-width: 640px;
117    padding: 3px 8px 7px;
118  }
119
120  #enterprise-info[visible='false'] {
121    display: none;
122  }
123
124  #enterprise-info img {
125    height: 18px;
126    margin-inline-end: 4px;
127    position: relative;
128    top: 4px;
129    width: 18px;
130  }
131
132  @media (max-height:480px) and (max-width:400px) {
133    #enterprise-info {
134      margin-bottom: 1em;
135    }
136  }
137
138  @media (max-width:400px) {
139    #enterprise-info {
140      margin-top: -2em;
141    }
142  }
143  </style>
144  </head>
145  <body>
146  <div id="enterprise-info" visible="false">
147    <img src="data:image/svg+xml;base64,PHN2ZyB4bWxucz0iaHR0cDovL3d3dy53My5vcmcvMjAwMC9zdmciIHdpZHRoPSI0OCIgaGVpZ2h0PSI0OCIgZml
148    <span id="enterprise-info-message"></span>
149    <a id="enterprise-info-hint-link" href="">
150
151    </a>
152  </div>
153  <div class="content">
154    <h1>You&#39;re browsing as a Guest</h1>
155    <p>
156      <span>Pages you view in this window won&#39;t appear in the browser history and they won&#39;t leave other traces, like c
157      <a href="https://support.google.com/chromebook/?p=chromebook_guest">Learn more</a>
158    </p>
```

Order Details

https://www.amazon.com/gp/your-account/order-details?ie=UTF8&orderID=112-2328572-39...

Hello, Steven    Returns    7
Account & Lists    & Orders

Deliver to Steven
Highland ... 60035   All ▾

All   Prime Video   Buy Again   Amazon Basics   Customer Service   Groceries ▾   Health & Household    Early Black Friday deals are here

# Order Details

Ordered on October 12, 2022    Order# 112-2328572-3965005

**Shipping Address**
Robert Kowalski

**Payment Method**


**Order Summary**
View or Print Invoice

Item(s) Subtotal:   $123.61
Shipping & Handling:   $2.99
Free Shipping:   -$2.99
Total before tax:   $123.61
Estimated tax to be collected:   $12.62

**Grand Total:**   $136.23

∨ Transactions

## 2 Shipments

**Delivered Oct 13, 2022**
Your package was left near the front door or porch.



Amazon Basics Multipurpose Copy Printer Paper - 8.5 x 11 Inch 20 lb Paper - 3 Ream Case (1,500 Sheets), 92 GE Bright White
Sold by: Amazon.com Services LLC
Return eligible through Jan 31, 2023
$20.34
**Condition:** New

[ Buy it again ]

Track package
Get product support
Return or replace items
Share gift receipt
Leave seller feedback
Write a product review
Archive order

EXHIBIT C

RE: Computer equip for client?

**From:** John_Murphy
**To:** sshanin
**Subject:** RE: Computer equip for client?
**Date:** Mon, Oct 3, 2022 3:02 pm

Hi Steve—

We do not have unused computer equipment available. Even if we did, our computers are for the use of our staff alone. I'm not sure what else I can say. If Judge Kendall asks, you can say you inquired and let her know that we don't have computers for defendants.

Thanks.

John

EXHIBIT D

https://mail.aol.com/webmail-std/en-us/PrintMessag