UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 226-1 |
| | ) | |
| ROBERT M. KOWALSKI | ) | HON VIRGINIA M. KENDALL, Judge |
| | ) | |

FILED
APR 1 1 2023 SMB
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## MOTION FOR RELEASE PENDING SENTENCE

Now comes ROBERT M. KOWALSKI, ROBERT, for his motion for RELEASE PENDING SENTENCE pursuant to 18 U.S.C 3143(a)(1), 18 U.S.C 3145(c), FARETTA RIGHT, Fifth Amendment, Sixth Amendment and Fourteenth Amendments to the U.S Const states as follows:

## UNPRECEDENTED EXCEPTIONAL CIRCUMSTANCES

Exceptional reasons for purposes of a bond motion, mean clearly out of the ordinary. United States v. Hosier, 15-CR-3107 (10th Cir 2015). A unique combination of circumstances giving rise to situations out of the ordinary. United States v. Lippold, 175 F Supp 2d 537 (S.D.N.Y 2007). It can also be defined as uncommon or rare. United States v. Little, 485 F3d 1210 (8th Cir 2007). Exceptional reasons review is limited to determining whether remanding individual is tantamount to subjecting individuals to unjust detention. United States v Christman, 712 F Supp 2d 651 (ED KY 2010)

(1)

This case presents considerable reason why Robert's detention is not appropriate. Simply as a result of his poverty, Robert was denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty was at stake.

The Court recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. It has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system. Ross v. Moffitt, 417 U.S. 600 (1974).

The Ake Court emphasized the well-established concept that, when a state brings its power to bear upon an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a <u>FAIR OPPORTUNITY</u> to present his defense. Ake v Oklahoma, 470 U.S. 68 (1985). To implement the principle of meaningful participation the focus is on identification of the basic tools of an adequate defense or appeal. Britt v. North Carolina, 404 U.S. 226 (1971).

Consequently, the trial court took additional steps to assure that Robert had a fair opportunity to present his defense. It determined that Robert's deemed complex case required a basic tool of an adequate defense, namely an electronic discovery review instrument. Accordingly, on August 17, 2022 the trial court ordered Standby Counsel Shanin to procure for Robert's usage a suitable electronic discovery review device.

## ROLE OF STANDBY COUNSEL

In Faretta v California, 422 U.S. 806 (1975), the Court recognized a defendant's right to conduct his own defense. Also that a trial court may appoint Standby Counsel to be an <u>AID</u> to <u>ASSIST</u> the pro-se defendant in his defense. The appointment of standby counsel is a well recognized <u>SAFEGUARD</u> when a defendant elects to proceed pro-se and one that should be employed on a regular basis. United States v. Maya Gomez, 860 F2d 706 (7th Cir 1988). Likewise, the Seventh Circuit recognized the limitations of this assistance meant that: "Standby Counsel's primary duty is not to <u>INTERFERE</u> with a defendant's Faretta right. Simpson v. Battaglia, 458 F3d 585 (7th Cir 2006).

The Court elaborated on the interplay of the role of Standby Counsel and a Criminal defendant's right of self

3.

representation. The Court noted the FARETTA right serves two objectives: Preserve a defendant's dignity and autonomy and occasionally present the best possible defense. McKaskle v. Wiggens, 465 U.S. 168 (1984).

Standby Counsel may <u>ASSIST</u> a pro-se defendant in overcoming routine procedural or evidentiary obstacles to the completion of a specific task. However, Standby Counsel may not substantially <u>interfere</u> with any significant tactical decisions. McKaskle v. Wiggens, 465 U.S. 168 (1984). Trial court retains broad discretion to determine scope of Standby Counsel's involvement. It has been recognized that Standby Counsel <u>SHALL</u> "perform any other case related actions at the courts instruction. United States v. Sims, 19 CR 30034-SMY (SDIL 2019).

## CHROMEBOOK GAMESMANSHIP

In September 2022 during a status hearing, Standby Counsel Shanin presented Robert with a "<u>CHROMEBOOK</u>" laptop. Privately he explained that he had deleted his personal history within, cleaning out his closet as it were. Upon inspection of the Chromebook, Robert learned that the Chromebook would not allow review of the government's discovery material. Not really surprising at all. Because the Chromebook's, <u>Chrome Operating</u> system is inherently <u>INCOMPATIBLE</u> with the government's Microsoft windows operating system based

(4.)

BRADY discovery material.

Robert immediately filed a motion, requesting trial court supervision relative to the experienced difficulties. He was met during the next scheduled November 2022 status hearing by the forewarned prosecution. Who during open court furnished Robert a sheet listing "FREEONES" downloadable websites to cure the problem. While they helpfully assured the trial court without candor, that a quickee download was guaranteed to cure the Chromebook deficiencies. The trial court chided Attorney Robert for his lack of compliance with ABA required computer competency. Meanwhile, Standby Counsel Shanin stood mute under circumstances where he had a clear duty to advise the court.

Nevertheless, Robert's Chrome operating system versus Microsoft Windows operating system incompatibility problems persisted. Robert soon learned the exceedingly simple yet profound fundamental problem could not be solved with any quickee "FREEONES" download. However, Robert lacked the tools and knowledge to kick the Chromebook down into a "DEVELOPER MODE" reprograming. Which would have required breaking into the computer case with attendant risk of destroying the equipment. Robert again advised the trial court by motion of his inability to access discovery.

5.

At the subsequent status hearing standby Counsel Shanin persuaded the court, assuring that he had purchased an appropriate discovery review device. While knowing the whole time, that the new device he purchased with Criminal Justice Act monies was maintained in his own possession for his exclusive usage. This is confirmed by his entries in this docket that demonstrate the new computer was actually delivered directly to his own residence. While other sundry supplies (ie paper and printer) were routed to Robert's domicile. The old 2013 Shanin legacy Chromebook in Robert's possession remained inoperative for critical discovery review purposes. Robert continued to plead with the trial court for a serviceable discovery review device by filing renewed motions for FARETTA supervision.

Finally, the NON-operative "CHROMEBOOK" was brought directly to the courtroom on February 13, 2023; the first day of trial. The tribunal demanded that the Chromebook was immediately tested to ensure it could operate the government's discovery. Standby Counsel was joined by prosecution team, as they worked feverishly on their joint Chromebook project together for nearly an hour. Before admitting to the tribunal, confirming that further efforts on the NON-functional Chromebook were futile. This or any Chromebook ever manufactured would never, could never operate any of

6.

the government's electronic discovery material whatsoever. Standby Counsel Shanin, nervously sheepishly offered his apology to the trial court for his wrongdoing. Prosecution team remained silent acknowledging that the promise of their earlier snake-oil advice was proven patently false.

A visibly frustrated trial court, upon finding that Standby Counsel Shanin had disregarded its routine order, that it had entrusted to him, immediately ordered Standby Counsel Shanin procure overnight a Microsoft Windows operating system laptop, to allow pretrial defense preparation at Criminal Justice Act expense for a second time. However, as all this occurred on the first day of trial, the failure of Standby Counsel Shanin to comply with a court order did not aid, assist or help the FARETTA defendant. Rather, it foreclosed any meaningful pre-trial preparation thereby prejudicing the defense. The tribunal resolved the Chromebook defect issue in Robert's favor. Entirely too late for it to be of any benefit to a struggling defendant.

Standby Counsel Shanin purposefully and knowingly declined to obey a routine court order. Just so that he could reap an undeserved fraudulent windfall of a free new laptop. At the expense of the constitutional rights of an indigent pro-se defendant fighting for his freedom. Consequently, the subsequent courtroom apology

7.

of Standby Counsel Shanin Rings suspect. Particularly, where he had formerly worked in a collaborative fashion, a pas de deux, solely benefiting the prosecution. He provided numerous fraudulent representations to the court relative to the inadequate CHROMEBOOK. So that discovery review was completely forestalled.

It is an absolute repugnant hypocrisy that the appointed <u>SAFEGUARD</u> to ensure a fair trial, Standby Counsel Shanin purposefully failed to obey a routine trial court order. Simply to escort another man to jail. So that he could swindle himself a mere upgrade of his old CHROMEBOOK with some sweet new computing hardware at taxpayer expense.

### LOST PROMISE OF BRADY

Prosecution team ensured by their active disingenuous tag team presentations to the court, with Standby Shanin relative to the Chromebook, so that their BRADY discovery material provided would remain hidden in plain sight. This represents a clear suppression of favorable material Brady information. Hardly comporting with a prosecutors' duty of an architect of a fair trial.

Without access to any, much less adequate pretrial

⑧

preparation, the subsequent trial did not subject the government's case to a meaningful crucible of adversarial testing. It is VAIN to give Robert his day in court, while withholding pre-trial preparation and investigation. The promise of Brady was effectively deprived through concealment.

Standby Counsel Shanin's fraudulent CHROMEBOOK gamesmanship actively prevented Robert from accomplishing something Robert intended to accomplish or should have been able to accomplish. Consequently, Robert was unable to control the organization NOR content of his defense. Solely because Standby Counsel Shanin INTERFERED by withholding a suitable discovery review device, in contravention of trial court order.

Standby Counsel Shanin's CHROMEBOOK fraud scheme eroded the autonomy and dignatory values that the right to self representation is intended to promote. And has unduly interfered with the presentation to the jury of Robert's most effective defense. The severe (Blockade) deprivation of pretrial preparation ensured that Robert was not afforded a fair chance to present his case his own way. This is the CORE of the FARETTA right. McKaskle v. Wiggens, 465 U.S. 168 (1984).

⑨

It is inconceivable that the most senior mentoring attorney of the Federal Defender Program, a man with forty-eight years of experience, Standby Counsel Shanin, did not know well in advance that his old "CHROMEBOOK" was incompatible with government discovery. He proceeded regardless, setting up Robert for failure. Knowing of the adverse consequences that would accrue to Robert's defense preparation.

A defendant's right to self representation is not violated unless standby counsel impinges upon the defendant's ability to present his own case defense. United States v. Ortega-Cervantes, No 17-2619 (7th Cir 2018). Standby Counsel Shanin had no discretion nor authority to veto or abrogate this trial court's order. In failing to provide an instrument to vindicate Robert's legal rights. Rather he usurped the court order for his own personal advantage and to benefit his pals in the prosecution. Provision of an electronic discovery device on the first day of trial divested Robert's ABILITY to prepare for trial. Differences in access to instruments needed to vindicate legal rights, when based upon the financial situation of the defendant are repugnant to the Constitution. United States v Acosta, 495 F2d 60 (10th Cir 1974). Standby Counsel Shanin deprived Robert of the Equal Protection of the laws and a fair trial when he unilaterally disregarded the trial court's routine order.

10.

The Sixth Amendment guarantees effective assistance of counsel, not <u>APOLOGIES THEREFROM.</u> Within the narrow limits of the trial court's routine discovery order to Standby Counsel Shanin, the Sixth Amendment guaranteed that Robert had every right to expect effective representation. Not Standby Counsel's apologies after his greedy avaricious fraudulent scheme unraveled in open court. Robert was entitled to a laptop with Microsoft Windows operating system compatibilities. Not the self serving "I'M SORRY" from Standby Counsel Shanin. Ordinarily, the prime objection of a Standby Counsel is that they tried too hard for the defendant. There is no reported case ever where a Standby Counsel has sunk to the depths of depravity as witnessed here.

### <u>STANDBY HARBINGER OF DOOM</u>

Generally, the role of Standby Counsel is to be seen not heard. But there Standby Counsel Shanin stood on the first day of trial before the tribunal on the record, delivering his most humblest <u>APOLOGY</u>. Relative to his failure to abide the trial court's most mundane routine order, issued several months earlier. In order to permit Robert to prepare and present his defense, the trial court deemed that an electronic discovery instrument was indispensable. It ordered Standby Counsel Shanin to procure such for Robert with resort to Criminal Justice Act funds. Standby Counsel Shanin, despite

his earlier false representations to the contrary, had been proven WRONG. The Chromebook he provided did not fulfill the intended purpose. Court Appointed counsel was never meant to be an ALBATROSS tied around a defendant's neck. Wiggens v. Estelle, 681 F2d 266 (5th Cir 1982). As such Standby Counsel Shanin's evident contempt for the trial court's order "HIJACKED" defense preparation. This Standby Counsel, who was forced upon Robert's defence interfered with rights basic to the making of a defense.

Certain safeguards are essential to criminal justice. The accused must have ample opportunity to meet the case of the prosecution. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for production of evidence. But evidence and truth are of no avail unless they cannot be adequately presented. Essential fairness is lacking if an accused cannot effectively put his case in court. Adams v. United States ex rel McCann, 317 U.S. 269 (1942).

The law is seen to contrive against an accused. Where a Rogue Standby Counsel, forced upon a defendant, fails to adhere to a court order issued to safeguard constitutional rights accorded to defendants. What

(12)

were contrived as protections for an accused should not be turned into fetters. Faretta v. California, 422 U.S. 806 (1975). The function of Standby Counsel is to AID the accused if and when the accused needs HELP. Not act as another organ of the government headwind imposed on the defendant to benefit the prosecution. Standby counsel had no authority nor right to incapacitate the defense. Standby Counsel Shanin's self serving apologies were not helpful to the defense. The right to defend is given directly to the accused, for it is he who suffers the consequences if the defense fails. The profuse apology ridden performance of Standby Counsel Shanin has quite literally imprisoned a man in his supposedly safeguarding priveleges, and would call it constitutional.

## CONTINUANCE WARRANTED

Standby Counsel Shanin's apology and subsequent provision of a suitable laptop occuring on the second day of trial, provoked a reasonable and apparant need for a continuance. Robert's request for a defense preparation continuance was in essence a request to meaningfully assert the right to self-representation. Upon denial, the prejudice suffered was no less than the effective denial of his right to self representation. Solely due to the action or lack thereof of the man who was supposed to HELP.

13.

The District Court has broad discretion to grant a continuance request, and a continuance request needs to present a compelling reason. United States v Jones, 643 F3d 275 (8th Cir 2011). The foregoing standby counsel/Prosecution CHROMEBOOK games involving contempt of court order presents a rare perhaps unprecedented background for such a continuance request. Court's long ago recognized that it was vain to allow a man his day in court with no opportunity to prepare for trial. Commonwealth v. O'Keefe, 148 A. 73 (1929). In a complex case revolving around millions of documents withheld to the defense, denial of a continuance was so detrimentally unfair as to be "fundamentally unfair". United States v. Bonilla-Siciliano, 643 F.3d 589 (8th Cir 2011). To deny Robert a continuance which would have allowed him to prepare for trial effectively rendered his right to self representation meaningless. Armant Marquez, 772 F. 2d 552 (9th Cir 1985).

### STRUCTURAL ERROR

An impermissable denial of the right to self representation constitutes a structural error that is not subject to harmless error review and instead requires automatic reversal. Bachelor v. Cain, 682 F.3d 400 (5th Cir 2012). The right is either respected or denied; its deprivation can not be harmless. McKaskle v. Wiggens, 465 U.S. 168 (1984).

## NOT LIKELY TO FLEE OR POSE A DANGER

Section § 3143(a) applies to a person who is awaiting imposition of sentence. United States v. Krillch, 178 F.3d 859 (7th Cir 1999). Convicted defendants are confined promptly after being sentenced, unless a substantial question of law and fact is likely to result in a Reversal or a reduction in imprisonment to less than the anticipated duration of the appeal. United States v. Eaken, 995 F2d 740 (7th Cir 1993).

There is clear and convincing evidence that Robert is not a flight risk nor a danger to the community as follows:

- Robert had done remarkably well on release. An agreed order entered in July 2020 recited exactly that. Since under the supervision of Pretrial officer Jeffrey Arrias from August 17, 2022; Robert was not cited for any bond violation.

- Time in detention and since serving the prior imposition of 18 months have been peaceful and in compliance with the law.

- Robert has led an impeccable law abiding life.

- Robert is now sixty one years old, born in Chicago

15.

without any criminal history whatsoever.

- Robert obtained a Juris Doctor degree from Creighton University School of Law 1990. He has been an attorney for 33 years. Also he is a member of the Federal General Bar of this District.
- Robert has NOT TESTED positive for illegal substances.
- Robert has NOT abused alcohol
- The charged crimes do not include drugs, use of violence, weapons, or threatened violence
- Robert has close substantial family ties to the community in the form of five children and two stepsons. The youngest of all Alexander at four years old has been diagnosed with autism. This child dearly needs his caring father in his life.
- Robert is indigent, lacking access to funds
- Robert is a first time offender
- Robert has not incurred any new criminal charges during the pendency of these proceedings
- Robert has not had police contact during release on bond
- Robert has not missed any court appearances.
- Robert has no personal income and no assets to finance flight. Nor is there any evidence that he has any intention or motivation to flee. Quite the contrary, Robert has relentlessly passionately sought reunification with the family he loves.

16.

## SORRY STANDBY COUNSEL

Unprecedented, preying upon an indigent defendant machinations, of Standby Counsel Shanin contrary to this court's order; ensured that defense preparation would labor under a veritable <u>BLACKOUT</u> of facts, upon which to build a defense. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts. Exceptions to this are justifiable only by the clearest and most compelling circumstances. These however are entirely absent here. This proceeding has been unconstitutionally marred by interference of various organs of the government. Who have abused the integrity of these judicial proceedings. By smothering the FARETTA right that honors the autonomy and dignity of the individual. Out of that respect which is the lifeblood of the law. It is axiomatic that pretrial preparation can not be withheld until after the first day of trial, despite Standby Counsel's most profuse apologies.

Wherefore Robert respectfully request release on reasonable conditions of bond

Respectfully Submitted
*Robert M. Kowalski*
Robert M. Kowalski
#499069

Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

(17.)

Robert M. Kowalski
#499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois
60901

Clerk of United States District Court
For the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois
60604

This Correspondence is from
a detainee from:
Jerome Combs Detention Center
3050 Justice Way
Kankakee, IL 60901

04/11/2023-32