UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED**

EASTERN DIVISION

UNITED STATES OF AMERICA )

MAY 0 9 2023

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

v.                  )  No. 19 CR 226-1
                    )
ROBERT M. KOWALSKI, )  Hon Virginia M. Kendall, Judge
        defendant   )

## MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATE FOR A NEW TRIAL

Now Comes Robert M. Kowalski, (Robert), for his motion for Judgment of acquittal or in the alternate for a new trial pursuant to Fed R Crim Pro Rules 29 and 33 and the fifth, sixth, and fourteenth Amendments states as follows:

## THE "I'M SORRY" STANDBY

Robert waived his right to Representation not to a fair trial. The right to a fair trial is "the most fundamental of all freedoms", essential to the preservation and enjoyment of all other rights. Spencer v. Texas, 385 US. 554 (1965). The state has a compelling interest Related to its own legitimacy, in ensuring both fair procedures and reliable outcomes in criminal trials. Both of which are thwarted when an organ of the state, an obstensible safeguard in the form of a standby counsel, artificially forecloses access

(1)

to government's electronic discovery material. Ensuring control over the content of the defense and its presentation was taken lost to the defense. Without any case related information a FARETTA defendant can not make competent strategic decisions.

## ESPECIALLY REPUGNANT TO JUSTICE

Standby Counsel Shanin certainly did neither "Too Little" or for that matter "Too Much". He erred in an entirely different unprecedented direction. Standby Counsel abdicated his Role as a well Recognized safeguard, a backstop, for the defendant's Right to counsel. He did not prove to be an AID. Contrary to all anticipated commonly relied upon notions about the function of a standby counsel; he refused to abide a routine trial court order requiring that he ASSIST, by providing critical tools for an adequate complete defense. Instead of doing his job in discharging his only duty. He seized upon this courts order as an opportunity to enrich himself while reaping a personal windfall. Choosing petty profiteering of a new upgraded computer at the expense of his duty to ASSIST an accused fighting for his freedom. Then when his scheme was questioned, he engaged with the prosecution in a candorless campaign of misinformation to persuade the trial court all was well when the converse was true. While knowing the whole time that his conduct had rendered the defense vulnerable, crippled, and adrift without any access to vital BRADY material solely because of his

(2.)

avarice. In fact, Standby Counsel only accepted responsibility, uttering APOLOGY, only after his wrongdoing was exposed in open court.

## "CHROMEBOOK" GAMES

Robert's difficulties began when Standby Counsel Shanin presented him with an older 2013 model "CHROMEBOOK" discovery review instrument; one that would never work under any circumstance. Naturally, since its CHROME OPERATING system is inherently incompatible with the government's MICROSOFT WINDOWS operating system based discovery. Experienced Standby Counsel Shanin would have known this well in advance. Court filings reflect that a new device was procured under the trial court's auspices and paid for at taxpayer expense under the Criminal Justice Act 18 USC 3006 (A). Despite Robert's incessant desperate plea filled motions, filed each month with the trial court; Standby Counsel accompanied now by the prosecution poker faced, steadfastly denied that any such problem existed.

The rule established by the Court in McKaskle v. Wiggins, 465 US 168 (1984), is that Standby Counsel is to be seen not heard. But on February 13, 2023 the first day of trial, there stood Standby Counsel Shanin in open court profusely APOLOGIZING to the tribunal. Admitting that the old CHROMEBOOK he provided and later repeatedly assured was fully operational, was in fact and had always been

DEFECTIVE. Prosecutors held their peace, a tacit acknowledgment that their mutual CHROMEBOOK project was a fiasco. Robert had been denied pretrial access to all discovery material including Brady materials. Immediately, the trial court, for a second time, ordered Standby Counsel Shanin to procure a suitable discovery review device. However, it is axiomatic that pretrial defense preparation can not occur after trial has begun. The prosecution was left in exclusive possession of a veritable storehouse of relevant fact with resulting enormous tactical advantage.

Underlying this unexpected dramatic courtroom APOLOGY was the unmitigated greed of pettifogger Standby Counsel Shanin. Purchase receipts filed in the docket of this proceeding confirm that Mr Shanin indeed purchased a new computer. That he retained for his own personal purposes. Allowing Robert's drowning defense to flounder about with his kid's old CHROMEBOOK, cleaned out of his closet as it were. Calculating Standby Counsel Shanin profited at the expense of Robert's freedom.

## STANDBY "OOPS"

Robert's due process and FARETTA rights were violated when he was tried without having had any opportunity, much less a meaningful one, to prepare his defense. Despite timely and reasonable requests, indigent Robert was isolated from any means to prepare. The

4.

trial court's own orders, which Recognized the legitimacy
of Robert's need and would have provided possible
avenues of prepartion through a discovery Review
instrument were not heeded. After Robert elected to
Represent himself, these governmental organs Not
only affirmatively failed to provide defense resources,
but also materially impeded use of the minimal
tools for which the trial court tried to ensure. It
is simply egregious that Standby Counsel Shanin
whose only purpose was to safeguard defendants Rights
and the integrity of the court, stole the one needed
vital tool for his sole benefit.

Besides the belated self serving apology Neither the
prosecution nor Standby Counsel offer any justification,
such as cost, for what occurred. Collectively they
misrepresented the CHROMEBOOK capacities for months to
the trial court. A defendant who excercises his Right,
under FARETTA, to conduct his own defense does not
subject himself to the possibility that he will have No
opportunity to prepare his defense. The Right guaranteed
by the Sixth and Fourteenth Amendments to Reject a
lawyer and Represent oneself is premised upon the Right
of the defendant to make a meaningful defense. The Sixth
Amendment does Not provide merely that a defense
shall be made for the accused. It grants to the
accused personally the Right to make his defense.
The Right to defend is given directly to the accused;

for it is he who suffers the consequences if the defense fails. Faretta v. California, 422 U.S. 806 (1975). The accused in this case, who made every effort to prepare a defense and was THWARTED in those efforts, was denied his "right to make his defense". ID.

## PIÑATA DEFENSE ≠ "FAIR CHANCE HIS WAY"

When Standby Counsel Shanin failed to abide District Court order designed to protect the FARETTA Right; it rendered Robert's waiver of counsel ineffective. Essentially, Robert did not receive any form of assistance of counsel during the absolutely critical pre-trial period. Standby Counsel Shanin with his "CHROMEBOOK" upgrade scheme prevented Robert from accomplishing something the FARETTA honoring supervising tribunal and Robert intended to accomplish. Certainly, Robert would have been able accomplish discovery review had Standby Counsel not interefered by withholding the court ordered instrument required of him. Through his fulfill his clearly defined role, Standby Counsel substantially interfered by preventing an indigent defendant from making or formulating tactical decisions. This left Standby Counsel Shanin in sole DEFACTO control of the organization and potential content of the defense. Standby Counsel ensured that there was not a meaningful case available to present to a jury. Seeing as how absence of a discovery review device kept a storehouse of relevant fact locked away, off limits in discovery material artificially made off limits permanently inaccessible. Consequently, any message that could

(6)

be conveyed to a jury was inherently drastically limited by obstructing Standby Counsel.

## COURT GIVETH, STANDBY TAKETH

The departure of standby Counsel Shanin from ordinary ethical standards of professional conduct, was not a scenario ever envisioned, much less ever faced, by any Federal District Judge. who have a solemn duty to supervise the protection of the FARETTA Right throughout the trial. Standby Counsel held defense hostage by unjustifiably interfering, absconding with a court ordered discovery review device. His conduct deprived Robert of his Right to present his own defense, or really any meaningful defense at all, as guaranteed by Faretta v. California, 422 U.S. 806 (1975).

Regretfully, standby counsel persisted in promoting his scheme until the first day of trial. Rather than provide the critically needed basic tool, allhebrought to the adjudicatory process were self serving apologies. Delivered reluctantly only after exposure of his wrongdoing was witnessed by the tribunal. It is implicit that discovery preclusion results in a breakdown of the adversary process. Defense is handicapped where it was not allowed presentation of a defense that resembles the best possible complete one. The objectives behind the Right to proceed pro-se were undermined by this unsolicited and excessively intensive participation by Standby Counsel. The FARETTA Right is eroded if Standby Counsel's participation allows him effectively to make or substantially interfere

with _ANY_ significant tactical decisions. McKaskle v. Wiggens, 465 U.S. 168 (1984).

## REPUGNANT TO JUSTICE

When an accused manages his own defense he Relinquishes, as a purely factual matter, many of the traditional benefits associated with the right of counsel. Faretta v. California, 422 U.S. 806 (1975). The Supreme Court has said that : before a defendant may be allowed to proceed pro-se he must be warned specifically of the hazards ahead. Patterson v. Illinois, 487 U.S. 285 (1988). The Seventh Circuit recently noted that one of the consequences of self representation could be difficulty of preparing for trial. United States v. Young, 955 F3d 608 (7th Cir 2020).

It is quite an understatement that Standby Counsel Shanin's rendition of misappropriating legal service fell outside the wide range of professionally competent assistance. Within the narrow confines of the trial court's order to provide a discovery device, Robert had a right to expect effective representation. One of the dangers and disadvantages of self representation can not possibly include that a highly experienced senior mentoring member of the Federal Defender Program, appointed as a Standby Counsel would cheat and trammel upon the Faretta Right of an indigent defendant.

Instead of being an _AID_, _ASSISTING_ the trial court

and accused overcome a Routine obstacle, Standby Counsel
Shanin chose not to abide court order. Not only did he
misappropriate the crucial instrument for his own use.
One that had been deemed absolutely necessary by the court
to prepare a meaningful adequate defense. Standby Counsel
Shanin cleaned out his closet, as it were. Providing to
Robert a discovery review device, his kid's old school
CHROMEBOOK, that he recognized well in advance would never
fulfill its intended Role. Then he joined forces with a
willing prosecution team. Lying to persuade the trial court
by misrepresentation without candor, that their tendered
Review device would actually work. When they already knew
otherwise. Their charade on the court persisted for several
months, over Robert's ever escalating desperate pleas
via motion for a serviceable instrument. Their dog and
pony show, fraud on the court, unraveled in open court
during the first day of trial. When after nearly an hour
of feigned activity they admitted the futility of further
effort. Standby Counsel profusely apologized.

## DOUBLEDIPPING STANDBY

Standby Counsel Shanin prospered at the expense of Robert's
freedom. Remaining recalcitrant he did not return the extra
new computer remaining in his possession. For the price of
an upgraded computer Standby Counsel Shanin consigned a
fellow man to jail, after compromising his defense. The
trial court after witnessing the CHROMEBOOK failure, again
ordered Standby Counsel Shanin for a second time to provide

a suitable discovery review laptop with Criminal Justice Act funds. However, this occured after the first day of trial testimony was completed. During the critical period of pretrial between August 17, 2022 until February 14, 2023 an indigent FARETTA defendant was deliberately left bereft of any capacity to prepare his defense. Standby Counsel Shanin significantly affected the ability of the defendant to participate in the adversary process. Standby Counsel destroyed the friction he was working for the defendant, through the auspices of the court. When he was observed toiling feverishly in concert with the prosecutors over their mutual computer project. Baker v Carr, 369 U.S. 186 (1962). A Sixth Amendment violation may occur when a state unreasonably hinders a defendant's efforts to prepare his defense. United States v Leonescio, 907 F2d 155 (9th Cir 1990).

## CRITICAL STAGE

Supreme Court cases have recognized that the period from arraignment to trial was "perhaps the most critical period of the proceedings". Powell v Alabama, 287 U.S. 45 (1932). It found that: "defendants were not accorded right of Counsel in substantial sense when the defense lawyers were not given adequate time to prepare for trial. ID. Here, this FARETTA defendant was excluded from access to discovery, including his own records, attorney-client privileged communications, and potentially exculpatory BRADY materials, during those six critical months

preceding trial. When an organ of the state, in the form of Standby Counsel Shanin, denied the FARETTA defendant the opportunity to prepare a defense, the proceeding was CONVERTED into a sham and nothing more than a formal compliance with the constitutions requirement. Schmidt v Foster, 891 F3d 302 (7th Cir 2018). No one can effectorsely mount a defense diverted from access to voluminous discovery in a case deemed complex.

The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. Iowa v. Tovar, 541 U.S. 77 (2004). To deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself. The right to counsel attaches at earlier critical stage in the criminal justice process "where the results might well settle the accused's fate and reduce the trial to a mere formality". Maine v. Moulton quoting United States v. Wade, 388 U.S. 218 (1967). The Sixth Amendment is not satisfied when no "actual assistance for the accused's defense is provided" and as a result, the prosecution's case is not tested against "the crucible of meaningful adversarial testing". United States v. Cronic, 466 U.S. 648 (1984).

## HOLE IN THE STANDBY BACKSTOP

In a criminal trial, which is essentially a factfinding process, no aspect of such advocacy could be more important than

the opportunity to <u>MARSHAL</u> the evidence for each side before submission of the case to Judgment. Herring v. New York, 422 U.S. 853 (1975). Consequently, when Standby Counsel Shanin declined to honor his duty through provision of the court ordered basic tool of an adequate defense, the resulting prejudice to Robert precluded a fair trial. Standby Counsel interference affected the FARETTA defendant's ability to excercise Judgment, undermining the integrity of the trial.

The fact remains that once the defendant is deprived of assets he otherwise would have, [ensured by trial court order] he is artificially stripped of his right to Join issue with the government as he chooses. United States v. Maya-Gomez, 860 F2d 706 (7th Cir 1988). Without access to his resources his options are limited. Id. A criminal trial is not a sacrifice of unarmed prisoners to gladiators. United States ex rel Williams v. Twomey, 510 F2d 634 (7th Cir 1975). When Standby Counsel Shanin, a safeguard disappeared with the vital discovery instrument, needed to facilitate the defense of an impoverished self represented man; he effectively sealed the defendant's lips on critical matters thereby sealing his fate as well.

## STANDBY MR MAGOO

Standby Counsel's input was not unsolicited. However his performance of the solitary simple mundane task entrusted by trial court order to him was inexcusably more like Mr Magoo, wreaking havoc wherever he went. What was contrived as

a protection for the accused should not have been turned into fetters. FARETTA v. California, 422 U.S. 806 (1975). An older seasoned man with 48 years experience as an attorney, standby counsel had once been lauded by the Seventh Circuit; "as being far more active than the usual standby counsel. United States v. Oreye, 263 F3d 669 (7th Cir 2001). However, like many of an earlier older generation, computer issues are at times befuddling. Still as active as ever, Standby Counsel Shanin cleverly concocted his task into a personal financial opportunity. He devised a "win-win" schema, or so he thought, to foist his old 2013 "CHROMEBOOK" laptop off on his indigent client, not understanding the dreadful consequences his choice entailed. While he purchased himself some sweet new computing hardware with Criminal Justice Act funds, as receipts filed in our docket reflect. Regrettably, his not so lofty ambitions of a dreamy windfall foundered on the rather obvious reef of "operating system" technological incompatibility. Standby Counsel Shanin failed to ensure that the [CHROMEBOOK] device he provided defendant was compatible with any external drives upon which discovery had been or would be exchanged by the government.

## STANDBY VETO

The steps this court took to assure that the defendant had a fair opportunity to present his case were countermanded by Standby Counsel Shanin, never materialized. Standby Counsel usurped this opportunity for his own gain. Despite Robert's pleas for _AID_, Standby Counsel refused to correct his professional impropriety. Simply because it would have cost him

to disgorge his wrongful gain. Rather he enlisted prosecution as partners to further conflate and conceal his fraud. On the first day of court, the tribunal witnessed for itself dysfunctional "CHROMEBOOK" incompatibility. It replicated its order that an appropriate device would be furnished immediately at taxpayer expense.

It is the SOLEMN DUTY of a federal Judge before whom a defendant appears to make a thorough inquiry and to take ALL STEPS necessary to ensure the fullest protection of this [self representation] constitutional right at every stage of the proceeding. United States v Maya-Gomez, 860 F2d 706 (7th Cir 1988); quoting United States v. Von Moltke, 332 US 708 (1948). The trial court recognized its duty to ensure that an indigent defendant was afforded an instrument crucial to preparation of an adequate defense. Accordingly, the tribunal made a permissable adjustment to assist the pro-se defendant in overcoming a routine obstacle standing in the way of defendant's achievement of his own clearly indicated goals. Savage v. Estelle, 924 F2d 1459 (9th Cir 1990).

Standby Counsel is appointed to serve as an aide to a smooth and efficient administration of JUSTICE and to facilitate a speedy trial. United States v. Knox, 19-190-9 (WD Pa 2021). Typically, standby counsel serves to provide behind the scenes technical assistance to defendant. United States v. Geddes, (D UTAH 2022). Standby Counsel's presence is to steer a defendant through the basic procedures of trial. Certainly,

it was reasonable and well within the trial court's discretion to entrust performance of a technical task that it deemed necessary to protect the integrity of its processes to the safeguarding backstop of its standby Counsel Shanin. Who could have anticipated the departure from his well defined role that he wreaked.

## UNDUE INSISTENCE ON HASTE

The interference of a Lawyer forced upon Robert, in the guise of standby Counsel did not AID the trial court in honoring its solemn duty to protect constitutional rights. In view of the standby Counsel "CHROMEBOOK" debacle shockwave there was every compelling reason to delay trial to allow defense preparation.

Denial of a continuance amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. To demonstrate reversible error the defendant must show the denial resulted in actual prejudice to his defense. United States v. Gallo, 763 F2d 1504 (6th Cir 1985). A District Court has great discretion in scheduling trials and may adhere to a trial date unless there are strong reasons to grant a continuance. United States v. Cosby, 924 F3d 329 (7th Cir 2009). To determine whether such strong reasons exist a District Court must consider several factors, including: 1.) the amount of time available for preparation. 2.) the risk of prejudice from denying the continuance. 3.) The defendant's

Role in shortening the effective preparation time. 4.) Complexity of the case 5.) the Availability of discovery from the prosecution. 6.) liklihood that a continuance would have helped the defendant. 7.) inconvenience to the District Court. United States v. Schwenson, 1513Fd 650 (7th Cir 1988).

In accord with the Solemn duty of a federal judge to protect the Constitutional Right of a FARETTA defendant damaged by a Rogue Standby Counsel forced upon him, a continuance was amply warranted under these unprecedented circumstances. But for the defective "CHROMEBOOK" admission revelation no extension would have become necessary. Prior to February 13, 2023 Robert, unlike prosecution, had not requested any continuance.

1.) Standby Counsel dishonestly prevented pretrial preparation.

2.) Standby Counsel interfered with pre-trial preparation. Any trial was ambush. Millions of potentially exculpatory BRADY documents could not be reviewed.

3.) Robert did not precipitate need for continuance. He repeatedly brought the "CHROMEBOOK" incompatibility to the court's attention. However, the prosecution and standby Counsel (Shanin) repeatedly misrepresented the capacity of the "CHROMEBOOK" to falsely persuade the trial court. Further, Robert did not raise any other continuance request. In fact, defendant steadfastly maintained his right to a speedy trial.

4.) This case has been deemed complex.

5.) Obstensibly, prosecution made an extraordinary amount of discovery available. However, it was never actually disclosed when defendant was prevented

(16.)

from opening electronic files solely from the lack of any suitable electronic discovery instrument.

6.) The defense was reduced from NO ABILITY to review BRADY discovery. It was rendered unable to meet the governments case artificially.

7) The inconvenience to the court is huge. However, it is tempered by a Federal Judge's solemn obligation to fully protect the constitutional right of Self Representation. Particularly since the misrepresentations of State organs have improperly influenced the court with patently false representations.

## STANDBY GRINCH WHO STOLE FREEDOM

This trial court has repeatedly encouraged Robert to avail himself of Standby Counsel resources. Observing in its rulings: "Kowalski is told at each status that he can always ask his Standby Counsel for help with the law - something he refuses". [see order 8/17/22]. Likewise, the Seventh Circuit has regularly echoed these same sentiments noting that: a defendant who refused to cooperate with standby counsel was "squandering a valuable Resource". United States v. Chapman, 952 F2d 1352 (7th Cir 1992). Indeed a "fastcase" search query returned 7,526 hits of reported cases for the phrase "STANDBY COUNSEL". Obviously, this total does not include those presumably more numerous NON-Reported proceedings. Unanimously and unsurprisingly, these cases Recite the role of Standby Counsel in terms of AID, ASSIST and HELP. In fact, there

has not been one case that demonstrates Standby Counsel misconduct. Except perhaps of Standby Counsel trying too hard to help an embattled defendant.

In light of this historical background, the documented conduct of Standby Counsel Shanin is nothing short of an alarming discordant anomaly. At the first chance Standby Counsel Shanin received to demonstrate his trustworthiness; he failed epicly to abide court order, creating production of the exact opposite results with drastic consequences for the defense. He traded Robert's freedom for a new computer. Bearing out the time honored American belief that: "the law conspires against one where an attorney is forced upon an unwilling defendant. Faretta v. California, 422 U.S. 806 (1975). Shady Standby Counsel Shanin's aberrant wrongdoing has literally "imprisoned a man in his privileges and calls it Constitution. Adams v United States ex rel McCann, 317 U.S. 269 (1942).

## ROGUE STANDBY COUNSEL

Standby Counsel Shanin purposefully engaged in a prolonged deliberate campaign of illegality, targeting an indigent FARETTA defendant's right to a fair trial. The record of court proceedings and docket clearly shows the court was deceived. Consequently, it could not do enough to safeguard the invoked FARETTA right. It is a nearly universal conviction on part of our people that forcing representation on an unwilling defendant is contrary

to his basic right to defend himself if that is what he truly wants. FAReHa 422 at 817.

The failure of the backstop standby counsel, who was foisted upon Robert, not only failed to abide court order meant to safeguard the defendant. But _Lied_ repeatedly to the trial court to conceal his misdeeds, has entirely frustrated the orderly progress of trial proceedings. The obligations of standby counsel may in fact be more onerous than the straightforward job of representing an accused. Yet standby counsel's ethical obligations persist with equal if not more force. United States v. Veras, 51 F3d 1365 (7th Cir 1995). Standby Counsel Shanin's conduct was unworthy of a free people, as it impinged with FARETTA and due process rights imparting a fundamental unfairness and lack of integrity on the trial process. Letting this verdict stand after such unethical lawless conduct adversely impacted the defense tainted the proceedings constitutes a manifest injustice. This Apology is hard to accept, much less reconcile.

Wherefore Robert Respectfully requests that a verdict of acquittal or New trial is ordered.

Respectfully Submitted,

Robert M. Kowalski

Robert M. Kowalski

# 499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

(19)

Robert M. Kowalski
#499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

$1.08 0
US POSTAGE
FIRST-CLASS
062S0014950446
FROM 60901

S89272.120

USA ★ FOREVER

CLERK OF THE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

219 SOUTH DEARBORN STREET

CHICAGO, ILLINOIS

60604

Legal Mail

Legal Mail

05/09/2023-17

This Correspondence is from
a detainee from:
Jerome Combs Detention Center
3050 Justice Way
Kankakee, IL 60901



FSC
MIX
Envelope
FSC® C137131

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2019