UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19 CR 226 |
| ) | |
| ROBERT M. KOWALSKI, ) | |
| defendant ) | Judge Virginia M. Kendall |

## MOTION TO REQUIRE RECUSAL

Now Comes Robert M. Kowalski, (ROBERT), for his motion to Require Recusal of Judge pursuant to 28 U.S.C. 455(a), 28 U.S.C. 455(b)(1), First Amendment, Fifth Amendment, and Fourteenth Amendment U.S Const states as follows:

The Supreme Court once observed: "It goes without saying that public criticism of a judge is not a proper ground for imposition of sanctions. Craig v. Harney, 331 U.S. 367 (1947). A fair trial in a fair tribunal is a basic requirement of Due Process. Fairness of course requires an __ABSENCE__ of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the __PROBABILITY__ of unfairness. No man is permitted to try a case where he has an interest in the outcome. IN RE Murchinson, 349 U.S. 133 (1955).

## EXTRAJUDICIAL SOURCE OF KNOWLEDGE
## VILLIFIED CHIEF JUDGE CASTILLO CAST AS ROBED LION

During a recent pretrial status hearing Judge Kendall uncorked a **WHOPPER** of a tall tale, as it were. Namely, on the basis of a lampooning political carricature leaflet published in 2019, she harbored the deep seated antagonistic opinion that Attorney Kowalski desired to murder or otherwise harm former District Court NDIL Chief Judge Reuben Castillo. Based upon her observation or merely gleaned from sketchy ex parte means. In open court on the record, Judge Kendall elaborated that because one of the black judicially robed cartoon Lion figures held a noose in his paw. It somehow implied, presaged, that a good ole fashioned lynching was planned for her reverred former colleague. However, had she perused in greater detail the leaflet literature, website, and highway billboard she would have learned that it advocated for a radically different fate. "**IMPEACH CASTILLO**" appeared in bold bright yellow letters before a Starchamberesque evoking background. This is a quintessential political message

In no sense did this political message convey to, or urge anyone to cause injury or harm to befall the Chief Judge. Absent at all times was a clear and present danger of any sort whatsoever. In fact, the noose that kindled Judge Kendall's **IRE** was actually held in the cartoon Lion's paw, not wrapped tightly around his neck, as in a poetic analogy to the proverbial "hanging Judge" of of frontier western lore.

Carricatures lampooning political figures have played a prominent feature of American political discourse since Colonial times. Noteworthy examples are woodcut cartoons of King George III hanging in effigy, the "gerrymander" salamander of Elbridge Gerry, and the cigar chomping Mayor "Boss" Tweed, of New York City. In this instance the Lampooning political free speech caricature of Judge Castillo really struck a raw nerve as was its intention. The Judicial watchdog Group that commissioned the Cartoon, Greenslate Institute for Justice, was particularly distressed over Judge Castillo's brand of "unpleasant" but not Unconstitutional drug stash house stings that targeted racial minorities. When they ascertained that Judge Castillo's Executive Committee was engaging in secret private criminal trials with their odious tinge, this inspired criticism. However, this trial court attributed these political speech remarks to Robert.

### JUDICIAL RETALIATION

Lacking a sense of humor, the backlash experienced harkened back to the Alien and Sedition Act of the J. Adams era. To silence, censor, and prohibit criticism from his detractors, Judge Castillo dispatched F.B.I Agents in the guise of promoting security. These special agents were issued orders to tear down and dispose of the seditious Nettlesome highway billboard message and otherwise intimidate the outdoor advertising company. An altogether most unamerican, illegal assault upon liberty was the result. There had been no evidence whatsoever of any courthouse

disruption occasioned by dissemination of the message that would have jeopardized the efficient administration of the United States Courts. The backlash did not end on the side of the highway. In fact for Robert it had only begun. Because it has continued to taint these proceedings.

### STAMPED OUT SEDITION

With all the hysteria surrounding F.B.I. agents swarming and climbing over the seditious highway billboard and then tearing it down, like stormtroopers at a book bonfire. One would have assumed that at least one special F.B.I agent would have been dispatched to come calling upon Robert, the alleged mastermind at his law office. Particularly, since FBI-Chicago headquarters are mere city blocks around the corner from Roberts law office. The F.B.I agents could have walked. But this never happened. As there was not anything remotely resembling a credible threat posed that those three cartoon lions clad as judges would mount any attack targeting Chief Judge Castillo. Consequently, the only plausible reason why the political speech sign was trod upon was to suppress its <u>CRITICAL</u> political content. This was well satisfied once its removal was accomplished, notwithstanding the constraints imposed by the First Amendment.

### FREE SPEECH

The framers designed the free speech clause of the First Amendment to protect the "freedom to think as you will and to speak as you think". Boy Scouts of America v. Dale,

530 U.S. 640 (2000). The freedom to speak is among our inalienable rights. The freedom of thought and speech is "indispensable to the discovery and spread of political truth", Whitney v. California, 274 U.S 357 (1927). For these reasons, if there are any fixed stars in our Constitutional Constellation, it is the principle that the government may not interfere with an "uninhibited marketplace of ideas". 303 Creative, LLC v. Elenis, 21-476 (June 30, 2023) quoting McCullen v. Coakley, 573 U.S. 464 (2014). Pam

Pamphlets containing carricatures of government officials lie at the core of protected speech. Political speech is subject to the highest degree of First Amendment protection. Wolfson v. Concannon, 750 F3d 1145 (9th Cir 2014). Criticism of government is at the very center of the Constitutional protected area of free discussion. Criticism of those responsible for governmental operations must be free, lest criticism of the government itself be penalized. Rosenblatt v. Baer, 383 U.S. 75 (1966). Every Judge must develop a thick skin against criticism. United States v. Avilez-Reyes, 160 F 3d 258 (5th Cir 1998).

As the Supreme Court of the United States has recognized, a major purpose of the First Amendment is to "protect the free discussion of Government affairs". Landmark Communications v. Virginia, 435 U.S. 829 (1978). This includes discussion of the operations of the Courts and JUDICIAL conduct of judges, "which are matters of the utmost public concern". Id. Injury to official reputation for

Repressing speech that is otherwise free speech cannot be punished when the purpose is simply to "protect the court as a mystical entity or the judges as individuals or as annointed priests set apart from the community and spared the criticism to which in a democracy other public servents are exposed. Bridges v. California, 314 US 252 (1941). In the words of Justice Frankfurter,

> "there have been martinets upon the bench as there have also been pompous wielders of authority who have used paraphernalia of power in support of what they called their dignity. Therefore judges must be kept mindful of their limitations and of their ultimate public responsibility by a vigorous <u>BLUNT</u> stream of criticism expressed with candor however <u>BLUNT</u>"

## EXPARTE COMMUNICATION

The Cartoon artwork was clearly and carefully <u>LABELED</u> as political speech. So not to prove offensive and counterproductive to the dramatic cheeky lampooning message. "<u>IMPEACH CASTILLO</u>" was emblazoned diagonally accross the carricature pop-artwork. It is an impossibility for an reader to overlook the obvious import. Judge Kendall's reading skills are anything but impaired. The plain meaning of impeach does not include causing violence to be visited upon Judge Castillo or any other judge for that matter. This constitutes a rather tacit acknowledgement that Judge Kendall harvested her information from indirect second hand sources, as in a

chilling fashion from exparte communications. These constitute an inherently unreliable means. Especially since the material was twisted, conflated, and amplified to manipulate an explosive judicial reaction.

By engaging in such private discussions, district court judge Kendall has confirmed one of the Founder's worst fears. That while no man may be above the law, a <u>GROUP OF JUDGES</u> so embolden, may consider themselves beyond it. "Where the power of Judging Joined with Executive Power the judge may behave with all the "<u>VIOLENCE OF AN OPPRESSOR</u>". The Federalist No 47 at 251-252 (Madison)

This is exactly why Exparte Communications are so strongly disfavored. In Re Kensington, 368 F3d 289 (3rd Cir 2004). The code of conduct for U.S. Judges <u>CAUTIONS</u> that a judge should neither initiate nor consider exparte communications on the merits, or procedures affecting the merits, or a pending or impending proceeding. Code of Conduct for U.S. Judges Canon § A(4) 2003. The rule is designed to prevent all <u>EVILS</u> of exparte communications: bias, prejudice, coercion, and <u>Exploitation</u>. Jeffrey M. Shaman et al Judicial Conduct + Ethics § 5.03 (3rd Ed 2000). Exparte communications run contrary to our adversary trial system. The adversary system plays an indispensable role in our system of Justice because a debate between adversaries is often essential to truth seeking function of trials. Polk County v. Dodson, 454 U.S. 312 (1981). Courts have long described exparte communications as

"ANATHEMA" in our system of justice. In Re School Asbestos, 977 F2d 764 (3rd Cir 1992). Ex parte Communications are expressly prohibited by District Court NDIL Rule 83.25. Neither did Judge Kendall disclose to the parties that she was in receipt of such ex parte communication.

## APPEARANCES MATTER

The goal of 455(a) is to avoid even the appearance of partiality. Liljeberg v. Health Services, 486 U.S 847 (1988). Recusal is <u>required</u> when a "reasonable person perceives a significant risk that the judge will resolve the case on a basis other than on the merits". Hook v. McDade, 394 F3d 1001 (7th Cir 2004); quoting In Re Mason, 916 F2d 384 (7th Cir 1990). Accordingly, we have required Recusal "whenever there is a <u>REASONABLE</u> for a finding of an appearance of partiality under the facts and circumstances of the case". Pepsi Co v. McMillion, 764 F2d 458 (7th Cir 1985).

Under these extreme facts, a reasonable person would conclude Judge Kendall's harboring conduct has created an appearance of bias against Robert. Where she failed to divulge that she attributed a plan to slip a hangman's noose around Chief Judge Castillo's neck to Attorney Kowalski. Particularly, since there is every proof that the free speech leaflet itself did not promote such a result. It is truly alarming that Judge Kendall's animus causing misconceptions stem from unfounded, probably self serving allegations of others, twisted to prejudice a

defendant. Further, section 455 directs that a judge SHALL recuse under these exact circumstances. Consequently, Judge Kendall did not have any discretion not to perform her duty. Nevertheless, while knowing she was not impartial, the judge proceeded to dispense a form of retributive BIG PAYBACK justice.

## DUTY TO RECUSE

Section 455 provides that a district judge "SHALL disqualify herself in any proceeding in which her impartiality might reasonably be questioned". 28 U.S.C. 455. To obtain a judge's recusal under 455, a party must show "that a judges impartiality might be questioned by a reasonable, well-informed observer". United States v. Herrera-Valdez, 826 F3d 912 (7th Cir 2016). Robert must "show an objective disinterested observer fully informed of reasons for seeking recusal would: "entertain a significant doubt that justice would be done in the case. United States v. Simon, 937 F3d 820 (7th Cir 2019). Impartiality and appearance of impartiality in a judicial officer are the "sine qua non" of the American Legal system. Lewis v. Curtis, 671 F2d 779 (3.d Cir 2014). Bias must be proven by compelling evidence and it must be grounded in some form of personal animus that the judge HARBORS against the litigant. Grove Fresh v. John Labbatt, 299 F3d 635 (7th Cir 2002).

Judge Kendall's whale of a tale did not surface in the context of impatience - dissatisfaction, annoyance or even anger. Rather her comments are grounded from a deep

seated antagonism, (Long kept buried secret). As would make fair judgment impossible. Liteky v. United States, 510 U.S. 540 (1994). This all sprouts from an extrajudicial source, a critical political free speech cartoon leaflet. Subsection 455(b)(1) requires recusal when the judge has a "personal bias or prejudice concerning a party". In Re Brown, 14-1741 (3rd Cir 2015). Judge Kendall's imperfect knowledge and consequent outrage over the possibility of a noose being drawn over her colleague, constitutes an extreme substantial intense deep reservoir of personal bias. She has stated as much in the record of this proceeding. Clearly this noose allegation of bias presents a deeply "personal" as opposed to merely "Judicial" in nature.

Judge Kendall in her willingness to PRESUME EVIL INTENT has nullified the safeguards of the Bill of Rights. Criticism in which every American indulges as his birthright was severely punished. Robert did not receive a fair trial before a fair tribunal.

Wherefore Robert respectfully requests this court enter an order of recusal and transfer this case for reassignment.

Respectfully Submitted,

*Robert M. Kowalski*

Robert M Kowalski, Jerome Combs Detention Center, 3050 Justice Way
#429069    Kankakee, Illinois 60901

Robert M. Kowalski
#499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

08/03/2023-15

Legal mail

This Correspondence is from a detainee from:
Jerome Combs Detention Center
3050 Justice Way
Kankakee, IL 60901

CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

60604-180099

Legal Mail