UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

**FILED**

SEP 13 2023 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
v. )  No. 19 CR 226
)
ROBERT M. KOWALSKI, )
    defendant ) Judge Virginia M. Kendall

## MOTION TO REQUIRE RECUSAL AND DOUBLE JEOPARDY PROTECTION

Now Comes Robert M. Kowalski, (ROBERT) for his motion to Require Recusal and double Jeopardy protection pursuant to 28 U.S.C § 455, First Amendment, the Double Jeopardy and Due Process Clauses of the Fifth Amendment, Sixth Amendment, Eighth Amendment and Fourteenth Amendment states as follows:

## FIGHTING BAD BEHAVIOR WITH... BAD BEHAVIOR

The trial court declared by its bond revocation decision of June 2, 2021; that a person innocent of any crime may be jailed indefinitely, pending trial of allegations which are legally presumed to be untrue, if the government shows to the satisfaction of the judge that the accused pro-se Attorney is likely to commit additional "CONTEMPT OF COURT" crimes, unrelated to the pending charges, at any time in the future. Such discretion, consistent with the usages of tyranny and what bitter experience teaches us to call the police state, have long been thought incompatible with the fundamental human rights protected by our Constitution. The very pith and purpose of such an order, labeled as bond revocation but was in actuality a contempt of court order, constituted an abhorrent limitation of the presumption of innocence which is established beyond contravention in the Due Process Clause.

Alexander Hamilton once denounced: "the practice of arbitrary imprisonments have been in all ages the most formidable instruments of tyranny". Federalist No 84. The Faretta Right is not a license to abuse the dignity of the court. However, it is hard to understand why a Federal Judge would resort to holding a contempt proceeding in the guise of bond revocation. Simply because the trial court had become so personally embroiled with the attorney defendant. On August 21, 2023; in open court the tribunal once again admitted

that she had indeed incarcerated Robert for fourteen months fifteen days for contempt of court.

There are several Constitutional protections that are implicated by any form of a <u>COVERT</u> underground criminal contempt proceeding. Such offends: the due process and double Jeopardy clauses of the fifth Amendment, the secret nature of the decision was hidden not open to the public, No Jury trial was permitted, No indictment, No certificate pursuant to Rule 42, or citation was provided, and it left the FARETTA right abrogated in shambles. Clearly, this is the sort of conduct that <u>ONLY</u> a deeply prejudiced biased Judge would engage in.

The Court has long recognized the potential for abuse in excercising the summary power to imprison for contempt, it is an arbitrary power which is liable for abuse. Ex Parte Terry, 128 U.S. 289 (1888). These apprehensions about the unbridled power to punish summarily for contempt are reflected in the march of events in both Congress and the courts since our Constitution was adopted. Bloom v. Illinois, 391 U.S. 194 (1968). The requirements of contempt jurisprudence are easily evaded where the label of bond revocation is substituted for contempt safeguards.

## FACTUAL BACKGROUND

On June 2, 2021; this trial court revoked Robert's bond. (See Doc # 372). Pretrial Officer Green filed a sworn

violation report, then testified that Robert had violated his conditions of release by engaging in two frivolous Jewel/Osco shopping trips and a brief out of range report (consistent with the broken replaced equipment). However, shortly thereafter, the same pretrial officer wrote an email on October 29, 2021 that related a rationale that sharply diverged from, and contradicted her earlier testimony. Therein she wrote: <u>ALL THAT SELF ADVOCACY AND INVESTIGATION</u> is what got Mr. Kowalski into so much trouble. If he would remain <u>SILENT</u> he could be home with his family. However, if he would continue to represent himself "<u>ABSOLUTELY NOT</u>". A clear implication that bond revocation pertained to Robert's excercise of the right to self-representation.

Her own email correspondence confirmed that officer Green understood much more about the actual true underlying causes of "BOND VIOLATION". Further, it recognized the trivial pro forma nature of her contrived violations and that the 61 year old attorney, having led an impeccable law abiding life without a criminal blemish, posed no danger whatsoever; except for his apparently vociferous advocacy style. The Seventh Circuit once reflected: we speak from broad experience when we say the defense bar in the N.D. Ill is not composed of shrinking violets who fear offending or interrupting judges. United States v. Beltran-Leon, 9th 4th 485 (7th Cir 2021).

Thereafter, Ruling on April 7, 2022; upon Robert's Renewed motion to Reinstate bond the trial court emphasized its Rationale for the Revocation order unequivocally stating: (See Transcript at Doc # 1071).

> "It had Nothing to do with an Executive Committee order. IT WAS YOUR BEHAVIOR IN MY COURTROOM. But my point is even if you are Released, you have Restrictions here within the courthouse, and this was mentioned Not as a Reason other than to say we have many tribunals that you have failed to follow the orders of, which have Restricted you because of that, WHICH IS WHY "WE" STILL HAVE YOU INCARCERATED"

## PERSONALITY CONTEST

Later, on August 3, 2023; the tribunal denied Robert's motion for Release pending sentence because it did not like Robert's personality. Stating: (See transcript at Doc # 1125)

> "And MOST IMPORTANTLY, I think that based upon his own PERSONALITY before the court, its very volatile. It's a very mercurial PERSONALITY and often explosive".

During the course of these proceedings Robert was evaluated by Dr Martha Goldstein, Phd of the Isaac Ray Forensic Group. Robert was deemed competent, without deviant PERSONALITY ISSUES. (See Doc # 603). In fact, the doctor

related that Robert was normal in all respects, consistent for his age and educational level. The Seventh Circuit once observed: although Martin-Trigona might not win a personality contest in this circuit. He still retains the same Constitutional rights as every defendant brought before the bar. And in spite of himself we intend to see that he receives a fair trial. United States v. Martin-Trigona, 684 F.2d 485 (7th Cir 1982).

Lastly, on August 21, 2023; in open court the trial court specifically reiterated that Robert had been incarcerated for "CONTEMPT". (See Transcript T.B.D).

Indeed, while courtroom behavior had NOTHING in common with what Officer Green testified to. It had everything to do with "ALL THAT SELF ADVOCACY AND INVESTIGATION" she elaborated about later in her email. A tacit admission that her court testimony was a candorless subterfuge. Courtroom behavior by its nature implys criminal contempt of court. A shortcutting trial court violated Robert's bond to PUNISH him because of what it considered contemptuous "OUTBURSTS" occurring in its presence.

## REGULATION NOT PUNISHMENT

Emphasizing the importance of this issue the reliability of pretrial Release decisions has a Constitutional dimension. To comply with the due process clause pretrial detention MUST be "regulatory" not "penal". United States

v. Chaparo, 956 F3d 462 (7ᵗʰ Cir 2020) quoting United States v. Salerno, 481 U.S. 739 (1987). We believe that consistent with the due process clause a court may disable an articulable threat to an individual or community posed by the arrestee. Id. The legislative history of the Bail Reform Act clearly indicates that Congress did not formulate Pretrial Detention provisions as <u>PUNISHMENT</u> for dangerous individuals. Salerno at 747. The Bail Reform Act <u>CAREFULLY</u> limits the circumstances under which detention can be imposed to the most serious crimes. 18 U.S.C. 3142 (F). The Court noted that the government has never argued that pretrial detention could be upheld if it was <u>punishment.</u>

This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of <u>PUNISHMENT</u> prior to conviction. Unless this right to bail is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. Stack v. Boyle, 342 U.S 1 (1951). The bail clause of the Eighth Amendment plays a vital role in protecting the invaluable guarantee afforded by the presumption of innocence. The Court squarely held that under the Due Process Clause a detainee may not be <u>PUNISHED</u> prior to adjudication of guilt, in accordance with Due Process of Law. Bell v. Wolfish, 441 U.S. 520 (1979). <u>PUNISHMENT</u> is never constitutionally permissable for presumptively innocent individuals awaiting trial. Bell at 535.

## STANDARD COURTROOM MANAGEMENT

This is not the first occasion that a court in this circuit was confronted by the sort of conduct this tribunal described. (See Doc# 643 and Doc# 792). In United States v. Brown, 791 F 2d 577 (7ᵗʰ Cir 1986); a judge ultimately cited Brown for CRIMINAL CONTEMPT of court. The Seventh Circuit noted:

> "A court faced with a defendant's refusal to
> proceed may... rescind the defendant's permission
> to proceed as his own counsel. We concluded that
> in addition to having COMMITTED CRIMINAL CONTEMPT
> of court, Brown had "forfeited his right to represent
> himself."

In a similar case, Brock like Brown refused to cooperate and stormed out of the courtroom and was cited for contempt. United States v. Brock, 159 F3d 1077 (7ᵗʰ Cir 1998). Brock's obstructionist conduct persisted even after SEVERAL CONTEMPT CITATIONS. Id.


These forgoing cases illustrate the reasonable appropriate response level of a trial court confronted by an obstructionist pro-se defendant. Neither court was reported as having embraced bond revocation with pretrial detention of the defendant as a proper strategy to PUNISH defendants. Bond revocation and criminal contempt are mutually exclusive. Perhaps, if the events were proven to consist of contempt beyond a reasonable doubt the trial judge would have been within her discretion to revoke Robert's pro-se status. The use of this interchangeable bond revocation instead of contempt technique itself is something of an affront to the

very dignity and decorum of the judicial proceedings that the Judge is seeking to uphold. The dignity of this trial court was not abused. The tribunal's own comments belie its emotional connection to Robert when it stated: he "NEVER" "PERMITS" the court to stop him. If only Robert could have learned how to PERMIT the court not to incarcerate him without Constitutional safeguards.

## DUBIOUS SHORTCUT

Federal courts contempt power is regulated by statute and rule. 18 U.S.C. § 401; Rule 42, Federal Rules of criminal Procedure. Rule 42 applies the contempt power defined in Section 401. Rule 42(b) prescribes the procedural REGULARITY for all contempts in the federal regime except those unusual situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself. A court may summarily PUNISH a person who commits criminal contempt in its presence if the Judge saw or heard the contemptuous conduct and so CERTIFIES. United States v. Britton, 731 F3d 745 (7th Cir 2013). Rule 42 (b) which calls for disposition of criminal contempt only after Notice and hearing and a Reasonable time for preparation of a defense. United States v. Wilson, 421 U.S. 309 (1975). Further, if the contempt charged involves disrespect to or criticism of a Judge, that Judge is disqualified from presiding at the trial or hearing without the defendant's consent. Matter of Jaffree, 741 F2d 133 (7th Cir 1984). Procedure in a contempt hearing pursuant to Rule 42(b) is no different than in any other criminal trial. Id.

Generally contemnors are convicted through <u>NORMAL</u> criminal process. Int'l Union v. Bagwell, 512 U.S 821 (1994).

None of these procedures required by law were followed in this proceeding. Because the trial court merely proceeded to violate the bond, using testimony that is <u>NOT</u> in sync with the courts own rationale supplied by the record. (See Doc # 1071). Otherwise, the official transcript of court proceedings does not show or support any serious, obstructionist, or any cited behavior that made it difficult to move forward. There is no preserved record of what exactly may have raised the trial judge's <u>IRE</u>. One thing that remains certain is that a contemnor may not be punished with a jail sentence of six months or more unless he is convicted by a jury. Ecurities + Exch Comm'n v. First Choice, 678 F3d 538 (7th Cir 2012). Nevertheless, Robert served fourteen months fifteen days for what the trial court later <u>acknowledged</u> was contempt.

## <u>UNDISCLOSED CONTEMPT</u>

The U.S. Supreme Court has stated "time and again that reasonable notice of a charge and opportunity to be heard in defense before punishment is imposed are basic to our system of jurisprudence". In Re Oliver, 333 U.S 257 (1948). Of course, no action against an unruly defendant is permissable except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued

misbehavior. Illinois v. Allen, 397 U.S. 337 (1970). The record makes clear that Robert was __NOT__ informed of the actual cause of his imprisonment until April 7, 2022. After he had served ten months of his eventual 14 month two week __PUNISHMENT__ sentence.

The essence of Rule 42(b) is that an alleged contemnor be provided with notice and opportunity for a fair and impartial hearing. Robert did not receive a rule to show cause, a contempt citation, or the certificate required under Rule 42(a). The recitation of the facts in the certificate is of crucial importance. A criminal contempt order like any other conviction of crime must stand or fall on the sufficiency of the specifications of wrongdoing upon which it is based. Tauber v. Gordon, 350 F2d 843 (3rd Cir 1965). The reason for this requirement is obvious. Because the conviction of the defendant is without notice or contempt hearing, there is no record of the conviction upon which appellate review may be based. United States v. Marshall, 451 F2d 372 (9th Cir 1971). The factual recitation in the certificate supplies this deficiency. Accordingly, this requirement is more than mere formality. Id.

Such notice and hearing serve important ends. What appears to be a case of brazen silence may indeed be a case of frightened silence. S.E.C. v. Simpson, 885 F2d 390 (7th Cir 1989). Providing the defendant with notice of the nature of the contempt proceedings and allowing him to prepare a defense may also allow the

defendant to inform the court of extenuating circumstances that might mitigate the effect of failing to comply with an order of court. Taylor v. Hayes, 418 U.S. 488 (1972). Also, contemnor might at least urge ... that the issue was not contempt but the acceptable conduct of an attorney representing his client; or he might present matters in mitigation or otherwise make attempts of amends with the court. Id.

## NATION OF LAWS

But what sets us apart from other forms of government is our belief in <u>process</u>. Compassion in Dying v. Washington, 85 F3d 1440 (9th Cir 1996). Neither this court, nor any court can tolerate a situation where a judge decides to follow her own custom and concepts of justice rather than the precedent of the applicable appellate court or the United States Supreme Court. Ours is a Nation of laws not judges. United States v. Higdon, 638 F.3d 233 (3rd Cir 2011). We cannot accept a situation of a judge taking it upon herself to mitigate prejudice [of criminal contempt] in a manner that undermines the very laws the judge has taken an oath to uphold and defend. ID. Judge Kendall refused to follow the precedent of this circuit relative to criminal contempt and instead insisted on conducting a hearing according to her own personal view of the law and her own novel <u>circumventing</u> custom.

## DOUBLE SECRET CONTEMPT

In our society liberty is the norm and detention prior to trial or without trial is the _CAREFULLY_ limited exception. United States v. Salerno, 481 U.S. 739 (1987). Justice must satisfy the appearance of justice. There is a substantive right to be free of impermissable _PUNISHMENT_ before a trial. Prosecution of contempt through the obstensible label of a bond violation is quite a novel sinister method. It is akin to serving a sentence before the commission of any crime. The _PUNISHMENT_ was hardly carefully limited as Attorney Kowalski wound up serving what amounted to two and a half, maximum, contempt sentences for guarded undisclosed conduct. These absurd capricious results equal prepayment of an amorphous criminal contempt charge with arbitrary imprisonment reflects the absolute tyranny of this _PUNISHMENT_.

## FREEDOM OR FARETTA

The most difficult aspect of this drama are the lengths the trial court was willing to travel to recharacterize and explain away the context, timing and significance of the content of Pretrial Officer Green's email of October 29, 2021. The tribunal explained: (See Doc 792 at pg 24)

> "At one point in the _PRETRIAL RELEASE_ period, Kowalski stated that he would be hiring Brindley as his defense counsel."

At the time Ms Green authored her email, Robert had already been a pretrial detainee for five months. His bond having been revoked on June 2, 2021. Obviously,

Robert was not going to remain on bond because he had been divested of his freedom for nearly six months as of October 29, 2021. Officer Green clarified pretrial detention would have ceased if Robert had accepted SILENCE along with an Attorney's Representation; otherwise ABSOLUTELY NOT! Jailing represented a strategy employed by the trial court to deter excercise of Robert's right to self representation. In her email Officer Green considered Mr Kowalski the WORST defendant she had ever supervised. Yet, as long as the FARETTA right was extinguished Robert's dangerousness, likewise would evaporate.

It is most disturbing that a pretrial officer who never attended court, except when she testified, would posess any knowledge of Robert's advocacy. The Seventh Circuit has recognized that a state may not Constitutionally "hale a person into its criminal courts and there force an lawyer upon him, even when he insists that he wants to conduct his own defense". Tatum v. Foster, 847 F3d 459 (7th Cir 2017) quoting Faretta v. California, 422 U.S. 806 (1975). Faretta is grounded in the notion of free choice. Munkus v. Furlong, 170 F3d 980 (10th Cir 1999). Robert's "choice must be honored out of that respect for the individual which is the lifeblood of the law". Faretta, 422 US at 834. Since when is FREEDOM CONTINGENT upon trading away that choice, relinquishment of the Constitutionally guaranteed Faretta right.

## VENTED SPLEEN

Managing a criminal trial in which a defendant is Representing himself is a chore and may call for different procedures. United States v. Byrd, 208 F3d 592 (7th Cir 2000), We prefer to trust the judge's discretion as how to handle the situation and how to shape the contours of the obligations. ID. However, the <u>VITAL</u> point is that sitting in judgment on such a <u>MISBEHAVING</u> lawyer the judge should not give vent to personal spleen or Respond to a personal grievance. These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice. Offutt v. United States, 348 U.S. 11 (1954).

The trust reposed in the district court has been sorely abused where long established procedural and substantive law safeguards have been disregarded to silence the right of self-representation. It is the height of disingenuousness to hold a criminal contempt proceeding under the thinly veiled pretense of bond revocation to settle an old professional grievance. Attorney Robert will never receive fairness or freedom for that matter; where the judge is still smarting from the mild rebuke of an appellate decision, seeks to demonstrate at every opportunity who is the better attorney. Kowalski v. Bolicker, 893 F3d 987 (2018).

This trial court has not been "duly mindful of the fact that excercise of summary punishment for contempt is a delicate one, and care is needed to avoid arbitrary conclusions." Offutt at 14. Quite the contrary, the evidence contained in their own words no less, points to an embroiled District Judge engaged in a running feud of sorts to demonstrate a superior legal acumen, working in concert with her pretrial staff. They are SEEN working together to abrogate the FARETTA right to self representation openly. Those different procedures envisioned by the Seventh Circuit did not promote using oppressive arbitrary jail punishments to effect an abhorrent limitation of the presumption of innocence. Axiomatic and elementary the presumption of innocence lies at the foundation of our criminal law, Coffin v. United States, 156 U.S 435 (1895).

The American people have come to trust federal courts to handle some of our nation's most difficult problems when brought as cases within their jurisdiction. In Re Resolution of Adelman complaint, 965 F3d 603 (7th Cir 2020). That trust has not been taken for granted. Id. Stemming from personality based issues, this tribunal is not so omnipotent that it can place anyone in jail as in a bait and switch manner. Ostensibly stating one cause but in reality harboring its true purposes. The MCC-Chicago is not the Nouveau Bastille, a convenient tyrant's jail to lock up victims of private vendetta.

Instead, it is the solemn duty of a Federal Judge before whom a defendant appears without counsel to make a thorough inquiry and take ALL STEPS necessary to insure the FULLEST protection of this Constitutional Right at every stage of the proceedings. Von Moltke v. Giles, 332 U.S. 708 (1948). The Sixth Amendment protects a criminal defendant's Right to Represent himself. Despite the court's solemn duty to protect the FARETTA Right it did the exact opposite, consigning Robert to jail while flying false colours, as it were. Actually, PUNISHING Robert for criminal contempt of court, while flying under the radar with false contrived allegations of bond violation. To SILENCE and otherwise deter Robert from exceercising his Constitutional Right to: "ALL THAT SELF ADVOCACY AND INVESTIGATION, is a new Nadir.

A defendant's freedom to RAISE HIS VOICE in his defense comes from the notion that some measure of autonomy prevents a court from forcing an attorney upon a defendant. United States v. England, 507 F3d 581 (7th CIR 2007). At trial, the criminal defendant is entitled to speak freely to control his own future and exceercise his free will. Johnstone v. Kelly, 633 F Supp 1245 (SDNY 1986). A defendant's Right to self representation plainly encompasses certain specific Rights to have his voice heard. McKaskle v. Wiggens, 465 U.S. 168 (1984). These specific Rights to make his VOICE heard ... form the core of a defendant's Rights of self representation.

A cavernous Dirksen Courtroom can prove to be an intimidating inhospitable forum. For instance, the long distances involved can inadvertently amplify the appearance of an "OUTBURST". Where the laboring accused is simply straining his voice to ensure he is heard, unfamiliar with acoustics of the microphone audio system, confounded with technical issues, or like the 61 year old Attorney Robert contending with his nearsightedness without prescription eyeglasses. This is all compounded where the shackled FARETTA defendant is plopped down at the perimeter of the courtroom; forced to sit behind a large computer monitor. An appearance of fillabustering conduct is easily misinterpreted as bad behavior under such circumstances. Particularly, when the accused does not enjoy the benefit of nonverbal cues. Additionally, the absence of feedback in the court sound system in certain locations does not permit a speaker to guage the level of their own voice. Covid protocols only served to exacerbate these difficulties. Had procedural contempt safeguards been adhered to these issues would have been brought to the courts consideration prior to imposition of a draconian punishment.

## A FINE FROTHY STEW

The trial court cleaned up any ambiguity about <u>"WHY"</u> it initiated Bond Revocation procedures when it discussed the issue on the record April 7, 2022:
(see Docket # 1071)

## "IT WAS YOUR MISBEHAVOIR IN MY COURTROOM... WHICH IS WHY WE STILL HAVE YOU INCARCERATED"

Then on August 21, 2023; the trial court followed up on this thought when it fine tuned its earlier admission, by further confirming such misbehavior was indeed deemed "CONTEMPT". (See Doc# T.B.D)

Congress intended that the Bail Reform Act would be carefully limited to the most serious crimes as regulation of a serious societal problem, NOT PUNISHMENT. For good Reason, Contempts under 18 U.S.C. §401 are separate crimes that require prosecution by specially devised procedures implemented by Federal Rules of Criminal procedure, Rule 42. These are stand alone crimes. However, this trial court Knowingly by-passed these requisite steps, and rushed headlong to create a sort of HUNTERS STEW when it dumped the uncharged ingredient of secret contempt directly into the (indretment offenses) POT and cooked up PUNISHMENT.

However, the Bail Reform Act allows only for Regulatory detention, not PENAL purposes. Thus, the sanctity of the proceeding was invariably cross-contaminated, with Constitutional protections attaching once PUNISHMENT was meted out; before adjudication of guilt before a jury in the underlying indretment. The inevitable compromised Result plowed directly into the Bill of Rights safeguards embodied by the due process and double Jeopardy clauses of the fifth Amendment. Successive punishments run

smack dab into the nature of exactly what the Double
Jeopardy Clause protects against. North Carolina v. Pearce,
395 U.S. 711 (1969); Benton v. Maryland, 395 U.S. 784 (1969).
Rule 42 procedures, had they been followed, is the measure
that was adopted to alleviate these exact same
Constitutional deficiencies.

## DOUBLEPLAY PROSECUTION

The trial court could have vindicated the authority of
the court in a myriad of proven ways. It is essential
to the proper administration of Justice that decorum,
ORDER, and dignity be the hallmarks of all court
proceedings in our country. Illinois v. Allen, 397 US 337
(1970) J Brennan concuring. Several remedies are
available to the judge faced with a defendant bent on
disrupting his trial. He can have him bound, shackled,
and gagged; he can hold him in civil or criminal
contempt; he can exclude him from the trial and carry
on in his absence. No doubt other methods can be devised. Id.
For example, where a defendant engages in "serious and
obstructionist misconduct" a judge may deny the
excercise of the right of self representation. United States
v. Brooks, 159 F3d 1077 (7th Cir 1998) quoting Faretta v.
California, 422 U.S. 806 (1975).

## ADLIBBING

The court chose to proceed with concocted bond violations
while concealing its true intentions. However, the right
of self representation is at the very heart of the Sixth

Amendment. Faretta is a personal right of the accused. It can not be impinged upon mainly because society or a Judge may have a __PERSONALITY__ difference of opinion with accused. A Judge may not deny a mentally competent defendant the right to represent himself in a criminal trial. Imani v. Pollard, 836 F3d 939 (2016). The dangers and disadvantages of self representation cannot possibly include that the trial court will manufacture violations of bond, in lieu of contempt, Just to inhibit preparation of a complete defense. Holding Robert chained in __DEFACTO__ contempt of court and calling it bond violation does not seem to comport with cherished elementary principles of Justice. It is something that an entirely __EMBROILED__ tribunal might embrace. First throw a defendant in Jail for __PUNISHMENT__ and convict him later. This can not measure up to the fundamental fairness required by the Fourteenth Amendment.

History has known the breakdown of lawful penal authority. It has known too the perversion of such authority. In some the penal arm of the state have reached individual men through secret denunciation followed by summary punishment. In others the solemn power of condemnation has been confided to the caprice of tyrants. Down the corridors of history have echoed the cries of innocent men convicted by other irrational or arbitrary procedures. Illinois v. Allen, 397 U.S. 337 (1970) J. Brennan concurring. __PUNISHMENT__ for contempt by disguising it as bond violation is one such form of an arbitrary-twisted procedure. Our people's

notions of fair play justice and the trust they have placed in the Federal courts, is compromised when there is a wholesale disregard of long established legal principles and procedures.

## PUNISHMENT TRIGGERED JEOPARDY

The bail clause of the Eighth Amendment plays a vital role protecting the presumption of innocence. This traditional right to freedom before conviction permits the unhampered preparation of defense, and serves to prevent the infliction of PUNISHMENT prior to conviction. Unless this right to bail is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. Stack v. Boyle, 342 U.S. 1 (1951). Likewise, the Court squarely held that under the Due Process Clause that a detainee may not be PUNISHED prior to adjudication of guilt, in accordance with due process of the law. Bell v. Wolfish, 441 U.S. 520 (1979). Clearly, once Robert's bond was revoked to PUNISH him for contempt he plainly was no longer a pre-trial detainee. The trial court and government accomplished a conviction from the moment they began to implement an order that included secret PUNISHMENT. Double Jeopardy attached to this bond revocation that actually was a clandestine underground contempt proceeding.

## PUNISHMENT EQUALS JEOPARDY

Simply put the Double Jeopardy Clause prohibits sequential criminal prosecutions or sanctions. Double Jeopardy attached

to the wrong footed bond revocation that was in all aspects, in the trial court's own words for "<u>BEHAVIOR IN MY COURTROOM</u>", contempt proceeding. Subsequently, on August 23, 2023; the tribunal resolved any ambiguity when it stated this behavior was deemed "<u>CONTEMPT</u>". Jeopardy guarantees protect against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711 (1969); Benton v Maryland, 395 U.S. 784 (1969). And in this proceeding, the trial court has already meted out <u>one</u> helping of <u>PUNISHMENT</u> upon Robert.

Criminal contempt 18 U.S.C. §401 constitutes a distinct separate crime. However, the problem the trial court and government have created here is that the <u>CONTEMPT</u> was not prosecuted as the law requires. Rather, it was <u>MERGED</u> into the prosecution of this indictment and prosecuted therein surreptitiously, behind walls of silence, as it were. The Double Jeopardy and Due Process Clauses apply to interrupt all this unusual two-step procedure. Pretrial detainees cannot be <u>PUNISHED</u>. Yet once the trial court and prosecution imposed their <u>PUNISHMENT</u> in the secret contempt conviction; it served to activate double Jeopardy protections. Hence is the nature of the checks and balances of the Bill of Rights. The trial court and prosecution should have observed statutory provisions, not depart from established legal norms to get ahead. Our system has wrestled with this [contempt] problem for hundreds of years, however, and important safeguards have been devised to minimize miscarriages of Justice.

Illinois v. Bloom, 391 U.S. 194 (1968).

## MAKESHIFT CONTEMPT

The Supreme Court determined a matter that in many respects is directly analogous to this case, in Mayberry v. Pennsylvania, 400 U.S. 455 (1971). Which also revolved around courtroom behavior. The extreme facts presented there surrounded a criminal case where the defendants, (most unlike Attorney Kowalski), had reviled the presiding Judge with profanity laced outbursts and delayed the courtroom proceedings with brazen attempts to denounce, insult, slander the court, and paralyze the trial. The trial court related:

"You have constantly, boisterously, and insolently interrupted the court during its attempts to charge the jury, thereby creating an atmosphere of utter confusion and chaos". Mayberry at 462.

What is significant, as it pertains to this prosecution, is the Mayberry trial court protected itself in the manner provided by Illinois v. Allen, 397 U.S. 337 (1970). Namely, it gagged, then summarily CHARGED the defendants immediately with criminal contempt for conduct that occurred before it. In order to insulate the courtroom from vulgarity. However, it delayed, until the underlying proceeding was completed before imposition of the contempt sentence. Under those circumstances the Court reversed holding that: "Where he does not act the instant the contempt is committed, but WAITS until the end of the

trial, in balance, it is generally wise when the marks of unseemly conduct have left personal stings to ask a fellow Judge to take his place". Mayberry at 464.

The trial court here also bided its time. But unlike the direct due process abiding approach of the trial Judge beset in Mayberry; No distinct separate contempt charges, summary or otherwise were ever leveled against Robert. Instead, despite the lingering stings of unspecified "outburst" behavior in her courtroom, this tribunal harbored a geudge against Robert. The trial Judge would not allow a fellow Judge handle what she obviously perceived as a serious contempt infraction to "<u>MY COURTROOM</u>". The trial court was too enraptured with being embroiled, tussling with Attorney Kowalski and their <u>PERSONALITY</u> driven issues; to allow another fellow Judge come between the personal satisfaction of <u>PUNISHING this PERSONALITY</u> she admitted detesting. The trial Judge, at that time, failed to represent the impersonal authority of the law.

Consequently, the tribunal evolved the bond revocation approach so she could continue to supervise and thereby <u>SAVOR</u> the satisfying imposition of <u>PUNISHMENT</u>, the Judge so <u>relished</u>. Without having to comply with the commonsense dictates of Mayberry. Thus when the tribunal began punishing Robert with trumped up bond violations in lieu of distinct contempt of courtroom decorum "outburst" behavior, Double Jeopardy protections attached. Pretrial detainees may not be Constitutionally

<u>punished</u>. Bell v. Wolfish, 441 U.S. 520 (1979). However, that is what the enthralled tribunal meted out. Participating with her staff of Pretrial Officers to procure specious thinly veiled bond violations. Subsequently, Pretrial Officer Green recognized in her email that it was all that "<u>SELF ADVOCACY</u>" in the courtroom, not those nominal fake bond violations she testified about, that got Mr. Kowalski into so much trouble. Consequently, it is rather intuitive that when the trial court engaged in <u>BAD BEHAVIOR</u> to combat bad behavior, such conduct ran afoul of the safeguards of the Bill of Rights.

The fundamental nature of the guarantee against Double Jeopardy can hardly be doubted. The underlying idea is that the state with all its resources and power should not be allowed to make <u>REPEATED</u> attempts to convict an individual for an alleged offense, thereby subjecting one to embarassment, expense, and ordeal, and compelling an individual to live in a continuing state of anxiety and insecurity; as well as <u>ENHANCING</u> the possibility that even though innocent he may be found guilty. This underlying notion has from the very beginning been part of our Constitutional tradition.

## <u>RECUSAL REQUIRED</u>

The leading case from the Supreme Court on recusal under § 455 is Liteky. Under Liteky, the terms "bias or prejudice connote instances of partiality or opinions that are somehow wrongful or inappropriate," 510 U.S. at

550-52. A Judge's misconduct at trial may be characterized
as bias or prejudice" if it is so extreme as to display clear
inability to render fair judgment. Id. In other words
this conduct must be so extreme that it displays a deep
seated favoritism or antagonism that would make fair
judgment impossible. Id. at 555. Where the allegedly
contumacious conduct so provokes the judge reviled that
he or she becomes so personally embroiled in the controversy,
or where there is such a liklihood of bias or the appearance
of bias that the judge is unable to hold the balance between
vindicating the interests of the court and the interests of
the accused, or where the conduct involves an insulting attack
on the integrity of the judge, then recusal is required.
Taylor v. Hayes, 418 U.S. 488 (1974).

## EXTREME BIAS

A Judges PERSONALITY issues with an accused are
well beyond reasonable bounds of what imperfect judges
display and thus establish her bias and partiality. It
is grounded in some personal animus or malice that the
Judge harbors ... of a kind that a fair minded person
COULD NOT entirely cast aside when judging persons or
causes. Grove Fresh v. Labatt, Ltd., 299 F.3d 635 (7th Cir 2002).
Causing to eschew appropriate long established contempt
proceedings solely to avoid transferring the case to
another judge; implys that Judge Kendall enjoyed,
taking special delight in PUNISHING Attorney Kowalski.
Who uniquely IRKED her so profoundly personally and
professionally. It is absolutely egregious that the actual

Reason Robert spent more than a year in jail is connected to abrogation of the right of self-representation. A right a federal judge has a solemn duty to protect, NOT OBLITERATE.

## USE OF MANDAMUS FOR RECUSAL

No reasonable reading of this extraordinary record supports a refusal to recuse. Further, delay will cause irreparable harm. Under these extreme circumstances issuance of the writ is appropriate. The Seventh Circuit has long recognized that a petition for writ of mandamus is an appropriate method to seek recusal of a district judge under 28 U.S.C. §455. SCA Servs v. Morgan, 557 F2d 110 (7th Cir 1977). Writ of mandamus are extraordinary remedies granted "to confine an inferior court to a lawful excercise of its prescribed jurisdiction or to compel it to excercise its authority when it is its duty to do so". In Re Hijazi, 589 F3d 401 (7th Cir 2009). Petitioner must show that "her right is clear and indisputable". United States v. Sinorel Wind Group, 794 F3d 787 (7th Cir 2015). The Bail Reform Act carefully limits detention. However, in this matter it has been utilized as a catch all substitute for a personality based contempt proceeding. The Recusal statute §455 provides that a Judge SHALL recuse under the fact pattern presented.

## DOUBLE SECRET CONTEMPT

Summary punishment always, and rightly is regarded with disfavor and if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes. Sacher v. United States, 343 U.S. 1 (1952). Perhaps Robert could have been summarily punished, for his unspecified "outburst" misbehavior, without hearing under Rule 42(a), if the court had acted at once upon occurance of each incident. The record of proceedings is silent, however, it does not support any poor conduct. In any event thereafter, Robert could not be convicted or sentenced, for misbehavior in Judge Kendall's courtroom, except after Notice, time for preparation of defense, and hearing, probably before another judge as provided in Rule 42(b). This trial court failed to excercise the moral authority of a court possessed of a great tradition when it effected a secret contempt PUNISHMENT via an prohibited use of bond revocation proceedings. Ensuring that a FARETTA defendant with a complex financial case could not mount a meaningful complete defense while chained within his solitary MCC-Cell.

Here, the "WE" Judge Kendall referred to on April 7, 2022; included the trial court, pretrial officers, and prosecution collaborated together imposing a contempt PUNISHMENT on a prose defendant, labeled in the guise of a bond revocation. Pretrial Officer Green made crystal clear in her email about how all that self advocacy and investigation CAUSED ALL Mr. Kowalski's troubles, and if he would

only remain silent. Likewise, it all comes together, when the trial court unequivocally lets slip that _COURTROOM BEHAVIOR_ which constituted contempt was the _TRUE_ cause, the "_WHY_" of Robert's lengthy imprisonment. Judge Kendall is thus observed venting her _PERSONALITY_ based issues by abrogation of the FARETTA right. Tormenting the hapless pro-se defendant whom she has a solemn duty to protect. The prosecution understood the inevitable difficulties that pretrial incarceration posed to a FARETTA defendant. Tactically wounding, weakening, maiming, wearing down a defendant's presumption of innocence by such pre-emptive strike tactics are exactly the classic type of successive punishments _EVIL_ the Double Jeopardy Clause of the Fifth Amendment guards against. Robert has already been _punished_ once in the underlying case.

Pretrial detention carefully limited by the Bail Reform Act was intended for the most serious crimes. It was not meant to serve as a versatile, convenient, utility, and catch all substitute for criminal contempt of court proceedings. Our Constitution, whose constitution, whose construction began two centuries ago shelters us from the _EVILS_ of such unchecked power. The shortcuts we take with those whom we consider to be guilty injure only those wrongfully accused and, ultimately ourselves. United States v. Salerno, 481 U.S. 739 (1981). Justice Marshall dissenting.

WHEREFORE, Robert respectfully requests that his
petition is granted and the writ issued. Also, that
Double Jeopardy protection is applied and Recusal is
deemed warranted.

Respectfully Submitted

Robert M. Kowalski

ROBERT M. KOWALSKI

# 499069

Jerome Combs Detention Center

3050 Justice Way

Kankakee, Illinois 60901


Footnote 1:

The email of 10/29/21 that is referred to was attached to
several motions buried in the docket shortly thereafter

Footnote 2:

The most recent transcript of proceedings was not
available from days ago 8/21/2023. Consequently it
could not be attached or properly referred to.

ROBERT M. KOWALSKI
#T99069
JEROME Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

**RECEIVED**

SEP 13 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Legal Mail

Legal Mail

CLERK OF THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS
60604

09/13/2023-11

S97261.123
$2.790
US POSTAGE
FIRST-CLASS
0625001456039B
FROM 60901