IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 19 CR 226-1 |
| | ) | |
| ROBERT KOWALSKI, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Robert Kowalski has been a prolific filer in this case—before and since his conviction. In August 17, 2022, the Court issued a 56-page Order that resolved 90 of Kowalski's motions. (Dkt. 792). Within that Order, the Court denied several motions for recusal, stating that "none of Kowalski's allegations rise to the level of recusal." (*Id.* at 49). Yet, Kowalski persists. Since the Order, he has filed four more motions—among many others on various topics—seeking this Court's recusal. (*See* Dkts. 1107, 1137, 1170, 1199). All four recusal motions deal with similar conclusory allegations. For the following reasons, Kowalski's motions to require recusal [1107, 1137, 1170, 1199] are denied.

In the present recusal motions, Kowalski has thrown in everything plus the kitchen sink. Across four motions, he argues that the Court should recuse itself pursuant to federal statute and the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.

Starting with the statutory arguments, Kowalski moves for recusal under three federal statutes: (1) § 144 requires the recusal of a district judge if "a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," 28 U.S.C. § 144; (2) § 455(a) provides that a district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a); and (3) § 455(b)(1) provides that a district judge shall recuse himself "[w]here he has a personal bias or prejudice concerning a party," 28 U.S.C. § 455(b)(1). Under § 144, Kowalski must show that the Court has an actual personal bias or prejudice against him, while under § 455, he need only show that a reasonable, objective observer would question the Court's partiality. *United States v. Barr*, 960 F.3d 906, 919–20 (7th Cir. 2020). "A court may only credit facts that are 'sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors'" or "mere conjecture and supposition" are "insufficient." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) (citation omitted).

Kowalski recycles the same conclusory arguments that the Court rejected in its August 17, 2022 Order. He aims the brunt of his ire at the Court's ruling during his bond revocation hearing. (*See* Dkt. 1137 at 1–3; Dkt. 1170 at 2; Dkt. 1199 at 1). Kowalski asserts that his bond revocation

hearing was secretly a criminal contempt proceeding. (*See* Dkt. 1170 at 3, 8, 13, 25; Dkt. 1199 at 1, 4). The Court allegedly created this masquerade out of dislike for his "personality." (*See* Dkt. 1137 at 1, 3, 8, 19–20; Dkt. 1170 at 5, 25, 27; Dkt. 1199 at 1, 6). Kowalski also believes that the Court intends to punish him for a billboard he put up in 2019 portraying former Chief Judge Rubén Castillo as a cartoon lion in black robes with a noose attached and the words "Indict Castillo." (*See* Dkt. 1107 at 2–3; Dkt. 1137 at 8–10; Dkt. 1199 at 5). The Court has already dispensed with these arguments and directs Kowalski to review the August 17 Order. (*See* Dkt. 792 at 49). In short, judicial rulings alone cannot form the basis for recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also id.* at 556 ("A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."). The bond revocation hearing was not a contempt hearing. As the record reflects, the Court revoked Kowalski's bond because of his specific actions, not his personality. (*See, e.g.* Dkt. 372 at 22:24–24:13; Dkt. 1071 at 29:22–30:2; Dkt. 1125 at 16:8–19:5).

From the beginning of this case, Kowalski has disregarded this Court's orders. In March 2019, when the Complaint was filed, Kowalski was in custody based on the bankruptcy court's orders for contempt of court. (*See* Dkt. 18). In June 2019, he was placed in pretrial release. (*See* Dkt. 66). But in the summer and fall of 2019, Kowalski was in and out of custody again because the state court also held him in contempt; concurrently, Kowalski repeatedly violated the conditions of his bond set by this Court. (*See* Dkts. 68, 72, 73, 75, 77, 80). In October 2020, the Court revoked his pretrial release because he continued to violate its conditions, including contacting a witness in his trial on two separate occasions. (*See* Dkts. 158, 163, 164). When discussing Kowalski's dangerousness and his ability to comply with court orders, the government referenced the billboard that Kowalski himself produced to the Court. (*See* Dkt. 372 at 7:10–14). But the Court did not comment on the billboard in arriving at its decision. Rather, the Court reviewed all the evidence and concluded that Kowalski should be detained pending trial. (*See* Dkt. 165). Although Kowalski was released in December 2020 so he could prepare for trial, by February 2021, he violated his pretrial release conditions again. (*See* Dkt. 240). He left his house five times without permission and repeatedly unplugged or tampered with his location monitoring equipment. (*See* Dkt. 1125 at 11:23–12:2). Pretrial services issued two additional violation reports against Kolwaski on April 30, 2021 and May 27, 2021. (*See* Dkts. 343, 356). The Court, again, revoked his pretrial release. (*See* Dkt. 371). In addition to these violations, the Court has taken account of the danger Kowalski poses to the community: prior to his trial, he and another individual had used a firearm to forcibly gain access to a building. (*See* Dkt. 1125 at 13:23–14:14). So, given his history of non-compliance and the government's inability to find a significant amount of his ill-gotten money, the Court deemed Kowalski a flight risk and denied his post-trial motion for release on bond prior to sentencing. (*See* Dkt. 1106). Notably, Kowalski does not mention this history in his motions. Instead, he relies on his subjective and unsubstantiated belief that this Court is out to get him. That is not a ground for recusal.

Kowalski also presents a spectrum of additional allegations—ranging from the speculative and unsupported to the blatantly false. He asserts that: (1) the Executive Committee's order requiring Kowalski to be escorted by U.S. Marshals while in the Dirksen building biased the Court against him; (2) FDIC-OIG members served as courtroom deputies, barred Kowalski's witnesses from reaching the courtroom, and held the witnesses hostage within the Dirksen building; (3) the Court sabotaged Kowalski's discovery review by knowingly providing a computer that could not

load the government's discovery material; (4) the Court harbored a grudge against Kowalski based on his prior civil case, *Kowalski v. Boliker*, 893 F.3d 987 (7th Cir. 2018), where the Seventh Circuit affirmed this Court's dismissal on other grounds; and (5) the Court's alleged purchase of coffee for prosecutors and Kowalski's standby counsel was prejudicial. (*See* Dkt. 1137 at 1–2, 4–5, 19–21; Dkt. 1199 at 6–7). But Kowalski has not substantiated his factual assertions. First, he has not shown that the Court took heed of the Executive Committee's order in its rulings. Second, his story about FDIC-OIG members—moonlighting as courtroom deputies and holding witnesses hostage—would make great material for the next John Grisham novel, but it is not rooted in any facts. Third, the Court has repeatedly accommodated Kowalski's discovery requests; any "sabotage" has resulted from his own actions. (*See* Dkt. 792 at 7–16). Fourth and fifth, the Court has already addressed Kowalski's beliefs that the Court is biased because of a previous civil case involving Kowalski and purportedly buying coffee for prosecutors and the standby counsel. (*See* Dkt. 778; Dkt. 792 at 49–50). The Court directs Kowalski again to review its prior rulings. Thus, Kowalski has failed (1) to show that this Court has any actual bias; or (2) to convince an objective observer that there is a perceived bias by the Court.

Lastly, Kowalski alleges violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. These constitutional challenges are meritless. The Court did not violate his First Amendment right because the Court did not deny his post-trial motion for release on bond because of the billboard, but because of his history of noncompliance with pretrial release conditions and the Court's orders. There is no violation under the Due Process Clause of the Fifth or Fourteenth Amendment because Kowalski has not shown there is any actual or perceived bias against him. The Court is confused by Kowalski's assertion that the Fifth Amendment's double jeopardy clause applies to his situation. First, there is no evidence that the Court "punished" Kowalski out of personal emotions; the Court denied his bond because he was a flight risk with a history of violating the Court's orders, including a violation involving a firearm. Second, double jeopardy prevents different prosecutions of the same offense, but Kowalski does not explain which offense he believes has been doubly prosecuted. *See United States v. Morgan*, 929 F.3d 411, 421 (7th Cir. 2019). Instead, he alleges that the Court and the government colluded to "merge[]" a contempt charge "into the prosecution of this indictment and prosecuted therein surreptitiously, behind walls of silence, as it were." (Dkt. 1170 at 23). That conclusory statement finds no support in the record or transcripts. Likewise, there is no Eighth Amendment violation for denying his bond because Kowalski is a flight risk with past incidents involving violence. *See, e.g.*, *United States v. Hazzard*, 598 F. Supp. 1442, 1449 (N.D. Ill. 1984) (acknowledging that bail has traditionally been denied in cases involving risk of flight). Lastly, Kowalski's *Faretta* rights under the Sixth Amendment were not violated. Kowalski has the right to represent himself and did in fact, represent himself in trial. But the right to self-representation does not extend to disrupting orderly proceedings in court. *See Faretta v. California*, 422 U.S. 806, 834, n.5 (1975) (finding "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct.").

For these reasons, the Court denies Kowalski's motions for recusal [1107, 1137, 1170, 1199].

_____
Virginia M. Kendall
United States District Judge

Date: October 30, 2023