

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

UNITED STATES OF AMERICA )
)
)
v.     ) 19 CR 226
)
)
ROBERT M. KOWALSKI, )
     defendant      ) Judge Virginia M. Kendall

**FILED**

**NOV 28 2023**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## MOTION TO DISMISS CONVICTION ON DOUBLE JEOPARDY GROUNDS

Now Comes Robert M. Kowalski, (ROBERT), for his motion to vacate conviction on Double Jeopardy Grounds pursuant to the Double Jeopardy and Due Process Clauses of the Fifth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment states as follows:

As much as the District Court may have thought Attorney Kowalski warranted punishment, (For Behavior in My Courtroom), the prosecution of such in this case broke a basic Constitutional promise essential to our liberty. In this country, Judges have no more power to initiate a prosecution of those who come before them, than prosecutors have to sit in judgment of those they charge. Donziger v. United States, 22-274 (3-27-2023).

Our Constitution gives courts the power to serve as a neutral adjudicator in a criminal case, not the power to prosecute crimes. Young v. United States ex rel Vuitton, 481 U.S. 787 (1987). The Constitution's separation of powers exists in no small measure to keep our courts from becoming partisans in the cases before them. ID. Consequently, it is hard to understand why a Federal judge would resort to holding a criminal contempt proceeding in the guise of a bond revocation. Simply because the trial court had become so personally embroiled with the attorney defendant. On August 21, 2023 in open court the tribunal once again admitted that she had indeed incarcerated Robert for fourteen months, fifteen days for a criminal contempt of court. This represents a far longer duration that any summary contempt adjudication would have otherwise permitted.

There are several Constitutional protections that are implicated by any form of a _COVERT_ underground criminal contempt proceeding. Such offend: the due process and double jeopardy clauses of the Fifth Amendment, the secret nature of the decision was hidden not open to the public, no jury trial was permitted; neither an indictment, rule to show cause, or citation were provided, and it left the FARETTA right abrogated in shambles. Clearly, this is the sort of conduct that _ONLY_ a deeply prejudiced biased judge would engage in.

The Court has long recognized the potential for abuse in exercising the summary power to imprison for contempt, it is an arbitrary power which is liable for abuse. Ex Parte Terry, 128 U.S. 289 (1888). These apprehensions about the unbridled power to punish summarily for contempt are reflected in the march of events in both Congress and the courts since our Constitution was adopted. Bloom v. Illinois, 391 U.S. 194 (1968). The requirements of contempt jurisprudence are easily evaded where the _LABEL_ of bond revocation is substituted to circumvent contempt safeguards. Particularly, where the district court responded by setting up and staffing its own prosecutor's office through collaboration with a pretrial services officer.

## FACTUAL BACKGROUND

On June 2, 2021 this trial court revoked Robert's bond. Pretrial Officer Green filed a sworn violation report; then testified that Robert had violated his conditions of release by engaging in two allowed Jewel/Osco shopping trips that were later deemed frivolous and a brief out of range report. However, shortly thereafter, the same pretrial officer wrote an email on October 29, 2021 that related a rationale that sharply diverged from, and contradicted her earlier testimony. Therein she wrote: ALL THAT SELF ADVOCACY AND INVESTIGATION is what got Mr Kowalski into so much trouble. If he would remain SILENT he could be home with his family. However, if he would continue to represent himself "ABSOLUTELY NOT". A clear implication that bond revocation focused upon Robert's excercise of the right to self-representation. Also, it confirmed that Ms Green understood much more about the actual true underlying causes of "BOND VIOLATION". Further, it recognized the trivial nature of her contrived violations and that the sixty one year old attorney, without a criminal history, posed no danger whatsoever, except for his apparently vociferous cantankerous advocacy style.

Thereafter, ruling on April 7, 2022; upon Robert's renewed motion to reinstate bond the trial court emphasized its rationale on revocation ruling unequivocally stating:
    "It had nothing to do with an Executive

Committee order. IT WAS YOUR BEHAVIOR IN MY COURTROOM. But my point is even if you are released, you have restrictions here within the courthouse, and this was mentioned not as a reason other than to say we have many tribunals that you have failed to follow the orders of, which have restricted you because of that, WHICH IS WHY "WE" STILL HAVE YOU INCARCERATED".

Later, on August 3, 2023; the tribunal denied Robert's motion for release pending sentence because it did not like Robert's "MERCURIAL PERSONALITY". Lastly, on August 21, 2023; in open court the tribunal specifically confirmed that Robert had been incarcerated for "CONTEMPT".

The best approach is to take the district court at its word, and to accept this matter as a criminal contempt matter for behavior in my courtroom. Indeed, courtroom behavior has NOTHING in common with what Ms Green initially testified to. But it had everything to do with "ALL THAT SELF ADVOCACY AND INVESTIGATION" she elaborated about later in her email. A tacit admission that her court testimony was a candorless subterfuge. Courtroom behavior by its very nature implys criminal contempt of court. A shortcutting trial court violated Robert's bond to PUNISH him because of what it considered as contempt "outbursts" occuring in its presence. It is indisputable that from the exact

moment Robert was incarcerated, as the judge explained it, for his courtroom behavior, a punishment was effected.

## REGULATION NOT PUNISHMENT

Pretrial detention under the Bail Reform Act is meant to be regulatory, in nature, and does not constitute punishment before trial in violation of the Due Process Clause. United States v. Salerno, 481 U.S. 739 (1987). The legislative history of the Bail Reform Act clearly indicates that Congress did not formulate Pretrial Detention provisions as PUNISHMENT for dangerous individuals. See S Rep No 98-225 @ 8. The Bail Reform Act CAREFULLY LIMITS the circumstances under which detention can be imposed to the most serious crimes. 18 USC 3142 (F). The Court noted that the government has never argued that pretrial detention could be upheld if it was PUNISHMENT. Id.


There is no doubt that preventing danger to the community is a legitimate regulatory goal. However, criminal contempt in and of itself and without regard to the punishment imposed is not a serious offense absent a legislative declaration to the contrary. Muniz v. Hoffman, 422 U.S. 454 (1975), Consequently, United States v. Salerno, which held that in narrow circumstances pretrial detainees who pose a danger to others or the community may be subjected to limited confinement can not be legitimately understood to apply to the crime of criminal contempt.

This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of PUNISHMENT prior to conviction. Unless this right to bail is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. Stack v. Boyle, 342 U.S. 1 (1951). The bail clause of the Eighth Amendment plays a vital role in protecting the invaluable guarantee afforded by the presumption of innocence. The Court squarely held that under the Due Process Clause a detainee may not be PUNISHED prior to adjudication of guilt, in accordance with Due Process of Law. Bell v. Wolfish, 441 U.S. 520 (1979). Punishment is NEVER Constitutionally permissable for presumptively innocent individuals awaiting trial. Bell at 535.

## DUBIOUS SHORTCUT

Federal courts contempt power is regulated by statute and rule. 18 U.S.C. § 401; Rule 42, Federal Rules of Criminal Procedure. Rule 42 applies the contempt power defined in Section 401. Rule 42(b) prescribes the procedural REGULARITY for all contempts in the federal regime except those unusual situations envisioned by Rule 42(a) where instant action is necessary to protect the judicial institution itself. Rule 42(b) which calls for disposition of criminal contempt only after notice, hearing, and a reasonable time for preparation of a defense. United States v. Wilson, 421 U.S. 309 (1975). Further, if the contempt charged involves disrespect

to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing without the defendant's consent. Matter of Jaffree, 741 F2d 133 (7th Cir 1984). Procedure in a contempt hearing pursuant to Rule 42(b) is no different than in any other criminal trial. Id. Generally contemnors are convicted through normal criminal process. Int'l Union v. Bagwell, 512 U.S. 821 (1994).

None of these procedures required by the law were followed in this proceeding. Because the trial court merely proceeded to violate the bond with testimony that does _NOT_ mesh with the courts own rationale supplied by the subsequent record. Otherwise, the official transcript of court proceedings does not show or support any serious, obstructionist, or any cited behavior that made it difficult to move forward. There is no preserved record of what exactly may have raised the trial judge's IRE. One thing that remains certain is that a contemnor may not be punished with a jail sentence of six months or more unless he is convicted by a jury. Ecurities + Exch Comm'n v. First Choice, 678 F3d 538 (7th Cir 2012). Nevertheless, Robert served fourteen months fifteen days, jailed for what the trial court later confirmed was actually for criminal contempt of court.

## MISLABELED CONTEMPT

The MISLABELING of the proceedings is not the determinative factor as long as the defendants were aware that they were being tried for criminal contempt. Pabst Brewing v. Brewery Workers, 555 F2d 146, (7th Cir 1977) quoting United States v. Mine Workers, 330 U.S. 258 (1947). Nowhere is there any indication in the record that Robert was apprised of the actual criminal contempt character of the bond revocation proceeding. A state cannot evade the prohibitions of the federal Constitution merely by changing the LABEL of the PUNISHMENT. Indeed, "Labels affixed either to the proceeding or to the relief imposed... are not controlling and will not be allowed to defeat the applicable protections of Federal Constitutional law. Hicks v. Feiock, 485 U.S. 624 (1988). The resulting lack of transparency seriously affected the fairness, integrity, and public reputation of these judicial proceedings. Consequently, Robert never had any chance of adverting punishment for criminal contempt in a sham bail revocation proceeding.

Criminal contempt is a SEPARATE statutory offense and must be PUNISHED, if at all, as such, we agree. United States v. Lipkin, 61 F3d 913 (9th Cir 1995). None of this is to say that Robert's Contempt of Court, whatever behavior it may have consisted of, was not punishable. See 18 U.S.C. Sec 401 (authorizing courts to punish contempt by fine or imprisonment). However, if

the District Court wished to punish Robert's conduct IT HAD TO FOLLOW THE PROCEDURES set forth in Fed R Crim Pro 42(b) requiring notice, hearing, a specific finding of guilt, and an order fixing punishment in a separate proceeding. That this did not occur and that long established Rule 42(b) was glossed over, not strictly or even otherwise observed in this case has allowed double Jeopardy consequences to attach. The parallel required criminal contempt proceeding never having materialized, left the PUNISHMENT occuring alongside the indicted offenses, in a mixed in fashion.

## UNDISCLOSED CONTEMPT

The U.S. Supreme Court has stated "time and again that reasonable notice of a charge and opportunity to be heard in defense before punishment is imposed are basic to our system of Jurisprudence". In Re Oliver, 333 U.S. 257 (1948). Of course, no action against an unruly defendant is permissable except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior. Illinois v. Allen, 397 U.S. 337 (1970). The record makes clear that Robert was NOT informed of the correct true cause of his imprisonment until many months later on April 7, 2022. After he had served ten months of his eventual 14 month 2 week sentence.

The essence of Rule 42(b) is that an alleged contemnor be provided with notice and opportunity for a fair and

impartial hearing. Robert did not receive a rule to show cause, a contempt citation, or the certificate required under Rule 42 (a). The recitation of the facts in the certificate is of crucial importance. A criminal contempt order like any other CONVICTION of crime must stand or fall on the sufficiency of the specifications of wrongdoing upon which it is based. Tauber v. Gordon, 350 F2d 843 (3rd Cir 1965). The reason for this requirement is obvious. Because the defendant has been convicted without notice or contempt hearing, there is no record of the conviction upon which appellate review may be based. United States v. Marshall, 451 F2d 372 (9th Cir 1971). The factual recitation in the certificate supplies this deficiency. Accordingly, this requirement is more than mere formality. Id.


Such notice and hearing serve important ends. What appears to be a case of brazen silence may indeed be a case of frightened silence. S.E.C. v. Simpson, 885 F2d 390 (7th Cir 1989). Providing the defendant with notice of the nature of the contempt proceedings and allowing him to prepare a defense may allow the defendant to inform the court of extenuating circumstances that might mitigate the effect of failing to comply with an order of court. Taylor v. Hayes, 418 U.S. 488 (1972). Also contemnor might at least urge... that the issue was not contempt but the acceptable conduct of an attorney representing his client; or he might present matters in mitigation or otherwise make attempts of amends with

the court. Id.

## DOUBLE SECRET CONTEMPT

In our society liberty is the norm and detention prior to trial or without trial is the CAREFULLY limited exception. United States v. Salerno, 481 U.S. 739 (1987). Justice must satisfy the appearance of Justice. There is a substantive Right to be free of impermissable PUNISHMENT before a trial. Prosecution of contempt through the obstensible LABELING as bond violation Revocation is quite a novel sinister new approach. It is akin to serving a sentence before adjudication of any conviction. The punishment was hardly carefully limited as Attorney Kowalski served what amounted to $2\frac{1}{2}$ maximum contempt sentences for undisclosed BEHAVIOR. The absurd capricious results of contempt with arbitrary imprisonment Reflects the capricious absolute tyranny of this PUNISHMENT.

## LOCKDOWN THE FARETTA RIGHT

The Seventh Circuit has noted that managing a criminal trial in which a defendant is representing himself is a chore and may call for different procedures. United States v. Byrd, 208 F3d 592 (7th Cir 2000). We prefer to trust the judge's discretion as to how best handle the situation and how to shape the contours of the obligations. Id. This, however, does not supply a trial court to use unlimited discretion to abrogate the Sixth Amendment Faretta right to self Representation, the presumption of innocence, or to a jury trial; by false imprisonment of the pro-se

defendant and thereby creating an abhorrent limitation
of the presumption of innocence. Axiomatic and elementary
the presumption of innocence lies at the foundation of our
criminal law. Coffin v. United States, 156 U.S. 432 (1895).


It is the solemn duty of a Federal Judge before whom a
defendant appears without counsel to make a thorough inquiry
and take ALL STEPS necessary to insure the fullest
protection of this Constitutional right at every stage of the
proceedings. Von Moltke v. Giles, 332 U.S. 708 (1948). The
Sixth Amendment protects a criminal defendant's right to
represent himself. Despite this court's solemn duty to
protect the FARETTA right it consigned Robert to jail
while flying false colours, as it were. Actually, PUNISHING
Robert for criminal contempt of court, under the radar with
false allegations of bond violation to SILENCE and otherwise
deter Robert from exercising his Constitutional right to
"ALL THAT SELF ADVOCACY AND INVESTIGATION, is a
new nadir.


A defendant's freedom to RAISE HIS VOICE in his
defense comes from the notion that some measure of
autonomy prevents a court from forcing an attorney
upon a defendant. United States v. England, 507 F3d 581
(7th Cir 2007). At trial, the criminal defendant is entitled
to speak freely to control his own future and
exercise his free will. Johnstone v. Kelly, 633 FSupp
1245 (SDNY 1986). A defendants right to self
representation plainly encompasses certain specific

Rights to have his voice heard. McKaskle v. Wiggens, 465 U.S. 168 (1984). These specific Rights to make his VOICE heard ... form the core of a defendant's Rights of self-Representation.

A cavernous Dirksen Courtroom can prove to be an intimidating inhospitable forum. For instance, the long distances involved can inadvertently create the appearance of an "OUTBURST". Where the laboring accused is simply straining his voice to ensure he is heard, unfamiliar with acoustics of the microphone audio system, confounded with technical issues, or like the sixty-one year old attorney Robert contending with his nearsightedness without prescription eyeglasses. This is all compounded where the shackled Faretta defendant is plopped down at the perimeter of the courtroom; forced to sit behind a large computer monitor. An appearance of fillabustering conduct is easily misinterpreted as bad behavior under such circumstances. Particularly, when the accused does not enjoy the benefit of nonverbal cues. Additionally, the absence of feedback in the court sound system in certain locations does not permit a speaker to guage the level of their own voice. Covid protocols only exacerbated these difficulties. Had procedural contempt safeguards been adhered to these issues would have been brought to the court's consideration prior to imposition of a draconian punishment.

## ADLIBBED CONTEMPT PROSECUTION

The trial court could have vindicated the authority of the court in a myriad of proven ways. It is essential to the proper administration of Justice that decorum, ORDER, and dignity be the hallmarks of all court proceedings in our country. Illinois v. Allen, 397 US 337 (1970) J Brennan concurring. Several remedies are available to the judge faced with a defendant bent on disrupting his trial. He can have him bound, shackled, and gagged; he can hold him in Civil or Criminal contempt; he can exclude him from the trial and carry on in his absence. No doubt other methods can be devised. For example, where a defendant engages in "serious and obstructionist misconduct" a judge may deny the exercise of the right of self representation. United States v. Brooks, 159 F3d 1077 (7th Cir 1988); quoting Faretta v. California, 422 U.S. 806 (1975).


The trial court, however, chose to proceed with concocted bond violations while concealing its true purposes. The right of self representation is at the very heart of the Sixth Amendment. Faretta is a personal right of the accused. It can not be impinged upon mainly because society or a judge may have a PERSONALITY difference of opinion with accused. A judge may not deny a mentally competent defendant the right to represent himself in a criminal trial. Imani v. Pollard, 836 F3d 939 (2016). The dangers and disadvantages of self representation can not possibly include that a trial

court will manufacture violations of bond, in lieu of contempt, just to inhibit preparation of a complete defense. Holding Robert chained in defacto contempt of court, while calling it bond violation does not seem to comport with cherished elementary principles of justice. It is something that an entirely EMBROILED tribunal might wholeheartedly embrace. First throw a defendant in jail for PUNISHMENT and convict him later. This can not measure up to the fundamental fairness demanded by the Fourteenth Amendment.

History has known the breakdown of lawful penal authority. It has known too the perversion of such authority. In some the penal arm of the state have reached individual men through secret denunciation followed by summary punishment. In others, the solemn power of condemnation has been confided to the caprice of tyrants. Down the corridors of history have echoed the cries of innocent men convicted by other irrational or arbitrary procedures. Illinois v. Allen, 397 U.S. 337 (1970) J. Brennan concurring. PUNISHMENT for criminal contempt by disguising it as bond violation is one such form of an arbitrary - twisted procedure. Our people's notions of fair play justice and the trust they have placed in the Federal courts, is sorely compromised when there is a wholesale disregard of long established carefully evolved legal principles and procedures.

## PUNISHMENT TRIGGERED JEOPARDY

The bail clause of the Eighth Amendment plays a vital role protecting the presumption of innocence. This traditional right to freedom before conviction permits the unhampered preparation of defense, and serves to prevent the infliction of _PUNISHMENT_ prior to conviction. Unless this right to bail is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. Stack v. Boyle, 342 U.S. 1 (1951). Likewise, the Court squarely held that under the Due Process Clause that a detainee may not be _PUNISHED_ prior to adjudication of guilt, in accordance with due process of the law. Bell v. Wolfish, 441 U.S. 520 (1979). Clearly, once Robert's bond was revoked to _PUNISH_ him for criminal contempt of court; he plainly was no longer a pre-trial detainee. The trial court and government accomplished a conviction from the moment they began to implement an order that included secret _PUNISHMENT_. Double Jeopardy attached to this bond revocation that actually was for all purposes a clandestine underground contempt proceeding.

## JEOPARDY ATTACHED

Simply put the Double Jeopardy Clause prohibits sequential criminal prosecutions or sanctions. Double Jeopardy attached to the wrong footed bond revocation that was in all aspects, in the trial courts own words for "_BEHAVIOR IN MY COURTROOM_", contempt proceeding. On August 23, 2023 the tribunal resolved any and all ambiguity when it reconfirmed this _BEHAVIOR_ was deemed "_CONTEMPT_".

Jeopardy guarantees protect against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711 (1969) quoting Benton v. Maryland, 395 U.S. 784 (1969). And in this proceeding, the trial court has already meted out one helping of _PUNISHMENT_ upon Robert. On the _SAME OFFENSE_, when it blurred the lines between undisclosed contempt and the underlying offense with an unprecedented departure shortcut from established procedures.

Criminal contempt § 401 constitutes a distinct separate crime. However, the difficulty the trial court and government have created here is that the _CONTEMPT_ was not prosecuted as our law requires. Rather, it was _MERGED_ into the prosecution of the original indictment and prosecuted therein surreptitiously, behind walls of silence, as it were. The Double Jeopardy Clause safeguard applies to all this unusual irregular two-step conviction due processless procedure. Pretrial detainees cannot be punished. Yet once the court and prosecution imposed a punishment through a double secret criminal contempt conviction with bond revocation; it served to activate attachment of double jeopardy protections. Hence is the nature of the Bill of Rights checks and balances. The trial court and prosecution should have observed statutory provisions. Not depart from established legal norms to sate its desire for punishment against Robert. Our system has wrestled with this [contempt] problem for hundreds of years, however, and important

safeguards have been devised to minimize miscarriges of justice. Illinois v. Bloom, 391 U.S. 194 (1968). The Court has always been sensitive to the long-recognized "potential for abuse in excercising the summary power for contempt" and the need to avoid arbitrary or oppressive conalusions" in the excess of this authority. ID.

## MAKESHIFT CONTEMPT

The Supreme Court determined a matter that in many respects is directly analagous to this case, in Mayberry v. Pennsylvania, 400 U.S. 455 (1971), which also revolved around courtroom behavior. The extreme facts presented there surrounded a criminal case where the defendants, (most unlike Attorney Kowalski), had reviled the presiding judge with profanity laced outbursts and delayed the courtroom proceedings with brazen attempts to denounce, insult, slander the court, and paralyze the trial. The trial court related:

> "You have constantly, boisterously, and insolently interrupted the court during its attempts to charge the jury, thereby creating an atmosphere of utter confusion and chaos". Mayberry at 462.

What is significant, as it pertains to this prosecution, is the Mayberry trial court protected itself in the manner provided by Illinois v. Allen, 397 U.S. 337 (1970). Namely, it gagged, then summarily charged the defendants immediately with criminal contempt for conduct that occurred before it. In order to insulate the courtroom

from vulgarity. However, it delayed, until the underlying proceeding was completed before imposition of the contempt sentence. Under those circumstances the Court reversed holding that: "Where he does not act the instant the contempt is committed, but __WAITS__ until the end of the trial, in balance, it is generally wise when the marks of unseemly conduct have left personal stings to ask a fellow judge to take his place". Mayberry at 464.

This trial court also bided its time. But unlike the direct due process abiding approach of the trial judge beset in Mayberry; No distinct separate contempt charges, summary or otherwise were ever leveled against Robert. Instead, despite the lingering stings of some unspecified "outburst" behavior in her courtroom, this tribunal harbored a grudge against Robert. This trial judge would not allow a fellow judge handle what she obviously perceived as a serious contempt infraction to "__MY COURTROOM__". This trial court was too enraptured with being embroiled, fussling with Attorney Kowalski's "__MERCURIAL PERSONALITY__" driven issues; to allow another judge come between the personal satisfaction of __PUNISHING this PERSONALITY__ she admitted detesting. The trial judge, at that time, failed to represent the impersonal authority of the law. Accordingly, these strange circumstances have ensued.

Consequently, when the tribunal evolved the bond revocation approach, so it could continue to supervise and thereby __SAVOR__ the satisfying imposition of __PUNISHMENT__, the

Judge so RELISHED. Without having to comply with
the commonsense dictates of Mayberry. Thus when the
tribunal began punishing Robert with trumped up bond
violations in lieu of those distinct contempt of courtroom
"outburst" BEHAVIOR, Double Jeopardy protections
attached. Pretrial detainees may not be Constitutionally
punished. Bell v. Wolfish, 441 U.S. 520 (1979). Nevertheless,
that is exactly what the enthralled tribunal meted out.
Enlisting her staff of Pretrial officers to procure
specious, false, thinly veiled bond violations. Subsequently,
Pretrial officer Green recognized in her email that it
was all that "SELF ADVOCACY" in the courtroom behavior,
not those nominal false bond violations she testified
about; that got Mr Kowalski into so much trouble.
Consequently, it is rather intuitive that when the trial
court engaged in BAD BEHAVIOR to combat what it
termed bad "BEHAVIOR IN MY COURTROOM, such conduct
ran afoul of the safeguards contained in the Bill of
Rights.


The fundamental nature of the guarantee against
Double Jeopardy can hardly be doubted. The underlying
idea is that the state with all its resources and
power should not be allowed to make REPEATED attempts
to convict an individual for an alleged offense, thereby
subjecting one to embarassment, expense, and ordeal
compelling an individual to live in a continuing state
of anxiety and insecurity; as well as ENHANCING
the possibility that even though innocent, he may be

found guilty. This underlying notion has from the very beginning been part of our Constitutional tradition.

## INEVITABLE CONCLUSION

Here the district court responded by setting up and staffing its own prosecutors office. Thereupon the trial court, pretrial officers, and government collaborated to impose a contempt punishment on a hapless pro-se defendant, MISLABELED in the guise of a bond revocation. The Pretrial Officer recited in her email about how all that self advocacy and investigation "CAUSED ALL" of Mr Kowalski's troubles, and if he would only remain SILENT. Consequently, it all comes together, when the trial court unequivocally lets slip that COURTROOM BEHAVIOR that constituted contempt was the DE FACTO cause of Roberts imprisonment. The tribunal is thus observed venting its PERSONALITY based issues by abrogation of the FARETTA right. Tormenting the hapless pro-se defendant whom she has a SOLEMN duty to protect. The prosecution understood the inevitable difficulties that prolonged pretrial incarceration posed to a FARETTA defendant. Tactically wounding, weakening, wearing down a defendant's presumption of innocence by such pre-emptive strike tactics are exactly the type of successive punishments the Double Jeopardy Clause of the Fifth Amendment protects against.

Pretrial detention carefully limited by the Bail Reform Act was intended for the most serious crimes. It was not meant to serve as a versatile convenient catch all substitute for criminal contempt of court proceedings under §401. Our Constitution, whose construction began two centuries ago shelters us from the _EVILS_ of such unchecked power. The shortcuts we take with those whom we consider to be guilty injure only those wrongfully accused and, ultimately ourselves. United States v. Salerno, 481 U.S. 739 (1987) Justice Marshall dissenting.

Wherefore Robert respectfully requests that double Jeopardy protection is applied, and this indictment/conviction is vacated with prejudice.

Respectfully Submitted

Robert M. Kowalski

ROBERT M. KOWALSKI

# 499069

Jerome Combs Detention Center

3050 Justice Way

Kankakee, Illinois 60901

ROBERT M. KOWALSKI
# 499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

RECEIVED
2023 NOV 28 AM 8

11/28/2023-04

$0.500
US POSTAGE
FIRST-CLASS
0625001495043
FROM 60901

FOREVER / USA

CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS
60604

Legal Mail

Legal Mail

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

FSC
MIX
Envelope
FSC® C137131

© USPS 2022