<pre>
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )   Docket No. 19 CR 226-1
                                      )
 4                  Plaintiff,        )   Chicago, Illinois
                                      )   August 21, 2023
 5            v.                      )   10:35 a.m.
                                      )
 6   ROBERT M. KOWALSKI,              )
                                      )
 7                  Defendant.        )

 8
                 TRANSCRIPT OF PROCEEDINGS - Motion Hearing
 9              BEFORE THE HONORABLE VIRGINIA M. KENDALL

10
     APPEARANCES:
11

12   For the Government:      UNITED STATES ATTORNEY'S OFFICE by
                              MR. BRIAN PATRICK NETOLS
13                            MS. KRISTIN M. PINKSTON
                              Assistant United States Attorneys
14                            219 South Dearborn, 5th Floor
                              Chicago, IL  60604
15
     For the Defendant:       LAW OFFICES OF JAMES A. McGURK PC by
16                            MR. JAMES ARTHUR McGURK
                              20 South Clark Street, Suite 1710
17                            Chicago, IL  60603

18

19

20

21

22   Court Reporter:         GAYLE A. McGUIGAN, CSR, RMR, CRR
                              Official Court Reporter
23                            219 S. Dearborn Street, Room 2504
                              Chicago, IL 60604
24                            312.435.6047
                              gayle_mcguigan@ilnd.uscourts.gov
25
</pre>

1          (In open court.)

2          (Defendant enters courtroom.)

3              THE COURT:  Good morning.

4              MR. NETOLS:  Good morning, your Honor.  Brian Netols

5      on behalf of the United States.

6              MS. PINKSTON:  Kristin Pinkston also on behalf of the

7      United States.

8              THE COURT:  Good morning.

9              MR. McGURK:  Good morning, your Honor.  James McGurk,

10     M-C-G-U-R-K, on behalf of Robert M. Kowalski.

11             THE DEFENDANT:  Good morning, your Honor.  I'm Robert

12     Kowalski.

13             THE COURT:  Good morning.

14             Good morning, Deputies.

15             Okay.  So I've got a couple motions in front of me.

16     And, first and foremost, while you are represented, as I've

17     said to you before, I do not listen to any motions that are

18     filed by you personally; but, of course, I do listen to one

19     that has to do with representation.

20             So you have a motion to allow self-representation from

21     a few weeks back.  And is that still going on, or are you

22     comfortable with Mr. McGurk?

23             THE DEFENDANT:  I regret, your Honor, I'm very

24     uncomfortable.  Mr. McGurk's representation is more pro forma

25     than actually zealous and active.  And my serious problem that

1  I do not have the transcripts of our -- of this proceeding.

2  And these are the transcripts that the appellate court is

3  asking for.  As a matter of fact, I understand there's a rule

4  to show cause out.

5       And I think it's unforgivable, after six months, that

6  I don't have this.  It's the very essence of ineffective

7  assistance of counsel.

8       THE COURT:  Okay.  Don't we have all of these

9  transcripts done, Gayle?

10      That's what I thought, on the docket, right?

11      COURT REPORTER:  Yes.

12      THE COURT:  Thank you.

13      MR. McGURK:  Your Honor, just, if I may, I obtained

14  every transcript in the case through -- up through the point I

15  was appointed.  That is to say, every trial transcript and

16  every transcript of every hearing that was in the record.

17      I sent a letter on August 7th to Mr. Kowalski with a

18  thumb drive with all of those in PDF form.

19      I also provided that to another associate of

20  Mr. Kowalski at his request, copies of that same universe of

21  transcripts.

22      THE COURT:  What is an associate?  What is that?

23      MR. McGURK:  It's a gentleman who was going to print

24  out copies for Mr. Kowalski.

25      THE COURT:  At the prison?  At the jail?

1          MR. McGURK:  No.  He's an engineer that Mr. Kowalski

2     knows.

3          THE COURT:  Oh, got it.  Okay.

4          MR. McGURK:  So I sent them to him, just saying great.

5          The point is that the August 3 transcript, all this --

6     Mr. Kowalski filed this motion that you have before you

7     apparently on July 27th or 28th.  I can't be certain from the

8     date.  In the meantime --

9          THE COURT:  Mine is filed on August 3rd.

10          MR. McGURK:  August 3rd is when the letter apparently

11     arrived in the clerk's office.  It didn't get entered on the

12     docket until August 8th.

13          In the meantime, I had communicated -- sent these

14     additional transcripts to Mr. Kowalski.  I filed a motion for

15     release on bond.  We had the hearing on August 3.

16     Subsequently, I requested and have just obtained -- or have

17     obtained the transcript of that August 3 hearing.  I had filed

18     my appearance in the Seventh Circuit because the

19     Seventh Circuit directed.  And then I get this motion on -- I

20     first got this on August 8th.  And I contacted Mr. Kowalski.

21     And he said that I am not -- if you will, without violating the

22     attorney-client confidence -- he -- he wishes me to file

23     motions that I do not wish to file or pursue.

24          And the issue is my charge, as I understand it, is to

25     prepare and proceed with sentencing representing Mr. Kowalski.

1        We went through the interview process with the

2   U.S. Probation Officer for preparation of the presentence

3   investigation report that's underway.

4        So at this point, Mr. Kowalski says -- the last point

5   in his motion is he respectfully requests that McGurk be

6   allowed to withdraw and that Mr. Kowalski will resume

7   self-representation.

8        So the point is I believe I have done what the Court

9   has asked me to do.

10       In terms of many of the other motions and aspects that

11  were raised during the trial, many of those other issues, you

12  know, there's a place and a way to address those, and it's

13  called an appeal.  And he can't get to the appeal until the

14  Court sentences.

15       Most critically, as I understand it, Mr. Kowalski is

16  being incarcerated in Kankakee, Kankakee -- at the Jerome Combs

17  Detention Center.  That is in the Central District of Illinois,

18  that county.

19       Apparently, Mr. Kowalski has filed a habeas action in

20  the Central District of Illinois.  That's not possible until --

21  I mean, so many aspects of the things that Mr. Kowalski is

22  doing or has asked me to do, you know, I -- I cannot do.  Not

23  permitted.

24       So at this point, your Honor, I am at odds as to how

25  I -- the Court wishes me to proceed.

1          THE COURT:  Okay.  Let's start with --

2          THE DEFENDANT:  May I respond to a couple things that

3     Mr. McGurk --

4          THE COURT:  Yes, let's start -- hold on.  Let's start

5     first with the issue of your getting the transcripts.

6          Did you get that thumb drive so that you could get

7     them?

8          THE DEFENDANT:  Well, that's the problem, Judge.  I

9     have, but the thumb drive is woefully inadequate.  And I know

10    there's transcripts out there that Mr. McGurk didn't provide

11    because -- he did provide me a docket.  And my issues with

12    Mr. McGurk are not personal.  He's a wonderful gentleman.  I

13    enjoyed speaking with him.  But I simply don't have the

14    material that I need to have.

15         THE COURT:  Why is it woefully inadequate if it had

16    all of the transcripts up to the date that he gave it to you,

17    except maybe this very last one from August --

18         THE DEFENDANT:  Judge, maybe you didn't hear me.  I

19    don't have all of them.  And I know I don't have them because

20    the docket reflects entries of dockets -- of transcripts.  And

21    I do not have those.  So perhaps Mr. McGurk didn't review what

22    he placed on the thumb drive.  But, regardless, I just don't

23    have it.

24         And, moreover, Mr. McGurk is unable to really

25    represent me when we're talking about guns and things that are

1   clearly something I didn't have.  And Mr. McGurk, just coming

2   onboard fresh and jumping into a trial -- or a proceeding

3   that's lasted four years, the allegation of the guns is just

4   ridiculous.  Mr. McGurk could not have represented me properly.

5   And I find that this is egregious.

6          THE COURT:  I don't know what the gun issue is.

7          THE DEFENDANT:  We heard from Ms. Petersen, the last

8   time I was here on August the 3rd, how -- again, how

9   Mr. Kowalski had a gun, when, in fact, the whole world knows

10  that Mr. Kowalski didn't have a gun.

11         It's on a video, an iPhone video.  We have an FBI

12  report saying that Mr. Kowalski doesn't have a gun.  And as a

13  matter of fact, the man who they want to put the gun was

14  pointed at is saying Mr. Kowalski spoke nicely to him.

15         And as a matter of fact, one of the marshals, he's not

16  here, also recognized that, no, Mr. Kowalski did not have a

17  gun.  But -- there was an allegation of somebody else had a gun

18  that evening, but it wasn't me.

19         But notwithstanding all those facts, I don't know how

20  Mr. McGurk could have known that.  He's ill-equipped to argue

21  against the United States Attorneys who continue to beat that

22  bandwagon about a gun and whatnot, and it's highly prejudicial.

23         THE COURT:  Okay.  So no other attorney that I give

24  you is going to be equipped to handle it, in your eyes, because

25  no one sat through the trial other than you.  So are you saying

1   to me that you don't want to work with an attorney?

2   　　　　THE DEFENDANT:  No, I don't.

3   　　　　THE COURT:  You don't want to work with an attorney.

4   　　　　THE DEFENDANT:  I do not.

5   　　　　THE COURT:  I got you an attorney to work with you on

6   the sentencing because the sentencing is critical, and a lot of

7   issues are going to be presented, and the hearing is going to

8   go through sentencing guidelines and relevant conduct,

9   et cetera.  So, I mean, are you able to take that on as well?

10  　　　　THE DEFENDANT:  I believe so.

11  　　　　THE COURT:  Have you ever represented yourself other

12  than in my trial?

13  　　　　THE DEFENDANT:  No, I have not been involved in any

14  criminal actions, no, besides some others that I've represented

15  people in.

16  　　　　THE COURT:  Are you willing to work with Mr. McGurk to

17  get these transcripts and figure out --

18  　　　　THE DEFENDANT:  Your Honor, I'm sorry, I just think

19  our case concerns other issues.  And I think the recusal issue

20  is a very large issue.  I'm very troubled with the lack of the

21  computer.  And I'm very troubled that you mentioned last time I

22  was here many of your decisions are based upon my personality.

23  And at that point, you failed to represent the impersonal

24  authority of the law when you're concerned about my

25  personality.

1          On April 7, 2022, I spent 22 months in jail.  And

2   you've said on April 7, 2022, it was my behavior in my

3   courtroom that caused me to be incarcerated.  And that cannot

4   be a basis for revoking my bond.

5          THE COURT:  It actually can be.  It's contempt of

6   court.  It's disruptive behavior.  It's not following the rules

7   of the courtroom.  It actually can be.

8          THE DEFENDANT:  Actually, Judge, you may be right

9   about that, but you didn't follow the rules that are laid down

10  by *Mayberry versus Pennsylvania*.  You can hold me in contempt.

11  You can -- I think it's under 401, you can bring a charge.  But

12  you didn't do anything.

13         And, moreover, Ms. Green seemed to know exactly why I

14  was incarcerated.  I was incarcerated because of all that

15  pretrial advocacy and investigation, in her own words.

16         THE COURT:  You were incarcerated because you violated

17  the conditions of your bond and your behavior in --

18         THE DEFENDANT:  That's not what her email said.

19         THE COURT:  And the behavior in my courtroom showed me

20  that you were not cooperating with her as well as with the

21  Court.

22         So -- but we don't need to go over that over and over

23  again because you are incarcerated and you need to be focusing

24  on getting your sentencing done.

25         So Mr. McGurk is here.  He's a trained lawyer who has

1    done many, many sentencings.  Are you going to work with him?

2          THE DEFENDANT:  No, your Honor, I do not wish to.  I

3    don't have the transcripts that I'm entitled to, and I need

4    those to pursue this case.

5          THE COURT:  Well, I disagree because I think that

6    Mr. McGurk, as an officer of the Court, is telling me that he

7    turned them over to you.

8          But let me hear --

9          THE DEFENDANT:  Your Honor, I'm an officer of the

10    court as well, and he is not --

11          THE COURT:  I don't know if you are anymore, right?

12          THE DEFENDANT:  My license was suspended.  That does

13    not mean I was not an officer of this court.

14          THE COURT:  Okay.  Mr. Netols?

15          MR. NETOLS:  The government -- on the ultimate issue,

16    the government doesn't take a position as to whether he's

17    represented.

18          Just for clarification, with respect to some of the

19    statements of Mr. Kowalski today, Ms. Petersen never said that

20    he had a firearm, that there was someone else who had a

21    firearm.

22          And this is, frankly, a distraction with respect to

23    Mr. Kowalski kind of focusing on tangential issues.

24          He's detained because of the evidence, he was

25    convicted.  The burden switches.  He's facing a very large

sentence. There's a huge amount of money outstanding that could fund his flight. At the time he was arrested, he had recently obtained a passport, and he had a suitcase of his clothes in his car. And there was a basis to detain him based on risk of flight wholly apart from anything else.

With respect to his ability to represent himself, I don't think your Honor has to find that he's able to represent himself. And he clearly, in my view -- I don't know if he is, I don't think he is -- he's filed a 2255 in this district. And it takes -- you go three lines down the statute, you need to be a sentenced prisoner.

But the reality is all you have to do is find that he understands the pitfalls of self-representation. And the government's position is you conduct another *Faretta* colloquy and you make the finding that he understands the risks, then so be it.

THE COURT: Right. Well, he's -- we went through all of the risks of self-representation before, but we can do them again for sentencing.

I was hoping that you would work with an attorney for sentencing because you have to really focus on those various issues regarding the guidelines and the statutory penalties.

Let's talk about representing yourself in sentencings.

You understand that those are potentially complicated issues, right?

1        THE DEFENDANT: Yes.

2        THE COURT: Okay. And you understand that right now

3   the government is telling you that you're facing a significant

4   amount of time. I don't recall what their position is on the

5   guidelines yet, because I don't think I have a government's

6   version, right?

7        MR. NETOLS: No, we have to finish that. But I think

8   at the -- at the detention hearing, by your own calculation, he

9   was at 30 years so ...

10        THE COURT: I think -- I think there was a significant

11   amount of time that you're facing. And recognizing that

12   tremendous risk, are you willing to represent yourself?

13        THE DEFENDANT: Yes.

14        THE COURT: Now, I know you're a lawyer, so I know

15   that -- and I know you are capable of writing motions because

16   I've ruled on over 150 of them prior to the trial. I know you

17   can cross-examine individuals because I saw you do that during

18   the trial. I know you can object to issues when you want to

19   object to them because I observed that during the trial. So I

20   believe that you're qualified to do so, but I don't think it's

21   smart to represent yourself at this stage.

22        Do you understand that?

23        THE DEFENDANT: I think it's -- the worst option is to

24   have an attorney next to me who is just pro forma. He couldn't

25   even possibly have given me the -- all the transcripts and

1   taken the care to do so, then I can't see how he's going to

2   groom through and research anything. It's just hopeless. And

3   it's not what effective representation consists of.

4           MR. NETOLS: Your Honor?

5           THE COURT: Go ahead.

6           MR. NETOLS: Perhaps I can clarify something else.

7           I'm not sure what Mr. Kowalski means by all the

8   transcripts. If he's looking at the docket and he's looking at

9   every single time there was a matter in court, we didn't order

10  every single transcript. It went -- it was every time anything

11  of any kind of substance at all happened. So there might be a

12  status or two where simply nothing happened, scheduling; but

13  anything where anybody spoke where there's any -- any -- any

14  issue where he spoke, it was ordered up.

15          MR. McGURK: Your Honor, just add for the record, on

16  August 7th, I sent a thumb drive to Mr. Kowalski with all of

17  the transcripts from the trial, the trial transcripts. In

18  addition, those hearings for eight separate dates, starting

19  with October 4, 2021, through July 20, '22, those were

20  individual hearing date transcripts that were entered into the

21  record. So those in the record, I was able to obtain those and

22  send those to Mr. Kowalski.

23          In terms of this most recent one, I will certainly

24  send the August 3 transcript as soon --

25          THE COURT: That's the last one.

1    MR. McGURK: -- as I get back to my office.

2    THE COURT: Right.

3    MR. McGURK: But the issue of any other transcripts,

4    your Honor, I -- I attempted, in my review of the lengthy

5    docket, which I sent to Mr. Kowalski on May 30th, I attempted

6    to find every single entry that shows a transcript and send

7    those to him. That was my effort.

8    THE COURT: Okay. Mr. Kowalski, I -- at this stage

9    where you've been convicted, it would be much smarter to get a

10   lawyer to work with you, to go through the sentencing

11   guidelines and the penalties.

12   Do you understand that?

13   THE DEFENDANT: Did I understand the plain import of

14   your statement? Of course, your Honor, I did. I just don't --

15   I need all the transcripts. And I'm not getting transcripts.

16   I'm not going to be getting detailed information from -- I

17   don't want to sit here and further belabor Mr. McGurk. He's a

18   gentleman. He's been kind to me. And I enjoy speaking with

19   him. But this is simply not getting the job done, and this is

20   not effective representation. There's quite a few transcripts.

21   And I sent him a letter indicating which ones that I believed

22   were missing. Everything up from this point back to March 10th

23   and prior, there's quite a few as well that are missing. And

24   it's just that simple. Where are these transcripts? I need

25   them, whether the U.S. Attorney doesn't think I need them, I

1     think I need them as far as my case.  My case just doesn't

2     focus on -- on sentencing.  There's other issues that are out

3     there.

4          THE COURT:  Is he allowed to take papers back with him

5     if I give him a printout of the docket?

6          COURT SECURITY OFFICER:  He is.

7          THE COURT:  Lynn, let's give him a printout of the

8     docket today.

9          So you can see on the docket every transcript that was

10    made for the last four years, okay?  And you can compare that

11    docket with what you have.  And if you are missing something,

12    you can let me know.

13         THE DEFENDANT:  I'll do that again, your Honor, but I

14    had already done that, so -- and Mr. McGurk, to his credit, has

15    provided me a docket sheet.  So that's my basis for my

16    understanding.

17         THE COURT:  Okay.  All right.  So have you ever worked

18    with the Federal Sentencing Guidelines before?

19         THE DEFENDANT:  No, I have not.

20         THE COURT:  Okay.  Do you think that you are capable

21    of reviewing the Federal Sentencing Guidelines to come up with

22    an advisory range?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  I don't think it's smart to do

25    that.  I think you should work with Mr. McGurk.

1          You understand that, right?

2          THE DEFENDANT:  I don't understand that, your Honor.

3     I think -- I think that's incorrect.

4          THE COURT:  Why?  Because you think you can do it

5     better?

6          THE DEFENDANT:  No, I just think this thing with the

7     transcripts is troubling.  It's troubling that there's a rule

8     to show cause out from the Seventh Circuit.  Mr. McGurk is

9     making me look bad in front of the Seventh Circuit.  And that's

10    not somebody that's -- that's waiting to be -- he's got a

11    motion for release pending sentence wants to hear that the

12    Appellate Court is waiting because we can't get some paperwork

13    up there.

14         THE COURT:  Was there a rule to show cause?  I don't

15    recall that.

16         MR. McGURK:  Your Honor, the Seventh Circuit has

17    received certainly more than ten appeals from Mr. Kowalski,

18    so --

19         THE COURT:  Oh, I think they're up to, like, 17.

20         MR. McGURK:  -- there are different appeal numbers.

21    There is an appeal number, Case 23-2074, which relates to the

22    issue of Mr. Kowalski's release on bond.  The Seventh Circuit

23    entered an order, I believe it was on July 26, I think --

24         THE COURT:  Asking for transcripts.

25         MR. McGURK:  -- and said I had to -- and I, because it

1    saw -- the Court said an attorney had been appointed for

2    Mr. Kowalski in the district court.  It said I had to enter my

3    appearance in the U.S. Court of Appeals, and that I had to file

4    a motion based upon the transcript of August 3 that I've just

5    received.  But that was supposed to be done within two weeks,

6    which would have been before we had the hearing.  The hearing,

7    of course -- my motion before the Court was August 2; the

8    hearing, August 3.  The Court issued its decision.  I did not

9    get that transcript, despite the very commendable efforts of

10   the Court's court reporter.  And so I now have to submit that

11   to the Seventh Circuit.  They said -- they issued an order

12   saying, yes, McGurk has entered his appearance, but he has not

13   yet complied with this.  In part, then the next thing I receive

14   on August 10 is the order of this Court saying we're having a

15   hearing today, August 21st.  And so I was waiting for this

16   decision to advise the Seventh Circuit as to -- as to what the

17   status was here.  And if the status is that I'm no longer

18   representing Mr. Kowalski here, I believe the issue is how can

19   I go forward and represent him in the Seventh Circuit?

20          THE DEFENDANT:  No, there's a rule to show cause out

21   that's been issued by the Seventh Circuit.

22          THE COURT:  Okay.  Can I ask --

23          THE DEFENDANT:  I received it last week.

24          THE COURT:  Do you -- do you understand that -- I

25   think that your sentencing guidelines are somewhere in the

1    neighborhood of potentially 20 years or higher.  Do you

2    understand that?

3              THE DEFENDANT:  Yeah, that's a life sentence, Judge,

4    yes.  And that's why I needed a computer to fight for my case,

5    and I didn't have one.  I didn't have a lot of things that I

6    should have had.  And I should have been home and not being

7    punished for contempt.  When you start punishing somebody

8    through the Bail Reform Act, I believe a double jeopardy

9    situation has arisen.

10             There's other motions that I'd like to -- I'm going to

11   file as well.

12             THE COURT:  Okay.

13             THE DEFENDANT:  So -- it's just outrageous what's

14   happened here.

15             THE COURT:  And, Mr. McGurk, I assume that there have

16   been certain motions that you and he disagree with about being

17   filed?

18             MR. McGURK:  Yes, your Honor.  I have traveled to

19   Kankakee on two occasions to meet with Mr. Kowalski.  I've

20   spoken to him on the phone.  I've spoken to him here in the

21   Marshal's lock-up.  I have attempted to go through and to focus

22   on the issue -- the very critical issue of preparing for

23   sentencing, including the circumstances of his personal

24   background, all of the factors that the Court has to consider

25   at sentencing.

1          And as the Court is aware, better than myself,

2     Mr. Kowalski has filed many, many different motions that do

3     not, in my view, address the sentencing issue before the Court,

4     which is what the Court has -- Mr. Kowalski needs to have

5     before he can proceed on appeal to the Seventh Circuit.

6          THE COURT:  Okay.

7          THE DEFENDANT:  Excuse me.  I respectfully disagree

8     with Mr. McGurk.  There's things that I can do.  There's

9     appeals I can bring to the Seventh Circuit besides just a bond

10    motion.

11         And, moreover, I want to protect the record as well.

12         THE COURT:  Okay.  So you're not going to work with

13    Mr. McGurk, are you?

14         THE DEFENDANT:  I think you just heard from Mr. McGurk

15    that we have a difference of opinions, and professionals from

16    time to time do so.

17         THE COURT:  Well, a difference of opinion is not

18    enough to cause me to have him go home and not represent you.

19    You can have differences of opinion.  The question is whether

20    or not you'll work together as a team to get you to sentencing.

21         THE DEFENDANT:  Your Honor, you just heard from

22    Mr. McGurk that there's things that I want to present that I

23    think that need to be presented.  It's my right to present

24    them.  I want to protect the record.  And, frankly, I don't

25    even have a transcript to work from.  And that's really a

1    disgrace.  This is a land of freedom, for God's sake.  And I

2    should be helped to prove my freedom and to work my case as I

3    see fit.  And I -- I want to do things a certain way.  If

4    Mr. McGurk doesn't, then we can't work together.  We cannot

5    collaborate.

6         THE COURT:  Okay.  Mr. McGurk, I'm going to allow you

7    to withdraw since your client is not interested in working with

8    you and wants to file motions that you don't want to be filed.

9    And he will represent himself from this point forward.  Again.

10        Now, remember this, anything that came in between the

11   time that Mr. McGurk was appointed and this morning when he is

12   withdrawn that was filed by Mr. Kowalski will not be reviewed

13   by the Court because he was represented by an attorney at the

14   time, and only those things filed by Mr. McGurk will be

15   reviewed.

16        So if there's any motions on the docket between that

17   period of time, those will be dismissed and will need to be

18   refiled if you want them to be considered.

19        THE DEFENDANT:  Your Honor, that poses a considerable

20   difficulty for me where I'm at because in order to print

21   something out -- and some of the motions were quite long.  The

22   issues involved were voluminous.

23        THE COURT:  I believe that the only thing I have on

24   the docket as an open motion -- and you can help me out with

25   this, Lynn, if you can -- is the motion to require recusal,

1    which I will keep on the docket, and the motion to allow

2    self-representation, which I'm granting.

3              So the motion to require recusal, I'll request a

4    response from the government.

5              THE DEFENDANT:  There were three motions that I filed

6    that were stricken.  I think there's filing deadlines that --

7    you struck them.

8              THE COURT:  Three that are stricken?  Let me see.  I

9    have to go past all these transcripts.

10             Oh, May 9th?  Motion for acquittal or in the

11   alternative for a new trial?

12             THE DEFENDANT:  Prior to that as well.

13             THE COURT:  Okay.  Oh, and a motion for a new trial.

14   9 -- April 3rd?

15             THE DEFENDANT:  Could be, yes.

16             THE COURT:  Okay.

17             THE DEFENDANT:  There were three of them, though.

18             THE COURT:  All right.  I have April 3rd, motion for a

19   new trial.

20             I have May 9th, motion for acquittal or in the

21   alternative a new trial.

22             And then I have August 3rd, motion for recusal.

23             THE DEFENDANT:  I think there was one other, Judge.

24             THE COURT:  Well, there's the motion to allow

25   self-representation, which I'm granting.

1          You think there's something else?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  Hold on.

4          MR. NETOLS:  If I may, I think the other might have

5    been the 2255 petition, which actually generated a whole other

6    case.

7          THE COURT:  Oh, oh.

8          MR. NETOLS:  I think that was filed during that time

9    frame also.

10         THE COURT:  But it's not going to be on this docket.

11         MR. NETOLS:  No, it won't.  I didn't print it out.

12         THE COURT:  Did it come to me?

13         MR. NETOLS:  I believe it did, yes.

14         THE COURT:  Okay.  I think it did, too.

15         Didn't I take care of it?

16         THE CLERK:  I don't --

17         THE COURT:  I don't know.  All right.  Regardless --

18         MR. NETOLS:  My recollection at the last status or the

19   status before, I reminded -- in front of the Court, reminded

20   Mr. McGurk that that was one of the matters he needed to

21   consider is whether he was going to adopt or not, and I think

22   that's where that one stood.

23         THE COURT:  Yes.  Okay.

24         So I'd like a response to those three motions that are

25   pending before me right now.

1           Do you want two weeks to do that?  Three weeks?  You

2    tell me.

3           MR. NETOLS:  Three.

4           THE COURT:  Three weeks?  Today is what?

5           THE CLERK:  The 21st.  That would be -- September 11th

6    would be --

7           THE COURT:  Thank you.

8           September 11th will be your response.

9           And, Mr. Kowalski, if you want a reply, September 25th

10   will be your reply date.  Okay?  And that will be on the

11   docket.

12          Did you get him a docket?

13          THE CLERK:  I did, your Honor.

14          THE COURT:  I don't think you want to give him the

15   clip, though.  Right.  You've got to take the clip off.

16          THE CLERK:  Sorry.

17      (Document tendered to the defendant.)

18          MR. NETOLS:  Your Honor, is it possible for

19   Mr. Kowalski to identify which transcripts he says he doesn't

20   have that he needs, to the extent that we might be able to do

21   something about it on our end.

22          THE COURT:  Yes.  So, Mr. Kowalski, if you can let the

23   Court know by September 5 whether you're missing any

24   transcripts based upon the docket that I just handed to you.

25          THE DEFENDANT:  Perhaps Mr. McGurk might be able to

1  help.  I sent him a letter indicating those that I didn't have,

2  so maybe --

3          THE COURT:  Did you get a letter?

4          MR. McGURK:  Your Honor, I sent this letter on August

5  7th listing the transcripts that I was sending him, which, from

6  my review, were the only ones that were in the file.  So I --

7  if there are others, I do not recall or I -- or I somehow

8  missed a letter that says there were other -- other dates.  I

9  tried to find every transcript and order that --

10         THE COURT:  Mr. Kowalski, just put it in a motion to

11 me or a status report saying that you're missing them, and I'll

12 make sure the government works with me to get them over to you.

13         MR. McGURK:  I believe one of the issues may be any

14 hearing or any motion is only transcribed if that transcript is

15 ordered --

16         THE COURT:  Right.

17         MR. McGURK:  -- prepared and submitted.

18         THE COURT:  Of course, right.

19         MR. McGURK:  And there are obviously lots and lots of

20 hearings --

21         THE COURT:  Oh, there's a lot of hearings that don't

22 have transcripts unless they're requested.

23         So right now all of the transcripts on the docket are

24 ones that were requested and the trial.  So if there's

25 something else, I would have to determine whether it's

1  essential to be -- to be transcribed.  But if it has to do

2  with, for example, like release or detention, be happy to take

3  a look at it and get it over.  All right?  Just let me know.

4       MR. NETOLS:  Your Honor, we'll file it, in three

5  weeks, a response to the -- the separate 2255 also.

6       THE COURT:  Yes.  Thank you.

7       Okay.  Anything else that I can help you with today?

8       THE DEFENDANT:  Yes.  I'd like to go home.  I think

9  I -- I qualify for release pending sentence.  I don't have any

10  crimes.  I don't have a gun.  I've been a law-abiding citizen.

11  And I need to prepare for sentencing.

12       THE COURT:  Right, I know --

13       THE DEFENDANT:  I have a --

14       THE COURT:  -- you keep requesting that.  But as I

15  mentioned to you before, I did determine that you were a flight

16  risk based upon the significant sentence that you're facing at

17  this point, your violations of pretrial release before, and

18  then also the fact that there is missing money, and there was

19  some indication that you might have been making your way

20  someplace else with the suitcase of clothes before.  And,

21  therefore, I am not convinced by clear and convincing -- excuse

22  me, by the standard --

23       THE DEFENDANT:  Your Honor, I think the standard, too,

24  is whether the trial is a relative manifest injustice.  I think

25  it was a manifest injustice when I was released without the

1  tools to prepare an adequate defense, like a computer that,

2  shamefully, this Court had to order a second time on the second

3  day of trial, which is really troublesome.  Those funds are --

4  those computers that are received are paid for by the Criminal

5  Justice Act.  And they're not for Mr. Shanin's personal use.

6  He gave me an old computer while he kept the 2020 computer that

7  his testimony says he had.  That's not fair.  That's dirty

8  pool.

9        THE COURT:  That's not factual either.

10        Okay.  I'm denying any oral motion for release based

11  upon my previous rulings.

12        And that should be it for today.  Right?

13        Okay.  Everyone, have a good day.

14        Mr. McGurk, thank you for your service.

15        MR. McGURK:  Thank you, your Honor.

16        THE CLERK:  All rise.  Court is in recess until 11:30.

17      (Concluded at 11:06 a.m.)

18               C E R T I F I C A T E

19    I certify that the foregoing is a correct transcript of the

20  record of proceedings in the above-entitled matter.

21

22  */s/ GAYLE A. McGUIGAN*               *December 5, 2023*
   GAYLE A. McGUIGAN, CSR, RMR, CRR

23     Official Court Reporter

24

25