UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) No 19 CR 226 | |
| ) | |
| ROBERT M KOWALSKI, ) | |
| defendant ) JUDGE Virginia M. KENDALL | |

FILED
JAN 22 2024 SH
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## MOTION TO ALLOW RELEASE PENDING SENTENCING

Now Comes Robert M. Kowalski, (ROBERT), for his Motion to allow Release pending sentencing pursuant to 18 USC § 3143, 18 U.S.C 3145(c), Brady v. Maryland, 373 U.S. 83 (1963), Fed Rule Crim Pro 16, Fifth Amendment and Sixth Amendment states as follows:

### BROKEN PROMISE OF BRADY/AKE

On August 17, 2022 this court in its minute entry recognized: (See Docket # 793)
"The need to give Kowalski the TOOLS he needs for his defense"
Our trial court understood that the Supreme Court has long recognized that when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. Ake v. Oklahoma, 470 U.S. 68 (1985). Here a cunning prosecution, conversely took steps

to ensure the trial court was deceived. Therefore, it could not enforce its <u>SOLEMN</u> duty to protect the rights of self represented individuals appearing before it.

## "WE KNEW ABOUT THE PROBLEM BACK IN NOVEMBER"

AUSA Daniels reported the above caption to the trial court upon the conclusion of the first day of trial, February 13, 2023. (See Transcript 1A page 332). Referring to his previously ascertained knowledge that it represented an impossible feat for Robert, to conduct review of government discovery with the Chromebook provided by Standby Counsel Shanin.

## IMPERMISSABLE LITIGATION STRATEGY

If the complete truth was told, the prosecution knew considerably earlier, prior to October 6, 2022. In fact the record amply supports that the United States Attorneys office <u>SET</u> Standby Counsel Shanin Up for failure. As Standby Counsel noted the following; also on the first day of trial: (See Transcript 1A page 319).

> "What I did was I went on USAFX, which a small amount of discovery was <u>SENT TO ME</u> and downloaded it from the internet and opened it"

Accordingly, not finding any deficiency in the discovery review device, Standby Counsel Shanin tendered the Chromebook on October 6, 2022 to Robert. (See minute entry Doc# 815). However, despite Standby Counsel's precautions, Robert to his detriment, soon learned that he was unable to open and access any government discovery whatsoever. He advised the court of his predicament by motion of November 1, 2022. (See Docket # 820). In response, on the following status hearing of November 18, 2022; AUSA Daniels handed to Robert, in open court, a listing of "FREEONES" downloadable listings, to repair the Chromebook. However, this red herring failed to cure the Chromebook's operational difficulties. The specific Chromebook problem they were aware of in November was not wrung out of AUSA Daniels at that time. Rather, the Court's minute entry from that date reflects Standby Counsel and government merely: (See Minute entry Docket # 826)

> "offered to assist defendant Kowalski in utilizing the Chromebook previously provided"

A rather disingenuous commitment, in light of the fact at that exact time, as the government would later acknowledge, that a total remediation of its discovery package was necessary and underway. AUSA Daniels in his own words would state that: (See Transcript 1A Page 333)(February 13, 2023)

> "So WE STARTED PRODUCING FILES WITHOUT THE ENCRYPTION"

Something that should not have been necessary had they not engineered this Chromebook problem to begin with. Notably, the specifics of their solution was not disclosed to the court. Moreover, the government maintained its silence during the following status hearing date of December 21, 2022. Where the courts minute entry reads: (See docket #837)

"Robert in open court expressed concerns regarding computer access. While Standby Counsel confirmed with the court the Chromebook is working and discovery is viewable."

This impasse continued until the conclusion of the first day of trial. When Standby Counsel Shanin, joined by AUSA Daniels, demonstrated in open court beyond any doubt whatsoever, that the issued Chromebook could NOT operate government discovery. The ANTICS of AUSA Daniels are remarkable. Particularly, in the context of his concealed actual knowledge. Where it had already been determined by the United States Attorney, that an intractable Chromebook problem existed. One that they identified at least three months earlier in November 2022. Nevertheless, he clowned without candor, pantomiming before the trial court as a concerned computer technician. Despite having previously fully ascertained the futility of such effort. The depth of detail in his subsequent remarks belies his actual knowledge.

Upon exposure of their long held "National Defense-Like" Chromebook secret, after a farce of a demonstration on February 13, 2023; the sly prosecution team downshifted into damage control mode. Indeed, AUSA Daniels confirmed that long ago the prosecution had initiated remedial efforts to cure the Chromebook imbroglio. However, he stated that: "Not all the files have been produced". (See Transcript 1A page 333). Referring of course, to a FIX for the "Chromebook Situation" that existed BEFORE November 2022. The PROBLEM they had deceptively concealed from Robert, Standby Counsel Shanin, and most importantly the court. In order to promote, for their own selfish tactical advantage a prosecution that bore heavily upon a defendant. Who was thus rendered helpless lacking any means to build an adequate defense, without a serviceable discovery review device. An astonished, visibly displeased skeptical trial court pointedly observed the obvious difficulties with with the covert ad hoc measures adopted by the government. The tribunal stated: (See transcript 1A page 334).

"Yeah, like whats been encrypted and what was given unencrypted and what was given encrypted?"

As a result of the foregoing duplicity, Robert was left stranded with NO means to review a complex matter containing hundreds of thousands of files filled with literally

millions of documents. Simply because the United States Attorney's office actively impeded a defense Standby Counsel in the execution of this court's orders. Within the narrow confines of this tribunals orders Robert was entitled to reasonably expect effective representation from his defense Standby Counsel. Once the trial court ordered Standby Counsel Shanin to accomplish a routine task, he was not plainly standing by anymore. It is indisputable the prejudice to Robert amounted to a loss of millions of pages of credible documentary evidence that was deprived to the defense. As the court memorialized in its minute entry of August 17, 2022; this "minimally" included: (See Docket #793)

"This second trove of documents includes over 100,000 files that are RELEVANT to the case with at least 1000 files that the government intends to use as part of its case in chief... AUSA has also not received a response regarding the 10,000 files that are privileged and NEED TO BE REVIEWED"

Additionally, the Jencks, 18 USC §3500 material was rendered unreviewable due to Chromebook concealment. Essentially, the government hid Brady material in plain view. Because without a means to open and operate the electronic files Robert lacked access. Their hope was that Robert would never locate it, as it were. This indicates that the prosecution was discharging its obligations under Brady in BAD FAITH.

## STRIKES AT INTEGRITY OF PROSECUTION AS A WHOLE

The USAO orchestrated a campaign to conceal and ensure that a Chromebook; a discovery review device defense Standby Counsel furnished to an indigent defendant, had <u>NO</u> functionality to operate government electronic discovery. Not only did the prosecution know well in advance the Chromebook was unsuitable for its intended purpose. Deviously clever dishonest AUSAs formatted a small amount of discovery on a Chrome O.S. compatible special disc, which they mailed to defense Standby Counsel. (See Transcript 1A page 319). To falsely convince Mr Shain that his grandkid's old Chromebook would indeed actually operate discovery. However, the sharp AUSAs had already ascertained that it could not work, without major reprogramming. (See Transcript 1A page 333). Such is well beyond the capacity of an indigent man without resources or tools to attempt a conversion. At great length with considerable detail AUSA Daniels described the necessary complex process that included shifting the Chromebook into "Developer Mode".

## "I -- IF I CAUSED ANY OF THIS I APOLOGIZE

Thus, defense Standby Counsel provided on October 6, 2022 a woefully inadequate inherently defective tool to defendant in contravention of court order. One that he was induced to confidently believe would operate. Consequently, on December 21, 2022; in response to defendant's

continued difficulties, a misled Standby Counsel reported these same contrived <u>FALSE</u> positive findings to the trial court. That the Chromebook worked fine with the governments electronic discovery, when it actually did <u>NOT</u>. The misadvised tribunal concluded that: (See minute entry Docket # 837)

"The court has already supplied defendant with a Chromebook and his Standby Counsel <u>HAS CHECKED</u> to see if documents can be accessed on it and has <u>CONFIRMED</u> with the court that it is working and discovery is viewable."

## <u>DIRTY LITTLE TRICKS</u>

The Seventh Circuit explicitly recognized recently that: Far too much is at stake in criminal law for the government not to attend to its disclosure obligations with more care and attention. United States v. Bicknell, 74 F 4th 474 (7th Cir 2023). That there is <u>NO</u> excuse for failing to diligently abide by the disclosure demands imposed by Brady and Giglio. Id. In a similar vein the First Circuit has held that the government may not make plain and inexcusable misrepresentations not anchored to any impermissable litigation strategy. Ferrara v. United States, 456 F3d 278 (1st Cir 2006). Likewise, the Court has recognized a prosecutors <u>BROAD</u> duty of disclosure. Strickler v. Greene, 527 U.S. 263 (1999). A prudent prosecutor

will resolve questions in favor of disclosure. United States v. Agurs, 427 U.S. 97 (1976).

## EGREGIOUS PROSECUTORIAL MISCONDUCT

Regardless of clearly established governmental obligations, the prosecution here engaged in a pervasive pattern of pernicious forms of impermissable conduct, that due process concerns were implicated. In this proceeding, not only has the prosecution plainly NOT handled its "DISCLOSURE" obligations well. The record of this proceeding supports that the prosecutors engaged in a ruthless candorless campaign of DECEPTION targeting the trial court and its Standby Counsel. First calculated to suppress, hamper, and otherwise deprive an indigent defendant of his due process rights to a fair trial and then ultimately his freedom. There is considerable likelihood that had Brady material been actually disclosed, the result of this trial would have been different. Robert had NO ability to open and operate discovery. Whereas the government had exclusive access to an enormous stockpile of relevant material. Continued incarceration is tantamount to unjust imprisonment. Consequently, the government has managed to incarcerate yet another man, Robert, solely out of his poverty. Now this wrongfooted prosecution seeks to impose what amounts to a life sentence.

## "RESULT OF GUILE"

Our prosecutors simply refused to share the problem they alone knew about. However, the United States wins its point whenever justice is done its citizens in the courts. Brady v. Maryland, 373 U.S. 83 (1963). Here justice is clearly not seen to be done. Where the prosecution concocted a pathetic shameful scheme involving artifice that included defrauding the trial courts Standby Counsel and the ultimately the tribunal itself. A scummy loathsome despicable plan it was, involving chicanery, when it seized upon withholding a VITAL TOOL to prepare a meaningful defense for a poor man. A tool the court tried to ensure by orders that shockingly went unheeded. These sneaky clever prosecutors simultaneously offered to "ASSIST" a struggling pro se defendant with the "PROBLEM". While bottling up the essential knowledge that they had indeed earlier identified what the profound problem consisted of. Then boasting later in open court that: "WE KNEW ABOUT THE PROBLEM BACK IN NOVEMBER". (Transcript 1A page    ). Disingenuously, despite their duty otherwise, this pivotal information was deliberately held hostage, not conveyed to the court. Until compelled when a surprise demonstration of a Chromebook failed. At a time when disclosure would not materially "ASSIST" the defense. Neither did this delay allow the trial court to abide its SOLEMN duty to protect self represented persons appearing before it. Von Moltke v. Giles, 332 U.S. 708 (1948). Slick

prosecutors slyly allowed their nasty secret emerge, <u>ONLY</u>, once trial began. Knowing well that effective pre-trial preparation, <u>OBVIOUSLY</u>, can not begin after a trial has already started.

### <u>EXTREME (BAD FAITH) CIRCUMSTANCES</u>

A problem unearthed in <u>NOVEMBER</u> should have been brought to the courts attention at that time, not months later when it served no purpose. Under these sordid circumstances, it was vain to give the accused his day in court with NO opportunity to prepare for it. Powell v. Alabama, 287 U.S 45 (1932). Society wins not only when the accused are convicted but when criminal trials are fair, our system of administration of justice suffers when any accused is treated unfairly. Brady at 87. Standards of justice are not comported when the prosecution has gone to such dastardly lengths to <u>SUPPRESS</u> exculpatorial evidence from reaching an innocent accused. Exceptional reasons for release exist where the government's scheme to crush Robert's Fifth Amendment Constitutional right to due process, Sixth Amendment right to self representation, and Fourteenth Amendment right to fundamental fairness; <u>UNRAVELED</u> in open court upon the record.

Deprivation of the significant right to construct a meaningful defense by overt prosecutorial misconduct

can hardly be deemed harmless. The prosecution had the cure to the "PROBLEM" they recognized existed no later than November 2022. Nevertheless, they refused to share. Preferring to promote a huge engineered unfair tactical advantage in favor of the government. One that undermined the hallmark of our adversarial system. Namely, the defendant's ability to meet the government's case against him.

The proof is exemplified by the new HP, Microsoft windows compatible computer the trial court furnished on the second day of trial. Prosecutorial misconduct has rendered a mockery of these proceedings.

ROBERT'S DETENTION UNDER THESE CIRCUMSTANCES IS NOT appropriate.

Wherefore Robert respectfully requests that he is allowed release on bond.

Respectfully Submitted,

*Robert M. Kowalski* (signature)

ROBERT M. KOWALSKI

#499069

Jerome Combs Detention Center

3050 Justice Way, Kankakee, Illinois 60901

ROBERT M. Ko...
# 499069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901



CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS

60604

Legal mail

Legal mail

