UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
)
v. ) 19 CR 226
)
)
ROBERT M. KOWALSKI, )
defendant ) Judge Virginia Kendall

## MOTION TO REQUEST RECONSIDERATION

Now Comes Robert M. Kowalski, (Robert), for his motion to request reconsideration of the order entered on February 6, 2024; based upon newly discovered information that has only recently become available:

Robert regrets the zealous vociferous overwrought nature of his argument. He prays for forgiveness of his excesses. Especially since they are borne entirely out of emotions in any criminal proceeding, where one's freedom is at stake. It is not indicative of a deliberate disrespectful or disruptive intention. Further, if this Chromebooking episode teaches anything. There is a need for a temperate dispassionate approach, not clouded by reactive considerations. Only once all the facts can be weighed. Robert fears that this court may have matched his emotive spirit to the detriment of dispassionate fair judging. Particularly where the newly released record of proceedings

here paints a twisted tale of impropriety reflective of due process violation.

## "CONVICTED OUT OF HIS POVERTY"

This court has referred to itself as a vigilant "discovery hawk". Noting, of course, its zealousness in protecting the due process rights of defendants to access of crucial Brady materials from the perils of suppression. Despite these well intentioned notions, the prosecution embarked on a clever devious scheme of Brady suppression. One that effectively clipped the wings of the tribunal, through its backstop of a standby counsel. The troubling conclusion, uncovered in open court, undermined the integrity and decorum of the court. Casting this proceeding in terms of a farce, mockery, and miscarriage of justice. The delayed provision of the appropriate discovery review device, for a second time no less, on the second day of trial is evidence that due process rights to Brady material were violated. The delayed allowance of a proper electronic discovery review device to an indigent accused, is indicative that judicial process had been compromised. Such practice harkons back to an era epitomized by rural Alabama in 1932. Powell v Alabama, 287 U.S. 45 (1932). Where men were routinely railroaded to trial without having any opportunity to prepare. Id.

Fortunately, it is now possible to analyze the Chromebook debacle from a different perspective, through the lens of

a dispassionate source. Since the transcripts capturing those scandalous events of February 13, 2023; and perhaps as importantly prior status hearings have only recently become available for study. Collectively, they present an entirely different tale. One that details how the prosecution slyly manipulated both this tribunal and protective standby counsel to the detriment of each. At the expense of the integrity of the trial court, its <u>SOLEMN</u> duty to protect the rights of self represented persons, and Robert's right to a fundamentally fair trial.

## <u>CHROMEBOOK GAMES</u>

The AUSAs must be well pleased after their mayhem inducing measures succeeded so admirably. The government's scheme leveraged the well advertised friction between this tribunal and Robert. As they hoodwinked a veteran protective standby counsel through the provision of a specially fabricated sample discovery disc. One that was engineered using Chrome operating system programming software. So it would induce a false positive result for the Chromebook. The prosecution embarked on this scheme after they learned that Standby Counsel Shanin intended to furnish his Chromebook to enable discovery review pursuant to this court's order. On August 17, 2022 this tribunal in its minute order explicitly recognized: (See docket #793)

"The need to give Kowalski the <u>TOOLS</u> he needs for his defense"

The prosecution succeeded admirably in deterring access

to their Brady discovery. Until an unscheduled Chromebook demonstration provoked unscripted admissions.

### CHROMEBOOK DOUBLECROSS
### "I -- IF I CAUSED ANY OF THIS I APOLOGIZE"

Fairly, there is no question that Standby Counsel Shanin owns a slice of the blame. When on December 21, 2022; he blurted out how his grandkids had no problem operating the Chromebook and neither did he. (See Transcript Doc # 878). El Cheapo's provision of his old 2013 Chromebook, while he undoubtedly returned for Amazon credit a 2020 Chromebook, was not exactly what he billed the court for under the Criminal Justice Act. A pedantic careful man, however, Standby Counsel Shanin did not see the harm of a <u>LIL</u> white lie in the context of an otherwise win-win situation. Particularly, where covering his tracks prudently he pre-tested his Chromebook. The one he wanted to rid himself of, to ensure it actually worked before he pawned it off on Robert later on October 6, 2022. After, when his petty windfall scam unraveled, a stuttering genuinely flummoxed, and visibly shaken Standby Counsel Shanin explained his discomfort, after the <u>EPIC</u> Chromebook failure:

> "What I did was I went on USA FX, which a <u>SMALL AMOUNT OF DISCOVERY WAS SENT TO ME</u>, and I downloaded it from the internet and opened it"

## SET UP FOR FAILURE

In view of his precautions, it follows logically that at a status hearing of November 18, 2022; Standby Counsel would <u>MERELY</u> offer to <u>ASSIST</u> Kowalski in utilizing the Chromebook previously provided. (See Docket # 826). Not being made aware of the government's duplicity, Standby Counsel could not have known he was ensnared himself, in a greater scam capitalizing on his lil scam. An unsuspecting Standby Counsel Shanin could have scarcely imagined a larger "<u>PROBLEM</u>" was looming. Standby Counsel Shanin must have considered Robert's, (subsequently proven legitimate), pleas of a technical impasse as some sort of contrivance. Consequently, instead of diligently investigating remediation, Standby Counsel Shanin was <u>THUS</u> predisposed, being lulled into a paralysis-like inactivity. That is until, Standby Counsel's preconceptions turned into ashes. When it was proven to his chagrin, as the Chromebook failed to operate any of the government's <u>ACTUAL</u> discovery. When it was put to the test at the conclusion of the first day of trial, in open court.

Neither did Standby Counsel Shanin supply those "<u>PERIPHERAL</u>" tower computer components, (Modem, Monitor, Keyboard, Mouse, and Cables), the court ordered. Those he earlier agreed and committed to supply. (See Docket # 837). These very well may have supplied avenues to alleviate the defective Chromebook issues. Had only Standby Counsel assisted in restoring Robert's older Microsoft Windows

equipped computer tower to service, as the court ordered. If only Standby Counsel had taken seriously and assiduously abided the court's order, this may have proved feasible. But Standby Counsel regrettably did not pursue this strategy either. As he was bogged down by his own family related health crisis.

## IMPERMISSABLE LITIGATION STRATEGY

In stark contrast to Standby Counsel Shanins self effacing, humiliating, and apparently heartfelt attempts at an apology for his role in the Chromebook fiasco. AUSA Daniels allowed something completely unexpected and sinister SLIP OUT, during his calm practised report to the trial court. In particular he stated: (See Transcript 1A, page 332, Doc# ).

"WE KNEW ABOUT THE PROBLEM BACK IN NOVEMBER"

But this meant that throughout the entire Chromebook tumult, the prosecution ignored its duty as the architect of a fair proceeding to disclose. This admission is much more than a tacit acknowledgement, that when the government advised the court previously on November 18, 2022; it did so without candor. As the court observed the prosecution merely:

"Offered to assist defendant in utilizing the Chromebook previously provided." (see docket # 826)

Yet, at that time they should have been truthfully indicating the real nature of the "PROBLEM WE KNEW ABOUT" and their proposed solution thereto to the attention of the tribunal. However, a rendition of the truth would not serve their evil intentions.

The government had a clear independent duty to bring the matter to the attention of the supervising court at the earliest possible moment. The Seventh Circuit explicitly recognized this duty that: far too much is at stake in criminal law for the government not to attend to its disclosure obligations with more care and attention. United States v. Bicknell, 74 F4th 474 (7th Cir 2023). Further, that there is NO excuse for failing to diligently abide by the disclosure demands imposed by Brady and Giglio. Id.

## PHANTOM MENACE

Nevertheless, the government continued to perpetuate a concealment of its cleverly concocted "PROBLEM" during the next status hearing of December 21, 2022. These knowledgeable prosecutors, after having engineered the "PROBLEM" to begin with were reluctant to part with the enormous advantage it entailed. They simply stood idly bye, mute. When they had a clear duty to truthfully advise the court. Like the sphinx, they maintained their silence. While allowing Standby Counsel confirm what the AUSAs unequivocally already knew to be entirely false. (See Docket # 837). Namely, when Standby Counsel CONFIRMED his dysfunctional Chromebook was working and BRADY discovery viewable. As the AUSAs possessed ACTUAL knowledge that the converse was in fact abundantly true. Yet they abandoned their duty to advise the court of the same.

## WATCHING STANDBY COUNSEL BURN

The clowning courtroom antics of AUSA Daniels are exceptionally egregious. Particularly, in the context of his concealed knowledge that the D.O.A. Chromebook, with its intractable "PROBLEM", could never under any circumstance permit access to the governments Microsoft Windows based discovery. Nevertheless, he feigned interest, pantomiming as if he was a team member of the Best Buy computer technical support "GEEK SQUAD". Obstensibly, supporting the frantic but futile efforts of Standby Counsel Shanin. But having advance knowledge of a certainly dismal Chromebook demonstration outcome.

Upon failure, his report to the court differed materially from that of Standby Counsel Shanin. Reluctantly, AUSA Daniels disclosed that months earlier the prosecution had initiated Chromebook remedial efforts, that were underway, designed to cure the "PROBLEM". Further explaining that: "NOT ALL THE FILES HAVE BEEN PRODUCED". (See Transcript 1A, page 333). Referring of course to a covert repair for the Chromebook "PROBLEM" that had existed prior to November 2022. Cleverly, he now pivoted to assert a new red herring. That consisted of unspecified encryption, in order to obscure prosecutorial misconduct. He did not opine the prosecutions rationale for its refusal to disclose anything.

It is simply outrageous that any attorney, much less an AUSA would participate in a charade that made a mockery of District Court processes. They deceptively concealed their secret from Robert, Standby Counsel, and most importantly a <u>TRUSTING</u> court. In order to promote, for their own selfish advantage a tactical advantage a prosecution that bore heavily upon a defendant. As a poor man was convicted solely out of his poverty. After being rendered helpless by chicanery at the highest level. That deprived Robert of every and all means to build an adequate complete defense, without access to a serviceable discovery review device. The record supports that, in the admission of the government, three months of lost opportunity laden months passed before the government even agreed there was a "<u>PROBLEM</u>". The admission was not voluntary. The government confessed to it only once their scheme was laid bare in open court. The ringing hollow encryption explanation can only be interpreted as an additional insult on top of their earlier contempt of court.

## THE COURT'S REACTION

An astonished, visibly displeased, skeptical trial court adroitly pointed out the obvious practical difficulties presented by such unilateral underground <u>AD HOC</u> measures adopted by the government. It mused: (See Transcript 1A page 334)

> "Yeah, like whats been ~~un~~ encrypted and what was given unencrypted and what was given encrypted"

Thereupon, the ever vigilant trial court recognized Robert's critical need. Immediately, it ordered Standby Counsel Shanin, A SECOND TIME, to procure Replacement laptop (Microsoft Windows) operating system, on an overnight emergency basis. Upon provision of this M.S. windows discovery review device, ALL incompatibility issues instantly were resolved. The resulting prejudice to Robert was monumental. As the second day of trial represents a most inauspicious moment to begin pre-trial defense preparation.

Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and legal proceedings appear fair to all that observe them. Wheat v. United States, 486 U.S. 153 (1988). After several months of dishonest concealment of a "PROBLEM", preceded by a deliberate campaign to deceive the district court's own standby counsel. Provide NO reason to lend credence to more lies of a disgraceful prosecutor's new red herring encryption solution; or any other report for that matter. Particularly, where the new court ordered M.S. Windows HP Laptop promptly solved all problems including access to ALL government discovery, notwithstanding encrypted or not. There is no good reason that a PROBLEM that foreclosed all discovery review was not resolved until the SECOND day of trial. Where the indigent defendant early and often brought his troubles before the court months earlier. Only to be met with falsehood

and recrimination from those who have duties to know otherwise.

## CLIPPED WINGS

The terrible irony here is that a self nicknamed "DISCOVERY HAWK" tribunal tried to take vigilant steps to ensure that a poor man had TOOLS to mount a meaningful defense. (See Docket # 793). Such precaution is required by Supreme Court cases of Ake v. Oklahoma, 470 U.S 68 (1985); Britt v. North Carolina, 404 U.S 226 (1971) and their progeny. However, each effort the District Court employed was counteracted by the guile of the prosecution that foiled attempts to furnish a viable discovery review device. This included misrepresentation to the court and its safeguard of a Standby Counsel. Keeping their "PROBLEM" and knowledge thereof from reaching the ears of the tribunal.

The United States does NOT WIN where Justice is cheated from its citizens through a fundamentally unfair court proceeding. Especially, when a "PROBLEM" ascertained as such is not reported. This shaped a trial that did not comport with the standards of Justice. Roberts defense should never have suffered because Standby Counsel chose to supply a defective product, and where a crafty prosecution devised a scheme to take undue advantage.

Wherefore Robert respectfully requests this court enter an order:

1) Vacating the conviction of March 10, 2023
2.) Ordering a new trial
3.) Ordering that former Standby Counsel provide the discovery material he used to test his Chromebook, including all email and other communication
4.) Sanction the prosecution for all their misrepresentations concerning the "PROBLEM" they created.
5.) All relief that this court deems Just and Proper

Respectfully Submitted

Robert M. Kowalski

ROBERT M. KOWALSKI
# 499 069
Jerome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

ROBERT M KOWALSKI
# 491069
Jrome Combs Detention Center
3050 Justice Way
Kankakee, Illinois 60901

CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS
60604

Legal Mail



This Correspondence is from a detainee from:
Jerome Combs Detention Center
3050 Justice Way
Kankakee, IL 60901