FILED
7/8/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
SMB
MR

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 19 CR 226 |
| ) | |
| ROBERT M. KOWALSKI, ) | |
| defendant ) | Judge Virginia M. Kendall |

## MOTION TO VACATE CONVICTION AND DISMISS INDICTMENT
## PROSECUTORIAL MISCONDUCT AND BRADY VIOLATION

Now comes Robert M. Kowalski, (Robert) for his motion to vacate conviction and dismiss indictment, prosecutorial misconduct and Brady violation pursuant to Fed Rule Crim Pro 33, the equal protection of the due process clause of the fifth amendment, the due process clause of the fifth amendment, and Sixth amendment states as follows:

Justice Scalia once emphasized: "But the FDIC is NOT the United States". O'Melveny + Myers v. FDIC, 512 U.S. 79 (1994). The FDIC-R, as receiver, "steps into the shoes of the failed S+L". Therein lies the conundrum the FDIC-R found itself after Robert's bankruptcy filing. A veteran of FDIC-R, division of receiverships and resolution, Mr Hall elaborated on the normal procedure upon bank failure:

"When an institution fails, an FDIC attorney and an investigator are assigned to work together for civil claims. NORMALLY, they do not pursue a claim against borrowers"

Specifically, he described that his duties consisted of determining if professional liability exists. On August 24, 2023; he openly explained his division's [FDIC-R] prime objective: (See Report- 052-000339)

"Banks have a FIDELITY bond policy that covers employee dishonesty. In order to collect the FDIC NEEDS to show the employee or officer received personal benefit. The FDIC FILED a claim with the fidelity bond carrier due to John Gembara having a boat titled to Gembara and Kowalski."

Mr Hall elaborated how Robert's bankruptcy filing imperiled such claim: (Report- 052-000339)

"A claim against Robert Kowalski was pursued due to Kowalski filing bankruptcy. THERE WAS A CONCERN by DRR, Investigations that the asset management side of FDIC would not know the facts surrounding Kowalski and WFBS"

Thus, a novel approach was urgently required to circumvent the bankruptcy stay imposed impasse. As part of the FDIC-R fidelity bond collection effort, the FDIC-OIG was conscripted to work together collaboratively; using its purported search and seizure authority, to procure the "FACTS", Roberts business records with Washington Federal and Gembara for FDIC-R and its urgent fidelity bond claim. Such occurred under the guise of FDIC-OIG conducting investigation into bankruptcy crimes, when actually they sought information to complete a fidelity

bond claim. During trial testimony of February 14, 2023; Attorney Adam Brief of the U.S. Trustee office discussed its role in the bankruptcy process: (See Vol 2-B 2/14/23)(pages 481 to 483).

Q: It would be out of the ordinary for the FDIC to assume the operations of your office?

A: <u>IT DOES NOT HAPPEN</u>, so there would be no circumstances... where the FDIC would take over the role of the U.S. Trustee... It would be highly <u>UNUSUAL</u> for the FDIC to perform the role of the U.S. Trustee.

Nevertheless, FDIC-OIG agent Evans stood before Judge Kendall requesting a search warrant relative to a bankruptcy matter. The affidavit that accompanied the search warrant request omitted any reference of the fidelity bond.

## <u>INSPECTOR GENERAL ACT</u>

The Inspector General Act established the office of the Inspector General (OIG) in order to facilitate "objective inquiries into beauracratic waste... and mismanagement. NASA v. Fed Labor Relations Auth, 527 U.S. 229 (1999). The IG's mandate focuses on systemic agency issues. Congress created the OIG to provide leadership and coordination and reccomend policies for activities designed... to promote economy, efficiency, and effectiveness in the administration of, and... to prevent and detect fraud and abuse in, such programs and operations. 5 U.S.C App 3 2(2). There are <u>LIMITS</u> to the IG's powers,

however. Most prominently, the act specifically prohibits the OIG from assuming "program operating responsibilities". Truckers United v. Mead, 251 F3d 183 (D.C. Cir 2001). The legislative history and structure of the Inspector General Act make it plain that Congress did not intend to grant the IG authority to conduct investigations constituting an integral part of [FDIC-R] programs. Id.

## JOINT FIDELITY BOND COLLECTION TACTICS

The riding shotgun activity of FDIC-OIG with private entity FDIC-R were ULTRA VIRES when committed. The record of this case makes clear that, when they investigated Robert and seized his records, the FDIC-OIG was not engaged in an investigation related to abuse and mismanagement in the administration of FDIC or an audit of agency enforcement procedures or policies. Rather, the FDIC-OIG merely LENT his search and seizure authority to standard enforcement of a normal FDIC-R receivership resolution investigation. One whose FIDELITY BOND COLLECTION had been suspended relative to Robert, by operation of the automatic stay provisions of the U.S. Bankruptcy code. In other words, the FDIC-OIG involved himself, meddling in debt collection efforts designed to preserve and enhance recovery of a fidelity bond. This was beyond his authority because collection of a debt in a bank receivership is solely a CORE function of FDIC-R.

## BOND COLLECTION SHORTCUTS

The Washington Federal fidelity bond promised FDIC-R a cool payment of $1,250,000.⁻. FDIC-R employee, Mr. Gutierrez, during an interview at the U.S.A.O on March 8, 2024; honestly discussed FDIC's special urgency of its Fidelity bond claim dilemma. (See Report 052-001027). Where he explained how the ramifications of Robert's bankruptcy adversely imperiled FDIC-R collection prospects:

"the FDIC-R can collect on non-performing or troubled loans VIA BOND CLAIMS due to the fraudulent acts of employees and/or officers. If the FDIC-R cannot sell or collect on a loan, it is written off. In this case, the loan results in a LOSS to the Receivership.

## ASSUMED PROGRAM OPERATING RESPONSIBILITIES

The unacceptable nature of more writeoffs, in lieu of lucrative cash insurance settlement, inspired what amounted to rash VIGILANTE ACTIVITY. FDIC-R, as the as the Court long ago found, is only a private entity. Despite having Federal in its name it is not an agency of the United States government. It satiated a purely private pecuniary mission by ultra vires teamwork united with FDIC-OIG. Subsequently, these FDIC-OIG seizures allied together with FDIC-R usurped the U.S Trustee's statutory role as watchdog over the bankruptcy process. Consequently, the resulting newly formed joint FDIC-R/FDIC-OIG collection project could not

in any circumstance represent the interests of the sovereign, United States. There is no justification, other than greed, for FDIC-R joined with FDIC-OIG to pass themselves off in a charade of legitimate law enforcement. Most importantly, FDIC-OIG did not divulge to this court that it was actually engaged in a fidelity bond recovery operation jointly with FDIC-R; when FDIC-OIG agents sought, under oath, bankruptcy related search warrants. Which, in fact, had nothing in common with bankruptcy crimes. But conversely, everything in common with the urgent time sensitive need to secure documentation necessary to complete the FDIC-R million dollar plus fidelity bond claim.

A veritable fidelity bond feeding frenzy ensued. One in which the U.S.A.O. affirmatively encouraged, initiated, and instigated its private prosecution team member, FDIC-OIG/FDIC-R, by preparation and presentation of the sought search warrants. While knowing the intrusive private FDIC-OIG/FDIC-R purpose in conducting the search was not to assist law enforcement effort. But solely to further sate their own financial ends of purely private FDIC-R.

## ABSENCE OF TRANSPARENCY

Consequently, this proceeding has been tainted by a privately motivated <u>NOT</u> sovereign entity. FDIC-OIG united in concert with the goals of FDIC-R, impersonated real public law enforcement just to collect upon a much relished fidelity bond. When their FDIC subpoena powers

were sapped by application of bankruptcy law. Rather than modify the automatic stay, 11 U.S.C. §362, crafty FDIC-R circumvented the pending bankruptcy proceeding. Skirting around through active, yet covert collaborative operations with their own Inspector General's office, FDIC-OIG.

The record supports this joint FDIC-R/FDIC-OIG task force usurped the duties of those lawfully tasked with maintaining the integrity of the bankruptcy system. As a strictly private entity this irregular ad hoc FDIC-R/FDIC-OIG team does not constitute an executive branch actor, having discretion over whom to charge with crime; or for that matter the capacity to engage in law enforcement work at all. At best this FDIC corporation group represents private detectives or mall cops passing themselves off as genuine "<u>FEDERAL</u>" law enforcement for their own enrichment. Egregiously, during the course of their deception FDIC-OIG agents neglected to disclose their FDIC-R financially motivated teamwork, before either the petite or grand juries. Likewise, after the AUSAs were put on notice, <u>AGAIN</u>, of all this abnormal joint FDIC-R/FDIC-OIG team building practice, fidelity bond collection frenzy, during its interviews of Mr. Hall and Gutierrez. It should alerted the trial court accordingly.

It is axiomatic, that in the context of a criminal proceeding, a <u>PRIVATE</u> entity that is <u>NOT</u> the United States can not serve in the role of an integral member of any public governmental prosecution team. FDIC-OIG lost whatever law enforcement magic it may have possessed. When it operated at cross purposes, beyond the authority Congress provided within the Inspector General Act. As it allowed itself to be pressed into action to support FDIC-R in pursuance of fidelity bond claim recovery. That is indisputably a part of the everyday normal routine "<u>PROGRAM OPERATING RESPONSIBILITIES</u> solely of FDIC-R. It has been long settled, that FDIB-R, as receiver, is not the United States. Despite having the name <u>FEDERAL</u> included as part of the name of the corporation.

## DEMANDS IMPOSED BY BRADY

The bootleg covert joint teamwork engaged in between de facto prosecution team member FDIC-OIG/FDIC-R entailed unforseen consequences, however. It meant by extension that Robert was entitled to, pursuant to Brady v. Maryland, 373 U.S. 83 (1963); all exculpatory evidence in the possession of this unconventional, underground, and newly constituted crime fighting group. Brady obligations extend to all person's acting on behalf of the government. Kyles v. Whitley, 514 U.S. 419 (1995). Nonetheless, the government's Brady discovery production is noticeably lacking and otherwise silent as to the reportedly successful Washington Federal fidelity bond and insurance claim recovery material. Amongst other things,

Robert was deprived of the ability to utilize this critical source of information during cross-examination. Moreover, testimony of these joint FDIC-OIG/FDIC-R special agents before the petite and grand juries respectively, failed to elicit the true extent of their underlying motivations for their heretofore unprecedented collaborative enterprise.

After all this cloak and dagger clandestine monetary pursuit, It is certainly no coincidence that the amount of containers seized by this counterfeit law enforcement group reflected by the source bates prefix RKBOX_ ranges has fluctuated. The number of stored RKBOX_ containers equaled 132 not 64. This represents a shortage of more than half of Robert's own irreplaceable business records. That have been culled out as casualties of the private FDIC-OIG/FDIC-R fidelity bond claim. Undoubtedly, other qualified legitimate agents working this case could have served this search warrant. Except FDIC-R/FDIC-OIG team was not about to allow anyone interfere with their fidelity bond claim <u>cheese</u>, as it were. Thus, FDIC-R/FDIC-OIG not only successfully completed the fidelity bond claim. But simultaneously <u>burdened</u> Robert's defense with the loss of priceless business records.

### BOND "BLOOD" IN THE WATER

All readily admit that normally FDIC-R does not pursue a claim against borrowers; and there has never been a known circumstance where the U.S. Trustee willingly abdicates its role as bankruptcy watchdog over to FDIC. However,

Robert's bankruptcy filing imposed a hurdle that interfered with the processing of the highly anticipated fidelity bond proceeds, and also changed the equation of FDIC corporate procedure. But for a boat partnership and prospective bond recovery Robert would not have been charged. A prosecution team, that included a multi-million dollar fidelity bond payout craving FDIC-R/FDIC-OIG team; acted recklessly, in bad faith with a selective and vindictive prosecution, while abusing the charging function.

The discretion a prosecutor excercises when he decides what, if any, charges to bring against a criminal suspect... is an integral feature of the criminal justice system, and is appropriate, so long as it is <u>NOT</u> based upon improper factors. United States v. Armstrong, 517 U.S. 456 (1996). Such inappropriate factors here include pursuing criminal charges merely to enhance fidelity bond collection for a private prosecution team member FDIC-R/FDIC-OIG. Who <u>UNUSUALLY</u> decided to investigate, then testify without candor to a grand jury in a bankruptcy matter. Which is the exclusive heart of another agency's general compliance enforcement responsibility, the U.S. Trustee's office. The prosecution unfairly singled out Robert because its privately motivated team member, FDIC-R/FDIC-OIG determined he had to be charged in connection with fidelity bond recovery. As FDIC-R needed a scapegoat in order to cash in upon their fidelity bond payday bonanza. (See Report 052-000339). Providing favors for a

prosecution team member in exchange for an indictment represents one huge inappropriate factor.

Wherefore Robert Respectfully requests this honorable court will enter an order:

A.) That dismisses the indictment, vacates the conviction, and/or alternately orders a new trial.

B.) That directs the government to provide all information pertaining to fidelity bond claims from Washington Federal bank. Including but not limited to those regarding Ms Mardijano, Mr Gembara, WFBS accounting firm, and all others

C.) directing the government to provide all missing RKBOX-Ranges still in the possession of FDIC-R/FDIC-OIG.

d) That provides all further relief that is just and proper.

e) That directs FDIC-R to provide a current photographic identification of Steven Hall

Respectfully Submitted,

Robert M. Kowalski

ROBERT M. KOWALSKI
#499069
Jerome Combs Detention Center
3050 Justice Way, Kankakee, Illinois 60901

ERT M. KOWALSKI
99069
ome Combs Detention Center
50 Justice Way
kakee, Illinois 60901



CHAMPAIGN IL 618
2 JUL 2024 PM
$0.88 0
US POSTAGE FIRST-CLASS
062S0014950475
FROM 60901

**RECEIVED**

**JUL 0 8 2024**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CLERK OF THE:
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS
60604

Legal mail

Legal mail





07/08/2024-30